AGREEMENT

Between

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC.

and

FSM EAST RIVER
ASSOCIATES LLC

Dated:  As of November 15, 2000

# TABLE OF CONTENTS

Introductory Statement

ARTICLE 1.  -  Certain Definitions
ARTICLE 2.  -  Agreement to Purchase and Sell
ARTICLE 3.  -  Computation and Payment of Purchase Price
ARTICLE 4.  -  Deliveries of Letters of Credit
ARTICLE 5.  -  Draws Under Letters of Credit
ARTICLE 6.  -  Rezoning and PSC Processes; Related Matters
ARTICLE 7.  -  Title to the Properties; Possession
ARTICLE 8.  -  Condition of the Properties; Right to Remove Fixtures and Equipment
ARTICLE 9.  -  RDE Strategy
ARTICLE 10. -  Developer Conditions
ARTICLE 11. -  Con Edison Conditions
ARTICLE 12. -  Waiver of Conditions
ARTICLE 13. -  Real Property Tax Matters; Apportionments
ARTICLE 14. -  Closing Dates; Closings
ARTICLE 15. -  Closing Deliveries; Related Matters
ARTICLE 16. -  Representations and Warranties of Con Edison
ARTICLE 17. -  Representations and Warranties of Developer; Certain Agreements
ARTICLE 18. -  Transfer Taxes; Transaction Expenses
ARTICLE 19. -  No Casualty Condition; Material Condemnation
ARTICLE 20. -  Certain Regulatory Matters
ARTICLE 21. -  FMV Appraisals
ARTICLE 22. -  Events of Default; Remedies
ARTICLE 23. -  Post-Closing Remedies
ARTICLE 24. -  Real Estate Brokers
ARTICLE 25. -  Notices
ARTICLE 26. -  Limitations on Assignment
ARTICLE 27. -  Miscellaneous

Schedules and Exhibits

Schedule "1"   -   The Properties (Property Descriptions):
                       Schedule "1-A"-616 First Avenue
                       Schedule "1-B"-685 First Avenue (Portion)
                       Schedule "1-C"-708 First Avenue
                       Schedule "1-D"-700 First Avenue (Waterside)
                   Permitted Encumbrances:
                       Schedule "1-AA"-616 First Avenue
                       Schedule "1-BB"-685 First Avenue
                       Schedule "1-CC"-708 First Avenue
                       Schedule "1-DD"-700 First Avenue (Waterside)

Schedule "2"   -   [omitted]
Schedule "3"   -   [omitted]
Schedule "4"   -   Proposed Rezoning and ULURP Schedule
Schedule "5"   -   Single Purpose Entity Criteria
Schedule "6"   -   Exceptions (if any) to Representations of the Parties
Schedule "7"   -   Miscellaneous Closing Deliveries
Schedule "8"   -   Authorized Representatives; Notice Addresses
Schedule "9"   -   Organizational Representations of Developer and Con Edison
Schedule "10" -   List of Financial Statements of Developer and Developer Principals


Exhibit A     Form of Second L/C
Exhibit B     Form of Third L/C
Exhibit C     Form of Rezoning L/C and Form of Rezoning L/C Agreement
Exhibit D     Form of Rezoning Note
Exhibit E     Form of Rezoning Pledge Agreement
Exhibit F     Form of Rezoning Mortgage; Form of Agreement of First Mortgagee
Exhibit G     Form of Memorandum of Sale Contract Provision
Exhibit H     Form of Deed
Exhibit I     Form of Future Rezoning Covenant
Exhibit J     Form of As-Built Amount Guaranty
Exhibit K     Form of Assignment of Ground Lease
Exhibit L     Form of 685 Zoning Lot Agreement
Exhibit M     Form of Assumption by Title LLC
Exhibit N     [omitted]
Exhibit O     Form of Developer Call L/C
Exhibit P     Forms of Opinions of Counsel
Exhibit Q     Form of Estoppel Certificate
Exhibit R     Form of Call Date L/C
Exhibit S     Form of L/C for Additional Interest on Developer Call Price
Exhibit T     [omitted]

Index of Defined Terms

**Term**                                                                                    **Section**

"AAA" ................................................................................................................... 1.1
Aggregate Threshold Amount .......................................................................... 1.1
Agreement .......................................................................................................... 1.2
amended .............................................................................................................. 1.2
amendment ......................................................................................................... 1.1
Appurtenance ...................................................................................................... 1.2
approval or approve .......................................................................................... 26.3(a)
Article 26 Date ................................................................................................... 3.3
As-Built Amount ............................................................................................... 6.8
As-Built Amount Guaranty .............................................................................. 6.8
As-Built Notice .................................................................................................. 1.1
Assignment of Ground Lease ........................................................................... 1.2
at Developer's expense ..................................................................................... 1.2
at Con Edison's expense ................................................................................... 1.1
Authorized Representative ................................................................................ 1.1
Business Day ...................................................................................................... 25.1
by hand ............................................................................................................... 1.1
Call Date L/C ..................................................................................................... 14.4
Call Notice .......................................................................................................... 1.1
CE Interest Rate ................................................................................................. IS[1]
City ...................................................................................................................... 1.1
Closing ................................................................................................................ 1.1
Closing Date ....................................................................................................... 1.1
Closing Instruments ......................................................................................... 1.1
Code .................................................................................................................... 1.1
Condemn ............................................................................................................. 1.1
Condemnation .................................................................................................... 1st par.
Con Edison ......................................................................................................... 22.3
Con Edison Event of Default ........................................................................... 1.1
Con Edison Indemnitees ................................................................................... 1.2
Consent ............................................................................................................... 1.1
Consultant ........................................................................................................... 1.1
control or controlled by .................................................................................... 9.3
Cost Cap Policy ................................................................................................. 26.3(b)
Covered Sale ...................................................................................................... 1.1
CPI ....................................................................................................................... 1.1
CPLR ................................................................................................................... 1.2
day ....................................................................................................................... 1.1
Deed .................................................................................................................... 1.1
Designated Consultants .................................................................................... 1.1

---

[1]    Introductory Statement

Developer .................................................................................................... 1st par.
Developer Call Closing ................................................................................ 1.1
Developer Call Date ..................................................................................... 1.1
Developer Call L/C ....................................................................................... 1.1
Developer Call Option ................................................................................. 14.4
Developer Call Price .................................................................................... 3.4
Developer Event of Default ......................................................................... 22.1
Developer Interest Rate ............................................................................... 1.1
Developer Lender ......................................................................................... 1.1
Developer Principals .................................................................................... 1.1
Development ................................................................................................. 1.1
Development Rights ..................................................................................... 1.1
Dispute Notice ............................................................................................. 6.9
Encumbrance ................................................................................................ 1.1
Environmental Law ...................................................................................... 1.1
Estate Transfer ............................................................................................. 26.3(c)
Exit Insurance .............................................................................................. 9.3
Exit Insurer .................................................................................................. 9.3
Extraordinary Public Improvement Costs ................................................... 1.1
Fair Market Value ........................................................................................ 21.1
FAR (or Floor Area Ratio) .......................................................................... 1.1
FAR Arbitrator ............................................................................................. 1.1
Fees-And-Costs ............................................................................................ 1.1
Final Determination ..................................................................................... 1.1
Financing Purpose ....................................................................................... 26.3(d)
Financing Transfer ....................................................................................... 26.3(e)
First Amendment .......................................................................................... 1.1
First L/C ....................................................................................................... IS
First Mortgage ............................................................................................. 1.1
Fishers .......................................................................................................... 26.3(f)
Floor Area .................................................................................................... 1.1
Future Rezoning Covenant ........................................................................... 26.3(l)
Getty ............................................................................................................. 1.1
Government Entity ........................................................................................ 1.1
Guaranteed Minimum Value or GMV .......................................................... 3.2
GMV Closing ............................................................................................... 1.1
GMV Closing Notice .................................................................................... 14.5
GMV Trigger Date ....................................................................................... 1.1
Hazardous Substance(s) ............................................................................... 1.1
include .......................................................................................................... 1.2
including ....................................................................................................... 1.2
informal meeting .......................................................................................... 6.2
Injunction ..................................................................................................... 1.1
Land Acquisition Loan ................................................................................. 6.13
law ................................................................................................................ 1.2
laws .............................................................................................................. 1.2

L/C or letter of credit .................................................................. 1.1
Lease ........................................................................................... 1.1
Legal Proceeding ......................................................................... 1.1
Lot Area ....................................................................................... 1.1
Material Condemnation ................................................................ 1.1
Money Market Rate ..................................................................... 26.3
Morgan Stanley ............................................................................ 1.1
Mortgage ................................................................................... 26.3(i)
Net Sale Proceeds ..................................................................... 26.3(e)
New Investor ................................................................................ 1.1
NFAS ........................................................................................... 8.2
non-invasive ................................................................................ 1.2
notice ........................................................................................... 1.1
Outside Date ................................................................................ 14.6
Outside Date Call Price ............................................................... 14.6
Outside Date Closing ................................................................... 14.6
Outside Date Notice ..................................................................... 14.6
Outside Date Option .................................................................... 1.1
Outside Party ............................................................................. 26.3(j)
Ownership Interest ....................................................................... 1.2
party ............................................................................................ 1.1
Permitted Encumbrances ............................................................. 1.1
Person .......................................................................................... 9.3
Pollution Legal Liability Policy or PLL Policy .......................... 27.14
prevailing party ........................................................................... 1.1
Public Improvement ..................................................................... 1.1
Public Service Commission or PSC ............................................ 1.1
PSC Approval .............................................................................. 6.4
PSC Matter .................................................................................. 1.1
Property or Properties ................................................................. 6.1
Proposed Rezoning ...................................................................... 3.1
Purchase Price ............................................................................. 1.1
Qualified Bank ............................................................................. 1.1
RDE .............................................................................................. 1.1
RDE Completion .......................................................................... 9.2
RDE Contract ............................................................................... 9.2
RDE Contractor ............................................................................ IS
RDE Deposit ................................................................................ 9.4
RDE Parent Indemnity ................................................................ 13.1
Real Property Taxes .................................................................... 27.17
Related Parties ............................................................................ 7.3
Remove ...................................................................................... 26.3(g)
Replacement Funding ................................................................... 5.6
Replacement L/C .......................................................................... 3.3
Rezoned Price .............................................................................. 1.1
Rezoning .......................................................................................

Rezoning Approval Date ................................................................................. 1.1
Rezoning Collateral ........................................................................................ 1.1
Rezoning Documents ..................................................................................... 1.1
Rezoning L/C ................................................................................................. 1.1
Rezoning L/C Agreement ............................................................................... 1.1
Rezoning Matter ............................................................................................ 6.2
Rezoning Mortgage ....................................................................................... 1.1
Rezoning Note ............................................................................................... 1.1
Rezoning Notice ............................................................................................ 6.7
Rezoning Pledge Agreement ......................................................................... 1.1
Second L/C .................................................................................................... 1.1
Second L/C Due Date .................................................................................... 4.2
SEQRA Consultant ........................................................................................ 1.1
Service Contract ............................................................................................ 1.1
685 Adjacent Parcel ...................................................................................... 3.9
Solow ......................................................................................................... 26.3(h)
Statement of Condition .................................................................................. 1.1
subject to the terms of this Agreement ......................................................... 1.2
Third L/C ....................................................................................................... 1.1
Third L/C Due Date ....................................................................................... 4.3
Threshold Limit ............................................................................................. 1.1
Title Defect .................................................................................................... 7.1
Title Insurance Policy .................................................................................... 1.1
Title Insurer(s) .............................................................................................. 1.1
Title LLC ...................................................................................................... 6.14
Title Report Notice ........................................................................................ 7.8
Transaction Conditions ................................................................................ 20.6
Transaction Materials .................................................................................. 27.17
Transfer or to Transfer .................................................................................. 1.1
ULURP .......................................................................................................... 1.1
ULURP Certification ..................................................................................... 1.1
utility or utilities ........................................................................................... 1.2
Waterside Lease ............................................................................................. 1.1
Waterside Termination Event ........................................................................ 1.1
Wiring Account .............................................................................................. 1.1
Zoning Resolution .......................................................................................... 1.1

AGREEMENT dated as of November 15, 2000 by and between CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., a New York corporation, with an office at Four Irving Place, New York, NY 10003 ("Con Edison") and FSM EAST RIVER ASSOCIATES LLC, a New York limited liability company, with an office c/o Fisher Brothers, 299 Park Avenue, New York, NY 10171 ("Developer").

<u>Introductory Statement</u>

Con Edison is the owner of four parcels of real estate in the City of New York (the "City") commonly described as follows: 616 First Avenue, 685 First Avenue, 708 First Avenue, and 700 First Avenue (Waterside). These properties are more particularly described in Schedules "1-A", "1-B" (as to part of 685 First Avenue only), "1-C", and "1-D" hereto (and are defined below as the "Properties" or each as a "Property"). Con Edison desires to sell the Properties to Developer.

Developer and its affiliates are engaged in the development, ownership, financing, and operation of major commercial and residential real estate projects in the City and elsewhere. Developer desires to purchase the Properties from Con Edison.

Developer and Con Edison have agreed upon a "Guaranteed Minimum Value" or "GMV" for each Property, aggregating $300 million for all the Properties. The GMV, which is allocated among the Properties as set forth below, will be the minimum price to be paid by Developer to purchase the particular Property.

Because Developer and Con Edison believe that substantial additional value will accrue to the Properties if rezoned to obtain the maximum achievable Floor Area, Developer will undertake to obtain a Rezoning (as defined below) of the Properties, at Developer's expense, in accordance with this Agreement. After the Rezoning Approval Date (as defined below) with respect to any Property, the Purchase Price will be increased to $125 per square foot of Floor Area for such Property as fixed by the Rezoning (the "Rezoned Price" as defined below). The Purchase Price will include, also, payment for certain space as actually constructed by Developer (the "As-Built Amount" as set forth below).

After the expiration of certain time periods, and subject to certain conditions, Con Edison may require Developer to close title before the Rezoning Approval Date and pay the GMV for the particular Property. Any such GMV payment will be credited against the Rezoned Price after the Rezoning Approval Date. At each GMV Closing Developer will deliver to Con Edison security (the "Rezoning Collateral" as defined below) for payment of the Rezoned Price under this Agreement.

If the Rezoning Approval Date has not occurred by May 15, 2004, Developer will also have the right to "call" title to the Properties if Developer pays a price (the "Developer Call Price" as defined below) of $552,928,313 (computed by multiplying 10.5 times $125 per square foot of Lot Area, as set forth below) for all Properties, including any as to which a GMV Closing has occurred (although Developer will receive a credit for the prior payment of GMV). However, Developer will pay the balance of the Rezoned Price if Rezoning results in an FAR

greater than 10.5. If for any reason Developer fails to pay such Developer Call Price on or before May 15, 2004-- or to deliver a letter of credit (the "Call Date L/C", as defined below) for the portion of the Developer Call Price allocated to any Property that cannot be conveyed as of such date -- the Rezoned Price and the GMV will be increased (but not decreased) for changes in Fair Market Value, and the As-Built Amount will be subject to a CPI adjustment, all as set forth below. At the Closing of title to each Property pursuant to the Developer Call Option, Developer will deliver a guaranty or a letter of credit to secure payment of the prospective difference (if any) between the Rezoned Price and the Developer Call Price.

On signing of this Agreement, Con Edison and Developer have entered into certain agreements with a contractor and an insurer (the "Exit Insurer" as defined below) as set forth below for the remediation and demolition of Hazardous Substances on the Properties (the "RDE", as defined below) and the issuance of insurance coverages concerning the same. On signing of this Agreement, Developer has paid $50 million to Con Edison to be applied toward the costs of RDE pursuant to this Agreement (the "RDE Deposit", as defined below).

On the signing of this Agreement, Developer has delivered to Con Edison a letter of credit issued by Citibank, N.A. in the amount of $20 million (the "First L/C"). Upon ULURP Certification (defined below) or on September 30, 2001, if earlier, Developer will deliver to Con Edison an additional letter of credit issued by a Qualified Bank, in the amount of $30 million (the "Second L/C" as defined below). Developer will deliver an additional letter of credit issued by a Qualified Bank in the amount of $50 million (the "Third L/C" as defined below) if all Properties have not been deeded to Developer by May 15, 2004 (unless Developer delivers the Call Date L/C, as set forth below). Each letter of credit shall be security for Developer's obligations under this Agreement.

If Con Edison has not required a GMV Closing, and if Developer has not exercised its Call Option, the Closing of each Property will occur 30 days after the Rezoning Approval Date. If a GMV Closing or the Developer Call Closing has occurred as to any Property, Developer will pay the Rezoned Price (minus the prior payment of GMV or Developer Call Price, subject, if applicable, to a Fair Market Value increase) within 30 days after the Rezoning Approval Date.

Developer will commence the Rezoning process on the signing of this Agreement, and Con Edison will participate in that process, as set forth below. If the Rezoning results in a Floor Area which will result in an aggregate Rezoned Price for all Properties of less than $526,266,250 (the "Aggregate Threshold Amount", as defined below),[2] Con Edison may terminate this Agreement or close title based on the actual Rezoned Price as then determined. If the Rezoning Approval Date with respect to any Property does not occur by the Outside Date (as defined below), this Agreement will terminate as to such Property unless Developer elects to close and pay a Purchase Price computed as 12 multiplied by $125 per square foot of Lot Area for all Properties calculated on the basis of the Lot Areas set forth in Section 3.9, plus the As-Built Amount, plus an FMV and CPI adjustment, all as set forth below).

---

[2]    Subject to adjustment for a Waterside Termination Event (as defined below).

Con Edison must receive approval from the Public Service Commission to sell the Properties. Con Edison will conduct the process of obtaining PSC Approval, and Developer will participate in that process, as set forth below.

Both Con Edison and Developer believe that the Properties present the opportunity to create world-class developments on some of the most unique real estate in the United States and to achieve values and returns consonant with such an opportunity. This Agreement sets forth the terms and conditions on which they intend to achieve that result.

This Introductory Statement is intended as a general but not comprehensive overview of the terms, covenants, conditions, and provisions of this Agreement which are set forth below.[3]

NOW, THEREFORE, in consideration of the promises and payments set forth below, and intending to be legally bound hereby, Developer and Con Edison agree as follows:

ARTICLE 1                                                                 Certain Definitions

1.1. The following words and phrases have the following meanings in this Agreement:

"AAA" means the American Arbitration Association or a successor organization (and, for all proceedings and applications under this Agreement, the New York City office of the same).

"Aggregate Threshold Amount" means the amount of $526,266,250, which has been computed by multiplying 10 times $125 per square foot of Lot Area for each Property specified in Section 3.9. The Aggregate Threshold Amount shall not be reduced to reflect reductions in the Purchase Price, failure to satisfy any Closing condition, or for any other reason.

"Agreement" means this Agreement and the Exhibits and Schedules attached hereto, as amended from time to time.

"Appurtenance" means any easement, covenant, restriction, tenement, hereditament, appurtenance, and other right of every kind whatsoever, benefitting, or appertaining to any Property (and all remainders, rents, issues, and profits thereof). "Appurtenance" includes all right, title and interest of Con Edison, if any in and to: (i) any land lying in the bed of any streets, roads or avenues opened or proposed, public or private, in front of or adjoining to the center line thereof, (ii) all strips, gores, rights of way, reservations, and privileges, and (iii) unpaid awards for any taking by condemnation or any damage to the Properties by reason of a change of grade of any streets or highways.

"Assignment of Ground Lease" means an assignment of the Waterside Lease in the form attached hereto as Exhibit "K."

---

[3]   In the event of any inconsistency between this Introductory Statement and the other terms of this Agreement, the other terms shall govern.

"Authorized Representative" means an Authorized Representative of a party identified on Schedule "8" hereto (and any successor designated pursuant to Section 27.9).

"BSA Special Permit" means a certain special permit approved by the Board of Standards and Appeals of the City of New York pursuant to a resolution dated February 2, 1982 under Calendar No. 257-81-BZ.

"Business Day" means any day other than Saturday or Sunday or a New York State or federal holiday and/or the day upon which it is observed.

"Call Date L/C" means an irrevocable letter of credit in the form attached as Exhibit "R" hereto, issued by a New York City branch of a Qualified Bank in an amount equal to the sum of: (a) $552,928,313, allocated by Property in the amounts specified in Section 3.4, deducting therefrom the Developer Call Price for any Property as to which the Closing will occur on or before the Developer Call Date and the Developer Call Price (less any GMV previously paid for that Property) will be paid before or simultaneously with delivery of the Call Date L/C to Con Edison; plus (b) an amount equal to the interest that would accrue on the amount in (a) above for a period of two and one half years at the Money Market Rate, assuming for purposes of fixing the amount of the L/C that the rate for such two and one-half years would be the Money Market Rate in effect on the date three Business Days before delivery of such L/C subject to supplementation by the additional L/C pursuant to Section 3.4.

"CE Interest Rate" means an annual rate of interest computed without compounding equal to the interest paid by Con Edison from time to time on its 60-day commercial paper borrowings.

"Closing" means, with respect to each Property, the closing of the sale and purchase of such Property and the transfer of the deed, as contemplated under this Agreement.

"Closing Date" means the date scheduled for a Closing pursuant to Article 14.

"Closing Instruments" means each and every instrument, agreement, and document required by this Agreement to be executed and/or delivered by Developer or Con Edison, respectively, at a Closing.

"Code" means the Internal Revenue Code of 1986, as amended from time to time.

"Condemnation" (or to "Condemn") means a taking (whether temporary or permanent) by any Government Entity in condemnation or eminent domain (or any transfer by agreement in lieu thereof).

"Con Edison Indemnitees" means Con Edison and all Persons Controlled by Con Edison, and the officers, directors and employees of each of them.

"Consultant" means an architect, engineer, attorney, accountant, or other consultant, and/or any of their respective subconsultants, engaged by a Person with respect to any transactions contemplated in this Agreement.

"Control" or "controlled by" means (i) the direct or indirect ownership of 20% or more of the common shares, membership interests, partnership interests, or other equity of a Person; and/or (ii) the possession directly or indirectly of the power to direct the management and policies of a Person, whether through voting control, contractual rights, a trust, or otherwise. ("Control" or "controlled by" shall not include voting rights reserved to a member of a limited liability company who, like a limited partner, has no rights other than the right to vote on major capital events such as, for example, sale or mortgaging of a Property).

"CPI" means the Consumer Price Index for All Urban Consumers, which is published by the United States Department of Labor, Bureau of Labor Statistics, relating to consumer prices for all items (1967=100) for New York-Northern N.J.-Long Island, NY-NJ-CT; and the statistical methods used in computing the CPI shall be those chosen by the United States Department of Labor for that purpose (regardless of whether the methods are changed from time to time). If, however, the base for the CPI is so changed that 1967 prices no longer represent 100, an appropriate adjustment will be applied to the published indices in order to relate them to the base in which the 1967 consumer prices represent 100. If the CPI shall cease to be published, CPI shall mean the most comprehensive index of consumer prices (or, if none, of general inflation in the United States economy) published by any agency of the federal government or, if none, a substantially similar index selected by the parties (or by the FAR Arbitrator if the parties cannot agree).

"CPLR" means the New York Civil Practice Law and Rules.

"Deed" means a bargain and sale deed without covenants for each Property in the forms attached as Exhibit "H" hereto.

"Designated Consultants" means Cushman & Wakefield, Inc. and Merrill Lynch & Co., Inc.

"Developer Call Closing" means a Closing initiated by the giving of the Developer Call Notice.

"Developer Call Date" means May 15, 2004.

"Developer Call L/C" means an irrevocable letter of credit in the form included in Exhibit "O" hereto, issued by a New York City branch of a Qualified Bank in the amount of seventy-nine million nine hundred eighty-six thousand one hundred eighty-seven dollars ($79,986,187) or other similar collateral acceptable to Con Edison in its sole discretion for Developer's obligation to pay the Rezoned Price after a Developer Call Closing.

"Developer Interest Rate" means an annual rate of interest on a Property mortgage or other Development loan obtained by Developer from time to time with respect to any transactions contemplated under this Agreement, to be identified by Developer by notice to Con Edison when interest is payable to Developer hereunder, but in no event to exceed ten percent (10%) per annum.

"Developer Lender" means any Person providing debt financing for the acquisition and/or Development of any of the Properties.

"Developer Principal" means each member and manager of Developer.

"Development" means, with respect to any Property, all buildings and other improvements proposed to be constructed, or actually constructed, by Developer on such Property.

"Development Rights" means, with respect to each Property, the Floor Area pertaining to such Property and all rights to construct on, above, or under such Property permitted by the Zoning Resolution.

"Encumbrance" means a Mortgage, security agreement, security interest, lien, levy, lease, pledge, hypothecation, charge, claim, license, judgment, covenant, easement, survey problem, and/or any other encumbrance or restriction of any and every kind whatsoever.

"Environmental Law" means all laws of any Government Entity (federal, state, local, or otherwise) governing or applicable, or relating in any way, to pollution; the environment (including indoor and outdoor air, surface water, groundwater, underground water, land surface or subsurface strata); the protection, conservation, management and use of land or other natural resources; the protection of human health and safety as relating to the environment; and/or the release, threatened release, manufacture, processing, distribution, use, generation, treatment, storage, disposal, transport or handling of Hazardous Substances, including, among others, the Comprehensive Environmental Response Compensation and Liability Act, the Superfund Reauthorization and Amendment Act, the Oil Pollution Act of 1990, the Resource Conservation and Recovery Act, the Federal Water Pollution Control Act, the Clean Air Act, the Hazardous Materials Transportation Act, the Toxic Substances Control Act, the Safe Drinking Water Act, the National Environmental Policy Act, the Coastal Zone Management Act, the Rivers and Harbors Act of 1899, the Endangered Species Act, the Occupational Safety and Health Act, and all analogous state and local laws now or subsequently in effect or as amended from time to time.

"Extraordinary Public Improvement Costs" means the costs of designing, financing, and constructing a significant Public Improvement which (a) is imposed as a condition to the Rezoning; (b) was not contemplated in any document issued publicly, or to Developer, by any Government Entity before September 15, 2000; (c) is not specifically identified in the Zoning Resolution or the New York City building code, or in any other applicable law, as a requirement or condition (mandatory, contingent, or discretionary) for approval by any Government Entity of a rezoning in New York City, other zoning variance or permission, governmental funding or financing, site plan approval, or issuance of a building permit or other similar consent or approval for a project in New York City; (d) was not proposed in writing by any Government Entity to Developer before September 15, 2000; (e) is not a plaza or park or improvements thereon located on or within 200 feet of any Property, or a roadway or street located on or adjoining any Property (excluding any off-ramp from the FDR Drive), or an esplanade above or adjoining the FDR Drive and/or the East River between 38th Street and 41st Street and/or between 35th Street and 36th Street, walkway, tunnel, or other ingress or egress to any such esplanade; and (f) is not a "typical" pedestrian bridge (i.e., similar in size to existing unenclosed pedestrian bridges over the FDR Drive), it being the parties' intention that the costs of constructing a pedestrian bridge like the bridges over West Street adjoining the World Financial Center or over the FDR Drive at 63rd Street and at Corlears Hook Park would be Extraordinary

Public Improvement Costs (but the cost of a standard bridge shall be credited against the cost of any such extraordinary bridge).

"FAR" or "Floor Area Ratio" means floor area ratio as defined in Section 12-10 of the Zoning Resolution. (For example, the FAR is 10 if the Lot Area is 10,000 square feet and the total Floor Area which may be constructed on such lot is 100,000 square feet).

"FAR Arbitrator" means an individual designated by Developer and Con Edison in writing. If the parties fail to agree on designation of the FAR Arbitrator within 10 days after Con Edison has given a Dispute Notice under Section 6.9 (or fail to agree after 10 days' notice from either party on a successor index to the CPI), either party may apply to the AAA for appointment of the FAR Arbitrator. The AAA shall appoint the FAR Arbitrator pursuant to its rules for selection of a single arbitrator in expedited arbitration but shall attempt to identify an individual with significant experience in interpreting or advising on Floor Area calculations under the Zoning Resolution.

"Fees-And-Costs" means reasonable fees of attorneys, architects, engineers, expert witnesses, consultants, and others, and reasonable costs, expenses, and disbursements charged by, or reimbursable to, the foregoing.

"Final Determination" means a decision or determination of (i) any administrative, regulatory or other governmental or quasi-governmental agency or (ii) any court of competent jurisdiction, from which the time in which to take an appeal or to otherwise seek review has expired or from which no appeal can be taken. A "Final Determination" shall be deemed to occur as of the date of such expiration of the appeal period or the date of such unappealable decision or determination, as the case may be.

"First Amendment" means the First Amendment of this Agreement dated as of the date of this Agreement.

"First Mortgage" means, with respect to each Property, a Mortgage granted by Developer or the respective Title LLC to secure payment of the Land Acquisition Loan financing payment by Developer of the GMV allocated to such Property.

"Floor Area" means Floor Area as defined in Section 12-10 of the Zoning Resolution. (Schedule "4" sets forth examples of possible computations of Floor Area for the Properties.)

"Future Rezoning Covenant" means an instrument in the form attached hereto as Exhibit "I" pursuant to which Con Edison shall receive an increase in the Purchase Price for increases in Floor Area of any Property after the Rezoning (or any other rezoning of a Property), as more particularly set forth therein.

"GMV Closing" means a Closing initiated by Con Edison pursuant to this Agreement at which Developer pays the GMV for a particular Property.

"GMV Trigger Date" means the earlier of (a) the date of the PSC Approval of the conveyance of any one Property to Developer pursuant to this Agreement; or (b) the date when RDE commences on any one Property pursuant to the RDE Contract. For this purpose,

"commence" means that the RDE Contractor has submitted to the Exit Insurer a requisition (or requisitions) for payment of at least $100,000 for any work or services furnished pursuant to the RDE Contract.

"Government Entity" means the United States; the State of New York; the City of New York; any other political subdivision of any of the foregoing; and any agency, authority, department, court, local development corporation, business improvement district, commission or other legal entity of any of the foregoing.

"Hazardous Substance" means "Pollutants" as defined in the RDE Contract.

"Injunction" means any injunction, whether temporary, preliminary, or permanent (excluding, however, any injunctions brought by Con Edison, Developer, or any Person controlling, or controlled by, either of them).

"Lease" means a lease, rental agreement, sublease, license, or other agreement (whether written or oral) which permits or authorizes use and occupancy with respect to a Property.

"L/C" or "letter of credit" means the First L/C, the Second L/C, the Third L/C, the Rezoning L/C, the Call Date L/C, and/or the Developer Call L/C, as used in the particular context.

"Legal Proceeding" means an action, litigation, administrative or other governmental proceeding, or other legal or equitable proceeding of any kind (other than a dispute resolution proceeding under Articles 6 or 21).

"Lot Area" means lot area as defined in Section 12-10 of the Zoning Resolution.

"Material Condemnation" means a Condemnation other than any taking which does not result in a reduction of more than one percent (1%) of the Floor Area or the usable square footage of buildings which can be constructed on a Property, does not increase the cost of constructing the Development planned for the Property by more than $100,000, and does not otherwise interfere with or detract from (other than in a de minimis way) a proposed Development on a Property.

"Money Market Rate" means the one-day yield on CitiFunds Institutional Liquid Reserves (or any successor account or investment designated from time to time by Citibank, N.A. or any successor thereto), annualized (as of the date of computation) on the basis of a 360-day year.

"Mortgage" means a mortgage or deed of trust.

"NFAS" means all revenue-producing space in each Development constructed in, on, under, or over a Property which is not counted as Floor Area but is intended to generate revenue (such as, for example, space to be rented, leased to space tenants, sold as condominium units, or licensed or operated under management agreements, such as parking areas) measured in each

case by reference to rentable or leaseable area, or saleable area, or area under license or management, as applicable to the particular category of space.

"Outside Date" means November 15, 2006, or, if earlier, 60 days after the Rezoning Approval Date (subject to extension, if necessary, to accommodate the time periods specified in Sections 6.9, 7.2, and 21.3); provided, however, that if on either of the foregoing dates a Legal Proceeding is pending which seeks (a) to prevent or void the conveyance of a Property by Con Edison pursuant to this Agreement, and/or (b) to enjoin, void, or restrict the Rezoning of any Property, as to such Property the Outside Date shall be the earlier of (i) 90 days after a Final Determination with respect to such Legal Proceeding or (ii) November 15, 2008. In this paragraph, Legal Proceeding does not include any Legal Proceeding between Con Edison and Developer.

"Outside Party" means any Person other than Con Edison, Developer, Developer's Principals, Developer's Lenders, the Designated Consultants, and their respective trustees, directors, shareholders, partners, members, managers, employees, Consultants, agents, and representatives.

"PSC Approval" means the Final Determination(s) required by law to be issued by the PSC to allow Con Edison to complete the sale of each Property under this Agreement and to consummate the transactions contemplated under this Agreement.

"Permitted Encumbrances" means, for the respective Property, the Encumbrances and other matters specified as such in Schedules 1-AA, 1-BB, 1-CC, and 1-DD hereto.

"Person" means an individual person, a corporation, partnership, trust, joint venture, limited liability company, proprietorship, estate, association, land trust, other trust, Government Entity or other incorporated or unincorporated enterprise, entity or organization of any kind.

"Property" means, individually, each of the following:

(a)    the land and improvements thereon located at and commonly known as 616 First Avenue, New York, New York as more particularly described in Schedule "1-A" hereto ("616 First Avenue") and the Appurtenances thereof and the Development Rights associated therewith;

(b)    the portion of the land and improvements thereon located at and commonly known as part or a portion of 685 First Avenue, New York, New York as more particularly described in Schedule "1-B" hereto ("685 First Avenue") and the Appurtenances thereof and the Development Rights associated therewith;

(c)    the land and improvements thereon located at and commonly known as 708 First Avenue, New York, New York as more particularly described in Schedule "1-C" hereto ("708 First Avenue") and the Appurtenances thereof and the Development Rights associated therewith;

(d)    the land and improvements thereon located at and commonly known as 700 First Avenue, New York, New York as more particularly described in Schedule "1-D" hereto

("700 First Avenue" or "Waterside") and the Appurtenances thereof and the Development Rights associated therewith.

"Properties" means more than one Property.

"Public Improvement" means a building, structure, or other construction intended for public purposes.

"Public Service Commission" or "PSC" means the Public Service Commission of the State of New York.

"Qualified Bank" means any of the following banks: The Chase Manhattan Bank, N.A., Citibank, N.A., Morgan Guaranty Trust Company of New York, HSBC; Bank of America or any other commercial bank headquartered in the United States with a net worth not less than $25 billion and a Standard & Poor's long term debt rating of AA or better and which is otherwise reasonably acceptable to Con Edison (but any L/C issued by any such bank for purposes of this Agreement must be drawable in New York City).

"RDE" means the remediation and demolition included within the scope of work to be furnished by the RDE Contractor pursuant to the RDE Contract.

"RDE Completion" means Phase I Completion as defined in the RDE Contract.

"RDE Deposit" means a deposit of fifty million dollars ($50,000,000) to be allocated among the Properties as follows:

      (a)    616 First Avenue, eight million three hundred thirty-three thousand three hundred thirty-three dollars ($8,333,333);

      (b)    685 First Avenue, eight million three hundred thirty-three thousand three hundred thirty-three dollars ($8,333,333);

      (c)    708 First Avenue, eight million three hundred thirty-three thousand three hundred thirty-four dollars ($8,333,334);

      (d)    Waterside, twenty-five million dollars ($25,000,000).

"Rezoning" means a decision and/or determination pursuant to the procedures set forth in the New York City Charter and/or such other laws, rules and regulations as are applicable thereto in respect of applications for any change in the zoning map affecting a Property, and/or any special permits, authorizations, and/or certifications under and pursuant to the Zoning Resolution with respect to such Property, creating, revising, or permitting Floor Area and/or other Development Rights as are necessary and/or appropriate for the development on such Property of residential, commercial, community facility or other uses permitted by the Zoning Resolution. The amendment of the BSA Special Permit to remove the restrictions on use of Floor Area shall be deemed part of the Rezoning, subject to Section 3.3.

"Rezoning Approval Date" means the date on which the Rezoning shall be deemed to have occurred and which shall be the date on which Final Determinations with respect to the last of all of the actions, decisions and/or determinations constituting the Rezoning have been taken or made or occur.

"Rezoning Collateral" means (a) each Rezoning Note, each Rezoning L/C, each Rezoning L/C Agreement, each Rezoning Pledge Agreement, and (b) the single Rezoning Mortgage to be recorded against all Properties as to which a GMV Closing occurs.

"Rezoning Documents" means drawings, outline specifications, and other documents and materials to be prepared by Developer and for its consultants to illustrate or define those aspects of Developments on the Properties which are necessary for ULURP or otherwise to achieve the Rezoning.

"Rezoning L/C" means an irrevocable letter of credit issued by a New York City branch of a Qualified Bank in favor of Con Edison, in the form included in Exhibit "C", in an amount equal to the total amount required to pay off the principal indebtedness accrued by the First Mortgage on the particular Property (plus 90 days' interest and 6 months' real property taxes) to be drawn by Con Edison to pay off the First Mortgage if Con Edison has the right to draw against the Rezoning L/C pursuant to the Rezoning L/C Agreement.

"Rezoning L/C Agreement" means an agreement in the form included in Exhibit "C" hereto.

"Rezoning Mortgage" means, with respect to all Properties, a mortgage in the form attached as Exhibit "F" hereto securing an aggregate amount of twenty five million dollars ($25,000,000).

"Rezoning Note" means a promissory note in the amount of the maximum Rezoned Price (which shall be calculated based on a deemed FAR of 12 and the Lot Area specified in Section 3.9 minus the applicable GMV) for each Property, in the form attached as Exhibit "D" hereto. For the avoidance of doubt, the principal amount actually payable under the Rezoning Note will be the Rezoned Price for the applicable Property, calculated on the basis of the actual Floor Area obtained pursuant to the Proposed Rezoning.

"Rezoning Pledge Agreement" means an Agreement in the form attached as Exhibit "E" hereto.

"Second L/C" means an irrevocable letter of credit in the form attached as Exhibit "A" hereto, issued by a New York City branch of a Qualified Bank in the amount of thirty million dollars ($30,000,000).

"SEQRA Consultant" means Allee, King, Rosen & Fleming and/or other Consultants who prepare an environmental assessment statement, environmental scoping documents and an environmental impact statement (or any portion thereof) in connection with the application for PSC Approval and/or ULURP (but not any other Consultants retained by any party in connection with the transactions contemplated by the Agreement).

"Service Contract" means any contract or agreement between Con Edison and a Person other than Developer for the furnishing of management, maintenance, repairs, supplies, or other services with respect to a particular Property (excluding, however, any agreements described or referred to in Article 9).

"Statement of Condition" means a letter, dated not more than 15 days prior to the date of delivery to Con Edison, from a certified public accountant who is regularly engaged in the preparation of financial statements for a Person, which states that the accountant is familiar with such Person's financial position, and which includes a statement that the aggregate net worth of such Person is not less than the amount specified therein, which by the terms of the letter is based upon the accountant's knowledge of, and due inquiry and review of, such Person's financial position.

"Third L/C" means an irrevocable letter of credit in the form attached as Exhibit "B" hereto, issued by a New York City branch of a Qualified Bank in the amount of fifty million dollars ($50,000,000).

"Threshold Limit" means the portion of the Aggregate Threshold Amount for a particular Property, as follows:

(a) as to 616 First Avenue, eighty five million nine hundred sixty-two thousand five hundred dollars ($85,962,500);

(b) as to 685 First Avenue, ninety three million eight hundred seventy-two thousand five hundred dollars ($93,872,500);

(c) as to 708 First Avenue, one hundred three million thirty thousand dollars ($103,030,000); and

(d) as to Waterside, two hundred forty three million four hundred one thousand two hundred fifty dollars ($243,401,250).

"Title Insurance Policy" means a policy of title insurance (on ALTA current form) from a Title Insurer insuring the fee simple title to a Property (including the ground leasehold created by the Waterside Lease).

"Title Insurer(s)" means Land America as agent for Commonwealth Land Title Insurance Company ("Commonwealth") and Lawyers Title Insurance Company, as the lead title company, Chicago Title Insurance Company, First American Title Insurance Company and such other title insurance companies as Developer shall elect to provide co-insurance or re-insurance coverage.

"Transfer" or "to Transfer" means to sell, transfer, assign, pledge, donate, exchange, swap, hypothecate, grant a security interest in, mortgage, option or otherwise encumber or dispose of, voluntarily or involuntarily, with or without consideration.

"ULURP" means the Uniform Land Use Review Procedure (New York City Charter Section 197).

"ULURP Certification" means the certification by the New York City Department of City Planning described in Section 197 of the New York City Charter that the application filed in connection with the Proposed Rezoning is complete and ready to proceed through the uniform land use review procedure under Section 197 of the New York City Charter.

"Waterside Lease" means that certain lease dated November 11, 1861 from the Mayor, Aldermen and Commonality of the City of New York in favor of William Austin with respect to a portion of Waterside.

"Waterside Termination Event" means a Final Determination by the PSC disapproving the sale of Waterside by Con Edison.

"Wiring Account" means the account or accounts specified for payment of wire transfers of funds to Con Edison, or Developer, if applicable, as the same may be changed by the respective party by notice to the other from time to time, but in each case at least 3 Business Days before the event requiring a wire transfer.

"Zoning Resolution" means the Zoning Resolution of the City of New York (or any successor law), as amended from time to time.

1.2. Wherever used in this Agreement:

(a)    the words "include" or "including" shall be construed as incorporating, also, "but not limited to" or "without limitation";

(b)    the word "day" means a calendar day unless otherwise specified;

(c)    the phrase "at Developer's expense" or "at Con Edison's expense", means, as applicable, at the sole cost and expense of the particular party;

(d)    the word "party" means any signatory to this Agreement;

(e)    the word "law" (or "laws") means any law, rule, regulation, order, statute, ordinance, resolution, regulation, code, decree, judgment, injunction, mandate or other legally binding requirement of a Government Entity applicable in the particular context;

(f)    the word "notice" shall mean notice in writing (whether or not specifically so stated);

(g)    the word "month" means a calendar month unless otherwise specified;

(h)    the word "amended" means "amended, modified, extended, renewed, changed, or otherwise revised"; and the word "amendment" means "amendment, modification, extension, change, renewal, or other revision";

(i)    the phrase "subject to the terms of this Agreement" means "upon and subject to all terms, covenants, conditions and provisions of this Agreement";

(j)    the words "utility" (or "utilities") means gas, water, chilled water, sewer, electricity, steam, power, and other utilities of any kind;

(k)    the words "approval", "approve", and "consent" shall mean approval, approve, or consent in writing (whether or not so specified); and

(l)    references to "dollars" or "$" mean United States dollars.

1.3. For purposes of this Agreement, a party shall be deemed to have knowledge or notice of a matter only if such matter is actually known by, or if written notice disclosing such matter has been given: (a) with respect to Con Edison, to an Authorized Representative; or (b) with respect to Developer, to an Authorized Representative, officer, director, individual general partner, member, or limited liability company manager of Developer.

1.4. Other words and phrases are defined elsewhere in this Agreement and in the Schedules and Exhibits hereto.

| ARTICLE 2 | Agreement to Purchase and Sell |
| --- | --- |

2.1. Subject to the terms of this Agreement: (a) Developer agrees to buy all of the Properties from Con Edison; and (b) Con Edison agrees to sell all of the Properties to Developer.

| ARTICLE 3. | Computation and Payment of Purchase Price |
| --- | --- |

3.1. Developer shall pay Con Edison the Purchase Price for each Property subject to the terms of this Agreement. In this Agreement "Purchase Price" means:

(a)    before the Rezoning Approval Date with respect to any Property either: (i) the Guaranteed Minimum Value for such Property specified in Section 3.2, subject to Fair Market Value increase if applicable under Section 3.5; or (ii) the Developer Call Price for such Property computed pursuant to Section 3.4; plus

(b)    after the Rezoning Approval Date with respect to any Property: (i) the Rezoned Price for such Property, plus the As-Built Amount for such Property, both subject to increase if applicable under Section 3.5; minus (ii) the GMV or Developer Call Price paid by Developer for such Property if a GMV or Developer Call Closing has previously occurred; or

(c)    the Outside Date Call Price computed pursuant to Section 14.6; plus

(d)    in all cases, all additional amounts becoming due and payable under the Future Rezoning Covenant.

In this Agreement the "Purchase Price then due" or "Purchase Price then due and payable" means the amount or increment of the Purchase Price computed under this Article due and payable as of

14

the date in question - i.e., at the time of the respective Closing or after the Rezoning Approval Date as applicable, subject to the terms of this Agreement. There shall be no reduction in the GMV or the Developer Call Price if the Rezoned Price is less than any such amount.

3.2. In this Agreement the aggregate "Guaranteed Minimum Value" or "GMV" for all the Properties shall be three hundred million dollars ($300,000,000); and the Guaranteed Minimum Value or GMV for each Property shall be as follows:

    (a)    616 First Avenue, fifty million dollars ($50,000,000);

    (b)    685 First Avenue, fifty million dollars ($50,000,000);

    (c)    708 First Avenue, fifty million dollars ($50,000,000); and

    (d)    Waterside, one hundred fifty million dollars ($150,000,000).

Developer shall pay the GMV for the particular Property at the GMV Closing for such Property, subject to Section 3.5.

3.3. In this Agreement, subject to Section 3.5:

    (a)    "Rezoned Price" means, as to each Property, the Floor Area of such Property[4] after Rezoning (reflecting any adjustments pursuant to the Rezoning) multiplied by one hundred twenty five dollars ($125) per square foot of such Floor Area; and

    (b)    "As-Built Amount" means, as to each Property, the total square footage of NFAS multiplied by fifty dollars ($50) per square foot.

Developer shall pay the Rezoned Price and the As-Built Amount as and when due and payable pursuant to Article 6. (The parties agree that, for purposes of allocating values as between land and Development Rights, any part of the Purchase Price in excess of the GMV for a Property shall be deemed allocable to the Development Rights for such Property and not to land. The foregoing sentence shall have no other legal significance under this Agreement.) If the Rezoning occurs but the BSA Special Permit has not been amended to remove the restrictions on use of Development Rights, the restrictions in the BSA Special Permit will be disregarded in calculating the Rezoned Price.

3.4. "Developer Call Price" means the following amounts, computed as one hundred twenty five dollars ($125) per square foot times 10.5 FAR, based on the following assumed Floor Areas:

    (a)    616 First Avenue (722,085 sq. ft.), ninety million two hundred sixty thousand six hundred twenty-five dollars ($90,260,625);

---

[4] Note that the Floor Area of 685 First Avenue shall be deemed to include the Floor Area of the 685 Adjacent Parcel minus the Floor Area of the Con Edison substation as set forth in Section 3.9(b).

(b)     685 First Avenue (791,319 sq. ft.), ninety eight million nine hundred fourteen thousand eight hundred seventy-five dollars ($98,914,875);

(c)     708 First Avenue (865,452 sq. ft.), one hundred eight million one hundred eighty-one thousand five hundred dollars ($108,181,500);

(d)     Waterside (2,044,571 sq. ft.), two hundred fifty-five million five hundred seventy-one thousand three hundred thirteen dollars ($255,571,313).

For the avoidance of doubt, the Developer Call Price shall not be reduced for any reason, whatever the results of the Rezoning, any changes in Floor Area pursuant to the Rezoning, and any amendment or non-amendment of the BSA Special Permit, or otherwise. Developer shall pay the Developer Call Price on the Developer Call Date for all Properties (and shall pay the excess of the Developer Call Price over the GMV for any Property as to which a GMV Closing has previously occurred) subject to the remainder of this Section. As to any Property with respect to which all conditions to a Developer Call Closing in Articles 10 and 11 have not yet been satisfied (or waived) as of the Developer Call Date, at the Developer Call Closing Developer shall deliver the Call Date L/C.[5] If and when, before the Outside Date, all Closing conditions have been satisfied (or waived) with respect to any such Property, Con Edison or Developer may notify the other party and on a date mutually acceptable to Developer and Con Edison not more than 30 days after the giving of such notice, the Closing for such Property shall occur. At such a Closing, "Developer Call Price" to be paid by Developer shall also include interest on the price set forth in (a)-(d) above for each Property, computed at the actual Money Market Rate accruing from time to time from the Developer Call Date through the Closing. If such Properties are conveyed on different dates after the Developer Call Date, the Call Date L/C shall be reduced at each Closing in an amount equal to the Developer Call Price for that Property (as set forth in this Section) plus all interest paid thereon at the Closing for such Property; and the Call Date L/C shall be returned upon the last Closing. If the Outside Date is extended beyond November 15, 2006 and Con Edison is holding the Call Date L/C, Developer shall deliver to Con Edison on or before November 30, 2006 (time being of the essence) an additional L/C in the form indicated in Exhibit "S" in an amount equal to two years' interest on the then-unpaid Developer Call Price for each Property[6] computed at the Money Market Rate (assuming only for purposes of fixing the amount of such additional L/C that the rate for such two years would be the Money Market Rate in effect on the day three Business Days before delivery of such L/C); and thereafter such additional L/C shall be deemed part of the Call Date L/C and the Call Date L/C and such additional L/C shall be referred to together as the "Call Date L/C".)

3.5. If, on or before the Developer Call Date, Developer does not deliver the Call Date L/C for all Properties as to which no Developer Call Closing has previously occurred (for any reason or no reason other than a Con Edison Event of Default, and/or regardless of failure to

---

[5]     As to any Property for which Developer is then prepared to close title (rather than include the amount for the particular Property in the Call Date L/C) and has begun the work of completing the particular Closing but it then becomes clear that Con Edison will be unable to satisfy a particular condition to such Closing, Developer shall then have five Business Days after notice from Con Edison to include the Developer Call Price and allocable interest amount for such Property in the Call Date L/C.

[6]     i.e., the price for each Property as to which no Developer Call Closing has yet occurred.

satisfy any Closing conditions) the Rezoned Price, the As-Built Amount, and the GMV for each Property shall be subject to increase, as follows:

(a)    with respect to the Rezoned Price, Developer shall pay the (i) Rezoned Price plus (ii) fifty percent (50%) of the increase in the Fair Market Value per square foot of Floor Area above one hundred twenty five dollars ($125) per square foot of Floor Area (as determined under Article 21);

(b)    with respect to the As-Built Amount, Developer shall pay (i) the As-Built Amount plus (ii) the CPI increase on such amount computed from Developer Call Date; and

(c)    with respect to the GMV, Developer shall pay (i) the GMV for the particular Property plus (ii) fifty percent (50%) of the increase in the Fair Market Value of such Property without Rezoning (as determined under Article 21); and both (i) and (ii) together shall thereafter be deemed the GMV for such Property -- meaning that the GMV as thus increased shall be the amount credited against the Rezoned Price after increase under (a) above, if applicable (and to the extent that any credit remains shall be credited against the As-Built Amount).

There shall be no decrease in the Rezoned Price, the As-Built Amount, the Developer Call Price, the Outside Date Call Price or the GMV for any reduction in Fair Market Value or in the CPI. This Section 3.5 shall not apply as to any Property with respect to which a Con Edison Event of Default exists as of the Developer Call Date. If Developer has not delivered the Call Date L/C and/or the Developer Call Closings have not occurred and the Developer Call Price has not been paid within 30 days after the Developer Call Date, Con Edison may make time of the essence with respect to such obligations at any time during or after such 30-day period upon two Business Days' notice to Developer (notwithstanding Section 22.1(c)), which notice may be given during such 30 day period. For the avoidance of doubt, the increases in the Purchase Price pursuant to this Section will become effective automatically after the Developer Call Date, whether the Rezoning Approval Date occurs before or after the Developer Call Date (but subject to Section 6.12), unless Developer has previously paid the Developer Call Price and/or delivered the Call Date L/C, as applicable, upon the terms set forth in this Agreement.

3.6. If and after the total Extraordinary Public Improvement Costs incurred by Developer for all Properties has exceeded twenty million dollars ($20,000,000), and if Developer has paid the Purchase Price specified in Section 3.1(b) for all Properties after the Rezoning, Con Edison shall reimburse Developer from time to time for the next ten million dollars ($10,000,000) of Extraordinary Public Improvement Costs as incurred by Developer. If Developer seeks to obtain reimbursement under this Section, Developer shall submit to Con Edison, in reasonable detail: (a) a written description of the significant Public Improvement(s) involved and an explanation why the same are required as part of the Rezoning and why costs attributable to the same satisfy the criteria in this Agreement for Extraordinary Public Improvement Costs; (b) an accounting of the total Extraordinary Public Improvement Costs incurred by Developer as of the date of such submission, including invoices and other documentation that Developer has previously paid at least twenty million dollars ($20,000,000) toward Extraordinary Public Improvement Costs, certified as true, correct, and complete by the chief financial officer of Developer; and (c) invoices or contractor requisitions for payment

representing the items for which Developer seeks reimbursement from Con Edison under this Section. Within 30 days after receipt of the documentation specified in (a), (b), and (c) above, Con Edison shall pay the amount due under this Section—not to exceed ten million dollars ($10,000,000) in the aggregate for all Properties. For the avoidance of doubt, this Section is intended only to address adjustments to the Purchase Price under this Agreement and not to obligate Con Edison or Developer in any respect to the City or any other Person with respect to construction or any other aspect of any Public Improvement. If Con Edison fails to pay, when properly due, an amount required under this Section, Con Edison shall pay interest on such amount at the Developer Interest Rate from the due date until payment.

3.7. If, pursuant to the Rezoning, Developer is entitled to build a Floor Area for any Property based on an FAR greater than 12 FAR, but as a condition to building in excess of 12 FAR, Developer is required to provide lower-income housing under Section 23-90 of the City's Zoning Resolution, and if Developer has paid the Purchase Price specified in Section 3.1(b) for all Properties after the Rezoning, Developer shall be entitled to a credit against the Rezoned Price for such Property as follows: (a) 50% of the soft and hard costs of providing such lower-income housing if Developer actually constructs and owns the same; or (b) if Developer does not actually own such lower-income housing, 100% of the cost of purchasing certificates for the construction of such lower-income housing by others or 100% of the soft and hard costs of constructing such low income housing; provided, however, that (c) no such credit shall reduce the Rezoned Price to an amount less than 12 FAR times $125 times the Lot Area of all Properties (calculated based on the Lot Areas in Section 3.9.) If Developer seeks to obtain credit under this Section, Developer shall submit to Con Edison, in reasonable detail: (a) a written description of the basis for the claimed credit, setting forth the relevant computations as to the amount and cost of lower income housing and a computation of the Floor Area in excess of 12 FAR against which the credit is sought; (b) an accounting of the relevant costs incurred by Developer as of the date of such submission, including invoices and other documentation, certified as true, correct, and complete by the chief financial officer of Developer; and (c) invoices or contractor requisitions for payment representing the items for which Developer seeks reimbursement from Con Edison under this Section (and, if applicable, documentation of the ownership of such housing). Within 30 days after receipt of the documentation specified in (a), (b), and (c) above, Con Edison shall pay the amount due under this Section; provided, however, that in no event shall Con Edison be required to pay any amount that would reduce the Rezoned Price received by Con Edison to an amount less than 12 FAR times $125 times the Lot Area for any Property (calculated based on the Lot Areas in Section 3.9). For the avoidance of doubt, this Section is intended only to address adjustments to the Purchase Price under this Agreement and not to obligate Con Edison or Developer in any respect to the City or any other Person with respect to construction or any other aspect of any lower-income housing. If Con Edison fails to pay when properly due an amount required under this Section, Con Edison shall pay interest on the same at the Developer Interest Rate from the due date until payment.

3.8. If not otherwise specified, all funds payable by Developer or Con Edison under this Agreement shall be in United States dollars, and payment shall be made by wire transfer of immediately available funds to the party's Wiring Account or as the party shall otherwise direct in writing.

3.9  (a) For all purposes of this Agreement, the parties agree that the Lot Area of each Property is as follows: (i) 616 First Avenue, 68,770 sq. ft.; (ii) 708 First Avenue, 82,424 sq. ft; and (iii) Waterside, 194,721 sq. ft. The Lot Area of 685 First Avenue is 32,365 sq. ft., and the Lot Area of the adjacent property to be retained by Con Edison (the "685 Adjacent Parcel") is 48,313 sq. ft. The total Lot Areas of all Properties equals 426,593 sq. ft.

(b) The Rezoned Price and the Developer Call Price to be paid by Developer for 685 First Avenue shall be computed by adding the sum of the Floor Area of both 685 First Avenue and the 685 Adjacent Parcel minus the Floor Area of the Con Edison substation on the 685 Adjacent Parcel. For this purpose, the Floor Area of such substation shall be deemed to be 55,800 sq. ft.

3.10  This Section sets forth the consequences of a Waterside Termination Event and in such event this Section shall govern notwithstanding any other provision of this Agreement to the contrary.

(a)  Subject to Con Edison's right to terminate pursuant to Section 6.12, if the Closing has not occurred as to Waterside on or before the Outside Date (other than as the result of a Developer Event of Default) or if there is a Waterside Termination Event prior to the Outside Date, and, in either case, if the Rezoning Approval Date has occurred on or before the Outside Date, on the Outside Date (or such earlier date that both a Waterside Termination Event and the Rezoning Approval Date shall have occurred) the Rezoned Price for 708 First Avenue shall be decreased by ten percent (10%) and the Rezoned Price for 685 First Avenue shall be decreased by twenty percent (20%) to account for the decrease in the value of these Properties due to the fact that Waterside cannot be simultaneously developed. If Developer has paid the Rezoned Price or the Developer Call Price with respect to 685 First Avenue and/or 708 First Avenue before the date that the Rezoned Price is decreased pursuant to the preceding sentence of this subsection (a), Con Edison shall reimburse Developer, within 30 days following notice from Developer, an amount equal to the foregoing reduction in the Rezoned Price (or, if greater or if no Rezoning has occurred, the Developer Call Price) of 685 First Avenue and/or 708 First Avenue, as applicable, plus interest at the Developer Interest Rate from the date of payment.

(b)  If a Waterside Termination Event occurs after Con Edison has received the Second L/C and the Third L/C or the Call Date L/C:

(i)  the face amounts of the First L/C, the Second L/C and the Third L/C shall be reduced by an amount equal to 46% of the lesser of the original amounts thereof, or the reduced amounts thereof (if such L/Cs have been reduced as contemplated elsewhere in this Agreement); provided, however, that in no event shall the aggregate face amount of those L/Cs held by Con Edison under this Agreement be reduced below fifty million dollars ($50,000,000) at any time before the Closing of title to all Properties has occurred; or

(ii)  if the Call Date L/C has previously been substituted for the First L/C, the Second L/C and the Third L/C, the Call Date L/C shall be reduced by an amount equal to the Developer Call Price for Waterside set forth in Section 3.4(d); and

(iii)    if the Developer Call L/C has been delivered, the Developer Call L/C shall be reduced by $36,510,187.

For the avoidance of doubt, none of the GMV, the Outside Date Call Price, nor the Rezoned Price for 616 First Avenue shall be reduced to reflect the 10% and 20% adjustments described above; nor shall the Developer Call Price be reduced for such purpose (although Developer will receive an adjustment after the Rezoning as set forth above).

(c)    Upon an occurrence of a Waterside Termination Event:

(i)    the GMV for Waterside shall be deleted;

(ii)    the Developer Call Price for Waterside set forth in Section 3.4(d) shall be deleted; and

(iii)    the Outside Date Call Price shall be calculated without including Waterside; and

(iv)    the Aggregate Threshold Amount shall be $282,865,000 (which has been computed by multiplying 10 times $125 per square foot of Lot Area specified in Section 3.9 for each Property other than Waterside).

(d)    If there is a Waterside Termination Event or if the PSC Approval relating to Waterside has not been obtained by the Outside Date:

(i)    the references to $20,000,000 and $10,000,000 in Section 3.6 shall be deemed automatically reduced to $10,800,000 and $5,400,000, respectively; and

(ii)  -  the Floor Area of Waterside shall be excluded from any computation under Section 3.7 and references to "all Properties" in Section 3.7 shall be changed to mean "all Properties other than Waterside".

(e)    If a Waterside Termination Event has occurred, the Rezoning of Waterside shall not be a Closing condition for either party.

ARTICLE 4.                                                    Deliveries of Letters of Credit

4.1. Developer has delivered the First L/C (and has paid the RDE Deposit) to Con Edison on the signing of this Agreement, subject to the terms of this Agreement.

4.2. Upon ULURP Certification for any Property or on September 30, 2001, if earlier (the "Second L/C Due Date"), Developer shall deliver the Second L/C to Con Edison, subject to the terms of this Agreement.

4.3. On or before May 15, 2004 (the "Third L/C Due Date"), Developer shall deliver the Third L/C to Con Edison, subject to the terms of this Agreement, unless Closings have occurred (or the Call Date L/C has been delivered) for every Property before that date.

4.4. Developer shall deliver the Rezoning L/C to Con Edison when required under Section 6.13.

4.5. If a GMV Closing occurs with respect to a Property, the face amounts of the First L/C, the Second L/C and the Third L/C shall be reduced after the respective Closing by an amount equal to a percentage computed as the GMV for the particular Property divided by the total GMV for all Properties; provided, however, that in no event shall the aggregate face amount of all L/Cs held by Con Edison under this Agreement be reduced below fifty million dollars ($50,000,000) at any time before the Closing of title to all Properties has occurred.

4.6 Upon delivery of the Call Date L/C by Developer to Con Edison (and simultaneous payment of any portion of the Developer Call Price then due, if applicable), Con Edison shall return to Developer the First L/C and the Second L/C to the extent not previously drawn or reduced. If a Developer Call Closing occurs after the Developer Call Date, the face amount of the Call Date L/C shall be reduced after such Closing by the portion of the Developer Call Price for the applicable Property (as set forth in Section 3.4) plus all interest paid to Con Edison thereon at the Closing.

4.7 At the Closing of the last Property pursuant to this Agreement, subject to Section 6.15, Con Edison will return to Developer all L/Cs then held by Con Edison; provided, however, that if such Closing occurred prior to the Rezoning Approval Date and the Rezoning L/C has not been replaced with the Developer Call L/C pursuant to Section 6.13, Con Edison shall be entitled to hold the Rezoning L/C until the date on which the Rezoning L/C is required to be returned to Developer pursuant to the Rezoning L/C Agreement.

4.8 In any case where Con Edison is required to return an L/C pursuant to this Agreement, or if the reduction of any L/C pursuant to this Agreement requires confirmation from Con Edison, Con Edison shall execute and deliver such documents as are reasonably necessary to permit the same to be cancelled or terminated.

ARTICLE 5.                                                  Draws Under Letters of Credit

5.1. Con Edison shall have the right to draw against the First L/C in the full amount thereof if Developer fails to deliver the Second L/C to Con Edison on or before the Second L/C Due Date, time being of the essence.

5.2. Con Edison shall have the right to draw against the First L/C and the Second L/C in the full amount thereof (and to make time of the essence as set forth in Section 3.5) if Developer fails to deliver the Third L/C to Con Edison on or before the Third L/C Due Date, unless Developer delivers the Call Date L/C on or before such date.

5.3. Con Edison shall have the right to draw against the First L/C, the Second L/C, and the Third L/C in the full amount thereof if, after delivering the Second L/C and the Third L/C, Developer fails to pay the Purchase Price for any Property when due and payable to Con Edison pursuant to this Agreement.

5.4. Con Edison shall have the right to draw against the Call Date L/C as set forth in Article 22 and elsewhere in this Agreement.

5.5. Con Edison shall have the right to draw against the Rezoning L/C as specified in the Rezoning L/C Agreement. Con Edison shall have the right to draw against the Developer Call L/C in the full amount thereof if Developer or Title LLC defaults in paying the Rezoned Price with respect to the applicable Property or Properties when due and payable hereunder.

5.6. Con Edison shall have the right to draw the full amount undrawn under the First L/C, the Second L/C, the Third L/C, the Developer Call L/C, the Call Date L/C, and/or the Rezoning L/C, as applicable, if at any time (i) the particular letter of credit will expire in less than 30 days from the date of such draw and if (for any reason or no reason) Developer has not given Con Edison a replacement letter of credit, in form and substance the same as the expiring letter of credit, issued by a Qualified Bank, in an amount equal to the amount then undrawn under the expiring letter of credit and having an expiration date at least 364 days after the expiration date of the expiring instrument (each such, a "Replacement L/C") or (ii) any Title LLC or Developer makes an assignment for the benefit of creditors or files a voluntary petition under any bankruptcy or insolvency law; or an involuntary petition under any bankruptcy or insolvency law is filed against any Title LLC or Developer and such involuntary petition is not dismissed within 90 days after filing; or a petition is filed by or against any Title LLC or Developer under the reorganization provisions of the United States Bankruptcy Code or any similar law and such petition is not dismissed within 90 days after filing; or a receiver, trustee or liquidator shall be appointed for any Title LLC or Developer or the property of either of them and such receiver, trustee or liquidator shall not have been discharged within 90 days from the date of his/her appointment. If Developer furnishes a Replacement L/C at least 30 days before the expiration date of the respective letter of credit, such Replacement L/C will be and be deemed the L/C for which the Replacement L/C was substituted under this Section. Con Edison shall hold and apply any funds drawn under an L/C pursuant to this Section, and any interest or other income accruing thereon, upon the same terms and conditions as apply to the L/C under which such funds were drawn.

5.7. Notwithstanding anything to the contrary in this Agreement, Con Edison shall notify Developer at least 3 Business Days before drawing on any L/C by giving one copy of a written notice to the following address only:

FSM East River Associates LLC
c/o Fisher Brothers
299 Park Avenue
New York, NY 10171
Attention: Mr. Richard L. Fisher

(Developer may change the party to receive the notice under this Section, or the address for receipt of such notice, by notice given in accordance with Section 25.1.)

5.8. Con Edison shall also have the right to draw against the L/Cs as expressly set forth in Article 22 or elsewhere in this Agreement, in the Rezoning L/C Agreement, and/or in the respective L/C.

| ARTICLE 6. | Rezoning and PSC Processes; Related Matters |
|---|---|

6.1. Developer and Con Edison believe that substantial additional value will accrue to the Properties if the City of New York approves a change in the zoning status of the Properties so as to increase the Floor Area of residential, commercial, and other improvements that can be constructed on the Properties. On signing this Agreement, Developer and Con Edison have agreed on a scope of the change in the zoning status of the Properties (including a schedule for ULURP activities) attached as Schedule "4" hereto (the "Proposed Rezoning"), which sets forth, among other things, the desired increase in Floor Area for each Property and milestones for the ULURP process and the Rezoned Price intended to be achieved for each Property.

6.2. After signing this Agreement, Developer shall undertake, at Developer's expense, subject to Section 6.5, all actions necessary or appropriate to obtain a change in the zoning of the Properties consistent with the Proposed Rezoning, with the intent of achieving a Floor Area for each Property equal to or exceeding 12 FAR (as set forth more particularly in Schedule "4" hereto). Such actions shall include, among other things, making all necessary filings with Government Entities; attending and making presentations at meetings and/or hearings with Government Entities; engaging and supervising architects, planners, and other consultants of appropriate expertise; consulting with public officials and community groups, etc. While Developer cannot guarantee the result, Developer agrees to use Developer's best efforts for such purpose (including compliance with the schedule for ULURP activities). In this Agreement, "Rezoning Matter" means any matter, subject, activity, or thing in connection with the Proposed Rezoning, any aspect thereof, or any matter reasonably relating thereto (including, for example, the activities described above). Developer shall promptly give Con Edison copies of material Rezoning Documents, correspondence, governmental filings, and other documents and other materials in connection with any Rezoning Matter, delivered by Developer to, or received by Developer, from any Government Entity or Outside Party. Con Edison and Con Edison's officers, representatives, and counsel shall be invited to attend all meetings between Developer and any Government Entity or Outside Party in connection with any Rezoning Matter other than informal meetings (although such attendance shall not be required unless specifically so indicated by Developer). Developer's obligations under this Section shall continue until the earlier of (a) the Rezoning Approval Date; (b) payment of the Developer Call Price and/or delivery of the Call Date L/C as to all Properties on or before the Developer Call Date; (c) the Outside Date; or (d) termination of this Agreement. For purposes of this Section and Section 6.4, "informal meeting" means a meeting attended by two or fewer representatives (including counsel) of either Developer or Con Edison at which issues, strategy, or policy will be discussed informally but no decisions will be made or official action taken. Developer shall report to Con Edison as to topics discussed at any informal meeting.