(e) The execution and delivery by Client of this Contract and the performance by Client of its obligations thereunder will not: (i) result in a breach of any of the terms or provisions of, or constitute a default (or a condition which upon notice or lapse of time or both would constitute a default) under any agreement, instrument or obligation (including its certificate of incorporation and by-laws) to which Client is a party or by which Client is bound; and (ii) will not constitute a violation of any Law.

(f) There are no judgments, actions, suits, or proceedings existing or pending (or, to the knowledge of Client's officers, threatened) against Client which can reasonably be expected to have a material adverse effect upon its performance of the Contract.

(g) This Contract constitutes the legal, valid, and binding obligation of Client, enforceable against Client in accordance with its terms (subject to the availability of equitable remedies and to applicable bankruptcy, insolvency, and similar laws affecting creditors' rights generally).

## 11. Indemnity.

(a) To the fullest extent permitted by Law, TRC agrees to indemnify, defend and hold harmless the Released Parties from and against all Loss-and-Expense arising out of or in any way connected with: (i) any breach of TRC's covenants, representations and warranties herein; (ii) any act, omission, mistake and/or negligence by TRC and/or TRC Parties; (iii) Pre-existing Environmental Conditions and Demolition and Decommissioning Conditions; (iv) any action by any Governmental Authority with jurisdiction arising out of or related to the Site Work; (v) the off-Site transportation to, and/or treatment, storage and disposal at, Non-Owned Locations of Pollutants generated pursuant to the Site Work; (vi) violations or alleged violations of, or non-compliance with, Laws by TRC and/or TRC Parties; (vii) breach of the terms of this Contract by TRC and/or the TRC Parties; (viii) the presence of TRC and/or its Subcontractors on the Site; (ix) interruption of Con Edison's business or operations at the Site due to or in connection with the performance of the Site Work; (x) Liens and other legal proceedings of Subcontractors; (xi) bodily injury, sickness, disease or death of or to any person or persons occurring in connection with, arising out of or resulting from the Site Work, whether on the Site or elsewhere, or any acts or omissions of TRC or any Subcontractor attributable or relating thereto; (xii) any damage to or destruction of any property (including utilities or any other property of Client or any other person) occurring in connection with, arising out of, or resulting from the Site Work, whether on the Site or elsewhere, or any other acts or omissions of TRC or any Subcontractor attributable or relating thereto; (xiii) any failure of TRC, and/or the TRC Parties to secure and maintain all insurance described in this Contract; (xiv) any and all Loss-and-Expense incurred by Client and/or Site Developer for all Delay except Owner Delay, subject to Section 5(s); (xv) interruption of the business or operations of Developer Owner at the Site, but only to the extent caused by a breach of professional duty by TRC or any of its Subcontractors; (xvi) any amounts payable under worker's compensation or similar Laws (and regardless of the negligence of the claimant) in connection with, arising out of, or resulting from the Site Work, whether on-Site or elsewhere; (xvii) any certification issued by TRC pursuant to Section 30, including but not limited to the truth and accuracy of such certification; and (xviii) any other failure of TRC and/or the TRC Parties to perform or comply with each and every other term, covenant, condition or provision of this Contract.  This indemnity shall not include Loss-and-Expense relating to any suits, claims,

demands or causes of action for the Excluded Matters, unless such suits, claims, demands or causes of action are: (x) for Remediation, including Remediation of natural resources, (y) caused by or are the result of any actions TRC may undertake pursuant to this Contract or any omission, mistake or negligence of TRC pursuant to its performance of the Contract; or (z) brought by TRC's employees or Subcontractors.

(b) While acknowledging that Client, Site Developer and TRC shall be insured pursuant to the Cost Cap/PLL Policy, subject to the limitations in Section 5(s), TRC shall be responsible and liable for Loss-and-Expense incurred in connection with the performance of the Site Work and pursuant to the terms of this Contract, whether or not the Cost Cap/PLL Policy covers such Loss-and-Expense, and above and beyond the limits in amount and duration set forth in the Cost Cap/PLL Policy. TRC's indemnification obligations to the Released Parties under Section 11(a) above are of unlimited amount and duration and shall survive Long Term Completion forever.

(c) Con Edison or Site Developer shall notify TRC promptly of every legal proceeding, demand, administrative proceeding or claim (of which any Released Party receives written notice) which may be covered by TRC's indemnity. TRC shall defend, at TRC's expense, by counsel approved by Con Edison (and Site Developer, if such Loss-and-Expense involves Site Developer or any Released Parties associated with Site Developer), which approval shall not be unreasonably withheld, any Loss-and-Expense asserted against any Released Party concerning any matter cove.ed by an indemnification obligation hereunder. TRC shall Promptly give Con Edison and Site Developer copies of all documents delivered by or to adverse parties in the course of such indemnification and, whenever requested by Con Edison and/or Site Developer, shall advise Promptly as to the status of such Loss-and-Expense. If TRC fails to diligently defend against any such Loss-and-Expense, the applicable Released Parties shall have the right (but not the obligation) to defend against the same at TRC's expense. TRC shall not settle any legal proceeding or claim without the prior written consent of Con Edison (and Site Developer, if such Loss-and-Expense involves Site Developer or any Released Parties associated with Site Developer) unless: (i) the effect of such settlement shall be to release every Released Party against whom Loss-and-Expense have been asserted from all Loss-and-Expense whatsoever with respect to such legal proceeding or claim, without cost or contribution from, or obligation imposed upon, such Released Party; and (ii) such settlement does not involve the admission of any factual matters which are the subject of such legal proceeding or claim or any legal liability on the part of any Released Party or impose any other legal liability or responsibility upon any Released Party. Con Edison (and Site Developer, if such Loss-and-Expense involves Site Developer or any Released Parties associated with Site Developer) shall not settle any such legal proceeding or claim without TRC's prior written consent unless: (i) the effect of such settlement shall be to release TRC from all Loss-and-Expense whatsoever with respect to such legal proceeding or claim without cost or contribution from, or obligation imposed upon, TRC (but shall not otherwise be construed to release TRC from its obligations to the Released Parties under any indemnification obligation hereunder); and (ii) such settlement does not involve the admission of any factual matters which are the subject of such legal proceeding or claim or any legal liability on the part of TRC. If a settlement hereunder does not require the consent of Site Developer, TRC shall deliver Site Developer notice of such settlement.

NYC 357354.10 18821 00203

## 12. Client Transfer of Site.

TRC agrees and acknowledges that in the event that ownership of any Property is transferred, in whole or in part, to Site Developer or one of its subsidiaries (each such transferee, a "Developer Owner") at any time prior to Phase I Completion or Long Term Completion, all of the rights of Site Developer hereunder shall be deemed assigned automatically to the applicable Developer Owner, which will have the exclusive right to exercise the rights of Site Developer and Developer Owner with respect to the applicable Property from and after the effective date of transfer of title. Upon transfer of ownership to any Property, all of TRC's rights and obligations set forth in this Contract and the Cost Cap/PLL Policy (including the obligation to complete the Site Work and TRC's representations, warranties, covenants, release and indemnities in this Contract), shall continue notwithstanding such transfer; however, these TRC obligations will benefit both Client and such Developer Owner with respect to such Property (except as set forth below). Moreover, with respect to the Property(ies) transferred, and except as expressly provided in the Contract, TRC agrees and acknowledges that Developer Owner shall share in Client's rights and assume Client's obligations with respect to such Property arising or accruing on or after the date of transfer of title, including, but not limited to, Client's representations, warranties and covenants. TRC agrees and acknowledges that Developer Owner shall not be responsible for Con Edison's breaches of its representations, warranties and covenants and shall have no continuing duty or obligation respecting those representations, warranties and covenants made by Con Edison (but shall be responsible to the extent they pertain to Developer Owner).

Following a transfer of ownership, references to "Client" with respect to the transferred Property shall also be deemed references to the applicable Developer Owner (except where this Contract expressly provides that Con Edison retains the sole right of "Client") and references to the "Parties" shall be deemed to include such Developer Owner. For the avoidance of doubt, upon any transfer of ownership of a Property or Properties, the consent or participation or notice (as applicable) of both Con Edison and the Developer Owner shall be required with respect to the following:

(a) termination of this Contract (except as provided in Section 18(f));

(b) modification of Remedial Action Plan or Consent Order(s) (when such consent is required under Section 14(b));

(c) Client's rights under Section 7;

(d) Client's rights under Sections 24 and 25; and

(e) any other matter which, pursuant to the terms of this Contract, requires the consent, participation or notice of Con Edison or Client, and Site Developer and/or Developer Owner, after a Property transfer.

## 13. Commutation of Insurance.

(a) In the event Client terminates the Contract in part prior to initiation of the Site Work relating to Waterside, TRC agrees that the Insurer shall return to Con Edison the Waterside

Allocation Amount (as described in the Policy Notional Commutation Account ("Commutation Account") endorsement to the Cost Cap/PLL Policy), which will earn interest as described in the Commutation Account endorsement. In the event of a termination pursuant to Section 18(f), the amount set forth for Remediation of the Easement Areas in Exhibit "I" shall no longer be a Defined Reduction.

(b)  (i)  Upon Phase I Completion of all of the non-Waterside Properties, TRC will have the option of requesting an incentive claim from the Insurer for amounts in the Non-Waterside Properties Allocation Amount of the Commutation Account established for the non-Waterside Properties in excess of what the Insurer reasonably expects is needed to reach Long Term Completion for such non-Waterside Properties. TRC shall receive the first $3.375 million of any such incentive claim; the remainder of any incentive claim will be split as follows: 50% for TRC, 25% for Con Edison and 25% for Site Developer. In the event of any incentive claim payments made to TRC, Con Edison and Site Developer, each shall restore the limits of Coverages A, K, L and M of the Cost Cap/PLL Policy to the extent of incentive claim payments made to them, or as they mutually agree to do otherwise. To the extent of incentive claim payments made solely to TRC, Con Edison and Site Developer may require TRC to restore the limits of Coverages A, K, L and M of the Cost Cap/PLL Policy.

(ii)  Upon Phase I Completion of Waterside, TRC will have the option of requesting an incentive claim for amounts in the Waterside Allocation Amount of the Commutation Account in excess of what Insurer reasonably expects is needed to reach Long Term Completion for Waterside. TRC shall receive the first $3.375 million of any such incentive claim; the remainder of any incentive claim will be split as follows; 50% for TRC, 25% for Con Edison, and 25% for Site Developer. Restoration of the limits of Coverages A, K, L and M of the Cost Cap/PLL Policy shall be in accordance with (i) above.

(iii)  In either of (i) or (ii) above, upon the reaching of Long Term Completion, expiration of the Cost Cap/PLL Policy, or the unanimous agreement of TRC, Con Edison, and Site Developer to commute Coverages A, K, L and M of the Cost Cap/PLL Policy, the Insurer will distribute the remaining funds in accordance with (i) and (ii) above, but neither TRC, Site Developer nor Con Edison shall have any obligation to restore limits of any Coverages A, K, L and M under the Cost Cap/PLL Policy.

(iv)  If funds are withdrawn from the Commutation Account in order to pay delay damages under Coverage N and/or demands for indemnification under Coverage O of the Cost Cap/PLL Policy, the payment of incentive claims pursuant to (i), (ii), or (iii) above from the Commutation Account to Con Edison and Site Developer (to the extent funds are available in the Commutation Account) will be made (A) first to Con Edison and Site Developer in accordance with the percentages set forth in (i) and (ii) above calculated as if such Coverage N and Coverage O payments were not made out of the Commutation Account and then (B) to TRC to the extent that there are funds remaining in the Commutation Account. It is understood that the Commutation Account is the only source of funds for payment of incentive claims; provided however, if an incentive claim payment has been made to TRC from the Commutation Account

NYC 357354.10 18821 00203

and a payment from the Commutation Account has been made by Insurer under Coverage N or Coverage O of the Cost Cap/PLL Policy, prior to any other incentive claim payment by the Insurer under (i), (ii) or (iii), TRC shall reimburse the Commutation Account to the extent of Coverage N and O claims, up to the amount of the incentive claims paid to TRC plus interest such amounts would have earned had they remained in the Commutation Account.

(c)   In the event that the Contract is terminated, TRC shall have no right to receive proceeds in connection with a commutation pursuant to Section 13 unless: (i) the termination is for convenience and (ii) at the time of termination the Site Work with respect to (A) 616 First Avenue, 685 First Avenue, and 708 First Avenue in the aggregate, or (B) Waterside, is more than 50% complete. Under subparagraph (A) above, TRC shall be entitled to that percentage of the Non-Waterside Properties Allocation Amount to which TRC would be entitled under Section 13(b) if TRC had completed the applicable Site Work equal to (1) the costs incurred by TRC with respect to such Properties through the effective date of termination divided by (2) the total Site Work costs for such Properties upon completion. Under subparagraph (B) above, TRC shall be entitled to that percentage of the Waterside Allocation Amount to which TRC would be entitled under Section 13(b) if TRC had completed the applicable Site Work equal to (1) the costs incurred by TRC with respect to Waterside through the effective date of termination divided by (2) the total Site Work costs for Waterside upon completion.

14. Limited Adjustments to Site Work.

(a)   Defined Additions and Defined Reductions.  TRC and Client agree that the scope of the Site Work may be modified and that such potential modifications have been defined prior to the Effective Date and are delineated in Exhibit "I" attached hereto, which sets forth additional work ("Defined Additions"), the reductions in work ("Defined Reductions") and the adjustment in the Contract Price for each Defined Addition and Defined Reduction.  No Defined Reduction shall result in a refund to Client of any portion of the Cost Cap/PLL Policy premium, and no Defined Addition shall require the payment of any additional premium under the Cost Cap/PLL Policy by Client. At the request of Con Edison or Site Developer, TRC shall evaluate whether it is advisable to undertake a particular Defined Addition or Defined Reduction. Not less than thirty days prior to the deadline for electing each Defined Addition and Defined Reduction, as set forth in Exhibit "I", TRC shall notify Con Edison and Site Developer of such deadline. Client may elect to have TRC perform any Defined Addition or Defined Reduction by notifying TRC at any time before the applicable deadline set forth in Exhibit "I". (If TRC fails to deliver its notice at least thirty days prior to any deadline, such deadline shall be extended to the date that is thirty days after TRC's notice is given.) Following a transfer of ownership of any Property, consent to make any Defined Addition or Defined Reduction shall require the consent of both Con Edison and the applicable Developer Owner. In the event of a Defined Addition, Con Edison shall pay to TRC, simultaneously with the delivery of such written notice, the price of such Defined Addition as set forth in Exhibit "I". In the event that the Site Work is reduced, TRC agrees that Insurer will return to Con Edison, simultaneously with the delivery of such written notice, an amount equal to the price of such Defined Reduction. Such amount shall be returned to Con Edison (and not Developer Owner) even if notice of a Defined Reduction is given after ownership of the applicable Property has been transferred. Except for a sixty day change in the Phase I Completion date in the Schedule for Waterside (to 26 months after the date of delivery of possession to TRC) if

Client does not elect to require TRC to Remediate the Easement Areas, Client's exercise of any or all Defined Additions or Defined Reductions shall not extend or reduce the Schedule and shall not constitute Owner Delay.

(b) Changes to Remedial Action Plan(s) or Consent Order(s). In the event that a change to the Remedial Action Plan(s) or Consent Order(s) is requested by Governmental Authorities with jurisdiction, TRC may agree to such change (subject to the consent of Insurer) provided such change does not conflict with the terms of the Contract or increase the obligations of Client or Site Developer. If TRC requests a change to the Remedial Action Plan(s) or Consent Order(s) under circumstances other than as set forth in the preceding sentence, TRC shall be required to obtain Client's and Site Developer's consent to such change (which may be granted or withheld in such parties' sole discretion) and the consent of the Insurer, if required; provided, however, that TRC shall have the sole right to make changes to the Remedial Action Plan(s) and Consent Order(s) (subject to the Insurer's approval if required) which would not result in TRC's failure to achieve Phase I Completion in accordance with the Schedule, would not increase the obligations of Client or Site Developer, and which are consistent with the terms of this Contract and the requirements of Governmental Authorities with jurisdiction. TRC shall give Client and Site Developer copies of all proposed changes to the Remedial Action Plans(s) or Consent Order(s) before TRC consents to or implements same (even if the consent of Site Developer and Client to same is not required). In the event that Client and/or Site Developer believes that such modification requires the consent of Client and Site Developer, Client and/or Site Developer shall provide their comments concerning the proposed modification to TRC within seven days of receipt of same. TRC shall incorporate such comments into the modification if TRC believes that it is required to do so under the Contract, and TRC shall deliver the revised modification (or notice that such comments will not be incorporated) to Client and Site Developer for review at least fourteen days prior to submission to NYSDEC. In the event that Client and/or Site Developer believe that such modification (or revised modification, if provided by TRC) requires the consent of Client and/or Site Developer, Client and/or Site Developer (as applicable) shall notify TRC within four days after receipt of such revised modification or notice how the modification should be revised to be consistent with the criteria described above. If TRC does not provide Client and/or Site Developer (as applicable) notice within four days thereafter that it will so change the proposed modification, the sole remedies of Client and/or Site Developer shall be (A) to commence the Mediation and Review Procedure prior to the end of the fourteen day period or (B) if Client and/or Site Developer believe that NYSDEC will agree to the modification of the Consent Order(s) or Remedial Action Plan(s) requested by Client and/or Site Developer if TRC undertakes action which would materially increase the cost of the Site Work, to agree subject to Section 5(z) prior to the end of such fourteen day period to pay the increase in cost to TRC pursuant to a separate agreement if NYSDEC will agree to modify the Consent Order(s) or Remedial Action Plan(s), in which case TRC shall use Contractor Good Faith Efforts to obtain NYSDEC's approval, and if successful TRC shall take the action required to obtain the requested modification to the Consent Order(s) or Remedial Action Plan(s), as applicable. Time shall be of the essence with respect to Client's and Site Developer's communications to TRC under this Section 14(b), it being understood that if Client or Site Developer fails to notify or respond to TRC or commence the Mediation and Review Procedure (as applicable) within the time periods set forth herein, such rights shall be deemed waived. In the event that the time periods within

which NYSDEC (or other Governmental Authorities with jurisdiction) requires TRC to act with respect to any matter are shorter than the time periods provided in this Section, TRC shall so notify Client and Site Developer and the time periods within which the parties must act in this Section shall be decreased accordingly but shall not be eliminated.

(c)    Neither Con Edison nor Site Developer shall make any request to TRC to modify the Remedial Action Plan(s) or Consent Order(s) without the express written consent of the other party which may be granted or withheld in such party's sole discretion.

## 15. Independent Contractor.

TRC is an independent contractor, and, subject to the provisions of this Contract, the methods and techniques of its performance and the control thereof shall vest in its discretion. TRC and the TRC Parties shall not be considered, or deemed to be, acting as employees of either the Client or the Site Developer, but rather as an independent contractor retained by Client (and/or the applicable Developer Owner, following the conveyance of any Property) to complete the Site Work. TRC shall not take any action or omit to take any action that is inconsistent with its status as an independent contractor. Subject to the terms and conditions of this Contract, TRC shall be solely responsible for all practices, procedures, means, methods, and protocols used in carrying out the Site Work, for all governmental fees imposed upon its performance of the Site Work and for payment of all compensation, benefits, contributions, and taxes, if any, d: : its employees, agents, contractors, and subcontractors. TRC agrees that any and all Persons whom it may employ or whose service it may retain in order to perform its obligations under this Contract shall remain TRC's employees or Subcontractors exclusively without any relation whatsoever to Client.

## 16. Confidentiality.

(a) The terms and conditions of this Contract are strictly confidential and shall not be disclosed to any third party except as is required by Laws or for the performance of this Contract and then shall be disclosed to such persons only under corresponding conditions of confidentiality. In addition, Con Edison may disclose this Contract to the New York Public Service Commission if required in connection with the PSC's approval of the sale of the Properties. Notwithstanding the preceding sentence, however, if such disclosure is required Con Edison shall use good faith efforts to cause the PSC to accept a summary of the terms of this Contract together with a redacted version of the Contract, but if the PSC will not accept a summary and redacted Contract, Con Edison shall deliver an unredacted copy of the Contract to the PSC. TRC acknowledges that it continues to be bound by the terms and conditions of the Confidentiality Agreement executed by and between TRC and Client on February 2, 2000, the terms and conditions of which apply to this Contract and the performance of TRC's services hereunder.

(b) Notwithstanding Section 16(a), in order to comply with the public disclosure requirements of the Securities and Exchange Commission ("SEC"), TRC may issue, from time to time, public statements concerning its execution of and performance of this Contract. TRC shall do so only under the following conditions:

NYC 357354.10 18821 00203

(i)    The information to be disclosed shall be the minimum required to comply with the legal requirements of the SEC; and

(ii)    TRC shall provide the Client and Site Developer with prior notice of the disclosure and shall provide Client and Site Developer with a copy concurrent with the disclosure.

(c) Notwithstanding Section 16(a), TRC may use a generic description of the project, its financial, management and technical approach, and the results of its performance hereunder for marketing and sales purposes provided that TRC does not identify Client, Site Developer or the location of the Site.

17. **Notices.**

Notices required hereunder shall be deemed given if sent by certified first-class mail, return receipt requested, by hand or by overnight courier, to the following duly authorized representatives:

For Client:

Consolidated Edison Company of New York, Inc.
4 Irving Place
New York, New York 10003
Attn: Mr. Robert P. Stelben
        Vice President and Treasurer

with copies to:

Consolidated Edison Company of New York, Inc.
4 Irving Place
New York, New York 10003
Attn: General Counsel

LeBoeuf, Lamb, Greene & MacRae, L.L.P.
125 West 55th Street
New York, New York 10019
Attn: Alan M. Berman, Esq.

LeBoeuf, Lamb, Greene & MacRae, L.L.P.
225 Asylum Street
Hartford, Connecticut 06103
Attn: Andrew N. Davis, Esq.

For TRC:

Mr. Michael C. Salmon
Senior Vice President
TRC Companies, Inc.
21 Technology Drive
Irvine, California 92618

with copies to:

TRC Companies, Inc.
5 Waterside Crossing
Windsor, Connecticut 06095-1563
Attn: Martin H. Dodd, Esq.
           Vice President and General Counsel

For Site Developer:

FSM East River Associates LLC
c/o Fisher Brothers
299 Park Avenue
New York, New York 10171
Attn: Mr. Richard L. Fisher

with copies to:

East River Realty Development LLC.
9 West 57th Street
New York, New York 10019
Attn: Mr. Sheldon H. Solow

Paul, Hastings, Janofsky & Walker, LLP
75 East 55th Street
New York, New York 10019
Attn: Martin L. Edelman, Esq.

Shearman & Sterling
599 Lexington Avenue
New York, New York 10022
Attn: Chris M. Smith, Esq.

The parties may change their duly authorized representatives at any time by providing notice to the other party. Notices shall be deemed given when received.

18. <u>Termination.</u>

(a) <u>Client's Termination for Cause/Convenience.</u> (i) Client may terminate this Contract in its entirety for cause (under the circumstances described in (c) below) by providing TRC with thirty days prior written notice, or for convenience (for any reason whatsoever or for no reason) with the prior written consent of Insurer by providing TRC with ten days prior written notice and paying TRC the Convenience Termination Payment (adjusted as provided in (ii) below). Following a transfer in ownership of any Property(ies), notice from Con Edison and all Developer Owners shall be required to terminate the Contract for cause or for convenience. Notwithstanding the foregoing, however, if the Sale Agreement is terminated with respect to any Property(ies), the consent of Developer Owners shall not be required to terminate this Contract as to such Property(ies), for cause or otherwise. In the event of termination, TRC shall assign all of

its rights in any subcontracts to Client if requested by Client. Provided that such work or activities are reviewed and approved by Insurer as appropriate for and included in the scope of the Site Work Action Plan as insured pursuant to the Policies, TRC shall be paid by the Insurer for all Site Work performed up to and including the date of termination and TRC shall be entitled to be paid for all non-cancelable commitments made to third parties unless Client (in its sole discretion) contractually assumes the obligations and indemnifies TRC for any costs or claims associated with the future compliance by the Client with the terms thereof, subject to any claims that the Insurer may have against TRC in the event of termination for cause by Client. Any payment due to TRC under the preceding sentence shall be in addition to the Convenience Termination Payment, if payable hereunder. TRC shall have no right to initiate or consent to commutation after the effective date of a termination for cause.

       (ii)    TRC shall adjust the Convenience Termination Payment as follows:

           (A)    For a termination within the first 365 days where any Consent Order has been signed, TRC shall estimate the percentage of completion of the Site Work for 616 First Avenue and 685 First Avenue. The Convenience Termination Payment shall be reduced by an amount equal to such percentage of completion multiplied by the amount set forth in Section 1(h)(a).

           (B)    For a termination after the first 365 days where any Consent Order has been signed, TRC shall estimate the percentage of completion of the Site Work for all Properties. The Convenience Termination Payment shall be reduced by an amount equal to such percentage of completion multiplied by the amount set forth in Section 1(h)(b).

    (b) Effect of Termination for Convenience. In the event of a termination for convenience prior to Phase I Completion, TRC's indemnification obligations in this Contract shall be deemed modified (with respect to any Property which is the subject of such termination, or with respect to all Properties in the event of termination of the entire Contract) to include only those obligations arising or accruing, or relating to actions of TRC and/or the TRC Parties, on or prior to the effective date of termination. TRC shall remain a Named Insured under the Cost Cap/PLL Policy after a termination for convenience (but TRC shall have no rights to initiate or consent to commutation and no obligations under the Cost Cap/PLL Policy after the effective date of termination). Upon a termination for convenience Client shall assume TRC's obligations under the Consent Order(s) arising or accruing after the effective date of termination and Client shall be deemed automatically to release TRC only with respect to all Loss-and-Expense in connection with TRC's obligations under the Consent Order(s) arising or accruing after the effective date of termination. In the event of a termination for convenience, upon payment of the Convenience Termination Payment to TRC, TRC shall be deemed automatically to release Con Edison and Site Developer in connection with all Loss-and-Expense in connection with this Contract, whether arising or accruing before, on or after the effective date of termination, except for TRC's obligations under the Consent Order(s) which are assumed by Client.

(c) <u>Events of Default</u>.  Client may terminate this Contract for cause for the below-listed reasons, each to be defined hereafter as an "Event of Default."

      (i)    The Site Work is not being performed in material compliance with the provisions of this Contract;

      (ii)    Any representation or warranty of TRC is untrue or incomplete;

      (iii)    TRC and TRC Parties materially fail to comply with Laws or materially fail to comply with Client's Policies or Procedures as provided in Exhibit "C" in executing the Site Work;

      (iv)    TRC declares bankruptcy or becomes insolvent, there is material risk of TRC's bankruptcy or insolvency, or TRC otherwise fails to pay its bills as they become due; or

      (v)    TRC has a change in corporate control that impairs or reasonably may impair TRC's ability to perform pursuant to this Contract and Client does not choose to complete the Site Work under the altered corporate structure.

(d) <u>TRC's Termination for Cause</u>.  TRC may terminate this Contract for cause with the prior written approval of Insurer if Client materially fails to perform its obligations hereunder and such failure directly results in TRC's inability to perform, subject to Section 24.

(e) <u>Cure</u>.  In order to terminate this Contract for cause pursuant to Section 18(c) and (d) above, the Party seeking to terminate the Contract must provide the other Party with written notice of its intent to terminate.  The other Party shall have thirty days in which to cure the alleged Event of Default or to undertake the activities necessary to correct the Event of Default if the same cannot be completed within the thirty day period.  The Contract may be terminated upon the failure of the other Party to (i) cure the Event of Default, or (ii) diligently pursue the cure of the Event of Default within the thirty day period, or (iii) complete the cure within a reasonable time as determined in good faith by the non-defaulting party.

(f) <u>Termination of Site Work at Waterside</u>.  Con Edison may terminate the Contract, in part, prior to Phase I Completion in relation to the Site Work at Waterside, as follows:  In the event that the application for the repowering of the East River Facility pursuant to Article X of the Public Service Law is not approved, if the application pursuant to Section 70 of the Public Service Law relating to the sale of the Properties is not approved, or if the Con Edison is otherwise prevented from repowering the East River Facility and therefore unable to take Waterside out of service, Con Edison shall have the option of terminating the Contract in part prior to Phase I Completion for the Site Work associated with Waterside.  Notwithstanding a transfer in ownership of any other Property(ies), Con Edison retains the sole right to terminate the Contract in part pursuant to this Section 18(f).  For the avoidance of doubt, TRC shall not be entitled to the Convenience Termination Payment if the Contract is terminated in part pursuant to this Section 18(f).

(g) <u>Procedures upon Termination</u>. In the event that the Contract is terminated, in whole or in part, TRC shall stop the Site Work with respect to the affected Property(ies) on the date and to the extent specified by Client; take all action as necessary (or as Client may direct) to protect and preserve all materials, equipment, tools, facilities and other property; and take such other actions, and execute such other documents, as Client may reasonably request to effectuate and confirm such termination.

(h) <u>Deemed Termination for Convenience</u>. If Client terminates TRC's right to perform this Contract for cause and if it is determined subsequently for any reason that an Event of Default did not occur or that TRC had cured such Event of Default in a timely manner, then, in the sole discretion of Client, the termination of TRC's right to perform this Contract may be deemed to have been a termination of this Contract for convenience pursuant to Section 18(a) or Client may reinstate this Contract.

### 19. <u>Governing Law; Jurisdiction; Venue</u>.

This Contract shall be governed by and construed and enforced in accordance with the laws of the State of New York (without regard to principles of conflicts of laws). Each Party irrevocably submits to the jurisdiction of the courts of the State of New York and agrees that any action or proceeding arising out of or relating to this Contract shall be brought or defended in the Supreme Court of New York, New York County or the United States District Court for the Southern District of New York.

### 20. <u>Amendment</u>.

To be effective, any amendment or waiver to this Contract must be in writing and be signed by the party against whom enforcement of the same is sought.

### 21. <u>Severability</u>.

If any term, covenant, condition, or provision of this Contract is found by a court of competent jurisdiction to be invalid, void, or unenforceable, the remainder of this Contract shall remain in full force and effect, and shall in no way be affected, impaired or invalidated thereby.

### 22. <u>Assignment; Successors and Assigns</u>.

Except for an assignment to an Affiliate of Con Edison or in connection with a merger, consolidation or sale of all (or substantially all) assets of Con Edison or as set forth in Section 12, neither TRC nor Client shall assign this Contract without the prior written authorization of the other Party and Site Developer (which may be granted or withheld in their sole discretion). This Contract shall be binding upon and inure to the benefit of the Parties (before and after title to the Properties are transferred) and their respective permitted successors and assigns.

### 23. <u>Counterparts</u>.

This Contract may be executed in two or more counterparts, each of which shall be deemed an original, but which together shall constitute one and the same instrument.

24. <u>Extensions of Time; Schedule; Delays.</u>

(a) Time is of the essence for Phase I Completion on or before the Site Work completion dates for each Property as set forth in the Schedule.

(b) TRC shall be entitled to extensions of time for performance of the Site Work in the event of Owner Delay, subject to compliance with all the conditions and requirements of this Section. TRC hereby waives and releases any right to an extension of time for which TRC does not give written notice in accordance with the provisions below.

(i)    TRC may request an extension of time by giving a written notice to Client which briefly describes the Owner Delay and estimates the duration of the Owner Delay (an "Owner Delay Notice") within sixty days after TRC receives notice or otherwise becomes aware that the Owner Delay has commenced or can be expected to commence.

(ii)    The Owner Delay Notice shall specify in as much detail as reasonably practicable: (1) the date when the Owner Delay began; (2) the cause of the Owner Delay; (3) the expected duration of the Owner Delay and its effect on the Schedule; and (4) actions which were taken by TRC to mitigate the Owner Delay. In addition, the Owner Delay Notice shall include all documents and other information then in TRC's possession which TRC deems relevant to the request for extension.

(c) Client shall review the Owner Delay Notice to determine in good faith if, and to what extent, TRC is entitled to a requested extension of time. If Client reasonably determines that an extension is appropriate, Client shall issue a notice within ten days after receipt of the Owner Delay Notice specifying the duration of the permitted extension. If another cause of Delay, operating concurrently would have Delayed the Site Work for the equivalent period, TRC shall not receive an extension of time under this Section to the extent that TRC would have been Delayed concurrently by any Delay other than an Owner Delay. For purposes of computing extensions of time under this Section, Client shall evaluate the particular Owner Delay by reference to the loss of time anticipated under the Schedule. If, despite Client's good faith efforts, TRC and Client are unable to resolve an extension of time associated with the Owner Delay Notice within ten days after Client's receipt of the Owner Delay Notice, the sole remedy of each Party shall be to commence the Mediation and Review Procedure within five days after the end of such ten-day period.

(d) In all cases, TRC shall submit Promptly to Client and Site Developer any and all revisions to the Schedule, whether or not such change is attributable to an Owner Delay. TRC agrees that TRC's submission of the Schedule (or any revised Schedule) shall not imply that Client or Site Developer: (i) approves TRC's proposed staffing or scheduling of the Site Work; (ii) agrees or guarantees to TRC or any other Person that TRC has the capacity or ability to complete the Site Work in accordance with the Schedule; or (iii) consents to any changes in scheduling, or agrees to any extension of time, unless Client agrees specifically in writing to the applicable change.

(e) TRC shall take all actions within TRC's reasonable control to mitigate, minimize and ameliorate loss of time due to all Delay, including Owner Delay.

(f) In the event of Owner Delay in connection with the performance of the Site Work at any Property which exceeds thirty days in any instance, TRC shall be entitled to compensation from Client in an amount equal to the actual costs (without profit) incurred by TRC and its Subcontractors to demobilize and remobilize their forces as a result of such Owner Delay, but in no event shall TRC be entitled to compensation in excess of $60,000 for demobilization and $40,000 for remobilization in any single instance of Owner Delay or $300,000 in the aggregate for all remobilization and demobilization costs as a result of all Owner Delays. Except for the reimbursement described in the preceding sentence and extensions of time under this Section: (i) TRC alone hereby specifically assumes the risk and Loss-and-Expense (subject to any coverage afforded TRC by the Cost Cap/PLL Policy) of all Delays in the Site Work (or the performance thereof) of any kind or duration whatsoever, whether Owner Delay or otherwise, whether or not within the contemplation of the parties and whether foreseeable or unforeseeable, and (ii) TRC agrees to make no claim for damages for Delay occasioned by any act or omission of Client, Site Developer or any other Released Party, and agrees that any such claim shall be compensated for solely by an extension of time to complete performance of the Site Work as provided in this Section. TRC shall have no cause of action under any theory of quasi-contract or quantum meruit, by reason of any Delay of any kind or duration whatsoever. TRC agrees that the reimbursement for demobilization and remobilization costs described above and an extension (or extensions) of time under this Section for Owner Delay shall be TRC's exclusive remedies against Client and/or Site Developer for Delay in the performance of the Site Work. Notwithstanding the above, in the event of any Delay, including Owner Delay, TRC shall remain responsible for the completion of the Site Work in accordance with all the terms and conditions herein; however, in the event of Owner Delay, the Site Work shall be completed in accordance with the revised Schedule as provided in Section 24(c) above.

## 25. Books and Records.

TRC shall keep and maintain Books and Records relating to the Phase I Work for at least six years after Phase I Completion, or longer if required by Laws, (and shall keep and maintain Books and Records relating to the other Site Work for at least six years from the date generated). At the end of the six-year periods, TRC shall deliver to Client copies of all technical data and reports in its Books and Records (to the extent not previously delivered to Client). TRC and each Subcontractor shall, upon written notice from Client, produce any or all technical data and reports (and other Books and Records to the extent required for Client's tax purposes or in connection with legal proceedings) for examination and/or copying, during regular business hours, at TRC's (or Subcontractor's) office in the New York City metropolitan area by representatives of Client. Client agrees to use such Books and Records (other than technical data and reports) only for the purposes for which such information was requested, and shall treat such Books and Records (other than technical reports and data) confidentially and shall not disclose such Books and Records to third parties except for the purposes requested and as required by Laws or for the performance of this Contract (and then shall be disclosed to such persons only under corresponding conditions of confidentiality). In this Contract, "Books and Records" means books of account, bills, vouchers, invoices, payrolls, payroll reports, subcontracts, purchase orders,

receiving documents, time books, daily job diaries and reports, cost analyses made during the course of the Site Work, canceled checks, correspondence, technical data and reports, and other documents showing acts or transactions in connection with the Site Work or this Contract.

### 26. Third Party Beneficiary.

Site Developer shall be a third party beneficiary of this Contract pursuant to the provisions contained herein. Notwithstanding the foregoing, but subject to Section 12, from and after the occurrence of a Developer Event of Default (as defined in the Sale Agreement), Site Developer shall have no rights under this Contract unless and until such Event of Default is cured in accordance with the terms of the Sale Agreement.

### 27. Key Personnel.

TRC has represented that the Program Manager is the TRC employee who will have responsibility for the performance and supervision of the Site Work on a daily basis, and that Robert O. Harris shall be the Program Manager for the Site Work. TRC agrees that the selection of any replacement Program Manager shall be subject to the prior written approval of Con Edison, which consent shall not be unreasonably withheld or delayed.

### 28. Joint and Several Liability of TRC.

TRC Companies, Inc., TRC Engineers, Inc. and TRC Environmental Corporation shall be jointly and severally liable for the obligations of TRC under this Contract.

### 29. Mediation and Review Procedure.

Under the circumstances expressly provided in Sections 7(a), 7(b), 14(b) and paragraph IV(6) of Exhibit H of this Contract, Client and/or Site Developer, as applicable (the "Contesting Party") may commence the procedure described in this Section (the "Mediation and Review Procedure") to resolve disputes with TRC.

(a) The Contesting Party shall commence the Mediation and Review Procedure by sending the Mediator notice of the dispute, together with such documentation and other materials as the Contesting Party deems necessary to support its position, with copies to the other Party and Site Developer. Within five days after receipt of the Contesting Party's notice, TRC shall send the Mediator notice of its position, together with copies of all documentation and other materials that TRC deems necessary to support its position, with copies to the other Party and Site Developer. Within five days after receiving TRC's notice, the Mediator shall make such inquiries of the Parties and Site Developer as s/he deems necessary, visit the Site (if s/he deems it necessary) and notify the Parties and Site Developer in writing of his/her decision as to the dispute. In making his/her determinations, the Mediator shall take into account the requirements of this Contract (including the requirements of Exhibit "H").

(i)    If the Contesting Party or TRC is unwilling to accept the Mediator's decision, the Contesting Party or TRC (as applicable) shall have the right to seek a declaratory judgment as to the Mediator's decision within thirty days after receiving notice

of the Mediator's decision. If such action is not commenced within such thirty day period, time being of the essence, the decision of the Mediator shall become final and binding upon the parties.

(ii)    Within twenty (20) days of the commencement of any such action, the parties thereto shall disclose to all other parties to the action the following: (A) all documents to be relied upon by such parties; (B) the names of all witnesses and experts; and (C) the substance of all expert testimony. Within ten (10) days of such disclosure, each party shall have the right to request disclosure of such additional documents as it deems relevant to the issues in the action. Such request(s) shall be responded to within two weeks. No further discovery shall be had. All parties shall join in any motion to request expeditious hearing and determination of the action.

(b) TRC shall continue performance of the Site Work after the Mediation and Review Procedure has been commenced, and commencement of the Mediation and Review Procedure by any Party or Site Developer shall not constitute Owner Delay or give TRC the right to extend the deadlines for Phase I Completion in the Schedule. TRC, Con Edison and Site Developer shall each pay one-third of the Mediator's initial retainer fee, and in each case where a dispute is brought to the Mediator, the Contesting Party shall pay the Mediator's fees and costs. Each party shall pay its own legal fees in connection with the Mediation and Review Procedure.

30. <u>Written Phase I Completion</u>.

(a) Upon Phase I Completion, TRC shall deliver to Con Edison and Site Developer a written certification that the Phase I Work has been completed in accordance with the Contract, the Site Work Action Plan and all requirements of NYSDEC. In addition, TRC shall use its best efforts to obtain written Phase I Approval from NYSDEC.

(b) If TRC is unable to obtain written Phase I Approval with respect to any Property prior to the applicable Phase I Completion date for such Property in the Schedule, TRC shall notify Con Edison and Site Developer. Con Edison and Site Developer shall have the right within thirty days following TRC's notice to seek written Phase I Approval from NYSDEC. notwithstanding Section 6(d) (except that TRC shall be given notice and a right to attend any meetings between Con Edison and/or Site Developer and NYSDEC)). If Con Edison and/or Site Developer elect to seek such written approval, the completion date in the Schedule for the applicable Property shall be extended for the number of days during which Con Edison and/or Site Developer are seeking such written approval (but such actions shall not entitle TRC to reimbursement under Section 24(f)).

(c) If (i) Con Edison or Site Developer is unable within such thirty day period to obtain such written approval, and (ii) NYSDEC has not indicated that the reason for its failure to issue Phase I Approval is that the Property is not fit for Unencumbered Development, a demand shall be made upon the Independent Engineering Firm by TRC, Con Edison or Site Developer to certify in writing that Phase I Completion has occurred with respect to the applicable Property, (but such action shall not be deemed to constitute Owner Delay). The Independent Engineering Firm shall deliver its certification (or notice that Phase I Completion has not occurred) to TRC,

Con Edison and Site Developer within thirty days after receipt of the request to issue same. The certification shall provide that, based upon inspection of the Property and review of TRC's records and data, the Site Work has been completed in accordance with the Contract and the Site Work Action Plan, and it is the opinion of the Independent Engineering Firm (after due inquiry of NYSDEC) that TRC has satisfied all requirements of NYSDEC (including the Consent Orders) and other Governmental Authorities with jurisdiction in connection with the Phase I Work.

(d) Provided that the Independent Engineering Firm certifies that Phase I Completion has occurred within such thirty day period, the completion date in the Schedule for the applicable Property shall be extended for the number of days required by the Independent Engineering Firm to complete such certification (but the time required to obtain certification from the Independent Engineering Firm shall not entitle TRC to reimbursement under Section 24(f)).

(e) It is understood that the Independent Engineering Firm will require access to the Properties, TRC's Books and Records and all information made available to Client and Site Developer as the work progresses, and that the Independent Engineering Firm will monitor the progress of the Site Work so that the Independent Engineering Firm is in a position to deliver the certification described above if so requested. TRC agrees to provide the Independent Engineering Firm access to the Properties and all other information to which the Independent Engineering Firm requests, and to otherwise cooperate with the Independent Engineering Firm in its monitoring of the Site Work and its other activities necessary in order to issue all requested certifications.

(f) The Independent Engineering Firm shall be retained by Con Edison and Site Developer and each of Con Edison, TRC and Site Developer shall pay one-third of all fees and costs of the Independent Engineering Firm.

31. **Exhibits.**

The Exhibits attached hereto form a part of this Contract. In the event of any inconsistency between any provision of this Contract and Exhibits C-1, C-2, or C-3, the terms of this Contract shall govern.

NYC 357354.10 18821 00203



IN WITNESS WHEREOF, Con Edison and TRC have executed and delivered this Contract as of the date first set forth above.

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.**


By: _____
    Name:  Robert P. Stelben
    Title:  Treasurer


**TRC COMPANIES, INC.**


By: _____
    Michael C. Salmon
    Senior Vice President


**TRC ENGINEERS, INC.**


By: _____
    Robert O. Harris
    Senior Vice President


**TRC ENVIRONMENTAL CORPORATION**


By: _____
    John H. Claussen
    President

## AMENDMENT TO CONTRACT

THIS AMENDMENT TO CONTRACT (this "Agreement") is dated as of _September 22_, 2003 by and among CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., having an address at 4 Irving Place, New York, New York 10003 ("Client") and TRC COMPANIES, INC., TRC ENGINEERS, INC., and TRC ENVIRONMENTAL CORPORATION, each having an address at 5 Waterside Crossing, Windsor, Connecticut 06095-1563 (collectively "TRC").

### Introductory Statement

As of November 15, 2000, Client and TRC entered into that certain Exit Strategy® Contract (the "TRC Contract") relating to the performance by TRC of certain demolition, decommissioning, abatement and remediation activities at properties owned by Client, all as more particularly set forth in the TRC Contract.

Words, capitalized terms, and phrases used but not defined in this Agreement shall have the meanings set forth in the TRC Contract.

In order to expedite completion of the Site Work at both the 708 First Avenue ("708") office building and at Waterside, Client and TRC have agreed to clarify the terms associated with the Site Work that is to be performed by TRC. This Agreement is intended to amend the TRC Contract to set forth the parties' agreement regarding the rescheduling of Site Work as set forth herein. This Agreement serves only to clarify logistics and scheduling of the Site Work but does not in any event expand the scope or type of Site Work to be completed at the Site.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Client and TRC hereby agree to amend the TRC Contract as follows:

1.  Schedule Changes.

    (a) Exhibit "E" and Exhibit "M" are hereby amended as provided in Exhibit "E" and Exhibit "M" attached hereto.

    (b) TRC hereby acknowledges that 616 First Avenue (other than the lay down area) and the switch house and frequency changer building at 708 have been delivered to TRC in accordance with the schedule in Exhibit "M".

2.  Site Work – 708 First Avenue

    (a) Client and TRC agreed to adjust the schedule for the performance of the Site Work at the 708 office building. As a result of this rescheduling, TRC and Client jointly occupied certain areas of the 708 office building after TRC initiated the Site Work activities at that Property.

(b)  TRC agreed to perform the Site Work at the 708 office building in accordance with all TRC Contract requirements and, since this Site Work was performed in a partially occupied building, in accordance with Client's standard policies and procedures relating to such work.  In addition, TRC agreed to use Contractor Good Faith Efforts to minimize and/or avoid interference with, or disruption of, Client's operations at the 708 office building and to take all actions reasonably necessary to prevent access by Client's employees and visitors to areas where TRC was performing Site Work and ensure the safety of Client's employees and visitors which remain at the 708 office building after TRC commenced the Site Work.

3.  Site Work – First Avenue Vaults.

(a)  TRC acknowledges that:  (i) it is prepared to perform Site Work in the First Avenue Vaults located adjacent to the east side of First Avenue between 38th and 40th Street and any other vaults pursuant to the TRC Contract; (ii) all the Site Work to be performed by TRC in the First Avenue Vaults is coextensive with, does not expand the scope of, and shall be performed in accordance with, all TRC Contract requirements; and (iii) all the Site Work to be performed by TRC in the First Avenue Vaults shall be performed in accordance with Client's standard policies and procedures relating to such work, since this work is being performed near or adjacent to an operating facility.

(b)  Since Client will continue to occupy Waterside for some period of time during and after TRC commences the Site Work in the First Avenue Vaults, TRC shall use Contractor Good Faith Efforts to minimize and/or avoid interference with, or disruption of, Client's operations at Waterside.  TRC shall take all actions reasonably necessary to prevent access by Client's employees, agents, contractors or visitors to areas where TRC is performing Site Work and ensure the safety of Client's employees, agents, contractors and visitors which occupy Waterside after TRC commences the Site Work, including complying with the special conditions for Waterside set forth in Schedule 1 hereto.

(c)  TRC shall prepare Site Work Action Plans, including investigation work plans and interim remedial measures ("IRMs") work plans, as necessary both to address the Demolition and Decommissioning (including necessary abatement of Pollutants) and to characterize, and as necessary, Remediate, Pollution Conditions at, in and emanating to or from the First Avenue Vaults.

(d)  The Site Work in the First Avenue Vaults shall be completed by November 1, 2003, provided that the procedure for Client and Site Developer review and comment (pursuant to Section 7(b) of the TRC Contract) of the Remedial Action Plans for the First Avenue Vaults is complete on or before September 30, 2003 and NYSDEC approves the work plans described in (a) above on or before October 15, 2003.  Client shall provide a seven (7) business day review cycle for any additional work plans and HASPs required by Waterside as part of Client work rules for an active power generating plant.  Client and TRC agree that in the event TRC discovers Pollution Conditions requiring Remediation in the First Avenue Vaults, that TRC shall be entitled to an extension of the date for the completion of the Site Work at Waterside for a period not to exceed thirty (30) days.  In addition, in the event that the deadline for Client and Site Developer review

2

described in the preceding sentence is not met for any reason (other than the acts or omissions of TRC), the terms of Section 7(b) of TRC Contract will apply (it being understood that any extension of the completion date for such Site Work shall not entitle TRC to an extension of the Schedule with respect to any Property). Client shall be responsible to provide necessary personnel for oversight of work to accommodate TRC's schedule and for any active utility piping relocations and structural work in the First Avenue Vaults necessary to accommodate the new steam pipeline, however, notwithstanding anything to the contrary, TRC shall remain responsible for any Site Work, including any Remediation of Pollution Conditions associated with, arising from or related to such relocation and structural work in accordance with the TRC Contract.

4. Pipeline Protection. Following execution of the TRC Contract, Client relocated a steam pipeline along the bed of the former 40th Street in order to allow the Demolition and Decommissioning of the 708 office building to proceed. This pipeline is located adjacent to the switch house and the frequency house and therefore required protection in order to minimize the risk of damage from falling debris or structures as a result of the necessary Demolition and Decommissioning. TRC installed protection in order to protect that steam pipeline during such Demolition and Decommissioning..

5. Payment to TRC for: (a) Adjustment of Schedule for Site Work – 708 Office Building and First Avenue Vaults; and (b) Pipeline Protection

(a) TRC and Client agreed that the sum of Three-Hundred and Fifty Thousand Dollars ($350,000) (the "Reschedule Payment"), which represents the increased costs associated with rescheduling of Site Work at the 708 office building and includes all permits, approvals, general condition costs, overhead, profit, taxes and all other costs and fees in connection therewith, constitutes fair additional compensation for TRC's performance of the Site Work at that Property to meet the revised scheduling conditions. In addition, TRC and Client have agreed that the sum of Two Hundred and Ninety-One Thousand and Eight Hundred Dollars ($291,800) (the "Incremental Payment"), which represents the increased costs associated with the rescheduling of the Site Work to be performed in the First Avenue Vaults (i.e., that Client will continue to occupy Waterside after the Site Work in the First Avenue Vaults is commenced) and includes all permits, approvals, general conditions costs, overhead, profit, taxes and all other costs and fees in connection therewith, constitutes fair additional compensation for TRC's agreement to perform the Site Work to meet the revised scheduling conditions as provided herein. Combined, the Reschedule Payment and Incremental Payment (collectively, the "Additional Payment," a breakdown of which is set forth at Schedule 2) represent full, fixed and final payment for all Loss-and-Expense incurred by TRC in connection with the revised scheduling terms as provided herein. The Additional Payment is made for the convenience of Client to improve the progress of the Site Work, does not expand the scope of the Site Work, and does not constitute payment for Delay damages. The Additional Payment shall not be construed as an acknowledgement of any liability on the part of Client for Delay or any right of TRC to recover damages for Delay due to the condition changes and other agreements which are the subject hereof, or as an amendment, modification or waiver of Section 24 of the TRC Contract, which remains unmodified and in full force and effect.

3

HT 230933.1 18821 00203 08/29/03 09:49am

(b) TRC and Client have agreed that the sum of Four-Hundred and Twenty-Five Thousand Dollars ($425,000) (the "Pipeline Payment"), which represents all costs associated with the installation of protection for the steam pipeline along the bed of the former 40th Street and includes all permits, approvals, general condition costs, overhead, profit, taxes and all other costs and fees in connection therewith, constitutes fair compensation for TRC's completion of such work. TRC agrees that the Pipeline Payment is a final, fixed-price for the installation of protection for the steam pipeline along the bed of the former 40th Street.

(c) The Additional Payment and the Pipeline Payment, totaling $1,066,800.00 shall be paid directly by Client to the Insurer, and Insurer shall increase the limits of liability of the Cost Cap/PLL Policy by an equivalent amount. TRC agrees that it shall seek payment of the Additional Payment and Pipeline Payment from the Insurer in accordance with the terms of the Cost Cap/PLL Policy and the TRC Contract. TRC shall receive all benefits of the Cost Cap/PLL Policy, including coverage for cost overruns, unanticipated costs or other additional costs/payments associated therewith with regard to the scope of the Site Work, in accordance with the terms of the TRC Contract and the Cost Cap/PLL Policy, but shall receive no additional payment from the Cost Cap/PLL Policy for costs that may be incurred by TRC exceeding the amount of the Additional Payment and Pipeline Payment for any rescheduling or pipeline protection activities defined in this Agreem_nt.

6. Performance in Accordance with TRC Contract. TRC acknowledges that TRC remains obligated to perform all Site Work and TRC agrees to perform all Site Work in accordance with all of the terms of the TRC Contract, as expressly modified by this Agreement. These obligations include the obligation to perform the Site Work in accordance with Laws and the Cost Cap/PLL Policy.

7. Confidentiality. This Agreement shall be subject to all of the confidentiality provisions of the TRC Contract.

8. Miscellaneous.

(a) This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York (without regard to principles of conflicts of law). Each party irrevocably submits to the jurisdiction of the courts of the State of New York and agrees that any action or proceeding arising out of or relating to this Agreement may be brought and/or defended in the Supreme Court of the State of New York, New York County or the United States District Court for the Southern District of New York.

(b) To be effective, any amendment or waiver to this Agreement must be in writing and signed by the party against whom enforcement of this same is sought.

(c) This Agreement, together with the Schedules and Exhibits hereto, the TRC Contract, and any other document, agreement or instrument which is specifically stated by all parties in writing to form a part of this Agreement or to relate thereto, constitute(s)

the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings of the parties relating thereto.

(d) This Agreement may be executed (i) in counterparts, a complete set of which together shall constitute an original and (ii) in duplicates, each of which shall constitute an original. Copies of this Agreement showing the signatures of the respective parties, whether produced by photographic, digital, computer, or other reproduction, may be used for all purposes as originals.

(e) This Agreement (and all terms thereof, whether so expressed or not), shall be binding upon the respective permitted successors, assigns and legal representatives of the parties and shall inure to the benefit of and be enforceable by the parties and their respective permitted successors, assigns and legal representatives.

(f) The Exhibits and Schedules attached hereto or subsequently incorporated herein are (and shall be deemed) parts of this Agreement. The headings of this Agreement are for purposes of reference only and shall not limit or otherwise affect the meaning hereof.

[SIGNATURE PAGE TO FOLLOW]

5

IN WITNESS WHEREOF, Client and TRC have entered into this Agreement as of the date first set forth above.

Consolidated Edison Company of New York, Inc.

*c c* By: _____
Name:
Title:  ROBERT P. STELBEN
VICE PRESIDENT & TREASURER

TRC Companies Inc.

By: _____
Name: Michael C. Salmon
Title: Senior Vice President

TRC Engineers Inc.

By: _____
Name: Michael C. Salmon
Title: Senior Vice President

TRC Environmental Corporation

By: _____
Name: Michael C. Salmon
Title: Senior Vice President

6