- "Site Investigation Report, 1st Avenue & 39th Street," Jacques Whitford Companies, Inc., June 2000;

2. Kips Bay Fuel Terminal, 616 First Avenue. (V-00430-2); Soil and groundwater contaminants including , but not limited to, petroleum and associated breakdown products, including non-aqueous phase liquid ("NAPL") derived from fuel oil UST and pipeline operations, polychlorinated biphenyls ("PCB") from transformers in soil, polynuclear aromatic hydrocarbons ("PAH") from historic fill materials in site soils as set forth in,

- "Phase I Environmental Site Assessment, Kips Bay Fuel Oil Terminal," Foster Wheeler Environmental Corp., September 1998;

- "Phase II Environmental Site Assessment, Kips Bay Oil Terminal," GZA GeoEnvironmental, Inc., March 2000;

- "Well Gauging Monitoring Report, Kips Bay Fuel Oil Terminal," Jacques Whitford Company, November 2000;

3. 708 Office Bldg., 708 First Avenue, (V-00431-2); Soil and groundwater contaminants including but not limited, mercury, barium, PAH, VOC and petroleum related compounds including but not limited to, BTEX from manufactured gas plant ("MGP") operations and petroleum and antifreeze spills as set forth in,

- "Phase I Environmental Site Assessment, 708 First Avenue," Foster Wheeler Environmental Corp., December 1998;

- "Phase II Environmental Site Assessment, Waterside Generating Station and 708 First Avenue Properties," Foster Wheeler Environmental Corp., March 2000; and,

4. Waterside Generating Station, 700 First Avenue, (V-00432-2), soil contamination including but not limited to BTEX, PAH, napthalene and PCB AND groundwater contamination including but not limited to BTEX, PAH, volatile organic compounds ("VOC") and heavy metals as set forth in,

- "Phase I Environmental Site Assessment, Waterside Generating Station," Foster Wheeler Environmental Corp., January 2000;

- "Phase II Environmental Site Assessment, Waterside Generating Station and 708 First Avenue Properties, foster Wheeler Environmental Corp., March 2000.

The term also includes contamination encountered during the course of this Order's implementation, the nature and extent of which were unknown or inadequately characterized as of the effective date of this Order, but which shall have been fully characterized to the Department's satisfaction.

C.    "Site": EACH OF those four properties described below shall be a Site:

1. Parking Lot, 685 FIRST AVENUE, partial Block 945, Lot 33 (V-00429-2). The Site is bordered by East 40th Street to the north, First Avenue to the east, East 39th Street to the south and a Con Ed substation to the west;

2. Kips Bay Fuel Terminal, 616 First Avenue, Block 967, Lot 1 (V-00430-2). The Site is bordered by East 36th street to the north, the Franklin D. Roosevelt ("FDR") Drive to the east, East 35th Street to the south, and First Avenue to the west;

3. 708 Office Bldg., 708 First Avenue, Block 970, Lot 1 (partial) (V-00431-2). The Site is bordered by East 41st Street to the north, the FDR Drive to the east, the Waterside generating station (East 40th Street) to the south, and First Avenue to the west; and,

4. Waterside Generating Station, Block 970, Lot 1 (partial) (V-00432-2). The Site is bordered by East 40th Street and buildings associated with Con Edison's 708 first Avenue Site to the north, FDR Drive to the east, 38th Street to the south, and First Avenue to the west.

5. The parties to this Order understand that each property described in Section I.C, herein, will be treated as a "Site", and a separate Remediation Work Plan, within the meaning of Section II.A.3 herein, will be submitted for each Site, and a separate final report, pursuant to Section II.D corresponding to each Remediation Work Plan will be submitted for Department approval, the parties have agreed that each such Remediation Work Plan will be subject to the provisions of Section II.E.1.

6. Exhibit "A" of this Order is a map of the Sites showing the general locations.

D.    "RESPONDENT TRC": TRC Companies, Inc. is a Delaware Corporation doing business in the State of Connecticut with offices located at 5 Waterside Crossing, Windsor, Connecticut 06095.

E.    "Respondent FSM": Respondent FSM Associates LLC is a New York limited liability company with offices located at 299 Park Avenue, New York, N.Y. 10171.

F.    "Volunteer": Respondent TRC and Respondent FSM, collectively and individually.

II.    Development, Performance and Reporting of Work Plans

A.    Work Plan Labels

The work plans ("Work Plan" or "Work Plans") under this Order shall be captioned as follows:
1.    "Investigation Work Plan" if the Work Plan provides for the investigation of the nature and extent of contamination at the Site;

4

2.    "IRM Work Plan" if the Work Plan provides for an interim remedial measure;

3.    "Remediation Work Plan" if the Work Plan provides for the Site's remediation to cleanup levels sufficient to allow the Contemplated Use of the Site to proceed; or

4.    "OM&M Work Plan" if the Work Plan provides for post-remedial construction operation, monitoring and maintenance.

B.    Submission/Implementation of Work Plans

1.    Proposed Work Plans shall be submitted for the Department's review and approval and shall include, at a minimum, a chronological description of the anticipated activities, a schedule for performance of those activities, and sufficient detail to allow the Department to evaluate a Work Plan. A Professional Engineer must prepare, sign, and seal all Work Plans other than an Investigation Work Plan. Upon the Department's written approval of a Work Plan, such Department-approved Work Plan shall be incorporated into and become an enforceable part of this Order and shall be implemented in accordance with the schedule contained therein. If a proposed Work Plan is rejected by the Department, Volunteer shall elect in writing within 10 Days to: (i) modify or expand it; (ii) complete any other Department-approved Work Plan(s); (iii) invoke the dispute resolution provisions of this Order pursuant to Paragraph XIII; or (iv) terminate this Order pursuant to the provisions set forth in Paragraph XII.

2.    During all field activities, Volunteer shall have on-site a representative who is qualified to supervise the activities undertaken and who may be an outside consultant retained by Volunteer to perform such supervision.

C.    Revisions to Work Plans

If revisions to a Work Plan are required to satisfy the objectives of such Work Plan, the parties will negotiate revisions which shall be attached to and incorporated into the relevant Work Plan and enforceable under this Order. If the parties cannot agree upon revisions to the relevant Work Plan, then unless the Volunteer invokes the dispute resolution provisions of this Order pursuant to Paragraph XIII, either party may terminate this Order pursuant to Paragraph XII.

D.    Submission of Final Reports

In accordance with the schedule contained in a Work Plan, Volunteer shall submit a final report containing on the cover page the caption of that Work Plan as set forth in Subparagraph II.A of this Order. The final report pertaining to that Work Plan's implementation shall include but not be limited to: all data generated relative to the Site and all other information obtained as part of the implementation of the subject Work Plan; all of the assessments and evaluations required by the subject Work Plan; a statement of any additional data that must be collected; "as-built" drawings, to the extent necessary, showing all changes made during construction. Additionally, the final report relative to the Investigation Work Plan shall contain a certification by the person with primary responsibility for the day to day performance of the activities under

5

this Order that those activities were performed in full accordance with the Investigation Work Plan and all other final reports must contain such certification made by a professional engineer with primary responsibility for the day to day performance of the activities under this Order.

An OM&M Work Plan, if necessary, shall be submitted with the final report relative to an IRM Work Plan or a Remediation Work Plan.

E.    Review of Submittals

1.    The Department shall timely notify Volunteer in writing of its approval or disapproval of each submittal. All Department-approved submittals shall be incorporated into and become an enforceable part of this Order.

2.    If the Department disapproves a submittal, it shall specify the reasons for its disapproval and may request Volunteer to modify or expand the submittal. Within 30 Days after receiving written notice that Volunteer's submittal has been disapproved, Volunteer shall either make a revised submittal that corrects the stated deficiencies or elect to terminate the Order pursuant to Paragraph XII. If the Volunteer submits a revised submittal and it is disapproved, the Department and Volunteer may pursue whatever remedies may be available under this Order or under law.

3.    Within 30 Days of the Department's approval of a final report, such report must be submitted to the Department in an electronic format acceptable to the Department.

F.    Department's Determination of Need for Remediation

In addition to the Department's approval of the final report, the Department will determine upon its approval of each final report dealing with the investigation of the Site whether remediation, or additional remediation as the case may be, is needed to allow the Site to be used for the Contemplated Use.

1.    If the Department determines that remediation, or additional remediation, is not needed to allow the Site to be used for the Contemplated Use, the Department shall provide Volunteer with the Release described in Subparagraph II.H.

2.    If the Department determines that remediation, or additional remediation, is needed to allow the Site to be used for the Contemplated Use, Volunteer may, at its sole discretion, submit for review and approval a proposed Work Plan (or a revision to an existing Remediation Work Plan for the Site) which addresses the remediation of Existing Contamination. Such proposed Work Plan shall include, among other requirements, an evaluation of the proposed remedy considering the factors set forth in 6 NYCRR 375-1.10(c). At a minimum, the remedial activities contemplated by the proposed Work Plan must eliminate or mitigate all significant threats to the public health or environment and must be protective for the safe implementation of the Site's Contemplated Use. The Department will notice a proposed Work Plan addressing the Site's remediation for public comment in accordance with

6

Subparagraph II.G of this Order. If Volunteer elects not to develop a Work Plan under this Subparagraph or either party concludes that a mutually acceptable Work Plan under this Subparagraph cannot be negotiated, then this Order shall terminate in accordance with Paragraph XII.

G.    Notice of Proposed Work Plan for the Site's Remediation

Whenever a Work Plan for the Site's remediation (other than an IRM Work Plan) is proposed, the Department will publish a notice in the Environmental Notice Bulletin to inform the public of the opportunity to submit comments on the proposed Work Plan within 30 Days after the date of the issue in which the notice appears. The Department shall mail an equivalent notice to the City of New York. The Department will notify Volunteer following the close of the public comment period whether the proposed Work Plan needs to be revised. If the Department determines that revisions are necessary to protect human health or the environment for the Contemplated Use, Volunteer agrees to negotiate revisions to the proposed Work Plan in accordance with Paragraph II.C. If the Department determines that no revisions are required, then the Work Plan shall be attached hereto as Exhibit "B."

H.    Release and Covenant Not to Sue

Upon the Department's determination that i) it is satisfied with the implementation of the Order; ii) no remedial activities other than those conducted at the Site, if any, are necessary for the Contemplated Use to proceed with protection of human health and the environment; and iii) Volunteer has complied, if required, with Paragraph X, the Department shall provide Volunteer with a Release and Covenant Not to Sue which is substantially similar to the one attached hereto as Exhibit "C," subject to the terms and conditions stated therein.

III.    Progress Reports

Volunteer shall submit written monthly progress reports to the parties identified in Subparagraph XI.A.1. by the 10th day of each month commencing with the month subsequent to the approval of the first Work Plan and ending with the Termination Date. Such reports shall, at a minimum, include: all actions taken pursuant to this Order during the previous month and those anticipated for the next month; all results of sampling and tests and all other data received or generated by Volunteer or Volunteer's contractors or agents, whether under this Order or otherwise, in the previous month, including quality assurance/quality control information; and information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule, and efforts made to mitigate such delays.

IV.    Enforcement

This Order shall be enforceable as an order under the laws of the State of New York. Volunteer shall not suffer any penalty or be subject to any proceeding or action if it cannot comply with any requirement of this Order as a result of a Force Majeure Event provided it notifies the Department in writing within 10 business days of when it obtains knowledge of any

such event. Volunteer shall include in such notice the measures taken and to be taken to prevent or minimize any delays and shall request an appropriate extension or modification of this Order. Volunteer shall have the burden of proving by a preponderance of the evidence that an event qualifies as a defense to compliance pursuant to this Paragraph.

V.    Entry upon Site

     Volunteer hereby consents, upon reasonable notice under the circumstances presented, to entry upon the Site or areas in the vicinity of the Site which may be under the control of Volunteer, by any duly designated officer or employee of the Department or any State agency having jurisdiction with respect to the matters addressed in a Department-approved Work Plan, and any agent, consultant, contractor or other person so authorized by the Commissioner, all of whom shall abide by the health and safety rules in effect for the Site. Upon request, Volunteer shall permit the Department full access to all non-privileged records relating to matters addressed by this Order and to job meetings. Raw data is not considered privileged and that portion of any privileged document containing raw data must still be provided to the Department.

VI.    Payment of State Costs

     Within 30 Days after receipt of an itemized invoice from the Department, Volunteer shall pay to the Department a sum of money which shall represent reimbursement for the State's expenses for work performed at or in connection with the Site prior to the effective date of this Order, as well as for negotiating this Order and all costs associated with this Order, but not including any expenses incurred by the State after the Termination Date. Each such payment shall be made by certified check payable to the Department of Environmental Conservation and shall be sent to: Bureau of Program Management, Division of Environmental Remediation, New York State Department of Environmental Conservation, 50 Wolf Road, Albany, NY 12233-7010.

     Personal service costs shall be documented by reports of Direct Personal Service, which shall identify the employee name, title, biweekly salary, and time spent (in hours) on the project during the billing period, as identified by an assigned time and activity code. Non-personal service costs shall be summarized by category of expense (*e.g.*, supplies, materials, travel, contractual) and shall be documented by expenditure reports.

VII.    Reservation of Rights

     A.     Except as provided in the Release and Covenant Not to Sue (Exhibit "C") after its issuance, nothing contained in this Order shall be construed as barring, diminishing, adjudicating, or in any way affecting any of the Department's or the Trustee's rights including, but not limited to, the right to recover natural resource damages, the right to take any investigatory or remedial action deemed necessary, and the right to exercise summary abatement powers with respect to any party, including Volunteer.

     B.     Except as otherwise provided in this Order, Volunteer specifically reserves all defenses under applicable law respecting any Departmental assertion of remedial liability against

Volunteer, and further reserves all rights respecting the enforcement of this Order, including the rights to notice, to be heard, to appeal, and to any other due process. The existence of this Order or Volunteer's compliance with it shall not be construed as an admission of liability, fault or wrongdoing by Volunteer, and shall not give rise to any presumption of law or finding of fact which shall inure to the benefit of any third party.

C.     Except as provided in Subparagraph XIV.M, Volunteer reserves such rights as it may have to seek and obtain contribution and/or indemnification from its insurers and from other potentially responsible parties or their insurers for past or future response/cleanup costs or such other costs or damages arising from the contamination at the Site as provided under applicable State and federal law.

VIII.   Indemnification

Volunteer shall indemnify and hold the Department, the State of New York, and their representatives and employees harmless for all claims, suits, actions, damages, and costs of every name and description arising out of or resulting from the fulfillment or attempted fulfillment of this Order prior to the Termination Date except for liability arising from willful, wanton or malicious acts or acts constituting gross negligence by the Department, the State of New York, and/or their representatives and employees during the course of any activities conducted pursuant to this Order.

IX.   Notice of Sale or Conveyance

A.     Within 30 Days after the effective date of this Order, Volunteer shall cause to be filed the Notice of Order, which is attached to this Order as Exhibit "D," with the County Clerk in the county in which the Site is located and provide evidence of such filing to the Department. Volunteer may terminate such Notice on or after the Termination Date.

B.     If Volunteer proposes to convey the whole or any part of Volunteer's ownership interest in the Site, Volunteer shall, not fewer than 60 Days before the date of conveyance, notify the Department in writing of the identity of the transferee and of the nature and proposed date of the conveyance and shall notify the transferee in writing, with a copy to the Department, of the applicability of this Order. However, such obligation shall not extend to the granting of any rights under any mortgage, deed, trust, assignment, judgment, lien, pledge, security agreement, lease or any other right accruing to a person to secure the repayment of money or the performance of a duty or obligation by a person not affiliated with Volunteer.

X.   Deed Restriction

Within 60 Days of the Department's approval of a Remediation Work Plan which relies upon institutional controls, Volunteer shall, unless otherwise authorized by the Department in writing, cause to be recorded a Department-approved instrument to run with the land with the County Clerk in the county in which the Site is located which is substantially similar to Exhibit

9

"E" attached to this Order, and shall provide the Department with a copy of such instrument certified by such County Clerk to be a true and faithful copy. The Volunteer may petition the Department to terminate the deed restriction filed pursuant to this Paragraph when the Site is protective of human health and the environment for residential uses without reliance upon the restrictions set forth in such instrument. The Department will not unreasonably withhold its approval of such petition.

XI.    Communications

    A.    All written communications required by this Order shall be transmitted by United States Postal Service, by private courier service, or hand delivered.

    1.    Communication from  shall be sent to:

Thomas Gibbons, P.E.
DER
N.Y.S. Department of Environmental Conservation
50 Wolf Road
Albany, New York 12233
Note: four copies (one unbound) of work plans are required to be sent.

Kevin Carpenter, Central Office VCP Coordinator
DER
N.Y.S. Department of Environmental Conservation
50 Wolf Road
Albany, New York 12233

Richard Gardineer
Region 2 Office
N.Y.S. Department of Environmental Conservation
One Hunter's Point Plaza
47-40, 21st Street
Long Island City, N.Y. 11101-5407

Gary Litwin
Bureau of Environmental Exposure Investigation
New York State Department of Health
Flanigan Square
547 River Street
Troy, New York 12180-2216
Note: two copies of work plans are required to be sent, and

Michael J. Lesser, Esq.
DEE
N.Y.S. Department of Environmental Conservation

10

50 Wolf Road
Albany, New York 12233

2. Communication from the Department to Volunteer shall be sent to:

For TRC:

Robert O. Harris, M.P.H.
Senior TRC Vice President
1200 Wall Street West 2nd Fl.
Lyndhurst, N.J. 07071

Gail S. Port, Esq.
Proskauer Rose LLP
1585 Broadway
New York, N.Y. 10036-8299, and,

For FSM:

Susan E. Fine, Esq.
Executive Vice President
FSM East River Associates LLC
299 Park Avenue
42nd Floor
New York, N.Y. 10171, and,

Martin L. Edelman, Esq.
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, N.Y. 10022

B.    The Department and Volunteer reserve the right to designate additional or different addressees for communication on written notice to the other.

XII.   Termination of Order

Either party may elect to terminate this Order, in which event this Order shall terminate effective the 5th Day after the written notification terminating this Order, except that such termination shall not affect the provisions contained in Paragraphs IV, VI and VIII and in Subparagraph XIV.M, nor Volunteer's obligation to ensure that it does not leave the Site in a condition, from the perspective of human health and environmental protection, worse than that which prevailed before any activities were commenced under this Order, which provisions and obligation shall survive the termination of this Order.

11

XIII.    Dispute Resolution

Volunteer may commence dispute resolution within 20 Days of Volunteer's receipt of the Department's notice of disapproval of a submittal or proposed Work Plan, disapproval of a final report, or termination of this Order pursuant to Subparagraph XIV.A.2. Disputes regarding Work Plan development and revision shall be heard by the Bureau Director of the Division of Environmental Remediation's remedial bureau within which the Site is located. All other disputes subject to dispute resolution shall be heard by the Assistant Division Director of the Division of Environmental Remediation. Volunteer shall serve upon the Department a request for dispute resolution and a written statement of the issues in dispute, the relevant facts upon which the dispute is based, factual data, analysis or opinion supporting its position, and all supporting documentation upon which Volunteer relies (hereinafter called the "Statement of Position"). The Department shall serve its Statement of Position no later than 20 Days after receipt of Volunteer's Statement of Position. Volunteer shall have the burden of proving that the Department's position should not prevail. A meeting or telephone conference can be scheduled if it will promote a resolution of the issues. A final decision resolving the dispute will be issued timely. The final decision shall constitute a final agency action and Volunteer shall have the right to seek judicial review of the decision pursuant to Article 78 of the CPLR if Volunteer commences such proceeding no later than 30 Days after receipt of a copy of the decision. The invocation of dispute resolution shall not extend, postpone or modify Volunteer's obligations under this Order with respect to any item not in dispute unless or until the Department agrees or a court determines otherwise. The Department shall keep an administrative record which shall be available consistent with Article 6 of the Public Officers Law.

XIV.    Miscellaneous

A.    1.    Volunteer hereby certifies that all information known to Volunteer and all information in the possession or control of Volunteer and its agents which relates in any way to the contamination existing at the Site on the effective date of this Order, and to any past or potential future release of hazardous substances, pollutants, or contaminants at or from the Site, and to its application for this Order, has been fully and accurately disclosed to the Department.

2.    If the information provided and certifications made by Volunteer are not materially accurate and complete, this Order, except with respect to the provisions of Paragraphs IV, VI and VIII and Subparagraph XIV.M, at the sole discretion of the Department, and shall be null and void *ab initio* 15 Days after the Department's notification of such inaccuracy or incompleteness and the Department shall reserve all rights that it may have, unless, however, Volunteer submits information within that 15 Day time period indicating that the information provided and the certifications made were materially accurate and complete.

C.    Each party shall have the right to take samples and to obtain split samples, duplicate samples, or both, of all substances and materials sampled by the other party.

D.    Volunteer shall allow the Department to attend and shall notify the Department at least 5 business days in advance of any field activities to be conducted pursuant to this Order as

well as any prebid meetings, job progress meetings, substantial completion meeting and inspection, and final inspection and meeting.

E.    Volunteer shall obtain all permits, easements, rights-of-way, rights-of-entry, approvals, or authorizations necessary to perform Volunteer's obligations under this Order, except that the Department may exempt Volunteer from the requirement to obtain any permit issued by the Department for any activity that is conducted on the Site and that the Department determines satisfies all substantive technical requirements applicable to like activity conducted pursuant to a permit.

F.    Volunteer shall not be considered an operator of the Site solely by virtue of having executed and/or implemented this Order.

G.    Volunteer shall provide a copy of this Order to each contractor and subcontractor hired to perform work required by this Order and to each person representing Volunteer with respect to the Site and shall condition all contracts entered into in order to carry out the obligations identified in this Order upon performance in conformity with the terms of this Order.

H.    The paragraph headings set forth in this Order are included for convenience of reference only and shall be disregarded in the construction and interpretation of any provisions of this Order.

I.    1.    The terms of this Order shall constitute the complete and entire Order between the Department and Volunteer concerning the implementation of the work plan(s) attached to this Order. No term, condition, understanding or agreement purporting to modify or vary any term of this Order shall be binding unless made in writing and subscribed by the party to be bound. No informal advice, guidance, suggestion, or comment by the Department regarding any report, proposal, plan, specification, schedule, or any other submittal shall be construed as relieving Volunteer of Volunteer's obligation to obtain such formal approvals as may be required by this Order. In the event of a conflict between the terms of this Order and any Work Plan submitted pursuant to this Order, the terms of this Order shall control over the terms of the Work Plan(s) attached as Exhibit "B." Volunteer consents to and agrees not to contest the authority and jurisdiction of the Department to enter into or enforce this Order.

2.    If Volunteer desires that any provision of this Order be changed, Volunteer shall make timely written application to the Commissioner with copies to the parties listed in Subparagraph XI.A and the Commissioner or his designee shall timely respond. This Subparagraph shall not extend to revisions to any Work Plan.

J.    The activities to be undertaken under the terms of this Order are not subject to review under the State Environmental Quality Review Act, ECL Article 8, and its implementing regulations.

K.    If there are multiple parties, the term "Volunteer" shall be read in the plural where required to give meaning to this Order. Further, the obligations of the Volunteers under this

Order are joint and several and the "bankruptcy" or inability to continue by any Volunteer shall not affect the obligations of the remaining Volunteer(s) to carry out the obligations under this Order.

L.      Except as provided in Subparagraph XIV.M., and to the extent authorized under 42 U.S.C. Section 9613 and any other applicable law, Volunteer shall not be liable for any claim, now or in the future, in the nature of contribution by potentially responsible parties concerning the alleged contamination which is the subject matter of this Order. In any future action brought by Volunteer against a potentially responsible party under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, the provisions of 42 U.S.C. Section 9613(f)(3) shall apply.

M.      Volunteer and its employees, servants, agents, lessees, sublessees, successors, and assigns hereby waive any right to pursue reimbursement of monies expended by Volunteer prior to the Termination Date as against the State or the Spill Fund, and agree to indemnify and hold harmless the Spill Fund from any and all legal or equitable claims, suits, causes of action, or demands whatsoever with respect to the Site that any of same has or may have as a result of Volunteer's entering into or fulfilling the terms of this Order with respect to the Site.

N.      Volunteer, Volunteer's lessees, sublessees, successors, and assigns shall be bound by this Order. Any change in ownership of Volunteer including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Volunteer's responsibilities under this Order. Volunteer's successors and assigns shall provide to the Department a certification that they agree to be bound by this Order within 30 Days of becoming a successor or assign.

O.      The effective date of this Order shall be the date it is signed by the Commissioner or his designee.

DATED: June 27, 2001

ERIN M. CROTTY, COMMISSIONER
NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION AND
TRUSTEE OF THE STATE'S NATURAL
RESOURCES

14

## CONSENT BY RESPONDENT TRC

Volunteer hereby consents to the issuing and entering of this Order, waives Volunteer's right to a hearing herein as provided by law, and agrees to be bound by this Order.

TRC Companies, Inc.

By: _____
Michael Salmon

Title: Senior Vice President

Date: May 25, 2001

STATE OF ~~NEW YORK~~ *California*  )
                                    ) s.s.:
COUNTY OF *Orange*  )

On the *25th* day of *May*, in the year 2001, before me, the undersigned, personally appeared *Michael Salmon*, personally known to me ~~or proved to me on the basis of satisfactory evidence~~ to be the individual(s) whose name is ~~(are)~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ capacity(~~ies~~), and that by his/~~her/their~~ signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of individual
taking acknowledgment

THICH VAN PHUNG
Commission # 114___
Notary Public - C__
Orange __
My Comm. E___

18

## CONSENT BY RESPONDENT FSM

Volunteer hereby consents to the issuing and entering of this Order, waives Volunteer's right to a hearing herein as provided by law, and agrees to be bound by this Order.

FSM EAST RIVER ASSOCIATES LLC

By: _Susan Fine_

Title: _Executive Vice President_

Date: _May 29, 2001_

STATE OF NEW YORK    )
                     ) s.s.:
COUNTY OF _NEW YORK_ )

On the _29th_ day of _May_, in the year 2001, before me, the undersigned, personally appeared _Susan Fine_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_Cheryl Bloom_

Signature and Office of individual
taking acknowledgment

CHERYL BLOOM
Notary Public, State of New York
No. 31-4755382
Qualified in New York County
Commission Expires 4/30/2022

16

EXHIBIT "A"

Map of Site



KEY
P1 – Parking Lot
KB – Kips Bay Terminal
OB – 708 Office Building
WS-1 – Waterside 1
WS-2 – Waterside 2
SH – Switch House
TH – Tie House

East River

EXHIBIT "B"

Department-Approved Work Plan(s)

18

EXHIBIT "C"
Release and Covenant Not to Sue

Unless otherwise specified in this letter, all terms used in this letter shall have the meaning assigned to them under the terms of the Voluntary Order entered into between the New York State Department of Environmental Conservation (the "Department") and_____ ("Volunteer"), Index No._____ (the "Order").

The Department is pleased to report that the Department is satisfied that the Order's Work Plan(s) relative to the Site, located at_____ _____has been successfully implemented.

The Department and the Trustee of New York State's natural resources ("Trustee"), therefore, hereby release, covenant not to sue, and shall forbear from bringing any action, proceeding, or suit against Volunteer and Volunteer's lessees and sublessees, successors and assigns, and their respective secured creditors, for the further investigation and remediation of the Site, and for natural resource damages based upon the release or threatened release of Covered Contamination, provided that (a) timely payments of the amounts specified in Paragraph VI of the Order continue to be or have been made to the Department, (b) appropriate deed restrictions remain recorded in accordance with Paragraph X of the Order, and (c) Volunteer and/or its' lessees, sublessees, successors, or assigns promptly commence and diligently pursue to completion the Work Plan providing for OM&M, if any. Nonetheless, the Department and the Trustee hereby reserve all of their respective rights concerning, and such release, covenant not to sue, and forbearance shall not extend to any further investigation or remedial action the Department deems necessary:

- due to off-Site migration of petroleum;

- due to environmental conditions or information related to the Site which were unknown at the time this Release and Covenant not to Sue was issued and which indicate that the Contemplated Use cannot be implemented with sufficient protection of human health and the environment;

- due to Volunteer's failure to implement the Order to the Department's satisfaction; or

- due to fraud committed by Volunteer in entering into or implementing this Order.

Additionally, the Department and the Trustee hereby reserve all of their respective rights concerning, and any such release, covenant not to sue, and forbearance shall not extend to Volunteer nor to any of Volunteer's lessees, sublessees, successors, or assigns who cause or allow a release or threat of release at the Site of any hazardous substance (as that term is defined at 42 USC 9601[14]) or petroleum (as that term is defined in Navigation Law § 172[15]), other than Covered Contamination; or cause or allow the use of the Site to change from the Contemplated Use to one requiring a lower level of residual contamination before that use can be implemented with sufficient protection of human health and the environment; nor to any of

19

Volunteer's lessees, sublessees, successors, or assigns who is otherwise a party responsible under law for the remediation of the Existing Contamination independent of any obligation that party may have respecting same resulting solely from the Order's execution.

Notwithstanding the above, however, with respect to any claim or cause of action asserted by the Department or the Trustee the one seeking the benefit of this release, covenant not to sue, and forbearance shall bear the burden of proving that the claim or cause of action, or any part thereof, is attributable solely to Covered Contamination.

Notwithstanding any other provision in this release, covenant not to sue, and forbearance,

- if with respect to the Site there exists or may exist a claim of any kind or nature on the part of the New York State Environmental Protection and Spill Compensation Fund against any party, nothing in this letter shall be construed or deemed to preclude the State of New York from recovering such claim.

- except as provided in this letter and in Order, nothing contained in the Order or in this letter shall be construed as barring, diminishing, adjudicating, or in any way affecting any of the Department's or the Trustee's rights (including, but not limited to, the right to recover natural resources damages) with respect to any party, including Volunteer.

- nothing contained in this letter shall prejudice any rights of the Department or the Trustee to take any investigatory or remedial action it deems necessary if Volunteer fails to comply with the Order or if contamination other than Existing Contamination is encountered at the Site.

- nothing contained in this letter shall be construed to prohibit the Commissioner or his duly authorized representative from exercising any summary abatement powers.

- nothing contained in this letter shall be construed to affect the Department's right to terminate the Order under the terms of the Order at any time during its implementation if Volunteer fails to comply substantially with the Order's terms and conditions.

In conclusion, the Department is pleased to be part of this effort to return the Site to productive use of benefit to the entire community.

NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION AND
TRUSTEE OF THE NEW YORK STATE'S NATURAL
RESOURCES


By:_____

Appendix "A"

(to Exhibit "C")

Map of the Site

Exhibit "D"

## NOTICE OF ORDER

This Notice is made as of the _____ day of _____, 2001 by _____ regarding a parcel of real property located at_____ bearing Tax Map Number_____ (the "Property"); and

WHEREAS,_____("Volunteer"), entered into an Order with the Department, Index #_____ ( the "Order"), concerning the remediation of contamination present on the Property, which Order was signed by the Commissioner of Environmental Conservation on _____; and

WHEREAS, in return for the remediation of the Property pursuant to the Order to the satisfaction of the Department, the Department will provide Volunteer and its lessees and sublessees, successors and assigns, including their respective secured creditors, with a release, covenant not to sue, and forbearance from bringing any action, proceeding, or suit related to the Site's further investigation or remediation, subject to certain reservations set forth in the Order; and

WHEREAS, pursuant to the Order, Volunteer agreed to give notice of the Order to all parties who may acquire any interest in the Property by filing this Notice with the_____ County Clerk,

NOW, THEREFORE, Volunteer, for itself and for its successors and assigns, declares that:

1.      This Notice of the Order is hereby given to all parties who may acquire any interest in the Property; and

2.      This Notice shall terminate upon the filing by Volunteer, or its successors and assigns, of a termination of notice of Order after having first received approval to do so from the New York State Department of Environmental Conservation or having terminated the Order pursuant to its Paragraph XII.

IN WITNESS WHEREOF, Volunteer has executed this Notice of Order by its duly authorized representative.


Dated:                                    By: _____

STATE OF NEW YORK                  )
                                             ) ss:

COUNTY OF                             )


On the _____ day of _____, in the year 2001, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.



_____
Signature and Office of individual
taking acknowledgment

Appendix "A"

(to Exhibit "D")

Map of the Property

Exhibit "E"

## DEED RESTRICTION

shall prohibit the Site from ever being used for purposes other than for the Contemplated Use without the express written waiver of such prohibition by the Department, or if at such time the Department shall no longer exist, any New York State department, bureau, or other entity replacing the Department;

shall prohibit the use of the groundwater underlying the Site without treatment rendering it safe for drinking water or industrial purposes, as appropriate, unless the user first obtains permission to do so from the Department, or if at such time the Department shall no longer exist, any New York State department, bureau, or other entity replacing the Department;

shall require Volunteer and Volunteer's successors and assigns to continue in full force and effect any institutional and engineering controls the Department requires Volunteer to put into place and maintain; and

shall provide that Volunteer, on behalf of itself and its successors and assigns, hereby consents to the enforcement by the Department, or if at such time the Department shall no longer exist, any New York State department, bureau, or other entity replacing the Department, of the prohibitions and restrictions that this Paragraph X requires to be recorded, and hereby covenants not to contest such enforcement.

Glossary of Terms

The following terms shall have the following meanings:

"ALJ": Administrative Law Judge

"Covered Contamination":the concentrations of Existing Contamination remaining on the Site on the date that the Department issues the Release set forth in Exhibit "C."

"ECL": the Environmental Conservation Law.

"Force Majeure Event": an event which is brought on as a result of fire, lightning, earthquake, flood, adverse weather conditions, strike, shortages of labor and materials, war, riot, obstruction or interference by adjoining landowners, or any other fact or circumstance beyond Volunteer's reasonable control.

"Day": a calendar day unless otherwise specified.

"Department": the New York State Department of Environmental Conservation.

"IRM": an interim remedial measure which is a discrete set of activities which can be undertaken without extensive investigation and evaluation to prevent, mitigate, or remedy environmental damage or the consequences of environmental damage attributable to a Site.

"NL": the Navigation Law

"OM&M WORK Plan": the Department-approved work plan detailing post-remedial operation, maintenance, and monitoring at the Site that Volunteer shall implement.

"Professional engineer": an individual registered as a professional engineer in accordance with Article 145 of the New York State Education Law. If such individual is a member of a firm, that firm must be authorized to offer professional engineering services in the State of New York in accordance with Article 145 of the New York State Education Law.

"Spill Fund": the New York State Environmental Protection and Spill Compensation Fund

"State Costs": all the State's expenses including, but not limited to, direct labor, fringe benefits, indirect costs, travel, analytical costs, and contractor costs incurred by the State of New York for negotiating, implementing, and administering this Order. Approved agency fringe benefit and indirect cost rates will be applied.

"Termination Date": the date upon which (i) the Release (Exhibit "C") is issued or the Department approves the final report relative to the OM&M at the Site, whichever is later; or (ii) the Order terminates pursuant to Paragraph XII. or Subparagraph XIV.A.2.

"Trustee": the Trustee of New York State's natural resources.

"Work Plan": a Department-approved work plan, as may be modified, pertaining to the Site that Volunteer shall implement and that is attached to this Order.

# Attachment H

# Site's Environmental History

## ATTACHMENT H

### SITE'S ENVIRONMENTAL HISTORY

1. ENVIRONMENTAL DATA:

Please refer to the following principal environmental reports and plans previously submitted to NYSDEC in accordance with the Voluntary Cleanup Program application and under the VCO:

a.    616 First Avenue - Kips Bay Fuel Oil Terminal - VCP Site Number V-00-430-2

1. *Phase I Environmental Site Assessment*, Kips Bay Fuel Terminal, Manhattan, New York Foster Wheeler, September 1998.
2. *Phase II Environmental Site Assessment*, Kips Bay Fuel Terminal, GZA GeoEnvironmental Inc., March 2000.
3. *Supplemental Soil Investigation Work Plan*, First Avenue Properties, New York, New York, TRC, February 2001.
4. *Supplemental Soil Investigation Final Report and Remediation Work Plan*, Kips Bay Fuel Terminal, 616 First Avenue, New York, New York, TRC, August 2003. (Approved August 13, 2003 (Approval letter attached)).

2. OWNERS:

Present owner of the site:  Consolidated Edison Company of New York, Inc. formerly known as Edison Electric Illuminating Co. of New York, The New York Edison Company , Equitable Gas Light Company of New York and the New York Steam Corporation (by Certificate of Merger).

PREVIOUS OWNERS:

616 First Avenue (Kips Bay Fuel Terminal):  Bellum Supply Company, Inc.
        Relationship to Co-Applicants:  None

3. OPERATORS:

Consolidated Edison Company of New York, Inc.
4 Irving Place
New York, New York 10003

Relationship to Co-Applicant:

TRC Companies, Inc. is the remediation contractor under the VCO pursuant to the Exit Strategy® Contract between TRC Companies, Inc  and previous operator Consolidated Edison Company of New York, Inc.

East River Realty Company, LLC is the contract vendee and future developer of the Kips Bay Fuel Terminal Site.

# Attachment I


# Contact
# List
# Information

## ATTACHMENT I

## CONTACT LIST INFORMATION

1.  THE CHIEF EXECUTIVE OFFICER AND ZONING BOARD CHAIRPERSON OF EACH COUNTY, CITY, TOWN AND VILLAGE IN WHICH THE SITE IS LOCATED.

    A.  Chief Executive Officer
        Mayor Michael R. Bloomberg
        City Hall
        New York, New York 10007

    B.  City of New York, Director of Zoning Department
        Michael Weil
        Department of City Planning
        22 Reade Street
        New York, New York 10007

    C.  Manhattan Borough Office
        Vishaan Chakrabarti
        22 Reade Street, 6th Floor West
        New York, New York 10007-1216
        Tel:  (212) 720-3480

2.  RESIDENTS, OWNERS, AND OCCUPANTS OF THE SITE AND PROPERTIES ADJACENT TO THE SITE.

    616 First Avenue:  North is Manhattan Place apartment building (630 First Avenue); east is FDR Drive; south is Rivergate apartments (606 First Avenue); west is St. Vartan's Park.

3.  LOCAL NEWS MEDIA FROM WHICH THE COMMUNITY TYPICALLY OBTAINS INFORMATION.

    Newspapers:  Daily News, New York Post, Our Town (c/o Manhattan Media)
    Television:  NY1

4.  THE PUBLIC WATER SUPPLIER WHICH SERVICES THE AREA IN WHICH THE SITE IS LOCATED.

    New York City Department of Environmental Protection
    59-17 Junction Boulevard
    Corona, New York 11368

**Attachment I (cont'd)**

5.    ANY PERSON WHO HAS REQUESTED TO BE PLACED ON THE SITE CONTACT LIST.

**DEPARTMENT OF PUBLIC SERVICE**
**KEVIN LANG, ESQ.**
Three Empire State Plaza
Albany, NY 12223-1350
Phone: 518-473-1140
Fax:    518-486-5710
Email: Kevin_Lang@dps.state.ny.us

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.**
4 Irving Place, Room 1815-S
New York, NY 10003
**CHANOCH LUBLING, ESQ.**
Phone: 212-460-3302
Fax:    212-677-5850
Email: LublingC@coned.com
**CANDIDA L. CANIZIO, ESQ.**
Phone: 212-460-3188
Fax:    212-260-8627
Email: CanizioC@coned.com
**MARY KRAYESKE, ESQ.**
Phone: 212-460-1340
Fax:    212-677-5850
Email: KrayeskeM@coned.com

**ALAN M. BERMAN, ESQ.**
**LEBOEUF, LAMB, GREENE & MACRAE, L.L.P.**
125 West 55th Street
New York, NY 10019-5389
Phone: 212-424-8215
Fax:    212-424-8500
Email: aberman@llgm.com

Attachment I (cont'd)

**EAST RIVER REALTY COMPANY, LLC**
9 West 57th Street, Suite 1610
New York, NY 10019
**JAMES A. SCHMIDT**
Phone: 212-308-0163
Fax:    212-308-3877
Email: jschmidt@eastriverrealty.com
**MARILYN B. SELIG**
Phone: 212-308-5198
Fax:    212-308-3877
Email: mselig@eastriverrealty.com

**DANIEL RIESEL, ESQ.**
**MICHAEL S. BOGIN, ESQ.**
**SIVE, PAGET & RIESEL, P.C.**
460 Park Avenue, 10th Floor
New York, NY 10022-1906
Phone: 212-421-2150
Fax:    212-421-1891
Email: driesel@sprlaw.com
          mbogin@sprlaw.com

**TRC COMPANIES, INC.**
1200 Wall Street West, 2nd Floor
Lyndhurst, New Jersey, 07071
**EDWARD J. MALLEY**
**MICHAEL A. SKIRKA, CHMM**
Phone: 201-933-5541
Fax:    201-933-5601
Email: emalley@trcsolutions.com
          mskirka@trcsolutions.com
**GAIL S. PORT ESQ.**
Proskauer Rose, LLP
1585 Broadway
New York, NY 10036-8299
Phone: 212-969-3243
Fax:    212-969-2900
Email: gport@proskauer.com

**GIL QUINONES**
**NEW YORK CITY ECONOMIC**
**DEVELOPMENT CORPORATION**
110 William Street, 4th Floor
New York, NY 10038
Phone: 212-312-3762
Fax:    212-312-3915
Email: gquinones@nycedc.com

**EDAN G. UNTERMAN**
**EAST MIDTOWN COALITION FOR SENSIBLE DEVELOPMENT**
527 Third Avenue - #139
New York, NY 10016
Phone: 212-699-4599
Fax:
Email:  Eunterman@aol.com

Attachment I (cont'd)

**HON. C. VIRGINIA FIELDS**
**MANHATTAN BOROUGH PRESIDENT**
Attn:   Len Chong
Director Land Use Housing and Development
One Centre Street, 19th Fl. S.
New York, NY 10008
Phone: 212-669-8130
Fax:    212-669-7862
Email:  lghong@manhattanbp.org

**HON. EVA S. MOSKOWITZ**
**COUNCIL MEMBER, 4TH DISTRICT**
Attn:   Josh Karetny
370 Lexington Avenue
Suite 2001A
New York, NY 10017
Phone: 212-818-0580
Fax:    212-860-0704
Email:  moskowitz@council.ny.cny.us
        j.karetny@inetmail.att.net

**HON. MARTIN CONNOR**
**SENATOR, 25TH DISTRICT**
270 Broadway, Suite 2011
New York, NY 10007
Phone: 212-298-5565
Fax:    212-298-5574
Email:  connor@senate.state.ny.us

**HON. THOMAS K. DUANE**
**SENATOR, 27TH DISTRICT**
Attn:   Brian Sogol
494 Eighth Avenue, #503
New York, NY 10001
Phone: 212-414-0200
Fax:    212-414-2156
Email:  duane@senate.state.ny.us

**HON. RICHARD N. GOTTFRIED**
**ASSEMBLYMAN, 64TH DISTRICT**
Attn:   Michael Rabinowitz
242 West 27th Street
New York, NY 10001
Phone: 212-807-7900
Fax:    212-243-2035
Email:  msrabiniowitz@pobox.com

Attachment I (cont'd)

**HON. JONATHAN BING**
**ASSEMBLYMAN, 73RD DISTRICT**
360 East 57th Street
Mezzanine Level
New York, NY 10022
Phone: 212-605-0937
Fax:
Email: bingj@assembly.state.ny.us

**HON. STEVEN SANDERS**
**ASSEMBLYMAN, 63RD DISTRICT**
Attn:   Burt Nusbacher
201 East 16th Street, 4th Floor
New York, NY 10003
Phone: 212-979-9696
Fax:    212-979-0594
Email: sanders@assembly.state.ny.us

**OUR TOWN**
63 West 38th Street, Suite 206
New York, NY 10018
Website: www.manhattanmedia.com

**HON. CAROLYN B. MALONEY**
**CONGRESSWOMAN, 14TH DISTRICT**
Attn:   Philip Craft
1651 Third Avenue, Suite 311
New York, NY 10128
Phone: 212-860-0606
Fax:    212-860-0704
Email: Philip.craft@mail.house.gov

**DEPARTMENT OF CITY PLANNING**
22 Reade Street, 4E
New York, NY 10007-1216
**ROBERT DOBRUSKIN, DIRECTOR**
**ENVIRONMENTAL ASSESSMENT & REVIEW**
Phone: 212-720-3423
Fax:    212-720-3495
Email: rdobrus@planning.nyc.gov
**BARRY DINERSTEIN**
Phone: 212-720-3324
Fax:    212-720-3495
Email: bdiners@planning.nyc.gov

**Attachment I (cont'd)**

**MANHATTAN CONMMUNITY BOARD #6**
**JOHN P. WEST, III**
5 West 37th Street
New York, NY 10018
Phone: 212-869-5300, Ext. 566
Fax:    212-997-2572
Email: jwest@communityp.com

**CHARLES BUCHWALD**
300 East 40th Street
New York, NY 10016
Phone: 212-634-8338
Fax:    212-687-7030
Email: cbuch@aya.yale.edu

**LOU SEPERSKY, PRESIDENT**
**COMMUNITY BOARD #6**
866 UN Plaza, Suite 308
New York, NY 10017
Phone: 212-319-3750
Fax:    212-319-3772
Email: cb6chair@aol.com

**Attachment I (cont'd)**

**GEORGE R. BROWN V, PRESIDENT**
**TUDOR CITY A'SSOCIATION, INC.**
5 Tudor City Place, #5-E
New York, NY 10017-6881
Phone: 212-471-2990
Fax:
Email:

**SUSAN STEINBERG, PRESIDENT**
**EAST RIVER ENVIRONMENTAL COALITION**
P.O. Box 1619, Peter Stuyvesant Station
New York, NY 10009
Phone: 212-606-4040
Fax:    212-420-4792
Email: steinberg@go2wasa.com

**GARY LITWIN**
**STATE OF NEW YORK DEPARTMENT OF HEALTH**
Flanigan Square, 547 River Street
Troy, NY 12180-2216
Phone: 718-482-4973
Fax:    718-482-4043
Email:

**MARY CLARE BERGIN, PRESIDENT**
**SUTTON AREA COMMUNITY, INC.**
60 Sutton Place South
New York, NY 10022
Phone:
Fax:
Email:

**FRED ARCARO, PRESIDENT**
**MANHATTAN EAST COMMUNITY ASSOCIATION**
415 East 37th Street, Suite 10G
New York, NY 10016-3211
Phone: 212-855-2390
Fax:    212-855-2345
Email: FredtheT@aol.com

**Attachment I (cont'd)**

**DIVISION OF ENVIRONMENTAL REMEDIATION**
**NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL**
   **CONSERVATION**
625 Broadway
Albany, NY 12233-7016
**MICHAEL LESSER**
Phone: 518-402-2794

**HON. LIZ KRUEGER**
**SENATOR, 26TH DISTRICT**
211 East 43rd Street, Suite 1300
New York, NY 10017
Phone:
Fax:
Email:

**KAY S. XANTHAKOS**
630 First Avenue, 21D
New York, NY 10016
Phone: 212-689-1345
Fax:
Email: xanthakos@aol.com

**ROBERT COZZY**
Division of Environmental Remediation
New York State Department of Environmental Conservation
625 Broadway
Albany, NY 12233-7016
Phone: 518-457-7924
Fax: 518-457-4198
Email: rjcozzy@gw.dec.state.ny.us

**Attachment I (cont'd)**

**JANE O'CONNELL**
New York State Department of Environmental Conservation
1 Hunter's Point Plaza, 47-40 21ˢᵗ Street
Long Island City, NY 11101-5407
Phone: 718-482-4973
Fax:    718-482-4043
Email: jhoconne@gw.dec.state.ny.us

**KRISTA ANDERS**
State of New York Department of Health
Flanigan Square, Room 300
547 River Street
Troy, NY 12180-2216
Phone:        518-402-7880
Fax:    518-402-7859
Email: kma06@health.state.ny.us

**MARK LOWERY**
Chief Bureau of Public Out Reach
Div. of Environmental Remediation
New York State Department of Environmental Conservation
625 Broadway
Albany, NY 12233-7016
Phone:        518-402-8027
Fax:    518-402-9036
Email:

**THOMAS KUNKEL**, Regional Director
NY State Dept. of Environmental Conservation
1 Hunter's Point Plaza, 47-40 21ˢᵗ Street
Long Island City, NY 11101-5407
Phone: 718-482-4900
Fax:    718-482-4954
Email:

6.    THE ADMINISTRATOR OF ANY SCHOOL OR DAY CARE FACILITY LOCATED
      ON OR NEAR THE SITE.

The following day care center is located near the site:

           Pre-School Development
           400 East 34ᵗʰ Street
           New York, New York 10016

**Attachment I (cont'd)**

The following schools are located near the site:

1. P.S. 116
   Mary L. Murray School
   210 East 33rd Street
   New York, New York 10016
   Principal: Jane Hsu
   Tel: (212) 685-4366

2. Norman Thomas High School
   111 East 33rd Street
   New York, New York 10016
   Principal: Steven M. Satin
   Tel: (212) 576-0500

3. United Nations International School
   24-50 FDR Drive
   New York, New York 10010
   Director: Dr. Kenneth Wyre
   Tel: (212) 684-7400

4. The Family School
   323 East 4th Street
   New York, New York 10017
   Director: Lesley Nan Haberman
   Tel: (212) 688-5950

5. The Beekman School and Tutoring Center
   220 East 50th Street
   New York, New York 10022
   Headmaster: George Higgins
   Tel: (212) 755-6666

7. THE LOCATION OF A DOCUMENT REPOSITORY FOR THE PROJECT (E.G., LOCAL LIBRARY)

Dan Walsh
New York State Department of Environmental Conservation
Region 2
1 Hunter's Point Plaza
47-40 21st Street
Long Island City, New York 11101

New York Public Library
Kips Bay Branch
446 Third Avenue
New York, New York 10016

# Attachment J

# Contaminant Information

## ATTACHMENT J

## CONTAMINANT INFORMATION

Please refer to the documents listed in Attachments G and H. These documents present the environmental contaminant information for the Kips Bay Fuel Terminal Site.

# Attachment K

# Land
# Use
# Factors
Question 13

ATTACHMENT K

LAND USE FACTORS
QUESTION 13

QUESTION: Describe the proximity to real property currently used for residential use, and to urban, commercial, industrial, agricultural and recreational areas.

ANSWER: The Kips Bay Fuel Terminal Site is located at the edge of the densely-built urban area of Midtown Manhattan. The area around the site contains residential, commercial, industrial and recreational areas.

Several residential neighborhoods are located in the area of the Site. Each of these neighborhoods contains a mixture of residential towers, smaller residential buildings, ground-floor retail uses, and smaller office buildings. More specifically, the Kips Bay Fuel Terminal Site has residential areas immediately to the north and south of the property.

In the immediate vicinity of the subject properties, there are a variety of commercial areas that tend to be neighborhood oriented – shops, restaurants and delis, and local commercial establishments and services.

The Site is near the present location of the Consolidated Edison Company's Waterside electric generating facility, an industrial use. Other industrial or related infrastructure uses include a New York City Department of Environmental Protection ("NYCDEP") water maintenance facility directly south of the Waterside electric generating facility and two Consolidated Edison substations, one just south of the NYCDEP facility and one adjacent to the 685 First Avenue parking lot.

There are several recreation spaces in the area of the site: Robert Moses playground, located just north of the 708 First Avenue site between East 41st and 42nd Streets; a stretch of the East River Esplanade, from south of East 38th Street to East 40th Street (with a few interruptions); and St. Vartan's Park between East 35th Street and East 36th Streets, and First and Second Avenues. There are also several public plazas associated with residential buildings in the area.

# Attachment L

## Land
## Use
## Factors
## Question 14

## ATTACHMENT L

## LAND USE FACTORS
## QUESTION 14

QUESTION:  Describe the potential vulnerability of groundwater to contamination that might migrate from the site, including proximity to wellhead protection and groundwater recharge areas.

ANSWER:  The site investigations and NYSDEC comments to date have not indicated any issues at the site with respect to contaminant migration that might adversely impact potential ground water receptors.  There are no significant wellhead protection zones, ground water recharge areas or other sensitive receptors located within the geographic domain covered under the completed site investigations or the associated Remediation Work Plans.

In addition, the aforementioned NYSDEC-approved Remediation Work Plans address the required complete remediation of ground water contamination sources and monitoring of any related ground water contamination until NYSDEC grants approval for no further action.

# Attachment M

# Land
# Use
# Factors
## Question 15

ATTACHMENT M

**LAND USE FACTORS**
**QUESTION 15**

QUESTION: Describe the geography and geology of the Site.

ANSWER: This information is contained in the NYSDEC-approved Remediation Work Plan for the site previously submitted under the Voluntary Cleanup Program. The site geography, regional geology/ hydrogeology, and site-specific geology/hydrogeology are thoroughly described for the Site in Section 3.0 of the Remediation Work Plan.