UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

                                                    :

EAST RIVER REALTY COMPANY LLC,                      :

                              Plaintiff,            :

                                                    :        Docket No. 1:06-CV-05417 (WHP)

              -against-                             :

                                                    :

TRC COMPANIES, INC.,                               :
TRC ENGINEERS, INC.,                               :
TRC ENVIRONMENTAL CORPORATION,                     :

                              Defendants.           :

                                                    :

                                                    :

------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

RELEVANT BACKGROUND .........................................................................................4

    A. Citizenship of Plaintiff ERRC and Defendant TRC Engineers ..........................4

    B. Citizenship of Con Edison and the AIG Entities ...............................................6

    C. The Relevant Contract Provisions and New York Remediation Programs........6

        1.   TRC's Obligations Under the Contract ......................................................6

        2.   The Integrated Insurance Policies...............................................................8

        3.   The Required Consent from Con Edison and AIG.....................................10

ARGUMENT ...................................................................................................................12

I.    The Complaint Should Be Dismissed Under Rule 12 (b)(1) for Lack of Subject Matter
      Jurisdiction:  Plaintiff ERRC and Defendant TRC Engineers are not Diverse ...................12

II.   The Complaint Should Be Dismissed Under Rules 12(b)(7) and 19(b):  Consolidated Edison
      and AIG Each are Indispensable, But Non-Diverse, Parties................................................14

    A. Legal Standards Concerning Indispensable Parties ........................................14

    B. Con Edison is an Indispensable Party to ERRC's Claims Under the Contract ................16

    C. AIG is an Indispensable Party to ERRC's Claims Under the Contract ............................18

III.  The Complaint Should Be Dismissed Under Rule 12(b)(6):  ERRC Fails to State Any Claim
      for Relief ...............................................................................................................20

    A. TRC Has No Contractual Obligation to Enter Into the BCA ..........................21

    B. ERRC's Additional Breach of Contract Theories Also Fail as a Matter of Law ..............23

    C. ERRC's Claim for Breach of the Duty of Good Faith and Fair Dealing is Entirely
      Duplicative of Its Erroneous Breach of Contract Theory.................................24

CONCLUSION................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Circle Indus., Div of Nastasi-White, Inc. v. City Fed. Sav. Bank*, 749 F. Supp. 447 (E.D.N.Y.)....4

*Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Wash.*
699 F.2d 1274 (D.C. Cir. 1983) ..............................................................15

*Compucon Distribs. of New England, Inc. v. Cooper*, 685 F. Supp. 424 (S.D.N.Y. 1988) ..........14

*Conley v. Gibson*, 355 U.S. 41 (1957) .........................................................20

*Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690 (2d Cir. 1980) ...........................16

*CVC Claims Litig. LLC v. Citicorp Venture Capital Ltd.*
2006 WL 1379596 (S.D.N.Y. May 18, 2006) ..........................................22, 23

*East River Constr. Corp. v. District of Columbia*, 183 F. Supp. 684 (D.C. 1960) ......................23

*Eastern Transfer of N.Y., Inc. v. Cahill*, 707 N.Y.S.2d 521 (3d Dep't 2000) ........................17, 22

*Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70 (2d Cir. 1984) ....................................15

*Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426 (1991)..........................................13

*Global Disc. Travel Servs., Inc. v. Trans World Airlines, Inc.*
960 F. Supp. 701 (S.D.N.Y. 1997).......................................................................16

*Global Intellicom, Inc. v. Thomson Kernaghan & Co.*
1999 WL 544708 (Jul. 27, 1999 S.D.N.Y.)..............................................................23

*Grupo Dataflux v. Atlas Global Group*, 541 U.S. 567 (2004) ....................................13

*Halpern Dev. Venture, Inc. v. Bd. of Trustees of the Village of N. Tarrytown*
669 N.Y.S.2d 606 (2d Dep't 1998)..........................................................................25

*Inland Rubber Corp. v. Triple A Tire Serv., Inc.*, 220 F. Supp. 490 (S.D.N.Y. 1963) ................13

*Kinney v. Kinney*, 369 N.Y.S.2d 258 (4th Dep't 1975) ..............................................22

*Landau v. Wolverine Hotel Co.*, 33 F. Supp. 705  (N.D. Ill. 1940)............................................23

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp*, 424 F.3d 195 (2d Cir. 2005).............20

*Luckett v. Bure*, 290 F.3d 493 (2d Cir. 2002).......................................................4, 12

*Meadowlands Invs. LLC v. CIBC World Mkts.*
2005 U.S. Dist. LEXIS 21102 (S.D.N.Y. Sept. 22, 2005) ......................................24

*Nat'l Westminster Bank PLC v. Grant Prideco, Inc.*, 261 F. Supp. 2d 265 (S.D.N.Y. 2003) ......24

*Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365 (1978)....................................13

*People Express Pilot Merger Comm. v. Texas Air Corp.*
1987 U.S. Dist. LEXIS 9293 (D.N.J. Oct. 14, 1987)............................................19

*R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651 (2d Cir. 1979)...............................13

*Randolph Found. v. Duncan*, 2002 WL 32862 (S.D.N.Y. Jan. 11, 2002) ....................................15

*Reale v. Sotheby's, Inc.*, 718 N.Y.S.2d 37 (1st Dep't 2000) .......................................25

*Rooney v. Slomowitz*, 784 N.Y.S.2d 189 (3d Dep't 2004) .........................................24

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119 (2d Cir. 2005)..............................20

*Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518 (D. Conn. 1991)......................15

*Tucker Anthony, Inc. v. Bankers Trust Co.* 1994 U.S. Dist. LEXIS 128 (S.D.N.Y. Jan. 7, 1994) 14

*United States ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968 (W.D. Mich. 2003)...............4

*Visual Word Sys., Inc. v. CPT Corp.*, 1985 WL 567 (S.D.N.Y. Apr. 19, 1985) ..........................20

## Statutes

I.R.C. § 164(a)(3).................................................................................................24

N.Y. E.C.L. § 27-1401, *et seq.* ...........................................................................22

## Rules

Fed. R. Civ. P. 12(b)(1).........................................................................................12

Fed. R. Civ. P. 12(b)(6).............................................................................20, 21, 23

Fed. R. Civ. P. 12(b)(7).................................................................................19, 20

Fed. R. Civ. P. 19(a)...............................................................................................14

Fed. R. Civ. P. 19(b)...............................................................................................15

Defendants TRC Companies, Inc., TRC Engineers, Inc. and TRC Environmental

Corporation, (collectively "TRC"), submit this memorandum in support of their motion under

Fed. R. Civ. P. 12(b)(1), (6), (7) and 19 to dismiss the Complaint of Plaintiff East River Realty

Company LLC ("ERRC") for lack of subject matter jurisdiction, failure to join indispensable

parties, and failure to state a claim upon which relief can be granted.

## INTRODUCTION

This case presents a plainly improper effort by ERRC to invoke this Court's jurisdiction

and force extra-contractual obligations on TRC after ERRC's overbearing "negotiation" strategy

failed.  If ERRC truly believed its claims that TRC breached its contract by at least August 2005

and that the breach allegedly caused ERRC "millions of dollars" in damages (Cmpl., ¶¶ 53-54),

ERRC would have filed suit far earlier.  That ERRC instead only filed this action after years of

trying to bully TRC into yielding to ERRC's demands reveals the hollowness of ERRC's claims

of breach, as well as its sudden claimed need for expedited relief.  The Court need not pass on

ERRC's transparent strategy, however, because ERRC's Complaint should be dismissed under

Fed. R. Civ. P. 12 and 19 for: (1) lack of subject matter jurisdiction; (2) failure to join

indispensable parties, and (3) failure to state a claim for relief.

The sole alleged basis for any relationship among ERRC and TRC is an express, written,

and fully integrated agreement – namely a November 15, 2000 Exit Strategy® Contract (the

"Contract"), which ERRC incorporates by reference in and attaches to its Complaint (Cmpl., Ex.

B).[1]  As ERRC admits, the Contract was executed among the three TRC defendants and

Consolidated Edison Company of New York ("Con Edison").  At the time the Contract was

signed, ERRC's predecessor was merely a third-party beneficiary (although several years later

ERRC acquired certain other rights under the Contract) (Cmpl.,¶¶ 27, 29; Contract, § 12).  In the

---

[1]  All citations in this brief to the Contract (and its Amendment) are to Ex. B. to the Complaint.

Contract, TRC covenanted to Con Edison to demolish structures on four Manhattan properties (the "Properties"), to apply for and participate in a specific New York environmental remediation program called the Voluntary Cleanup Program ("VCP"), to obtain and maintain a Consent Order under the VCP, and to remediate the Properties to a certain depth in accordance with the VCP and the Consent Order (Cmpl., ¶¶ 18-24).

The Contract also expressly refers to and requires compliance with integrated insurance policies issued through Granite State Insurance Company ("Granite State") – which issued a "Cost Cap/PLL" policy for the costs of TRC's work and holds the funds from which TRC is paid for its work – and Commerce & Industry Insurance Company ("Commerce and Industry") – which issued a "wrap-up" liability policy for the project. Both entities are affiliates of American International Group, Inc. (and are collectively referred to as "AIG"). As the owner and operator of the Properties, Con Edison was legally liable for environmental contamination at the sites. The Contract transferred responsibility for demolition of existing site improvements and remediation of the Properties to TRC for a fixed price funded and insured by the Cost Cap/PLL policy. This was an essential factor in facilitating Con Edison's sale of the Properties to ERRC.

At the outset, ERRC's Complaint must be dismissed for lack of subject matter jurisdiction. Like Plaintiff ERRC, Defendant TRC Engineers, Inc. ("TRC Engineers") is a citizen of New York. Therefore, there is no diversity. Contrary to ERRC's allegation, TRC Engineers' principal place of business is in New York, not New Jersey. TRC Engineers' headquarters and top officers have, for many years, been in New York, in which state 75-93% of its revenue was earned for the past four years. Point I, *infra*.

Similarly, dismissal is required because Con Edison and AIG also are indispensable, but non-diverse, New York-based parties. Con Edison is a contracting party and, therefore,

indispensable as a matter of law to this action on the Contract.  Moreover, even if ERRC were

entitled to the relief it seeks – an order forcing TRC to switch three of the four properties that are

the subject of the Contract from the VCP to the new Brownfield Cleanup Program ("BCP") by

executing a "Brownfield Cleanup Agreement" ("BCA") in place of the existing VCP Consent

Order – such action requires the express consent of Con Edison and the AIG entities.  The

consent requirement is expressly stated in the Contract, admitted by ERRC, and, critically,

asserted by both Con Edison and AIG  – neither of which has given its consent.  In fact, AIG has

refused to provide payment and coverage to TRC for any BCP-specific work.  Absent the

presence of Con Edison and AIG in this lawsuit, TRC potentially faces an intolerable dilemma –

complying with an injunction here only to face a possible claim by Con Edison for breach of the

Contract and, potentially, no payment or coverage from AIG.  A core purpose of Rule 19 is to

avoid such situations by requiring joinder of all necessary parties.  Because both Con Edison and

the AIG entities are New York citizens, however, their required joinder would destroy diversity.

ERRC has no need for a federal forum for its claims, which arise solely under state law.  If

ERRC has a claim, it must bring it in New York state court – and against all indispensable

parties.  Point II, *infra*.

Finally, even if the Court had jurisdiction and all necessary parties before it, ERRC fails

to state a claim as a matter of law because its claims rest on egregious mischaracterizations of the

express and unambiguous provisions of the Contract.  As ERRC recently admitted, there is not a

single reference in the Contract to the BCP, nor to any BCP Agreement.  Nor could there be,

since the BCP was not even enacted until several years after the Contract was executed – and

substantial work had been completed and was continuing by TRC.  Even now, the implementing

regulations for the BCP still are not complete – and, therefore, the full extent of that program's

obligations is as yet unknown.  The Contract instead expressly references the VCP – which

existed when the Contract was signed and still exists today as a distinct alternative to the BCP

for sites, such as the Properties, already in the VCP.  The Contract also expressly requires that

TRC enter into a "Consent Order" under the VCP.  ERRC admits that TRC fulfilled this

obligation long ago and that TRC has been and still is performing its demolition and remediation

of the sites under the Consent Order.  As a matter of law, the mere fact that New York later

enacted a new and different remediation program does not and cannot alter the express terms of

the Contract, let alone require TRC to enter into a new deal with ERRC to take on yet additional

risks and burdens under the still-evolving BCP regime.  In any event, ERRC fails to allege that it

has obtained the consents from Con Ed and AIG that are a necessary pre-condition to any switch

from the VCP Consent Order to the BCP "Agreement."  Point III, *infra*.

## RELEVANT BACKGROUND[2]

A.    Citizenship of Plaintiff ERRC and Defendant TRC Engineers

ERRC is a real estate developer.  The TRC defendants are engineering and consulting

companies with a speciality in environmental remediation and risk transfer.  ERRC admits that it

is a citizen of New York (and of Nevada) (Cmpl.,¶ 4).  One of the Defendants, TRC Engineers,

also is a citizen of New York.  Although TRC Engineers maintains the New Jersey corporation

---

[2]  The facts stated herein are alleged in the Complaint or found in the Exhibits to the Complaint
or in the Declarations of Nickitas Panayotou (TRC Engineers' President & CEO) and Michelle
Migdon, Esq. in support of this motion.  For purposes of determining subject matter jurisdiction
and the indispensability of non-parties, the Court may consider facts beyond those alleged in the
Complaint.  *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002); *Circle Indus., Div of Nastasi-
White, Inc. v. City Fed. Sav. Bank*, 749 F. Supp. 447, 457 n.2 (E.D.N.Y.), *aff'd*, 931 F.2d 7 (2d
Cir. 1991).  The Court may also take judicial notice of publicly available and trustworthy
information on all motions.  Fed. R. Evid. 201; *see, e.g.*, *United States ex rel. Dingle v. BioPort
Corp.*, 270 F. Supp. 2d 968, 972-73 (W.D. Mich. 2003), *aff'd*, 388 F.3d 209 (6th Cir.), *cert
denied*, 544 U.S. 949 (2005) (taking judicial notice on Rule 12(b)(6) motion of Congressional
documents and trustworthy news articles).

status of one if its predecessors, the principal focus of its business and operations has been in New York for many decades (Panayotou Decl., ¶¶ 4-7).

New York has accounted for the vast majority of TRC Engineers' business. For the fiscal year ending June 30, 2006, more than 75% of TRC Engineers' revenue came from New York, but only approximately 8% from New Jersey. For the three prior fiscal years, the disparity was even greater – more than 93% from New York, but just 6% from New Jersey (*id.* ¶ 4).

Physically, TRC Engineers' headquarters has long been located in Westchester County, New York. Its current address is 7 Skyline Drive, Hawthorne, New York. TRC Engineers' two most senior executive officers – President and CEO Nickitas F. Panayotou, P.E. and Senior Vice President Kenneth Mackiewicz, P.E. – work out of the Hawthorne, New York office (*id.*, ¶¶ 2, 4, 7). Moreover, TRC Engineers' New York and New Jersey tax returns each list Hawthorne, New York as TRC Engineers' address (*id.*, Ex. A). TRC Engineers also has an additional New York office at 1430 Broadway, New York, New York. By contrast, TRC Engineers has had, for a few recent years, only a small, satellite location in Millburn, New Jersey, which it opened principally for convenience for some limited amount of New Jersey business (*id.*, ¶¶ 4-5).[3] Although TRC Engineers recently began transitioning employees from other TRC affiliates in various states to TRC Engineers, historically Hawthorne, New York City and Millburn have been the offices where TRC Engineers' employees primarily have been located (*id.*, ¶ 10).

Most of TRC Engineers' operational activities historically have taken place in New York. Other than the New York City office (which largely runs its own operations), the core operations

---

[3] It appears that ERRC mistakenly believes that TRC Engineers also has an office in Lyndhurst, New Jersey. That office is operated by TRC Environmental Corporation. It currently houses no TRC Engineers employees or operations (Panayotou Decl., ¶ 9). ERRC's apparent confusion likely explains why it served TRC Engineers through the parent corporation at the Lyndhurst location, rather than at one of TRC Engineers' actual offices.

for TRC Engineers have been conducted in Hawthorne, including marketing, client contact, billing, accounting, storage of contract records and other business files, negotiation, supervision, and payment of contracts with subcontractors and vendors, and personnel activities such as hiring and firing (*id.* ¶¶ 7-8).  The project work for the Hawthorne and Millburn offices is also directed by Hawthorne.  (*id.* ¶ 8).

      B.     <u>Citizenship of Con Edison and the AIG Entities</u>

Con Edison is a New York corporation with its principal place of business in New York (Migdon Ex. A).  Likewise, both Granite State and Commerce and Industry have their principal places of business in New York; both companies list a New York business address on the first page of their respective policies (Migdon Exs. B & C; *see also* Ex. D (AIG document listing "70 Pine Street, New York, NY" as principal place of business for both companies)).

      C.     <u>The Relevant Contract Provisions and New York Remediation Programs</u>

The Contract at issue was executed by TRC and Con Edison (the "Client") with an effective date of November 15, 2000.  The Contract is expressly governed by New York law and designates New York as the forum for "any action or proceeding arising out of or relating to this Contact" (Contract § 19).  The Contract is fully integrated and "any amendment or waiver" must be signed and in written form (Contract § 20 & Amendment, § 8).

      1.     <u>TRC's Obligations Under the Contract</u>

There is no requirement in the Contract for TRC to enter the BCP.  For purposes of this action, the most important fact about the Contract is this:  in its forty-two detailed pages, it never once references the BCP.  ERRC admits this (Migdon Ex. E (ERRC 8/9/06 Ltr. to Court at 3).  The absence of any reference to the BCP is no oversight; the BCP was not enacted until October 2003 – three years after the Contract was executed (Cmpl.,¶ 38).  Indeed, the BCP implementing regulations have not yet been adopted and still are in the rulemaking process; a second draft of

those regulations, incorporating significant comments, is winding its way through the public

comment process at the New York State Department of Environmental Conservation

("NYSDEC") (Migdon Ex. F). Thus, the full scope and nature of the program is yet unknown.

By contrast, the Contract expressly references and requires TRC to demolish and

remediate the Properties under the VCP, an administrative program run by the NYSDEC

(Cmpl.,¶¶ 20-22; Contract, §5(r)). Unlike the BCP, the VCP existed when the Contract was

signed. And it still exists today. The BCP did not abolish the VCP nor require VCP participants

to switch to the BCP (*see* Migdon Ex. G (12/9/03 NYSDEC News Release: "[v]olunteers

electing not to transition to the BCP . . . will complete their projects under the VCP.").

All of TRC's demolition and remediation requirements under the Contract are tied to the

VCP and to the Consent Order issued under that program. Thus, TRC is required to "apply for

admission **to the VCP**" and "agree to NYSDEC's **standard form of consent order under the**

**VCP** (unless TRC can negotiate more favorable terms **within the VCP**)" (Contract, § 5(r); *see*

*also* § 7(a)(i) ("TRC shall negotiate and execute Consent Order(s) addressing each Property with

NYSDEC consistent with the terms and conditions of this Contract"). The Contract defines

"Consent Order" as "**the administrative consent order(s) to be executed by TRC** with

Governmental Authorities with jurisdiction for the performance of some or all of the Site Work,

as described in Section 7 herein, **including activities pursuant to the New York State**

**Voluntary Cleanup Program ("VCP")**" (*id.*, § 1(d)). TRC also was required to "develop,

negotiate and execute a Remedial Action Plan" – which also is tied to the VCP "Consent Order"

(*id.*, § 1(*ll*) (the plan "describing the Remediation, prepared pursuant to the terms of § 7(b), **and**

**consistent with the terms of the Consent Order(s) and the Contract**.") (all emphases added).

ERRC admits that TRC entered into a VCP Consent Order – the "Voluntary Cleanup Order" – in 2001 (Cmpl.,¶¶ 36-37 & Ex. C). It further admits that it is the VCP Consent Order that sets forth "the commitments of TRC to remediate the Properties, all subject to NYSDEC's oversight and ultimate approval" (Cmpl.,¶ 36). There is no dispute that TRC has been remediating the Properties as required by the VCP Consent Order (*id.*,¶ 54). By contrast, the BCP imposes different, additional remediation obligations and risks than those required under the VCP, including different cleanup tracks, different final reports and different timeframes for completion of work (Migdon Exs. F-G). Indeed, the BCA at issue here specifically states that, if signed, it "supersedes and replaces" the VCP Consent Order (Cmpl., Ex. E, § XV(P)).

Although ERRC (using carefully placed ellipses) also claims that TRC has an obligation "to maximize **any and all** tax benefits available for ERRC," (Cmpl.,¶ 75(c) (emphasis added)) there is no such obligation under the Contract. The Contract in fact only requires TRC:

> To use Contractor Good Faith Efforts to cooperate with [Con Edison], and [ERRC] if applicable, **in assessing the terms of this Contract and the Cost Cap/PLL Policy** so as to maximize all potential benefits that could be realized **pursuant to the applicable provisions of the Internal Revenue Code.** (26 U.S.C. §§ 1, *et seq.*)

(Contract § 5(l)) (emphasis added). Two things are thus plain: (1) TRC's obligation is limited to "assessing the terms" of the Contract and insurance policies, not applying for additional programs such as the BCP and (2) any obligation is limited to federal tax benefits under the Internal Revenue Code, not "any and all" tax benefits or the New York State tax credits that ERRC claims it may lose.

    2.    The Integrated Insurance Policies

The Contract expressly refers to and depends upon three insurance policies: (1) a "Cost Cap/PLL policy" issued by Granite State to insure TRC's demolition and remediation activities; (2) a "Wrap-Up" insurance policy issued by Commerce and Industry to provide workers'

compensation, personal injury liability, and other coverages; and (3) a Pollution Conditions

policy issued by Granite State ("the Policies") (Contract § 8(a-b); Migdon Exs. B, C).[4]  The

Contract requires TRC to "comply with all terms of and maintain in effect the Cost Cap/PLL

Policy and all other insurance described in the Contract . . ." and "perform the obligations of

TRC set forth elsewhere in this Contract and the Cost Cap/PLL Policy" (Contract, § 5(p),(t)).

> The Contract also provides that Granite State holds the Contract funds necessary to pay

TRC for work on the Properties.  The full Contract Price was paid directly to Granite State at

contract inception (Contract, § 4(a)).  TRC is paid for its work by submitting invoices to Granite

State, which then pays TRC from the "Notional Commutation Account" established under the

policy for that purpose (Cmpl., ¶ 33).  In fact, this is the only way that TRC is paid.  Thus, the

Contract provides that Granite State is "solely responsible for paying TRC for the performance

of the Site Work" and "TRC shall have no claim against [Con Edison or ERRC] in the event that

[Granite State] fails to pay all or any portion of such amount to TRC" (Contract § 4(a)).

> Granite State is responsible for Contract costs beyond the Contract Price, up to the limits

of the Cost Cap/PLL coverage ($195 million) (Migdon Ex. B (Decl. Items 3, 4 and Coverages A-

B, K-L)).  Under the Contract, TRC, however, takes the risk of, and ultimately is responsible for

all costs associated with, its work on the Properties, even if those costs are not covered by the

Policies.  To the extent that costs are not covered by the Policies, "TRC shall bear the entire

expense of the Site Work . . ." and has "sole responsibility and liability for any and all

responsibilities, requirements, obligations and Loss-and-Expense caused by or arising as a result

of any actions taken pursuant to this Contract . . . ." (Contract §§ 4(b), 5(o); *see also*

§§ 7(a)(i)(5), 11(b), 24(f)).

---

[4]  The first and last policies have been integrated into one document (Migdon Ex. B).

3.    The Required Consent from Con Edison and AIG

The Contract plainly states that no changes to the Consent Order or Remedial Action Plan

can be made without Con Edison's and AIG's consent.  Section 14 provides, in relevant part:

> (b)  Changes to Remedial Action Plan(s) or Consent Order(s).  In the event that a
> change to the Remedial Action Plan(s) or Consent Order(s) is requested by
> Governmental Authorities with jurisdiction, TRC may agree to such change
> (subject to the consent of Insurer) provided such change does not conflict with
> the terms of the Contract or increase the obligations of [Con Edison or ERRC].  **If
> TRC requests a change to** the Remedial Action Plan(s) or **Consent Order(s)**
> under circumstances other than as set forth in the preceding sentence, **TRC shall
> be required to obtain Client's [Con Edison] and Site Developer's [ERRC]
> consent to such change** (which may be granted or withheld in such parties' sole
> discretion) **and the consent of the Insurer** [Granite State]. . . . .
>
> (c)  **Neither Con Edison nor Site Developer [ERRC] shall make any request to
> TRC to modify the** Remedial Action Plan(s) or **Consent Order(s) without the
> express written consent of the other party which may be granted or withheld
> in such party's sole discretion**

(Cmpl., Ex. B, § 14 (emphasis added)).  Similarly, § 12(b) provides that the consent "of both

Con Edison and the Developer Owner shall be required with respect to  . . . (b) modification of

[the] Remedial Action Plan or Consent Order(s) (when such consent is required under § 14(b))."

ERRC itself has admitted that Con Edison's consent is required and, indeed, that

resolution of the present dispute requires the participation of ERRC, TRC, **and Con Edison**.  In

an August 30, 2005 letter to Con Edison, ERRC stated that "If TRC refuses to sign the BCA

because Con Edison will not confirm that it consents to TRC executing the BCA, ERRC intends

to hold Con Edison and TRC responsible" (Migdon Ex. H).

Con Edison's own words show that it has not provided the consents required under the

Contract to switch from the VCP to the BCP or to a termination of the existing VCP Consent

Order.  In a carefully crafted September 8, 2005 letter, responding to ERRC's August 30, 2005

threats, Con Edison confirmed that its consent is required "before transitioning to the BCP" but

that, regardless of what ERRC and TRC may "chose to do," Con Edison will not give its consent

absent new and valuable consideration (Migdon Ex. I).  Specifically, Con Edison "will require" –

from both ERRC and TRC – a complete release from all BCP-related liability and complete

indemnification for "any additional costs and risks" that may flow from the BCP (*id.* at 2).  Con

Edison demanded such additional consideration because it believed that the change from the

VCP to the BCP could well expose Con Edison and "its customers" to additional financial and

legal risks and liabilities.  Con Edison stated that, in contrast to the VCP, the BCP "allows for a

different remedy," "contains different time frames," "**imposes additional tasks that could**

**affect TRC's current obligations**," and "**would undoubtedly require a change to the**

**Remedial Action Plans and the Consent Order** which would require Con Edison's (and

ERRC's) consent" because "the site work under the BCA could be quite different from, and

greater than, that required under the VCO [Consent Order] **which is the operative agreement**

**required to be executed with governmental authorities under the ESC [Contract]**" (*id.* at 2-

3 (emphasis added)).  Con Edison also asserts (correctly, under the Contract) that such changes

also require the approval of AIG (*id.* at 2).

      AIG's consent is required not only under § 14 of the Contract, but also under provisions

tying the Contract to the Policies.  Specifically, AIG's consent is required to make the proposed

BCAs "Insured Contracts" under the Contract and the Cost Cap/PLL policy – *i.e.,* the policy by

which TRC is paid for its work.  TRC cannot "enter into any agreement or amendment with

[ERRC]" concerning the Properties "unless such contract or amendment, **at Con Edison's**

**election**, (i) is an 'Insured Contract' under the Cost Cap/PLL Policy (and Con Edison shall not

be responsible for payment of additional premiums in connection with same) or (ii) is covered by

a separate cost cap/pollution legal liability insurance policy obtained at the sole expense of

[ERRC] in form reasonably acceptable to Con Edison which names Con Edison as an additional

named insured" (Contract § 5(aa)). Endorsement No. 5 to the Cost Cap/PLL Policy identifies the contracts insured under the policy as the existing contracts (the Contract, the Consent Order, etc.) and "Other contracts **which are approved by the Company [Granite State]** and scheduled to this policy by endorsement" (Migdon Ex. B (Endorsement No. 5) (emphasis added)).

ERRC admitted to the Court that AIG's consent is required to "switch" the Properties from the VCP to the BCP (Migdon Ex. E at 2). Indeed, ERRC has been seeking such consent for at least a year (*id.*, Ex. J). The consent required under the Contract, however, has **not** been given and the BCAs have **not** been added as Insured Contracts covered under the Cost Cap/PLL policy. To the contrary, AIG has issued an express, written denial of coverage and payment for "all costs associated with" the BCP. In a December 16, 2005 letter, AIG specifically stated that: "Exclusion C precludes modification to the Contract Site Work Plan **unless the company has consented to a modification in advance**. . . . **[Granite State] denies all costs associated under [the BCP] program pursuant to exclusion C.**" (Migdon Ex. K (emphasis added)).

## ARGUMENT

I.    The Complaint Should Be Dismissed Under Rule 12 (b)(1) for Lack of Subject Matter Jurisdiction:  Plaintiff ERRC and Defendant TRC Engineers are not Diverse

ERRC's claims sound wholly in state law. Its sole asserted basis for federal subject matter jurisdiction is diversity of the parties under 28 U.S.C. § 1332(a)(1) (Cmpl., ¶¶ 10-12). ERRC admits that it is a citizen of New York (*id.*, ¶ 4). As shown below, TRC Engineers also is a citizen of New York because its principal place of business is in New York. As such, diversity jurisdiction is lacking and the action must be dismissed under Rule 12(b)(1).

It is the plaintiff's burden to prove the existence of subject matter jurisdiction by a preponderance of the evidence. *Luckett*, 290 F.3d at 496-97. 28 U.S.C. § 1332 requires complete diversity of citizenship among plaintiffs and defendants. *Owen Equip. & Erection Co.*

*v. Kroger*, 437 U.S. 365, 373 (1978). Citizenship is determined as of the date of the filing of the

Complaint, July 18, 2006. *Grupo Dataflux v. Atlas Global Group*, 541 U.S. 567, 570-71 (2004);

*Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991).

A corporation, such as TRC Engineers, is "a citizen of any State by which it has been

incorporated and of the State where it has its principal place of business . . . ." 28 U.S.C.

§ 1332(c)(1). Where a corporation has operations in several states, its "principal place of

business" is its "nerve center." *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655

(2d Cir. 1979). For more centralized businesses, the principal place of business is the "locus of

operations." Here, both tests yield the same result – TRC Engineers' principal place of business

is in New York, not New Jersey (as ERRC wrongly alleges).

A company's "nerve center" is where "its officer[s,] direct, control and coordinate all

activities without regard to locale, in the furtherance of the corporate objective." *R. G. Barry

Corp.*, 612 F.2d at 655. For more than four decades, TRC Engineers' only dedicated office has

been in Westchester County, New York (Panayotou Decl. ¶¶ 2, 5-8) and Hawthorne, New York

remains TRC Engineers' corporate headquarters, even as TRC Engineers has added its New

York City office and is transitioning employees from other affiliated entities. It is in New York

that TRC Engineers' officers have historically determined company policies and strategies,

monitored and directed company operations and project work, stored the company's records, and

made personnel decisions (*id.*., ¶¶ 7-8).

Likewise, TRC Engineer's "locus of operations" also is in New York, not New Jersey. A

corporation's "locus of operations" is the place in which it conducts the most business activity

and has the most "contacts with the public." *R.G. Barry Corp.*, 612 F.2d at 657; *see also Inland

Rubber Corp. v. Triple A Tire Serv., Inc.*, 220 F. Supp. 490, 496 (S.D.N.Y. 1963) ("locus of

…[the] operations" was where company generated the most sales and carried out most of its core operations); *Tucker Anthony, Inc. v. Bankers Trust Co.*, 1994 U.S. Dist. LEXIS 128, at *12-13 (S.D.N.Y. Jan. 7, 1994) (principal place of business was location that had greatest retail business and revenue); *Compucon Distribs. of New England, Inc. v. Cooper*, 685 F. Supp. 424, 426 (S.D.N.Y. 1988) (location of day-to-day activities important to principal place of business).

Here, TRC Engineers' New York operations have comprised the substantive core of TRC Engineers' business and it is New York, not New Jersey, which has, for decades, served as TRC Engineers' "public" face – *i.e.,* the location from which TRC Engineers has interacted with existing and potential customers, as well as vendors and potential employees.  Moreover, in each of the four fiscal years preceding the filing of the Complaint, the vast majority of TRC Engineers' revenue – 75-95% - was generated in New York.

II.    <u>The Complaint Should Be Dismissed Under Rules 12(b)(7) and 19(b):  Consolidated Edison and AIG Each are Indispensable, But Non-Diverse, Parties</u>

There can be no serious dispute that Con Edison and the AIG entities should be joined in this action.  Con Edison is a party to the Contract and ERRC admits that the consent of both entities is required to switch from the VCP to the BCP and to replace the Consent Order with the proposed BCAs.  (Migdon Exs. I, K).  Such consent has not been given, despite ERRC's pleas and threats (*id.*).  As shown above (Migdon Exs. E, H, J), however, Con Edison and AIG each have a principal places of business in New York – just like ERRC and TRC Engineers.  Thus, joinder of Con Edison and AIG would destroy diversity.  As such, the Complaint should be dismissed under Fed. R. Civ. P. 12(7) and 19(b) for failure to join these indispensable parties.

A.    <u>Legal Standards Concerning Indispensable Parties</u>

A party should be joined under Rule 19(a) if:

(1) in the person's absence complete relief cannot be accorded among those already parties

or

> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).  If joinder would destroy diversity jurisdiction, however, the Court must determine whether the party is "indispensable" to the proceeding.  Fed. R. Civ. P. 19(b).  Among other things, a Court must consider whether "a judgment rendered in the person's absence might be prejudicial to the person or those already parties," whether "a judgment rendered in the person's absence will be adequate," and whether the plaintiff "will have an adequate remedy if the action is dismissed for nonjoinder" – *i.e.*, whether the action can be refiled in another court with jurisdiction over all of the indispensable parties.  *Id.*  The cases also look to whether the plaintiff has a strong "interest in having a federal forum" and "the public interest in complete, consistent and efficient settlement of controversies."  *See Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 73 (2d Cir. 1984) (party to contract in dispute was an indispensable party).  If a party is found to be "indispensable," the action must be dismissed.  Fed. R. Civ. P. 19(b).

Each party to a contract is the "paradigm of an indispensable party" when that contract is the subject of the litigation.  *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991); *see also Envirotech*, 729 F.2d at 75-77 (affirming dismissal for failure to join obligor on contracts); *Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Wash.*, 699 F.2d 1274, 1279-80 (D.C. Cir. 1983) (affirming dismissal for failure to join party to "the very agreement at issue" in contract action); *Randolph Found. v. Duncan*, 2002 WL 32862, at *5 (S.D.N.Y. Jan. 11, 2002) ("It is well established that a party to a contract which is the subject of the litigation is considered a necessary party."); *Global Disc. Travel Servs., Inc. v. Trans World*

*Airlines, Inc.*, 960 F. Supp. 701, 707 (S.D.N.Y. 1997) ("direct party to the contract which is under dispute" is necessary and indispensable party).

The logic behind the rule is clear: all parties to a contract must be bound by an adjudication construing the contract. If only some parties are bound, the remaining parties may insist on performance under the contract that is inconsistent with the court's construction of or orders concerning the contract. That risk – and the indispensability of all contracting parties – is even more evident where, as here, the requested relief would alter the existing rights and obligations – and risks assumed – under the contract. *Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 701 (2d Cir. 1980) ("in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable.").

    B.    <u>Con Edison is an Indispensable Party to ERRC's Claims Under the Contract</u>

As shown above, because Con Edison is a contracting party, it is indispensable to ERRC's asserted claims under the Contract. Con Edison indisputably retains rights under and interests in the Contract. Among other things, Con Edison has an interest in ensuring timely and proper remediation of the Properties so that it may avoid potential liabilities for pre-existing contamination at the sites. Con Edison continues to reserves its rights under the Contract (Migdon Ex. I). This is a classic example of a situation where failure to join all necessary parties may lead to inconsistent and prejudicial results or, at a minimum, wholly ineffectual relief. As such, "equity and good conscience" compel dismissal of the Complaint. Fed. R. Civ. P. 19(b).

First, the relief ERRC seeks – forcing TRC to execute BCAs that "**will supersede and replace**" the existing VCP Consent Order (Cmpl., Ex. E § XV(P)) – conflicts with TRC's obligation under the Contract to Con Edison to obtain the VCP Consent Order and to perform "Remediation" specified in an agreed "Remedial Action Plan" "consistent with the terms of the Consent Order(s)" (Contract, ¶¶ 5(c), (i), and (r)). This contradiction alone is compelling proof

that the Contract does not require TRC to replace the VCP Consent Order with the BCAs. For purposes of Rule 19, the contradiction also shows that Con Edison's joinder is necessary; otherwise, Con Edison may claim in future litigation that TRC is in breach of its obligation under the Contract to obtain and perform work under the Consent Order. This is especially true because, as ERRC admits and as Con Edison and AIG each have asserted, the VCP Consent Order and BCP Agreements give rise to different rights, obligations, and potential liabilities (Migdon Exs. I, K). Moreover, the legal distinction between a "consent order" and an "agreement" is well-established. *Eastern Transfer of N.Y., Inc. v. Cahill*, 707 N.Y.S.2d 521, 525 (3d Dep't 2000) (A "consent order is more than merely an agreement between the parties; it is an administrative determination entitled to substantial deference."). This is of special importance here where the Contract places responsibility on TRC for remediation of the Properties as a means to relieve Con Edison of liability, and Con Edison and TRC agreed to a specific mechanism – a Consent Order under the VCP – to effect that remediation.

Second, under the Contract, Con Edison's "express written consent" is a prerequisite to ERRC even asking TRC to replace the Consent Order with the BCAs (Contract, § 14). Con Edison's consent "may be granted or withheld in such party's sole discretion" (*id.*). ERRC has admitted in written demands to Con Edison (Migdon, Ex. H) and in the Complaint (¶ 48) that the BCAs cannot be executed without Con Edison's consent. Indeed, ERRC stated that it would "hold Con Edison and TRC responsible" if Con Edison withheld the necessary consent (Migdon Ex. H) – conceding that Con Edison is necessary to any resolution of this dispute. Most importantly, **Con Edison** asserts that its consent is required – and that it is reserving all of its rights under the Contract in the event that the BCAs are signed without its consent (Migdon Ex. I). That Con Edison disagrees with ERRC's reading of the Contract and believes its rights and

interests under the Contract are at stake here – and that it may seek its own relief – is reason enough why Con Edison must be joined in and bound by any adjudication of ERRC's claims.

Third, ERRC provides no proof that Con Edison has given the required consent under the Contract. Instead, ERRC coyly alleges that Con Edison is "not opposed to" the BCAs (Cmpl., ¶ 48). But even ERRC is forced to qualify that such supposed "non-opposition" is "subject to complying with the [Contract]." Thus, Con Edison's supposed "non-opposition" also hinges on interpreting the Contract. Only one party can answer what Con Edison allegedly means by "complying with the [Contract]" – Con Edison. Moreover, the documents that do exist show that Con Edison has not taken an unqualified "no opposition" stance. Rather, Con Edison demands specific conditions for any consent to the switch to the BCP because Con Edison believes switching to the BCAs might expose it and its customers to greater liabilities (Migdon Ex. I). Its joinder here is, therefore, required so that it may be heard on the issue – and bound by any determination of what the Contract does or does not require concerning the BCP.

For all of the above reasons, proceeding in the absence of Con Edison would prejudice TRC due to potentially inconsistent obligations under a judgment here and under the Contract. Similarly, a judgment rendered in Con Edison's absence will not be "adequate;" Con Edison may yet withhold its consent and seek to bar TRC from executing the BCAs. None of this is necessary. If ERRC has any legitimate claim under the Contract (it has not pled one here), it can bring an action in the New York state courts naming TRC and Con Edison. Thus, ERRC "will have an adequate remedy if the action is dismissed for nonjoinder." Fed. R. Civ. P. 19(b).

C.    AIG is an Indispensable Party to ERRC's Claims Under the Contract

Like Con Edison, the AIG entities are indispensable to the resolution of this case and "equity and good conscience" necessitate dismissal of the Complaint. First, as ERRC, AIG, and Con Edison all agree, AIG's consent is required before any switch to the BCP and before the

BCAs can supplant the Consent Order or be added as "Insured Contracts" under the Policies. *Supra* at 10-12. The Complaint itself is fatally flawed for failure even to allege the contractual condition of AIG's consent. *Infra* at 22. Moreover, the actual evidence (which may be considered under Rule 12(b)(7)) shows that AIG has purported to categorically deny coverage for "all costs associated under this [BCP] program" (Migdon Ex. K) – *i.e.,* it has not consented to the switch from the VCP. If this Court were to bind TRC to enter into the BCAs without AIG's consent, TRC may be deemed to be in breach of its obligations to both AIG and Con Edison (to whom TRC covenanted to maintain and comply with the Policies).

Second, without AIG's consent, TRC (and Con Edison and ERRC) may be left without coverage under the Policies for BCP-related work. Worse yet, as AIG's denial of coverage indicates, TRC may be left without payment for its work under the BCAs. AIG also clearly has a financial interest here. If the BCAs are judicially determined to be part of the Contract, AIG may be obligated to pay for cost overruns – up to $195 million under the Cost Cap/PLL policy – flowing from the switch to the BCP and to provide other coverage for the BCP work under the Policies. Thus, AIG plainly "claims an interest relating to the subject of the action" and its non-joinder will leave TRC "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a); *see also People Express Pilot Merger Comm. v. Texas Air Corp.*, 1987 U.S. Dist. LEXIS 9293, at *19-24 (D.N.J. Oct. 14, 1987) (dismissing claim for specific relief that was dependent upon action by and might affect rights of non-parties). Likewise, a judgment in AIG's absence would be prejudicial and inadequate given the potential lack of funding for TRC's costs and lack of coverage under the Policies. Again, ERRC has an "adequate remedy" to all of this – refiling in New York state court and joining all necessary parties in a single proceeding.

Because the AIG entities are indispensable parties that cannot be joined without destroying diversity, this action should be dismissed under Rule 12(b)(7) for lack of diversity.

III.    The Complaint Should Be Dismissed Under Rule 12(b)(6):  ERRC Fails to State Any Claim for Relief

A claim should be dismissed under Rule 12(b)(6) where the plaintiff can prove no set of facts that would entitle it to the claimed relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Under Rule 12(b)(6), the Court may consider the allegations of the Complaint, as well as "any written instrument attached to the complaint as an exhibit or incorporated…by reference, as well as documents upon which the complaint relies and which are integral to the complaint."  *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (affirming dismissal). Here, the Complaint attaches and incorporates numerous documents, including the Contract, the insurance policies and the proposed BCAs, that the Court may consider on this motion.

Where, as here, claims are alleged to arise under a fully integrated, written contract governed by New York law, the Court should first compare the claims to the contract itself.  "In New York, if a contract is straightforward and unambiguous, its interpretation presents a question of law for the court to be made without resort to extrinsic evidence."  *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp*, 424 F.3d 195, 205 (2d Cir. 2005).  If "the contractual language is unambiguous on its face and is inconsistent with the claim asserted in the pleading, the claim cannot withstand a motion to dismiss under Rule 12(b)(6)."  *Visual Word Sys., Inc. v. CPT Corp.*, 1985 WL 567, at *3 (S.D.N.Y. Apr. 19, 1985).  Here, the Contract is precise and definite in defining TRC's obligations – and it nowhere requires TRC to switch the Properties from the VCP (which is unambiguously specified in the contract) to the BCP (which is not mentioned at all).  Nor is there any provision requiring TRC to replace the Consent Order (unambiguously required by the Contract) with a BCA (which is not even mentioned).  To the

contrary, switching to the BCP (particularly in the absence of Con Edison and AIG's consents), contradicts the Contract requirements discussed above – yet another reason why ERRC's contra-factual reading of the Contract cannot stand.  Accordingly, all of ERRC's supposed contract claims fail as a matter of law and the Complaint should be dismissed under Rule 12(b)(6).

     A.    <u>TRC Has No Contractual Obligation to Enter Into the BCA</u>

    In Count I, ERRC alleges that TRC has "materially breached" the Contract and "its duties owed to ERRC" by "failing to participate in the BCP by executing [BCAs]" (Cmpl., ¶ 64). ERRC purports to base its claims on the unadorned face of the Contract, which it both quotes and attaches to the Complaint.  As such, its claims must rise or fall on the face of the Contract. Tellingly, however, ERRC does not cite a single provision of the Contract to support its claim that TRC is required to "to participate in the BCP by executing [BCAs]" – nor can it.  There is no Contract provision even referencing the BCP, let alone requiring TRC to switch to that program.  To the contrary, all of TRC's obligations under the Contract are expressly based on performing work under the Consent Order issued under the VCP – which is referenced repeatedly throughout the Contract.  There is no dispute that TRC has fulfilled its obligations with respect to the VCP and the Consent Order (Cmpl., ¶¶ 36-37, Ex. C).  Accordingly, ERRC's claim of breach fails on the unambiguous face of the Contract.

    The Court also should reject any attempt by ERRC to contradict the plain language of the Contract to argue that the specific references in the Contract to the "VCP" and the "Consent Order" somehow should be read to include the "BCP" and "BCAs."  First, the BCP did not even exist when the Contract was executed.  It was enacted three years after the Contract was signed and two years after TRC (and ERRC) signed the Consent Order – and the basic regulatory requirements of the BCP program remain in flux.  Second, the VCP and the BCP are specific, distinct programs – both of which still exist.  *Id.*  Thus, ERRC cannot assert that the references to

the VCP in the Contract somehow morphed into the later-enacted BCP program.  Third, whereas

the NYSDEC issued a Consent Order under the VCP, the BCP statute only provides for

Brownfield Cleanup **Agreements**.  N.Y. E.C.L. § 27-1409.  "Consent orders" are wholly distinct

from mere "agreements" (*Eastern Transfer of N.Y., Inc.*, *supra*) – and only the VCP provides for

"Consent Orders" (Migdon Ex. L at 1, 6 (VCP Guide)).  Fourth, as a matter of law, parties'

obligations under a contract are determined by the law in effect at the time the contract was

executed.  *Kinney v. Kinney*, 369 N.Y.S.2d 258, 260 (4th Dep't 1975) (Absent clear expressed

intention to the contrary, "[c]ontract obligations are determined by the law in force at the time

the contract is executed.").  Here, the only reference in the Contract to any "future" laws are the

precatory "Whereas" clauses (which impose no contractual obligations) – and even those clauses

merely refer to a desire to avoid liability under "future" laws (Contract at 1).  Neither the VCP

nor the BCP imposes any such liability or any requirement of remediation.  Both are voluntary

programs by which participants may try to limit their potential liabilities under other laws (*see*

Cmpl., ¶¶ 21-22; N.Y. E.C.L. § 27-1401, *et seq*.).

Finally, as noted above, ERRC's claim also fails as a matter of law because it has "failed

to allege – even generally – that the conditions precedent were performed or had occurred."

*CVC Claims Litig. LLC v. Citicorp Venture Capital Ltd.*, 2006 WL 1379596, at *4 (S.D.N.Y.

May 18, 2006) (dismissing claim for failure to aver performance of conditions precedent to

alleged contractual obligation).  Most notably, ERRC fails to allege that Con Edison has granted

the "express written consent," or any consent at all, as required under § 14 of the Contract.  It

likewise fails to plead that AIG has provided the necessary consent required under the Contract

to replace the Consent Order with the BCAs or otherwise to switch from the VCP to the BCP.

Even if ERRC could show that TRC has an obligation under the Contract to enter into the BCAs,

the consents of Con Edison and AIG are prerequisites and conditions precedent under the Contract to the relief ERRC demands. ERRC's failure to plead its performance or satisfaction of these conditions precedent – or, indeed, any performance or satisfaction of conditions precedent by ERRC – requires dismissal of the claim. *CVC Claims Litig. LLC*, 2006 WL 1379596, at *4; *Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, 1999 WL 544708, at *18 (Jul. 27, 1999 S.D.N.Y.) (dismissing breach of contract claim for failure to allege Plaintiff's performance); *see also East River Constr. Corp. v. District of Columbia*, 183 F. Supp. 684, 685 (D.C. 1960) (dismissing breach of contract action for failure to allege performance of all conditions precedent); *Landau v. Wolverine Hotel Co.*, 33 F. Supp. 705 (N.D. Ill. 1940) (same).

B.    ERRC's Additional Breach of Contract Theories Also Fail as a Matter of Law

ERRC also alleges, in Count II, that TRC purportedly "has not fulfilled" certain other "contractual obligations under the [Contract]" (Cmpl., ¶¶ 75(a), (b) and 76). Specifically, ERRC claims that TRC has failed to "Remediat[e] the Properties," "apply[] for and participat[e] in the VCP," and "maximize any and all tax benefits available for ERRC" (*id.*) These allegations rest on blatant mischaracterizations of the express provisions of the Contract, are not supported by any factual allegations in the first sixteen pages of the Complaint, and, indeed, contradict ERRC's own allegations of fact in those first sixteen pages. Each of these claims should, therefore, be dismissed under Rule 12(b)(6) for failure to state a claim as a matter of law.

ERRC's claim that TRC failed to "apply[] for and participat[e] in the VCP" is refuted by ERRC's own admissions, earlier in the Complaint, that "on or about June 27, 2001, TRC Companies, Inc. **executed a Voluntary Cleanup Order ("VCO") with NYSDEC under the VCP** . . . ." (Cmpl.,¶ 36) (emphasis added). ERRC further admits that TRC has been complying with the VCO by remediating the Properties, one of which already has achieved "Phase I Completion" (*id.*, ¶¶ 54, 59). Rule 12(b)(6) requires dismissal of any claim that is contradicted

by a party's own factual allegations. *See*, *e.g.*, *Meadowlands Invs. LLC v. CIBC World Mkts.*, 2005 U.S. Dist. LEXIS 21102, at *9-15 (S.D.N.Y. Sept. 22, 2005) (dismissing claims for breach of contract contradicted by Plaintiff's own factual allegations). Likewise, ERRC's claim that TRC has failed to "remediat[e] the properties" should be dismissed because ERRC admits that TRC is remediating the Properties in accordance with the Consent Order (Cmpl.,¶¶ 54, 59).

Finally, ERRC also claims that TRC has an obligation under the Contract to use TRC's best efforts "to maximize **any and all** tax benefits available for ERRC" (Cmpl.,¶ 75(c)) (emphasis added). As shown above, however, ERRC's only tax-related obligation under the Contract concerns federal tax benefits "under the Internal Revenue Code" (Contract, § 5(*l*), not the newly available state tax benefits under the BCP that ERRC misleading asserts.[5] ERRC does not allege any loss of federal tax benefits for the remediation work. Accordingly, its claim fails as a matter of law and should be dismissed under Rule 12(b)(6).

C.    ERRC's Claim for Breach of the Duty of Good Faith and Fair Dealing is Entirely Duplicative of Its Erroneous Breach of Contract Theory

ERRC's claim for an alleged breach of the duty of good faith and fair dealing (Cmpl.,¶¶ 77-79) also fails as a matter of law because it merely repeats the same erroneous claim that TRC is required to replace the Consent Order with the BCA. Courts routinely dismiss redundant "good faith and fair dealing" claims. *Nat'l Westminster Bank PLC v. Grant Prideco, Inc.*, 261 F. Supp. 2d 265, 275 (S.D.N.Y. 2003).

Moreover, the implied covenant of good and fair dealing entitles a party only to "the fruits of the contract," not to some general, extra-contractual obligation of good faith. *Rooney v. Slowowitz*, 784 N.Y.S.2d 189, 194 (3d Dep't 2004) (affirming dismissal where party "had no

---

[5]  ERRC's claim that TRC must help ERRC maximize state tax benefits not only mischaracterizes the Contract, but contradicts the Contract's reference to maximizing federal tax benefits since ERRC's federal tax benefits (*i.e.* the deduction for state taxes under I.R.C. § 164(a)(3)) likely would decrease if ERRC's state taxes are reduced by state tax credits.

contractual obligation" to the approvals at issue). The "fruits" that TRC agreed to deliver to ERRC pertain to the VCP; the Contract does not obligate TRC to change course and enter into new programs that the legislature later adopts. Because ERRC has no contractual right to force TRC to enter into the BCAs, neither TRC's adherence to the Consent Order (as required by the Contract) nor its negotiating positions *vis a vis* the new deal that ERRC seeks can implicate the covenant of good faith and fair dealing. *Id.*; *Reale v. Sotheby's, Inc.*, 718 N.Y.S.2d 37, 39 (1st Dep't 2000) (affirming dismissal; conduct expressly permitted by contract); *Halpern Dev. Venture, Inc. v. Bd. of Trustees of the Village of N. Tarrytown*, 669 N.Y.S.2d 606, 697 (2d Dep't 1998) (dismissing claim; contract expressly gave party discretion whether to act or not).

## CONCLUSION

For all of the above reasons, Defendants respectfully request that the Court dismiss the Complaint under FRCP 12(b)(6) and (7) for lack of jurisdiction and failure to join indispensable, but non-diverse parties. Alternatively, Defendants request that the Court dismiss the Complaint with prejudice under FRCP 12(b)(6) for failure to state a claim.

Dated: New York, New York
     August 25, 2006

PROSKAUER ROSE LLP

By:      _____s/  Jennifer R. Scullion_____

Claude M. Millman (CM 5821)
Jennifer R. Scullion (JS 8739)
Michelle R. Migdon (MM 4347)
1585 Broadway
New York, NY 10036-8299
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for TRC Companies, Inc., TRC Engineers, Inc., and TRC Environmental Corporation*

-25-