**Exhibit B**

**GRANITE STATE INSURANCE COMPANY**
70 Pine Street
New York, NY 10270

NAMED INSURED
AND
POST OFFICE

Consolidated Edison Company of New York, Inc.
4 Irving Place,
New York, NY 10003

## CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.
## FIRST AVENUE PROPERTIES INSURANCE POLICY

### DECLARATIONS

THIS IS A CLAIMS-MADE AND REPORTED POLICY - PLEASE READ CAREFULLY.

POLICY NUMBER:    PLS/CCC 1950199

Item 1a:  NAMED INSURED
          ADDRESS

Consolidated Edison, Inc. and Consolidated Edison Company of New York, Inc.
4 Irving Place, New York, NY 10003

Item 1b:  NAMED INSURED
          ADDRESS

FSM East River Associates LLC,
299 Park Avenue, New York, New York 10171

Item 1c:  NAMED INSURED
          ADDRESS

TRC Companies Inc.
21 Technology Drive, Irving, California 92618

Item 2:   POLICY PERIOD    FROM November 15, 2000 TO November 15, 2030
          12:01 A.M. Standard time at the address of the Named Insured first shown above.

Item 3:   COVERAGES AND COVERAGE SECTION LIMITS AND DEDUCTIBLES

This Policy includes only those Coverages as stated in Section I of the Policy for which deductibles and limits of liability appear below.  If no deductible or limits of liability appears for a Coverage, that Coverage does not apply.

| Coverage | Deductible-Each Incident | Each Incident Limit | Coverage Section Aggregate Limit |
|---|---|---|---|
| A | None | $195,000,000 | $195,000,000 |
| B | | | |
| C | $100,000 | $100,000,000 | $100,000,000 |
| D | Subsumed in A | $195,000,000 | $195,000,000 |
| E | | | |
| F | $100,000 | $100,000,000 | $100,000,000 |
| G | $100,000 | $100,000,000 | $100,000,000 |
| H | $100,000 | $100,000,000 | $100,000,000 |
| I | $100,000 | $100,000,000 | $100,000,000 |

Copyright, American International Group, Inc., 2000

| Coverage | Business Interruption (Days) Limit | Business Interruption ($) Limit |
|---|---|---|
| J | | |

| Coverage | Limit of Liability | Self-Insured Retention | Co-Insurance Participation Percentage |
|---|---|---|---|
| K only | $195,000,000 | None | None |
| K and L combined | $195,000,000 | None | None |

| Coverage | Deductible-Each Incident | Each Incident Limit | Co-Insurance Participation Percentage | Coverage Section Aggregate Limit |
|---|---|---|---|---|
| M | None | None | None | $195,000,000 |
| N | None | $25,000,000 | 25% | $25,000,000 |
| O | None | $10,000,000 | None | $10,000,000 |

**POLICY AGGREGATE DEDUCTIBLE:**  $300,000

Item 4:   **POLICY AGGREGATE LIMIT:**  $295,000,000
4 (a):   PLL Limits (Coverages C, F, G, H, I, N, O)  $100,000,000
4 (b):   Cost Cap Limits (Coverages A, D, K, L, M)  $195,000,000

Item 5:   **INSURED PROPERTY(IES) - COVERAGES A - J:**
616 First Avenue, New York, N.Y.
685 First Avenue, New York, N.Y.
708 First Avenue, New York, N.Y.
700 First Avenue, New York, N.Y. (Waterside Plant)
Property Descriptions are attached hereto

Item 6:   **POLICY PREMIUM**    $103,500,000

Item 7:   **RETROACTIVE DATE:**    Under Coverages C, F, G, H and I, the **Pollution Conditions** must commence on or after the date shown below.
Retroactive Date:   None
(Enter date or "none" if no Retroactive Date Applies.)

Item 8:   **CONTINUITY DATE:**    November 15, 2000

Copyright, American International Group, Inc., 2000

Case 1:06-cv-05417-WHP    Document 25-3    Filed 08/25/2006    Page 4 of 51

Broker:   Willis Corroon Corporation of Los Angeles
          801 North Brand Boulevard
          Suite 400
          Glendale, CA 91203-1243


          Aon Risk Services of New York
          685 Third Avenue
          New York, NY 10017

_____
          **AUTHORIZED REPRESENTATIVE**
          or countersignature (in states where applicable)

Copyright, American International Group, Inc., 2000          PAGE 3 OF 3

FORMS SCHEDULE

NAMED INSURED:     CONSOLIDATED EDISON, INC AND CONSOLIDATED EDISON
                   COMPANY OF
                   NEW YORK, INC./FSM EAST RIVER ASSOCIATES LLC./ TRC
                   COMPANIES INC.

POLICY NO:         1950199

BY:                GRANITE STATE INSURANCE COMAPNY

THE FOLLOWING FORMS AND ENDORSEMENTS FORM A PART OF THE POLICY AT
ISSUANCE:

| | |
|---|---|
| MNSCPT | FIRST AVENUE PROPERTIES INSURANCE POLICY-DECLARATIONS |
| MNSCPT | FIRST AVENUE PROPERTIES INSURANCE POLICY |
| ENDT 1 | MINIMUM EARNED PREMIUM |
| ENDT 2 | POLICY NOTIONAL COMMUTATION ACCOUNT |
| ENDT 3 | RENEWAL |
| ENDT 4 | ADDITIONAL INSURED |
| ENDT 5 | SCHEDULE OF INSURED CONTRACTS |
| ENDT 6 | CHANGE IN STATUS |
| ENDT 7 | DEFINED ADDITIONS AND REDUCTIONS |
| ATTACHMENT | ATTACHMENT A |
| ENDT 8 | ESTABLISHMENT OF A TRUST |
| ENDT 9 | CUT THROUGH |
| ENDT 10 | SCHEDULE OF NON-OWNED LOCATIONS |

This endorsement, effective 12:01 a.m., November 15, 2000
Forms a part of Policy No.: 1950199

Issued to:    Consolidated Edison, Inc. and
              Consolidated Edison Company of New York, Inc.
              FSM East River Associates LLC
              TRC Companies, Inc.
              TRC Engineers, Inc.
              TRC Environmental Corporation

By:           Granite State Insurance Company

                    THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

                              MINIMUM EARNED PREMIUM

The Company and the **Named Insureds** agree as follows:  except as respects the cost cap Risk Transfer premium allocated to the Waterside **Insured Property** in the amount of $1,523,622, it is hereby agreed that the following minimum earned premium will apply to the Risk Transfer portion (Cost Cap and PLL) of the Policy premium -- $3,830,145.

|            |                        |      |
|------------|------------------------|------|
| End of Year 1 | Minimum Premium Earned | 50%  |
| End of Year 2 | Minimum Premium Earned | 75%  |
| End of Year 3 | Minimum Premium Earned | 100% |

Cancellation of the Policy within the first three (3)  years would be subject to a return of premium on a pro-rata basis, after applying the minimum premium earned for the year in which cancellation was effected.  The premium will be 100% earned at the end of year 3.

The Waterside **Insured Property** cost cap Risk Transfer premium shall become earned seven (7) years after the effective date of this Policy or on the date that the possession of the **Insured Property** is delivered to the **Contractor** whichever is earlier.

All other terms, conditions and exclusions shall remain the same.

                    _____
                              **AUTHORIZED REPRESENTATIVE**
                         or countersignature (in states where applicable)

This endorsement, effective 12:01 a.m., November 15, 2000
Forms a part of Policy No.: 1950199
Issued to:     Consolidated Edison, Inc. and
              Consolidated Edison Company of New York, Inc.
              FSM East River Associates LLC
              TRC Companies, Inc.
              TRC Engineers, Inc.
              TRC Environmental Corporation

By:          Granite State Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY NOTIONAL COMMUTATION ACCOUNT

I.  Commutation

The Company will maintain a Policy Notional Commutation Account under Coverages A, D, K, L and M for all the **Insured Properties** comprised of:

     1.  Non-Waterside Properties Allocation Amount:

The Company has allocated $43,720,370 of the Policy Premium, plus the interest credited as set forth below, known as the non-Waterside Properties Allocation Amount for the non-Waterside **Insured Properties.**

The **Named Insureds** may elect at the end of each quarter of the calendar year to commute Coverages K, L and M under this Policy with respect to the non-Waterside **Insured Properties,** but only upon unanimous consent of all **Named Insureds.** If the **Named Insureds** so elect, the Company will pay to them an amount equal to 100% of the Non-Waterside Properties Allocation Amount, plus the interest credited as set forth below, plus any unearned premium as set forth in the Minimum Earned Premium Endorsement, minus 100% of **Site Work Costs** and **Loss-and-Expense** paid by the Company, in exchange for a complete release of liability for all **Site Work Costs** and **Loss-and-Expense** pertaining to the non-Waterside **Insured Properties** whether known or unknown.

     2.  <u>Waterside Allocation Amount.</u>

The Company has allocated $46,213,630 of the Policy Premium, plus the interest credited as set forth below, known as the Waterside Allocation Amount for the Waterside **Insured Property** (Waterside).

In the event a **Named Insured** listed in Items 1(a) or 1(b) of the Declarations terminates the **Contract** in part pursuant to Paragraph 18(f) therein, prior to initiation of the **Site Work** relating to Waterside, **Contractor** agrees that the Company shall return to the **Named Insured** listed in Item 1(a) of the Declarations at the **Inception Date** the Waterside Allocation Amount in exchange for a reduction of the Limits of Liability for Coverages K and L equal to the Waterside Allocation Amount at the time of such commutation and the insertion of a Known Conditions Exclusion Endorsement for Coverage A,. In the event of a termination pursuant to Section 18(f) of the **Contract,** the amount set forth for Remediation of the Easement Areas in Exhibit "I" shall no longer be a Defined Reduction.

In return for the return in premium not earned as described above for the Waterside **Insured Property** the **Named Insureds** agree to a reduction in Limits of Liability for Coverages K, and L of $40,000,000.

II.  Partial Commutation for Incentive Payment

(i)   Upon Phase I Completion, as that term is defined in the Contract, of Waterside Properties, **Contractor** will have the option of requesting an incentive claim from the Company for amounts in the Non-Waterside Properties Allocation Amount established for the non-Waterside Properties in excess of what the Company reasonably expects is needed to reach Long Term Completion, as that term is defined in the **Contract** for such non-Waterside Properties. **Contractor** shall keep as its own funds the first $3.375 million of any such incentive claim; the remainder of any incentive claim will be split as follows: 50% for **Contractor**, 25% for the **Named Insured** listed at Item 1(a) of the Declarations and 25% for the **Named Insured** listed at Item 1(b) of the Declarations. In the event of any incentive claim payments made to **Contractor**, the **Named Insured** listed at Item 1(a) of the Declarations and the **Named Insured** listed at Item 1(b) of the Declarations, each shall restore the limits of Coverages A, K, L and M of the Policy to the extent of incentive claim payments made to them or mutually agree to do otherwise. To the extent of incentive claim payments made solely to **Contractor**, the **Named Insured** listed at Item 1(a) of the Declarations and the **Named Insured** listed at Item 1(b) of the Declarations may require **Contractor** to restore the limits of Coverages A, K, L and M of the Policy.

(ii)  Upon Phase I Completion, as that term is defined in the **Contract**, of Waterside, **Contractor** will have the option of requesting an incentive claim for amounts in the Waterside Allocation Amount in excess of what the Company reasonably expects is needed to reach Long Term Completion, as that term is defined in the **Contract**, for Waterside. **Contractor** shall keep as its own funds the first $3.375 million of any such incentive claim; the remainder of any incentive claim will be split as follows: 50% for Contractor, 25% for the **Named Insured** listed at Item 1(a) of the Declarations , and 25% for the **Named Insured** listed at Item 1(b) of the Declarations. Restoration of the limits of Coverages A, K, L and M of the Policy shall be in accordance with (i) above.

(iii) In either of (i) or (ii) above, upon the reaching of Long Term Completion, as that term is defined in the **Contract**, expiration of the Policy, or the unanimous agreement of **Contractor**, the **Named Insured** listed at Item 1(a) of the Declarations and the **Named Insured** listed at Item 1(b) of the Declarations to commute the Policy, the Company will distribute the remaining funds in accordance with (i) and (ii) above, but neither **Contractor**, the **Named Insured** listed at Item 1(a) of the Declarations nor the **Named Insured** listed at Item 1(b) of the Declarations shall have any obligation to restore limits of any Coverages A, K, L and M under the Policy.

(iv)  If funds are withdrawn from the Policy Notional Commutation Account in order to pay **Delay Damages** under Coverage N and/or **Demands** for **Indemnification** under Coverage O, the distribution of funds pursuant to (i), (ii), or (iii) above from the Policy Notional Commutation Account to the **Named Insured** listed at Item 1(a) of the Declarations and the **Named Insured** listed at Item 1(b) of the Declarations (to the extent funds are available in the Policy Notional Commutation Account) will be made (A) first to the **Named Insured** listed at Item 1(a) of the Declarations and the **Named Insured** listed at Item 1(b) of the Declarations in accordance with the percentages set forth in (i) and (ii) above calculated as if such Coverage N and Coverage O payments were not made out of the Policy Notional Commutation Account and then (B) to **Contractor** to the extent that there are funds remaining in the Policy Notional Commutation Account. It is understood that the Policy Notional Commutation Account is the only source of funds for payment of incentive claims; provided however, if an incentive claim distribution has been made to **Contractor** from either the Waterside Allocation Amount or the Non-Waterside Allocation Amount and a payment from the Policy Notional Commutation Account has been or must be made by the Company under Coverage N or Coverage O of the Policy, **Contractor** shall reimburse the Policy Notional Commutation Account to the extent of Coverage N and O claims, up to the amount of the incentive claims paid to Contractor plus interest such amounts would have earned had they remained in the Policy Notional Commutation Account.

(v)   In the event that the **Contract** is terminated, **Contractor** shall have no right to receive proceeds in connection with this Policy Notional Commutation Account endorsement unless: (i) the termination is for convenience, as defined in Section 18 of the **Contract** and (ii) at the time of termination the **Site Work** with respect to (A) 616 First Avenue, 685 First Avenue, and 708 First Avenue in the aggregate, or (B) Waterside, is more than 50% complete, such completion to be assessed by Contractor and consented to by the Named Insureds listed in Items 1(a) and 1(b) of the Declarations,

in terms of actual Site Work performed. Under subparagraph (A) above, Contractor shall be entitled to that percentage of the Non-Waterside Properties Allocation Amount to which Contractor would be entitled pursuant to this endorsement if Contractor had completed the applicable Site Work equal to (1) the costs incurred by Contractor with respect to such Insured Properties through the effective date of termination  divided by (2) the total Site Work costs for such Insured Properties upon completion.  Under subparagraph (B) above, Contractor shall be entitled to that percentage of the Waterside Allocation Amount to which Contractor would be entitled pursuant to this endorsement if Contractor had completed the applicable Site Work equal to (1) the costs incurred by Contractor with respect to the Waterside Insured Property through the effective date of termination divided by (2) the total Site Work costs for Waterside upon completion.

The Policy Notional Commutation Account, if positive, will earn interest at a rate equal to the one-year United States Treasury Bill rate prevailing on the first day of each anniversary year.  The interest shall be credited to the average daily balance of the Policy Notional Commutation Account and the interest will be compounded quarterly.  The interest credit shall be calculated at each quarter.

On the first and subsequent anniversaries of Inception Date, the Company shall provide to the Named Insureds listed at 1(a) and 1(b) of the Item 1 of the Declarations a reconciliation report of the Policy Notional Commutation Account.

All other terms, conditions and exclusions shall remain the same.

_____
AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

ENDORSEMENT NO. 3

This endorsement, effective 12:01 a.m., November 15, 2000
Forms a part of Policy No.: 1950199
Issued to:        Consolidated Edison, Inc. and
                  Consolidated Edison Company of New York, Inc.
                  FSM East River Associates LLC
                  TRC Companies, Inc.
                  TRC Engineers, Inc.
                  TRC Environmental Corporation

By:               Granite State Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

RENEWAL

It is hereby agreed that the following condition is added to Section VII. Conditions of the Policy:

The Company agrees to renew any or all Coverages A-I of policy, upon its expiration date, provided that the Company continues to offer insurance substantially similar to the insurance provided by this policy, and the **Named Insureds** seeking renewal have complied, at the time of the expiration for this Policy, with all of the following conditions:

1. In the reasonable judgment of the Company, all material terms and conditions of the Policy have been satisfied by such Insureds seeking renewal, including payment of premium;

2. The **Named Insured** seeking renewal provides the Company with a properly completed and signed renewal application prior to the expiration date of this Policy similar in fashion to the original application;

3. At the time of policy expiration, Incurred Losses of the **Insured** seeking renewal shall not exceed 50% of the applicable Policy premium for the Coverages A-I.  Incurred Loss means paid **Losses** and outstanding loss reserves for **Loss** covered under Coverages A – I of this Policy; and

4. Renewal Premium shall not exceed 100% of the original Policy Risk Transfer premium as adjusted by (5) below for the Coverages listed above.

5. An annual inflation factor of 2.75%, calculated from the **Continuity Date** until the time of renewal shall apply to all dollar amounts, including the deductible, limits, premium and any other monetary factors within this Policy.

All other terms, conditions and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

This endorsement, effective 12:01 a.m., November 15, 2000
Forms a part of Policy No.: 1950199

Issued to:      Consolidated Edison, Inc. and
                Consolidated Edison Company of New York, Inc.
                FSM East River Associates LLC
                TRC Companies, Inc.
                TRC Engineers, Inc.
                TRC Environmental Corporation

By:           Granite State Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### ADDITIONAL INSURED

It is hereby agreed that the following entity(ies) is (are) included as additional insured(s). Coverage for such additional insured(s) applies under this Endorsement.

1. Solely to the additional insured's liability arising out of the Named Insured's ownership, operation, maintenance or use of the Insured Properties; and

2. Only if the additional insured is named in a suit as a co-defendant with the Named Insured alleging that the additional insured is liable on the basis described in Paragraph 1 above.

### Additional Insureds

   1. Investors of the Named Insured listed at Item 1(b) of the Declarations at the Inception Date;

   2. Lenders of the Named Insured listed at Item 1(b) of the Declarations at the Inception Date;

   3. Equity Partners of the Named Insured listed at Item 1(b) of the Declarations at the Inception Date; Affiliates and subsidiaries of the Consolidated Edison Company of New York, Inc. and/or Consolidated Edison, Inc.;

   4. Affiliates and subsidiaries as of the Inception Date of the Named Insured listed in Item 1(b) of the Declarations; and

   5. Plaza Construction Corp.

It is further agreed that the Named Insured listed at Item 1(a) of the Declarations shall have the right to name additional parties as additional insureds upon written notice to the Company.

All other terms, conditions and exclusions shall remain the same.

 

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

ENDORSEMENT NO. 5

This endorsement, effective 12:01 a.m., November 15, 2000
Forms a part of Policy No.: 1950199
Issued to:     Consolidated Edison, Inc. and
               Consolidated Edison Company of New York, Inc.
               FSM East River Associates LLC
               TRC Companies, Inc.
               TRC Engineers, Inc.
               TRC Environmental Corporation

By:            Granite State Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

SCHEDULE OF INSURED CONTRACTS

It is hereby agreed that the following are scheduled as Insured Contracts to this Policy:

INSURED CONTRACTS

1. Exit Strategy Contract between the Consolidated Edison Company of New York, Inc. and TRC Companies, Inc., TRC Engineers, Inc. and TRC Environmental Corporation dated as of November 15, 2000.

2. Consent Order(s) entered with the New York State Department of Environmental Conservation pursuant to the terms of the Contract.

3. Purchase and Sale Agreement among the Consolidated Edison Company of New York, Inc. and FSM East River Associates LLC, effective as of November 15, 2000 and any amendments thereto.

4. The Existing Consent Order(s) as defined in the Contract to the extent such Consent Orders require and/or are related to completion of the Site Work.

5. Any other contract(s) as necessary for completion of the Site Work.

6. Other Contracts which are approved by the Company and scheduled to this Policy by endorsement.

All other terms, conditions and exclusions shall remain the same.

AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

PAGE 1 OF 1

This endorsement, effective 12:01 a.m., November 15, 2000
Forms a part of Policy No.: 1950199

Issued to:     Consolidated Edison, Inc. and
               Consolidated Edison Company of New York, Inc.
               FSM East River Associates LLC
               TRC Companies, Inc.
               TRC Engineers, Inc.
               TRC Environmental Corporation

By:            Granite State Insurance Company

               THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

                        CHANGE IN STATUS ENDORSEMENT

It is hereby agreed that the following shall apply:

Upon transfer of any of the Insured Properties listed in Item 5 of the Declarations, from the Named Insured listed in Item 1(a) of the Declarations (the "First Named Insured") to the Named Insured listed in Item 1(b) of the Declarations (the "Second Named Insured"), both such Named Insureds shall exchange their status and the Named Insured listed in Item 1(b) of the Declarations shall become the First Named Insured as to those Insured Properties so transferred. The new First Named Insured upon transfer of ownership of each of the Insured Properties to be transferred, will be responsible for the duties and obligations imposed upon and/or provided to the Named Insured first listed in Item 1(a) of the Declarations as set forth within this Policy, including paying any deductible when due.

All other terms, conditions and exclusions shall remain the same.

                        AUTHORIZED REPRESENTATIVE
                    or countersignature (in states where applicable)

                                                      PAGE 1 OF 1

This endorsement, effective 12:01 a.m., November 15, 2000
Forms a part of Policy No.: 1950199
Issued to:      Consolidated Edison, Inc. and
             Consolidated Edison Company of New York, Inc.
             FSM East River Associates LLC
             TRC Companies, Inc.
             TRC Engineers, Inc.
             TRC Environmental Corporation

By:         Granite State Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### DEFINED ADDITIONS AND REDUCTIONS

The Company and the **Named Insureds** further agree that the **Site Work Action Plan** is subject to potential changes as defined below as **Defined Additions** and **Defined Reductions**

For each of the **Defined Reductions** and **Defined Additions** listed on Attachment A to this endorsement, a dollar amount has been allocated for the **Losses** expected in the performance of its Remediation and Decommissioning/Demolition (the "Deposit"). Under no circumstances may a **Defined Reduction** be exercised prior to the Earliest Exercise Date, as that term is defined in the **Contract**, as listed in Attachment A to this endorsement.

The Company and the **Named Insureds** further agree that the **Named Insureds** will be billed and the appropriate **Policy Notional Commutation Account**, as indicated in Attachment A hereto, will be credited the listed Deposit as indicated for each **Defined Addition**.

The Company and the **Named Insureds** further agree that the Company will reimburse only the **Named Insured** listed at Item 1(a) of the Declarations as of the Inception Date and the appropriate **Policy Notional Commutation Account**, as indicated in Attachment A hereto, will be debited for the listed Deposit as indicated for each **Defined Reductions**.

The Company shall provide written notice of any addition or reduction to all **Named Insureds**.

All other terms, conditions and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

PAGE 1 OF 1

ATTACHMENT A

DEFINED ADDITIONS AND REDUCTIONS

| Item Description | Deposit for Addition /Reduction | Deadline to Notify Contractor of Addition/Reduction | Earliest Date of Payment | Policy Notional Commutation Account |
|---|---|---|---|---|
| A. Defined Reductions | | | | |
| 1. Eliminate need for structural wall along First Avenue and 35th and 36th Streets | $778,000 | One month prior to initiation of tank and building removal at 616 First Avenue | March 1, 2002 | Non-Waterside Allocation Amount |
| 2. Eliminate need for structural wall along First Avenue, and 38th, 39th, 40th and 41st Streets (708/Waterside) | $2,132,000 | Two months prior to initiation of Phase I decommissioning and demolition at 708 First Office Building | June 1, 2001 | 2/3 Non-Waterside Allocation Amount

1/3 Waterside Allocation Amount |
| 3. Eliminate removal of slab at 616 First Avenue from Site Work | $745,000 | One month prior to initiation of Phase I slab removal at 616 First Avenue | January 15, 2001 | Non-Waterside Allocation Amount |
| 4. Eliminate removal of slab at Waterside from Site Work | $4,405,000 | Prior to initiation of structural demolition at Waterside | September 1, 2003 | Waterside Allocation Amount |
| 5. Close Waterside tunnels in place (instead of removal) | $375,000 | Prior to initiation of structural demolition at Waterside | September 1, 2003 | Waterside Allocation Amount |
| 6. Remediation and Demolition and Decommissioning of the Easement Areas, excluding utility deactivation and/or relocation (but including deactivated utilities that Con Edison leaves in place) | $4,934,000 | No later than two months after initiation of demolition at Waterside | November 1, 2003 | Waterside Allocation Amount |

| B. | Defined Additions | | | | |
|----|-------------------|--|--|--|--|
| 1. | Abatement of asbestos-containing materials in stacks (Waterside Stacks 2 and 3) | $3,633,000 | Prior to preparation of asbestos abatement plan for Waterside | July 15, 2002 | Waterside Allocation Amount |

ENDORSEMENT NO. 8

This endorsement, effective 12:01 a.m., November 15, 2000
Forms a part of Policy No.: 1950199
Issued to:      Consolidated Edison, Inc. and
                Consolidated Edison Company of New York, Inc.
                FSM East River Associates LLC
                TRC Companies, Inc.
                TRC Engineers, Inc.
                TRC Environmental Corporation

By:             Granite State Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ESTABLISHMENT OF A TRUST

The Company agrees that in the event that its Bests Rating (or equivalent), or the Bests Rating (or equivalent) of an insurer substituted for the Company pursuant to the Cut-Through endorsement attached to this Policy and incorporated hereto,  falls to A- or below (the Event) at any time while funds remain in the Policy Notional Commutation Account,  at the happening of that Event, the Company and/or the Insurer substituted for the Company pursuant to the Cut-Through endorsement, will establish a Trust whose purpose it is to isolate and protect the Insureds' interest in the Policy Notional Commutation Account.  The Trust will be established for the benefit of the Insureds and funded by an amount equal to the balance of the Policy Notional Commutation Account on the date of the Event.   The Trust will be administered by a Trustee, selected by the Insureds and approved by the Company and/or the Insurer substituted for the Company pursuant to the Cut-Through endorsement.   The Trustee will be responsible for authorizing any reductions in the Trust principal due to the payment of Project Costs/Site Work Costs. The Company and/or the Insurer substituted for the Company pursuant to the Cut-Through endorsement will bear all costs of administering the Trust.

If the Event does not take place while the balance of the Policy Notional Commutation Account is positive, the Trust will not be established and a Trustee will not be appointed.

The establishment of the Trust does not change any of the terms, conditions or obligations of either the Insureds or the Company and/or the Insurer substituted for the Company pursuant to the Cut-Through endorsement as they exist under this Policy.

All other terms, conditions and exclusions shall remain the same.

_____
AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

ENDORSEMENT NO. 9

This endorsement, effective 12:01 a.m., November 15, 2000
Forms a part of Policy No.: 1950199
Issued to:      Consolidated Edison, Inc. and
              Consolidated Edison Company of New York, Inc.
              FSM East River Associates LLC
              TRC Companies, Inc.
              TRC Engineers, Inc.
              TRC Environmental Corporation

By:         Granite State Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## CUT THROUGH ENDORSEMENT

It is hereby understood that if, at any time during the Policy Period, Granite State Insurance Company, the Company issuing this Policy, becomes unable to meet its financial obligations as created under this Policy, National Union Fire Insurance Company of Pittsburgh will become the primary insurer of the obligations created by this Policy.  If National Union Fire Insurance Company or Pittsburgh is, or becomes, unable to meet any financial obligations created under this Policy pursuant to this endorsement, the Named Insureds shall have the right to pursue any affiliate within the American International Group of companies or successors thereto, including without limitation American International Group (the "Insurer"), for the obligations created by the Policy.

This Cut Through obligation of National Union Fire Insurance Company of Pittsburgh is unaffected by any affiliation or lack thereof between National Union Fire Insurance Company of Pittsburgh and Granite State Insurance Company or any affiliate of the American International Group.  In the event that a Name Insured obtains a judgment for punitive obligations or any other damages in prosecuting a claim against Granite State Insurance Company, such damages shall be reimbursed promptly to such Named Insured in immediately available funds by National Union Fire Insurance Company or any affiliate within the American International Group of companies or successors thereto for the obligations created by the Policy .

All other terms, conditions and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE** of Granite State Insurance
Company and National Union Fire Insurance Company of
Pittsburgh or countersignature (in states where applicable)

PAGE 1 OF 1

ENDORSEMENT NO. 10

This endorsement, effective 12:01 a.m., November 15, 2000
Forms a part of Policy No.: 1950199
Issued to:  Consolidated Edison, Inc. and
     Consolidated Edison Company of New York, Inc.
     FSM East River Associates LLC
     TRC Companies, Inc.
     TRC Engineers, Inc.
     TRC Environmental Corporation

By:    Granite State Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SCHEDULE OF NON-OWNED LOCATIONS ENDORSEMENT**

It is hereby agreed that the following location(s) is (are) covered as a **Non-Owned Location**, subject to all of the terms and conditions of this Policy, and the corresponding Coverages, deductibles, and Limits of Liability shown for each such **Non-Owned Location** are included in Item 3 of the Declarations:

**NON-OWNED LOCATION:**

In addition to the above scheduled locations(s), **Non-Owned Locations** shall also include any location that receives **Waste**: (i) that is moved to such location from an above scheduled Non-Owned Location; and/or (ii) that comes to be located at such location notwithstanding arrangements made by an **Insured** for transportation to an above scheduled **Non-Owned Location**. For purposes of this endorsement, Waste means waste (including but not limited to **Pollutants**) generated by a **Named Insured** at or transported from an **Insured Property**, including any property in which wastes are contained (other than automobiles, rolling stock, vehicles, machines, vessels of conveyance or aircraft), and including materials to be recycled, reused, reconditioned or reclaimed.

All other terms, conditions and exclusions shall remain the same.

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

PAGE 1 OF 1

**GRANITE STATE INSURANCE COMPANY**
**POLLUTION LEGAL LIABILITY SELECT℠ POLICY**
<u>TABLE OF CONTENTS</u>*

I.    INSURING AGREEMENTS ................................................................................ 1

1.    Coverages ................................................................................. 1

COVERAGE A - ON-SITE AND OFF-SITE PROJECT COSTS
FOR PRE-EXISTING CONDITIONS AND THIRD PARTY CLAIMS
FOR ON-SITE AND OFF-SITE PROJECT COSTS RESULTING
FROM PRE-EXISTING CONDITIONS ................................................................ 1

COVERAGE B - ON-SITE PROJECT COSTS FOR NEW
POLLUTION CONDITIONS ............................................................................ 2

COVERAGE C - THIRD PARTY CLAIMS FOR ON-SITE BODILY
INJURY AND PROPERTY DAMAGE RESULTING FROM PRE-EXISTING CONDITIONS ......... 2

COVERAGE D - THIRD PARTY CLAIMS FOR OFF-SITE PROJECT
COSTS RESULTING FROM PRE-EXISTING CONDITIONS
(subsumed under Coverage A) ................................................................... 2

COVERAGE E - THIRD PARTY CLAIMS FOR OFF-SITE
PROJECT COSTS RESULTING FROM NEW POLLUTION
CONDITIONS............................................................................................ 2

COVERAGE F - THIRD PARTY CLAIMS FOR OFF-SITE BODILY
INJURY AND PROPERTY DAMAGE RESULTING FROM PRE-EXISTING CONDITIONS ......... 3

COVERAGE G - THIRD-PARTY CLAIMS FOR ON-SITE PROJECT
COSTS - NON-OWNED LOCATIONS ............................................................... 3

COVERAGE H - THIRD PARTY CLAIMS FOR OFF-SITE BODILY
INJURY, PROPERTY DAMAGE OR PROJECT COSTS -
NON-OWNED LOCATIONS ........................................................................... 3

COVERAGE I - CONDITIONS RESULTING FROM TRANSPORTED CARGO ...................... 3

---

* The captions contained in this Table of Contents are included solely for the convenience of the reader and do not include all the terms, exclusions and 0 of the Policy. Refer to the Policy itself for a description of the scope and limitations of coverage.

COVERAGE K – SITE WORK COST CAP - KNOWN CONDITIONS.................................... 3

COVERAGE L - SITE WORK COST CAP - UNKNOWN CONDITIONS................................ 4

COVERAGE M – COMPANY'S ACTION IN CASE OF DEFAULT ...................................... 4

COVERAGE N – DELAY DAMAGES ................................................................ 4

COVERAGE O – INDEMNIFICATION................................................................ 4

2.    LEGAL EXPENSE AND DEFENSE -- COVERAGES A THROUGH I........................... 5

II.    NOTICE REQUIREMENTS AND CLAIM PROVISIONS................................................ 6

A.    NOTICE................................................................................ 6

B.    NOTICE OF POSSIBLE CLAIM........................................................ 7

C.    SPECIAL CLAIMS PAYMENT PROVISIONS:  LOSS UNDER
COVERAGES K AND L ................................................................ 8

III.   RIGHTS OF THE COMPANY AND DUTIES OF AN INSURED IN THE
EVENT OF CONDITIONS AND IN CONNECTION WITH SITE
WORK ACTIVITIES ................................................................... 8

A.    Conditions - Coverages A Through I.............................................. 8

B.    Site Work Activities - Coverages K and L ........................................ 9

C.    Mechanics Liens and Contractor Bonds........................................ 10

D.    Loss-and-Expense under Coverage M and Delay Damages
under Coverage N............................................................... 11

E.    Demands Under Coverage O ................................................... 11

IV.    EXCLUSIONS........................................................................... 11

1.    COMMON EXCLUSIONS............................................................. 11

2.    COVERAGE I EXCLUSIONS......................................................... 12

3.    COVERAGE K AND L EXCLUSIONS................................................ 13

4.    COVERAGE A, K AND L EXCLUSIONS ........................................... 14

V.      LIMITS OF COVERAGE; DEDUCTIBLE ..................................................................14

        A.      POLICY AND COVERAGE AGGREGATE LIMIT ................................................14

        B.      EACH INCIDENT LIMIT - COVERAGES A THROUGH I .......................................14

        C.      COVERAGE SECTION AGGREGATE LIMIT.....................................................14

        D.      MAXIMUM FOR SITE WORK COST CAP.......................................................15

        E.      DEDUCTIBLE/SELF-INSURED RETENTION ....................................................15

VI.     DEFINITIONS.............................................................................................15

VII.    CONDITIONS .............................................................................................20

VIII.   EXTENDED REPORTING PERIOD FOR CLAIMS - COVERAGES
        A THROUGH I.............................................................................................28

        A.      Automatic Extended Reporting Period.............................................................28

                B.      Optional Extended Reporting Period

GRANITE STATE INSURANCE COMPANY
70 Pine Street
New York, NY 10270

## CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. -- FIRST AVENUE PROPERTIES INSURANCE POLICY

THIS POLICY CONTAINS CLAIMS MADE AND REPORTING REQUIREMENTS. THIS POLICY HAS CERTAIN PROVISIONS AND REQUIREMENTS UNIQUE TO IT AND MAY BE DIFFERENT FROM OTHER POLICIES THE INSURED MAY HAVE PURCHASED OR THE INSURER MAY HAVE ISSUED. DEFINED TERMS APPEAR IN BOLD FACE TYPE.

NOTICE: THE DESCRIPTIONS IN ANY HEADINGS OR SUB-HEADINGS OF THIS POLICY ARE INSERTED SOLELY FOR CONVENIENCE AND DO NOT CONSTITUTE ANY PART OF THE TERMS OR CONDITIONS HEREOF.

In consideration of the payment of the premium, in reliance upon the statements in the Declarations and the application annexed hereto and made a part hereof, and the materials and information made available therein, and pursuant to all of the terms of this Policy, the Company agrees with the **Named Insureds** as follows:

STATEMENT OF INTENT:

In consideration of the payment of the premium and subject to the terms hereof, the Company agrees with the **Named Insureds** that this Policy provides coverage for, among other things: the complete decommissioning and demolition of all on-site above ground and subsurface items, including without limitation, buildings, structures, enclosures, foundations, conduits, platforms, slabs, improvements, inactive utilities lines and edifices associated with the **Insured Properties** to the **Development Depth** and certain off-site structures; the cleanup of all on-site and off-site pre-existing conditions caused by known or unknown **Conditions** at, on, under or emanating to or from, or existing beyond the boundaries through migration or dispersal originating from, the **Insured Properties**; and third-party claims associated with **Conditions** at, on, under or emanating to or from, or existing beyond the boundaries through migration or dispersal originating from, the **Insured Properties**.

I. INSURING AGREEMENTS

   1. COVERAGES

THE FOLLOWING COVERAGES ARE IN EFFECT ONLY IF SCHEDULED IN THE DECLARATIONS:

COVERAGE A - ON-SITE AND OFF-SITE PROJECT COSTS FOR PRE-EXISTING CONDITIONS AND THIRD PARTY CLAIMS FOR ON-SITE AND OFF-SITE PROJECT COSTS RESULTING FROM PRE-EXISTING CONDITIONS

1. To pay **Project Costs** on behalf of an **Insured** for **Conditions** at, on, under, emanating to or from, or existing beyond the boundaries through migration or dispersal originating from, an **Insured Property**, if such **Project Costs** are **Incurred** during the **Policy Period** by reason of the discovery by an **Insured** during the **Policy Period** of **Conditions** at, on, under, emanating to or from, or existing beyond the boundaries through migration or dispersal originating from, an **Insured Property** which commenced prior to the **Continuity Date**, provided:

   (a) The discovery of such **Conditions** is reported to the Company in writing during the **Policy Period** or within one-hundred and twenty (120) days thereafter by a **Responsible Insured** and in accordance with Section II of the Policy;

Copyright, American International Group, Inc.

Discovery of such **Conditions** happens when a **Responsible Insured** gains actual knowledge of such **Conditions**; and

(b) Such **Conditions** are reported to the appropriate governmental agency in substantial conformance with applicable **Laws**, in effect as of the date of discovery.

2. To pay **Loss** on behalf of an **Insured** that such **Insured** is legally obligated to pay as a result of **Claims** first made against an **Insured** and reported to the Company, in writing, during the **Policy Period**, or during the **Extended Reporting Period** if applicable, for **Project Costs** resulting from **Conditions** at, on, under, emanating to or from, or existing beyond the boundaries through migration or dispersal originating from, the **Insured Property** which commenced prior to the **Continuity Date**.

## COVERAGE B - ON-SITE PROJECT COSTS FOR NEW POLLUTION CONDITIONS

1. To pay **Project Costs** on behalf of an **Insured** for **Pollution Conditions** at, on, under or emanating to an **Insured Property**, if such **Project Costs** are **Incurred** during the **Policy Period** by reason of the discovery by an **Insured** during the **Policy Period** of **Pollution Conditions** at, on, under, or emanating to the **Insured Property** which commenced on or after the **Continuity Date**, provided:

(a) The discovery of such **Pollution Conditions** is reported to the Company in writing during the **Policy Period** or within one-hundred and twenty (120) days thereafter by a **Responsible Insured** and in accordance with Section II of the Policy;

Discovery of such **Pollution Conditions** happens when a **Responsible Insured** gains actual knowledge of such **Pollution Conditions**; and

(b) Such **Pollution Conditions** are reported to the appropriate governmental agency in substantial conformance with applicable **Laws** in effect as of the date of discovery.

2. To pay **Loss** on behalf of an **Insured** that such **Insured** is legally obligated to pay as a result of **Claims** first made against an **Insured** and reported to the Company, in writing, during the **Policy Period**, or during the **Extended Reporting Period** if applicable, for **Project Costs** resulting from **Pollution Conditions** at, on, under, or emanating to an **Insured Property** which commenced on or after to the **Continuity Date**.

## COVERAGE C - THIRD PARTY CLAIMS FOR ON-SITE BODILY INJURY AND PROPERTY DAMAGE RESULTING FROM PRE-EXISTING CONDITIONS

To pay **Loss** on behalf of an **Insured** that such **Insured** is legally obligated to pay as a result of **Claims** first made against an **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable, for **Bodily Injury** to a person injured while on the **Insured Property** or **Property Damage**, caused by **Conditions** at, on, under or emanating to an **Insured Property** which commenced prior to the **Continuity Date**.

## COVERAGE D - THIRD PARTY CLAIMS FOR OFF-SITE PROJECT COSTS RESULTING FROM PRE-EXISTING CONDITIONS (subsumed under Coverage A)

## COVERAGE E - THIRD PARTY CLAIMS FOR OFF-SITE PROJECT COSTS RESULTING FROM NEW POLLUTION CONDITIONS

To pay **Loss** on behalf of an **Insured** that such **Insured** is legally obligated to pay as a result of **Claims** first made against an **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable, for **Project Costs** resulting from **Pollution Conditions** emanating from an **Insured Property** or existing beyond the boundaries through migration or dispersal originating from an **Insured Property**, which commenced on or after the **Continuity Date**.

Copyright, American International Group, Inc.

To pay Loss on behalf of an Insured that such Insured is legally obligated to pay as a result of Claims first made against an Insured and reported to the Company in writing during the Policy Period, or during the Extended Reporting Period if applicable, for Bodily Injury or Property Damage beyond the boundaries of an Insured Property that result from Conditions emanating from the Insured Property or which have migrated or otherwise come to be located at, or exist beyond the boundaries through migration or dispersal originating from an Insured Property, which commenced prior to the Continuity Date.

## COVERAGE G - THIRD-PARTY CLAIMS FOR ON-SITE PROJECT COSTS - NON-OWNED LOCATIONS

To pay Loss on behalf of an Insured that such Insured is legally obligated to pay as a result of Claims first made against an Insured and reported to the Company in writing during the Policy Period, or during the Extended Reporting Period if applicable, for Project Costs resulting from the presence, introduction, migration, disposal, discharge, dispersal, release or escape of any Pollutants at, on or under the Non-Owned Location.

## COVERAGE H - THIRD PARTY CLAIMS FOR OFF-SITE BODILY INJURY, PROPERTY DAMAGE OR PROJECT COSTS - NON-OWNED LOCATIONS

To pay Loss on behalf of an Insured that such Insured is legally obligated to pay as a result of Claims first made against an Insured and reported to the Company in writing during the Policy Period, or during the Extended Reporting Period if applicable, for Bodily Injury, Property Damage or Project Costs resulting from Pollutants emanating from, or existing beyond the boundaries through migration or dispersal originating from, a Non-Owned Location.

## COVERAGE I - CONDITIONS RESULTING FROM TRANSPORTED CARGO

To pay Loss on behalf of an Insured that such Insured is legally obligated to pay as a result of Claims for Bodily Injury, Property Damage or Project Costs first made against an Insured and reported to the Company in writing during the Policy Period, or during the Extended Reporting Period if applicable, resulting from, related to, arising from or associated with Conditions caused by Transported Cargo.

## COVERAGE K – SITE WORK COST CAP - KNOWN CONDITIONS

To pay on behalf of and to indemnify, as the case may be, an Insured for Loss which an Insured sustains on or after the Inception Date and before the Termination Date for Site Work Costs, if such Site Work Costs are sustained in the course of performing the Site Work to address Conditions which were identified in and/or discovered during performance of Site Work.

This coverage applies only if the following conditions are satisfied:

1. A Responsible Insured reports the Site Work Costs to the Company prior to the Termination Date, in accordance with Section II.A. of the Policy; and

2. The Contractor provides the Company with progress reports, including work completed and costs incurred during the previous month and to date, on at least a monthly basis on the progress of the Site Work and the Site Work Costs incurred under this Coverage K. The failure of the Contractor to make the required reports shall not constitute grounds for denial or limitation of coverage except as provided as follows. The Named Insureds shall be notified, in writing, by the Company, of the failure of the Contractor to make any such report. Any Named Insured shall then have the option, to be exercised within ninety (90) days of receipt of such notification, to assume the responsibility of making the delinquent and/or future progress reports. In the event progress reports are not provided by the Named Insureds, the Company shall not be responsible to pay for any increase in Loss to the extent that the delay in reporting or failure to report has actually resulted in such increase in Loss.

Copyright, American International Group, Inc.

To pay on behalf of and to indemnify, as the case may be, an **Insured** for **Loss** which an **Insured** sustains for **Site Work Costs** on or after the **Inception Date** and before the **Termination Date**, for **Conditions** not otherwise identified in, or different in kind or extent from those identified in, or existing in concentrations different from those identified in, the **Site Work Action Plan** for **Site Work** at, on, under, migrating to or from, or existing beyond the boundaries through migration or dispersal originating from, an **Insured Property**.

This **Coverage** applies only if any such **Condition** is first discovered during performance of the **Site Work**. This requirement shall be deemed to be satisfied when:

(a) A **Responsible Insured** gains actual knowledge of any such **Condition**; and

(b) A **Responsible Insured** reports the discovery of any such **Condition** to the **Company** no later than one-hundred and twenty (120) days after discovery of any such **Condition** and in any event before the **Termination Date**, in accordance with Section II.A. of this Policy.

## COVERAGE M – COMPANY'S ACTION IN CASE OF DEFAULT

To pay all **Loss-and-Expense**, other than **Delay Damages**, and take all actions necessary to complete the obligations and responsibilities of **Contractor** pursuant to the **Contract** that are the result of a **Default** as outlined in Section VII, Paragraph O, **Default**. The **Company's** expenses (whether in-house or incurred by third parties on its behalf), including but not limited to administrative expenses, legal expenses and costs of consultants (other than the **Contractor**) sustained in connection with the preparation and negotiation of contracts for substitute performance and costs of bidding and any such similar expenses sustained in taking any or all of the actions necessary to complete its obligations and responsibilities outlined in such paragraph will not erode the Limits of Liability under this **Coverage** shown in Item 3 of the Declarations.

## COVERAGE N— DELAY DAMAGES

To pay **Delay Damages** to the **Named Insured** listed in Items 1(a) and 1(b) of the Declarations which are sustained as a result of **Schedule Failure**. Such **Delay Damages** to the **Named Insureds** listed in Items 1(a) and 1(b) of the Declarations shall be paid as follows: (1) first, $10,000,000 from the Policy Notional Commutation Account or the remaining balance of the Policy Notional Commutation Account, which ever is less, such amount to decrease the available Limit of Liability in Item 4(a) of the Declarations (if the **Schedule Failure** is associated with the Waterside Insured Property, the Waterside Allocation Amount shall be reduced, and if the **Schedule Failure** is associated with any other **Insured Properties** the Non-Waterside Properties Allocation Amount shall be reduced); and then (2) up to the remaining Limit of Liability shown in Item 3 of the Declarations. The **Contractor** shall pay a 25% co-insurance to the **Company** under (2) above, but in no event more than ~~$2,500,000~~. In the event that the **Contractor** is unable to meet its obligations for co-insurance under this **Coverage** section, the **Company** shall be responsible for such co-insurance obligation. Irrespective of the date that a request is made to the **Company** for **Delay Damages**, no payment shall be tendered by the **Company** prior to March 1, 2003. If **Delay Damages** suffered prior to March 1, 2003 are presented to the **Company**, no interest which may have accrued on the requested amount of **Delay Damages** shall be paid for the period prior to March 1, 2003.

## COVERAGE O – INDEMNIFICATION

In the event that any **Demand** is made and such **Demand** is not paid by **Contractor** within thirty days (30) of such **Demand**, to pay to the **Named Insured(s)** making such **Demand** any and all **Indemnification Costs** arising from such **Demand**, up to the Limit of Liability as set forth in Item 3 of the Declarations in the aggregate for the **Policy Period** such amount to decrease the available Limit of Liability shown in Item 4(a) of the Declarations. Although a **Demand** may be made at any time during the **Policy Period** or Extended Reporting Period, the **Company** shall pay only those **Indemnification Costs Incurred** in connection with events that occur prior to the **Termination Date**, assignment (pursuant to Section VII.A.), cancellation/suspension (pursuant to Section VII.G.) or total commutation (pursuant to the Policy National Commutation Account Endorsement) of this **Coverage**, in each circumstance with respect to **Contractor**. The **Company** agrees to

Copyright, American International Group, Inc.

pay all Indemnification Costs as soon as practicable after notice of the Demand in accordance with this Policy's terms and conditions. To the extent that amounts exist in the Policy Notional Commutation Account, those amounts will first be used to pay any of the Indemnification Costs under this Coverage Section.

## 2. LEGAL EXPENSE AND DEFENSE -- COVERAGES A THROUGH I

The Company shall have the duty to defend any **Claim** or **Loss** or pay **Legal Expenses** sustained by a **Named Insured** in connection with any **Claim** or **Loss** potentially covered under this Policy. The duty to defend or pay **Legal Expenses** shall be triggered whenever the allegations of **Conditions** giving rise to a **Claim** or **Loss** have been made and submitted to the Company in writing. Should a **Claim** or **Loss** allege matters that are potentially covered, in whole or in part, under this Policy the Company shall have a duty to defend any **Claim** or **Loss** or pay **Legal Expenses** for the entire **Claim**. The Company's duty under this Policy to defend any **Claim** or **Loss** or pay **Legal Expenses** shall commence immediately upon notification to and acknowledgment from the Company in writing, of a potentially covered **Claim** or **Loss** and shall continue until the **Claim** or **Loss** is resolved in its entirety or until the **Claim** or **Loss** is limited conclusively to non-covered matters, notwithstanding the expiration of the **Policy Period**. If or when a **Loss** or **Claim** is resolved to be, or conclusively limited to, non-covered matters, the Company shall not be entitled to recovery from the **Insured** of any **Legal Expenses** paid in connection with such **Claims** or **Loss**. The Company's duty to defend and pay any **Claim** or **Loss** shall cease only when the applicable limits of liability (as described in Section V) have been exhausted. **Legal Expenses** are included in **Loss**, **Project Costs** and/or **Site Work Costs** and reduce both the applicable Limit of Liability and the applicable deductible amount as shown in Item 3 of the Declarations.

The Company agrees that the **Named Insureds** have the right to select defense counsel with the Company's consent, which shall not be unreasonably withheld, conditioned, delayed or denied, billing at the counsel's established rates, to defend the **Named Insureds** at the Company's expense (subject to applicable Deductible amounts) with respect to any **Claim** or **Loss** covered or potentially covered under this Policy, and that the **Legal Expenses** will be consistent with amounts charged for the defense of a similar **Claim** or **Loss** in the community where the **Claim** or **Loss** arose or is being defended; such **Legal Expenses** shall reduce the available limits of liability. In the event that multiple **Named Insureds** cannot be represented by one defense counsel, each **Named Insured** shall be entitled to select defense counsel, with the Company's consent, which shall not be unreasonably withheld, conditioned, delayed or denied, to represent its particular interest in such **Claim**. In such a case, the **Legal Expenses** incurred by all defense counsel shall erode the applicable limits of liability. If the Company has an agreement with the counsel selected by the **Named Insureds** that its rates charged will be less than those charged to a **Named Insured**, the **Named Insured** agrees that the Company shall pay the agreed upon rates if acceptable to the counsel selected by **Named Insureds**. The Company agrees to pay counsel's reasonable and customary fees and expenses in a timely manner.

In the event the **Named Insured** is entitled by law, the **Named Insured** may select independent counsel to defend the **Insured** at the Company's expense, billing at the counsel's established rates, to defend the **Named Insureds** at the Company's expense, and that the **Legal Expenses** will be consistent with amounts charged for the defense of a similar **Claim** or **Loss** in the community where the **Claim** or **Loss** arose or is being defended. The attorney fees and all other litigation expenses the Company must pay to that counsel are limited to the rates the Company would actually pay to counsel that the Company retains in the ordinary course of business in the defense of similar **Claims** in the community where the **Claim** arose or is being defended. If the Company has an agreement with the counsel selected by the **Named Insureds** that its rates charged will be less than those charged to a **Named Insured**, the **Named Insured** agrees that the Company shall pay the agreed upon rates if acceptable to the counsel selected by the **Named Insureds**. The Company agrees to pay counsel's reasonable and customary fees and expenses in a timely manner.

The Company may exercise the right to require that such defense and independent counsel have certain minimum qualifications with respect to their competency, including experience in defending **Claim** or **Loss** similar to those pending against a **Named Insured**, and to require such counsel to have professional liability insurance coverage. As respects any such counsel, a **Named Insured** will request that counsel will timely respond, consistent with professional responsibilities, to the Company's reasonable requests for information regarding the **Claim** or **Loss**; provided however, that the **Named Insureds** will have the sole discretion to maintain the attorney-client communication privilege and the attorney work-product protection solely as

5

Copyright, American International Group, Inc.

review all technical reports and documentation which relate to the Claim or Loss. An **Insured** may at any time, by its signed consent, freely and fully waive its right to select independent counsel.

At the Company's consent, which consent shall not be unreasonably withheld, conditioned, denied or delayed, the **Named Insureds** shall have the right to coordinate with, cooperate with, and, in good faith, participate in the defense and investigation of a **Claim** or **Loss**. A **Named Insured** shall not enter into settlements or assume obligations without the Company's consent, which consent shall not be unreasonably withheld, conditioned denied or delayed, except at a **Named Insured's** own cost; provided however, that this limitation on the **Named Insureds'** settlement or assumption rights shall not apply to obligations imposed by **Laws** to the extent that the settlements or assumptions imposed by **Laws** do not exceed the minimum requirements of such **Laws**.

If a **Named Insured** refuses to consent to the amount of any final settlement within the limits of liability of this Policy recommended by the Company and acceptable to the claimant, the Company's duty to pay **Legal Expenses** shall cease and the **Named Insured** shall thereafter negotiate or defend such **Claim** or **Loss** independently of the Company and the Company's liability shall not exceed such amount, less the applicable **Deductible**, if any, for which the **Claim** or **Loss** could have been settled if such recommendation was consented to. The foregoing shall not apply in the event an **Insured** refuses to consent to a settlement which imposes any additional requirements on or to an **Insured**, including expressly any requirement to enter into an administrative agreement, order or decree relating to an **Insured Property** or other properties of an **Insured**, or includes any additional restriction on the use of, sale of or activities at an **Insured Property**, other than those restrictions that are anticipated for the final use of the **Insured Property** as provided in the **Contract**.

If the Company refuses to consent to any written settlement offer within the limits of liability of this Policy recommended by a **Named Insured**, agreed to by counsel for such **Named Insured** and acceptable to the claimant, the Company shall thereafter be liable for such amounts in excess of what the **Named Insured** and its counsel could have settled the **Claim** for and such excess amounts shall not erode the limits of liability for the applicable coverage. As long as the Company controls the defense pursuant to the conditions of this paragraph, the Company shall retain the right to negotiate and defend such **Claim** or **Loss** independently of the **Named Insureds**. The Company shall be responsible for the **Legal Expenses** (and the same shall not erode the applicable Limits of Liability) from the time the settlement offer is declined until the ultimate resolution of the **Claim**, but only to the extent such resolution results in a **Loss** greater than the settlement offer.

## II. NOTICE REQUIREMENTS AND CLAIM PROVISIONS

It is a condition precedent to any rights afforded under this Policy that an **Insured** provide the Company with notice of **Conditions, Claims, Loss, Project Costs, Site Work Costs, Default, Delay Damages** and/or the discovery of **Pollutants** as set forth below but only to the extent not already disclosed by the **Insureds**. In making the aforementioned notice, the **Insureds** have not and shall not be required to waive or otherwise impair the attorney-client privilege or the attorney work-product protection. Moreover, the failure of an **Insured** to cooperate with the Company's notice requirements set forth below, despite the **Insured's** good faith efforts to do so, and/or the failure to provide or to timely provide a report to governmental agencies in conformance with **Laws**, shall not affect the Coverages provided herein, unless and only to the extent that the Company can demonstrate actual and substantial prejudice as a result of such failure.

## A. NOTICE

1. In the event of **Conditions, Claim** or **Loss** under Coverages A through I, or the discovery of **Conditions** not identified in the **Site Work Action Plan**, at, on, under, or migrating to or from, or existing beyond the boundaries through migration or dispersal originating from, an **Insured Property** under Coverages K or L, or in the event of **Default** under Coverage M, or in the event of **Schedule Failure** under Coverage N, or in the event of a **Demand** under Coverage O, a

Copyright, American International Group, Inc.

Responsible Insured shall give written notice to and as set forth below, in the form provided by the Company and attached hereto by Endorsement:

Manager, Pollution Insurance Products Unit
AIG Technical Services, Inc.
Environmental Claims Department
80 Pine Street, Sixth Floor
New York, New York 10005

or other address(es) or designated individuals as substituted by the Company and provided to the Insureds pursuant to Section VII., Paragraph T in writing.

2. A **Responsible Insured** shall give notice of **Conditions, Claim, Loss, Default, Schedule Failure** and/or **Demand** as soon as practicable and such notice shall include, to the extent reasonably available without the requirement for independent investigation, information sufficient to identify the **Named Insured(s)**, the **Insured Property**, the names of persons with knowledge of the **Conditions, Claim, Loss, Default, Schedule Failure** and/or **Demand** and reasonably available information, regarding the time, place, cause, nature of and other circumstances relating to the **Conditions, Claim, Loss, Default, Schedule Failure** and/or **Demand** at the time of said **Condition, Claims, Loss, Default, Schedule Failure** and/or **Demand**. A reporting to effect coverage set forth in Section II.A.1 above by one **Named Insured** shall satisfy the reporting requirements for all **Named Insureds**.

3. The parties to this Policy agree that the rights and obligations of the **Named Insureds** set forth herein are and shall be treated as severable, as provided in Section VII., Paragraph R below. Subject to the limits of liability, each **Named Insured** has an independent right to coverage hereunder which shall not be affected by the failure of another **Named Insured** to make a report as set forth in Section II.A.1 above. Each **Named Insured** shall have the right to report the discovery of **Conditions, Claim, Loss, Default, Schedule Failure** and/or **Demand** upon gaining actual knowledge regardless of when or if the other **Named Insureds** gained knowledge of the existence of such **Conditions, Claim, Loss, Default, Schedule Failure** and/or **Demand**. In the event a **Named Insured** fails to make a report or give notice within the time period required, the Company may only reduce coverage to that **Named Insured** and only to the extent that the failure to report or give notice actually results in increasing the amount of **Loss, Loss-and-Expense, Delay Damages** and/or **Indemnification Costs** payable hereunder.

4. A **Responsible Insured** shall give notice of a **Claim** as soon as practicable, but in any event during the **Policy Period** or **Extended Reporting Period**, if applicable. When a **Claim** is made, the **Responsible Insured** shall forward the following information to the Company as soon as practicable, as well as other reasonable information requested by the Company, to the extent any such information is in the possession of a **Named Insured** and is available without the requirement of independent investigation by the **Named Insured**:

   a. Reasonably available information with respect to the time, place and circumstances thereof, and the names and addresses of the claimant(s) and available witnesses;

   b. Demands, summonses, notices or other process or papers filed with a court of law, administrative agency or an investigative body; and,

   c. Other information related to the **Loss** in the possession of the **Named Insured** or its hired experts which the Company reasonably deems necessary.

## B. NOTICE OF POSSIBLE CLAIM

1. If during the **Policy Period**, a **Responsible Insured** first becomes aware of any **Condition** which it reasonably expects may result in a **Claim** under one or more of Coverages A through I, a **Responsible Insured** may provide written notice to the Company during the **Policy Period**

7

Copyright, American International Group, Inc.

against an **Insured** with respect to such **Condition** and reported to the Company within five (5) years after the end of the **Policy Period** of this Policy or any continuous, uninterrupted renewal thereof, shall be deemed to have been first made and reported during the **Policy Period**. Such **Claim** shall be subject to the terms, conditions and limits of coverage of this Policy.

2. It is a condition precedent to the coverage afforded by this clause that written notice of any **Condition** under paragraph 1. above contain all of the following information: (a) the known or suspected cause of such **Condition**; (b) the **Insured Property** upon which such **Condition** is suspected to have taken or took place; (c) the **Bodily Injury, Property Damage or Project Costs** which have resulted or may result from such **Condition**; (d) the **Insured(s)** which may be subject to the resultant **Claim** and any potential claimant(s) known or identified at the time of the discovery of such **Condition**; (e) engineering information about such **Condition** and any other technical information in the possession of the **Named Insureds** that the Company deems reasonably necessary that is related to the **Condition** or resultant **Claim**; and (f) the circumstances by which and the date a **Responsible Insured** became aware of the resultant **Claim**. Notwithstanding the above, in all cases (a) - (f), an **Insured's** failure to predict any suspected cause or result shall not constitute grounds for denial or limitation of coverage.

C. **SPECIAL CLAIMS PAYMENT PROVISIONS: LOSS UNDER COVERAGES K AND L**

1. The Company, upon receipt of evidence of a Loss under **COVERAGE K – SITE WORK COST CAP – KNOWN CONDITIONS** and **COVERAGE L – SITE WORK COST CAP – UNKNOWN CONDITIONS**, shall review and issue payment to the Insured within thirty (30) days of receipt of evidence of the Loss. If a portion of the Loss is contested by the Company, the Company shall issue a payment to the Insured for the uncontested portion of the Loss within thirty (30) days of receipt of evidence of the Loss. The Contractor agrees to work with the Company to resolve any contested portions of Loss on a timely basis. In no event shall the Company take longer than thirty (30) days from the receipt of the evidence of a Loss to issue payment for the undisputed portion of a Loss to the Insured. If a Loss payment is made to the Insured within the thirty (30) day timeframe from the date of the receipt of evidence of Loss, and part of the Loss is still in dispute, the Contractor agrees to continue to provide information to the Company and to cooperate to resolve the dispute. Any necessary monetary adjustment as a result of disputed Loss shall be reconciled by making equal adjustments to payments related to the next subsequent Loss.

2. Evidence of a Loss in the case of **COVERAGE K –SITE WORK COST CAP – KNOWN CONDITIONS** and **COVERAGE L – SITE WORK COST CAP – UNKNOWN CONDITIONS**, shall consist of the normal receipts that are generated by or on behalf of the Insured, its agents or subcontractors, in performing the **Site Work** . The Insured will submit evidence of Loss to the Company on a monthly basis using the Form provided by the Company and attached hereto by Endorsement.

3. The Company shall within thirty (30) days of receipt of a notice pursuant to this Section II, make a written response outlining its position regarding any applicable Coverage.

4. The Contractor shall supply to Company a forecast of **Site Work Costs** on a quarterly basis to assist the Company in anticipating the upcoming months' **Site Work Costs**.

III. **RIGHTS OF THE COMPANY AND DUTIES OF AN INSURED IN THE EVENT OF CONDITIONS AND IN CONNECTION WITH SITE WORK ACTIVITIES**

A. **Conditions - Coverages A Through I**

1. The Company's Rights pursuant to Coverages A - I:

In the event that the **Named Insureds** fail to take reasonably timely action to clean up or mitigate **Conditions** to the extent required by Laws at, on, under, migrating to or from, or existing beyond

8

Copyright, American International Group, Inc.

that the Company has provided to the **Named Insureds** reasonable prior notice of its intent to do so, the Company shall have the right but not the duty to clean up or mitigate **Conditions** about which it has received notice as described in Section II of this Policy, by retaining competent professional(s) or contractor(s) and developing a remedial plan mutually acceptable to the **Named Insureds** and the Company. In no event shall the actions taken by the Company interfere with or delay the performance of the **Site Work**. Any **Project Costs** expended by the Company under this Paragraph will be deemed sustained or expended by an **Insured** and shall be applied against the limits of liability under the applicable **Coverage** under this Policy.

2. A **Named Insured** shall have the duty to mitigate **Conditions** to the extent required by **Laws**, by retaining competent professional(s) or contractor(s), including the **Contractor**, mutually acceptable to the Company and the **Named Insured** listed in the Declarations in Item 1(a), however, the **Named Insureds** shall have such duty only to the extent that they are an owner, operator or **Contractor** on an **Insured Property**. The Company shall have the right but not the duty to review and approve, such approval not to be unreasonably withheld, conditioned, denied or delayed, all aspects of any such activities. The **Named Insured** shall notify the Company of actions and measures taken pursuant to this paragraph.

## B. Site Work Activities - Coverages K and L

The Company's Rights pursuant to Coverages K and L

1. The Company shall have the right, but not the duty, periodically to review, assess, inspect and approve all aspects of any **Site Work** to which Coverages K or L apply, provided, however, that the Company's review, assessment, inspection and approval does not interfere with or delay the completion of the **Site Work** by the **Completion Dates**. Neither the Company's rights nor its exercise of the rights under this paragraph shall constitute an undertaking to determine or warrant that the **Site Work** is safe, healthful, or in conformity with **Laws**.

2. The **Contractor** under Coverages K and L shall have the duty to furnish the Company with monthly reports detailing the progress the **Contractor** is making towards the completion of the **Site Work** at each of the individual **Insured Properties** in a format pre-approved by the Company so that the Company can determine whether the **Contractor** can meet the **Completion Dates**. In the event the Company, in its sole discretion, believes the **Contractor** is in danger of failing to complete the **Site Work** in order to meet the **Completion Dates**, the Company shall have the right to submit a **Plan of Action** to the **Contractor** under Coverages K and L. The **Contractor** will have thirty (30) days to offer a rebuttal to the **Plan of Action**; if none is received by the Company, the **Contractor** will be deemed to have accepted the **Plan of Action**. The Company will monitor the **Site Work** to ensure compliance with the **Plan of Action**. If after thirty (30) days the **Contractor** is in noncompliance with the **Plan of Action**, the Company shall have the right to obtain bids or negotiate proposals from **Supplemental Contractors** acceptable to the **Named Insured** listed in Item 1(a) of the Declarations, whose acceptance shall not be unreasonably withheld, for a contract for either completion of the **Plan of Action** and/or assistance in the **Plan of Action**, including the obligations, responsibilities and assumption of liabilities of **Contractor** associated therewith under the **Contract**, in accordance with **Laws** and to the satisfaction of the **Named Insured** listed in Item 1(a) of the Declarations, within the **Completion Dates** as contemplated in the **Contract**, and to arrange for a contract acceptable to the **Named Insured** listed in Item 1(a) of the Declarations to be prepared for execution by the **Supplemental Contractor** and the **Named Insured** listed in Item 1(a) of the Declarations. Such sums paid to any **Supplemental Contractor** shall be **Losses** which reduce the Policy Notional Commutation Account, if positive, and in all events such amounts will reduce the applicable limit of liability, however, all administrative costs associated with the preparation and/or implementation of the **Plan of Action** shall be borne by the Company and shall not reduce the applicable Limit of Liability or Policy Notional Commutation Account. In the event of the hiring of a **Supplemental Contractor**, the Company shall use best efforts to ensure that the **Plan of Action** and the work thereunder is completed in order to meet the **Completion Dates**. In the event that a **Supplemental Contractor** is hired, the Company shall

9

Copyright, American International Group, Inc.

assume all of the Contractor's co-insurance obligations for Delay Damages of this particular Insured Property.

3. As between the Company and the Named Insureds, Contractor shall have the duty, and the Named Insureds listed in Items 1(a) and 1(b) of the Declarations shall have the right but not the duty to: (a) take all reasonable and prudent steps to minimize the Site Work Costs provided that a Named Insured may determine, in accordance with the terms and conditions set forth in the Contract, the means, methods, sequences and techniques of the Site Work, however, except as otherwise provided in other private agreements among the Named Insureds, a Named Insured shall not be obligated to accept or institute additional restrictions on the sale of, use of or activities at an Insured Property other than those restrictions that are anticipated for the final use of the Insured Property as provided in the Contract; (b) to the extent reasonable or commercially practicable, limit access to the Insured Property, as necessary, so as to prevent the further spread of Pollutants; (c) retain competent professional(s) or contractor(s), including the Contractor, reasonably acceptable to the Company and the Named Insured listed in Item 1(a) of the Declarations to undertake and complete the Site Work; (d) keep detailed records of all Site Work Costs; and (e) to the extent of the Named Insured's legal right of access, permit the Company periodically to inspect the Insured Property, as necessary, provided that the review does not interfere with, impair or delay the completion of the Site Work in accordance with the Completion Dates, after providing reasonable notice, and, with the exception of material or information subject to deliberative process, work product or attorney-client privileges, inspect all financial records, drawings, plans and specifications related to the Loss or Conditions. Failure of the Named Insureds listed in Items 1(a) and 1(b) of the Declarations to avail themselves of the rights delineated in this paragraph shall not be a defense of the Company to cancel, delay or deny coverage.

4. With the exception of material or information subject to deliberative process, work product or attorney-client privileges, the Insureds shall cooperate with the Company by providing the Company with:

(a) Relevant and material information developed or discovered by the Insured concerning the Site Work that is reasonably necessary for the Company to review, assess, approve, inspect and monitor the Site Work;

(b) Reasonable access to interview any agent, servant or employee of the Insured involved in the Site Work or any contractor or subcontractor involved in the Site Work upon prior notice to the Insureds, but only with respect to either the performance of the Site Work or the Site Work Costs; and

(c) Other relevant and material information relevant to reasonable requests from the Company concerning the Site Work.

## C. Mechanics Liens and Contractor Bonds

The Company shall have the duty to remove any mechanics liens placed upon the Insured Properties by any person or entity performing Site Work or other work performed in connection with the Insured Properties, whether or not the Company has received payment or is reimbursed for such payment from the Contractor, payment for which is defined in Section VI to be Project Costs. The Company's expenses including but not limited to administrative expenses, legal expenses and costs of consultants sustained in connection with removal of such mechanics liens will not erode any Limits of Liability under this Policy. Such amounts expended by the Company in the removal of such liens shall serve to reduce any amount to be paid to the Contractor from the Policy Notional Commutation Account. The Contractor shall have the duty to provide the Company with lien waivers from all of its subcontractors performing such work and to provide the same for itself.

Copyright, American International Group, Inc.

The Contractor shall have the duty to obtain Payment and Performance Bonds from the sub-contractors performing the Demolition and Decommissioning and Site Work and performing the lead abatement. Such Payment and Performance Bonds shall be in a form and with a bonding company acceptable to the Company. Such bonds shall name the Company as a Co-Obligee.

The **Contractor** has the duty to limit Site Work Costs for the above-referenced sub-contracted work to the amount of the guaranteed price contracts provided to the Company prior to Site Work commencing. To the extent that the **Site Work Costs** exceed the amount of the guaranteed price contracts, the **Contractor** has the duty to pursue completion of all bonded sub-contracted Site Work through such Payment and Performance Bonds.

D. **Loss-and-Expense under Coverage M and Delay Damages under Coverage N**

All **Named Insureds** shall have a duty to take reasonably prudent steps to mitigate **Loss-and-Expense** under Coverage M and **Delay Damages** under Coverage N. Such mitigation steps shall include, but not be limited to: canceling discretionary and unnecessary related contracts to the extent possible, or halting actions to be taken pursuant to discretionary and unnecessary related contracts, so as to minimize future damages on that particular contract; refraining from entering into any contract or agreement which would increase the **Loss-and-Expense** under Coverage M after such Coverage is triggered and/or **Delay Damages** under Coverage N after such Coverage is triggered; and taking commercially reasonable action to minimize the amount of **Delay Damages** through management of risks associated therewith. Notwithstanding this provision, no mitigation steps which are reasonably expected to increase **Delay Damages** shall be required of the **Insureds**.

E. **Demands Under Coverage O**

Contractor shall have a duty to promptly respond to any Demands, forward the same to the Company and indemnify the Company for any **Indemnification Costs** paid hereunder.

## IV. EXCLUSIONS

1. **COMMON EXCLUSIONS** - The following exclusions apply to all Coverages.
   Unless otherwise provided in this Policy, this Policy does not apply to Project Costs, Site Work Costs, Claims, or Loss:

   A. **Punitive Damages; Fines/Penalties:**

   due to or for any punitive, exemplary or the multiplied portion of multiple damages, or any civil, criminal or administrative fines, penalties or assessments, except where such damages, fines, penalties or assessments are insurable under applicable law;

   B. **Contractual Liability:**

   arising from a **Claim** based on or arising out of liability of others assumed by a **Named Insured** under any contract or agreement unless the liability of the **Insured** would have attached in the absence of such contract or agreement or the contract or agreement is an **Insured Contract**.

   C. **Transportation:**

   except with respect to Coverage I, arising out of the ownership, maintenance, use, operation, but not loading or unloading, of any vehicle, machine or vessel of conveyance beyond the boundaries of the **Insured Property**.

   D. **Noncompliance:**

   arising from a **Condition** based upon or attributable to any **Responsible Insured's** intentional, willful or deliberate noncompliance with any **Law** applicable at the time of said noncompliance

Copyright, American International Group, Inc.

which occurs after the Continuity Date. However, with respect to Coverages K, L, M, N and O, this exclusion does not apply to such noncompliance which resulted in the necessity of the Site Work. This exclusion shall only apply to the Named Insured whose intentional, willful or deliberate noncompliance results in Conditions and then only to the extent that such non-compliance actually results in an increase in the amount of Loss otherwise payable by the Company hereunder. This exclusion shall not apply to acts taken or omissions made in good faith on the written advice of competent counsel.

E.  **Insured vs. Insured:**

As a direct result of Claims by any Insured against any other person or entity who is also an Insured under this Policy. However, this exclusion does not apply to Loss resulting from Claims initiated by third parties or when Project Costs, Claims, Site Work Costs, Loss, Loss-and-Expense, Delay Damages and Indemnification Costs are the subject of an indemnification given in any Insured Contract except for Legal Expenses Incurred by Contractor or its successors in interest. This exclusion also does not apply to Claims made by an employee of one Insured against another Insured so long as the other Insured is not the employer of such employee and such employee is not, and has not been, employed at the Insured Property.

F.  **Employer Liability:**

arising from Bodily Injury to an employee of an Insured or its parent, subsidiary or affiliate arising out of and in the course of employment by an Insured or its parent, subsidiary or affiliate.

G.  **Prior Knowledge/Non-Disclosure:**

as respects only the Contractor, arising from a Condition existing prior to the Continuity Date of this Policy which was known to the Contractor's Responsible Insured and willfully not disclosed in the application process for this Policy, if such Responsible Insured knew or reasonably could have expected that such Condition would give rise to Project Costs, Site Work Costs, Loss, Claim, Loss-and-Expense, Delay Damages and Indemnification Costs under this Policy. This exclusion shall apply only to the Contractor if it willfully failed to disclose such Condition and then, only to the extent that such non-disclosure resulted in an increase in the amount of Loss otherwise payable under the Policy. The Company acknowledges that it was furnished access to the Insured Properties, as well as data and information known to the Contractor, including, but not limited to, the documents listed in Exhibit G of the Contract.

2.  COVERAGE I EXCLUSIONS -- The following exclusions apply to Coverage I.

Unless otherwise provided in the Policy, this Policy does not apply to Claims, or Loss:

A.  **PROPERTY DAMAGE TO CONVEYANCES:**

for Property Damage to any vehicles, machines or vessels of conveyance utilized during the transportation of Cargo. This exclusion does not apply to Claims made by third-party carriers of the Insured for such Property Damage arising from the Insured's negligence.

B.  **POLLUTION CONDITIONS PRIOR OR SUBSEQUENT TO TRANSPORTATION OF CARGO:**

arising from a Pollution Condition:

(1) which commences prior to the transportation of Cargo; or

(2) which commences after Cargo reaches its final destination, or while the Cargo is in storage (for more than seven (7) days) or off-loaded from the vehicle, machine or vessel of conveyance which was transporting it;

12

Copyright, American International Group, Inc.

made by a third-party carrier, its agents or employees, for **Bodily Injury, Property Damage** or **Project Costs,** whether or not the **Bodily Injury, Property Damage** or **Project Costs** were directly incurred by such third-party carrier. This exclusion does not apply to **Claims** arising from the **Insured's** negligence.

D. **UNLICENSED CARRIERS**

associated with or related to carriers known to a **Responsible Insured** not to be properly licensed.

3. **COVERAGE K AND L EXCLUSIONS** -- The following exclusions apply to Coverages K and L. Unless otherwise provided in this Policy, this Policy does not apply to **Loss.**

A. **Bodily Injury, Property Damage, Or Liability To Third-Parties**

arising from any liability to any third-party for any reason whatsoever.

B. **Delay, Suspension and Defects**

arising from:

1. Delay due to labor disputes, including, but not limited to, strikes;

2. Suspension, lapse, modification or cancellation of any license, permit, lease or contract which is required by the governmental entity responsible for supervision of the **Site Work;**

3. Suspension of operations or prohibition of access to an **Insured Property** by order of governmental authority with jurisdiction over the **Site Work;**

In all events, this exclusion does not apply if the **Company** must take action pursuant to the provisions of Section VII., Paragraph, O Default, as provided under Coverage M or pay **Delay Damages** under Coverage N or Indemnification Costs under Coverage O.

C. **Modification of Site Work Action Plan**

arising from any modification of the **Site Work Action Plan** made by a **Named Insured,** unless:

1. Such modification is required for conformance with **Laws** or required or approved by any governmental authority with jurisdiction over the **Site Work;**

2. The **Company** has consented to such modification in advance, in writing, such consent not to be unreasonably withheld, conditioned, delayed or denied. Except as provided under the terms and provisions set forth in the **Contract,** under no circumstances shall the **Company** agree to make modifications to the **Site Work Action Plan;** or

3. Such modification is defined in the Endorsement for Defined Additions and Reductions.

In any event, this exclusion shall only excuse or reduce the amount payable by the **Company** for **Site Work Costs, Loss, Loss-and-Expense** or **Indemnification Costs** to the extent that such modification increases the amount of **Site Work Costs, Loss, Loss-and-Expense** or **Indemnification Costs.**

Copyright, American International Group, Inc.

4. **COVERAGE A, K AND L EXCLUSIONS** -- The following exclusions apply to Coverages A, K and L. Unless otherwise described in this Policy, this Policy does not apply to Project Costs, Site Work Costs, Claims or Loss:

A. **Remediation below the Development Depth**

Arising from any **Site Work Costs** or **Project Costs** relating to **Pollution Conditions** located below the **Development Depth** unless such **Site Work Costs** or **Project Costs** are necessary to allow Unencumbered Development, as that term is defined in the **Contract**, or such **Site Work Costs** or **Project Costs** are otherwise required by **Laws**.

## V. LIMITS OF COVERAGE; DEDUCTIBLE

Regardless of the number of **Claims**, claimants, **Pollutants**, **Conditions**, **Insureds** or **Insured Properties** under this Policy, the following Limits of Liability apply:

### A. POLICY AND COVERAGE AGGREGATE LIMIT

The Company's total liability for all **Project Costs** and **Loss**, under Coverages A through I, **Site Work Costs** and **Loss** under Coverages K and L, **Loss-and-Expense** under Coverage M, **Delay Damages** under Coverage N and **Indemnification Costs** under Coverage O, shall not exceed the applicable "Coverage Section Aggregate" Limit of Liability for each of the Coverages stated in Item 3 of the Declarations. In addition, the Company's total liability for all **Project Costs** and **Loss**, under Coverages A through I, **Site Work Costs** and **Loss** under Coverages K and L, **Loss-and-Expense** under Coverage M, **Delay Damages** under Coverage N and **Indemnification Costs** under Coverage O, shall not exceed the "Policy Aggregate" stated in Item 4 of the Declarations.

### B. EACH INCIDENT LIMIT - COVERAGES A THROUGH I

(1) Subject to Paragraph V.A. above, the maximum the Company will pay for all **Loss** and **Project Costs** under each Coverage in Coverages A through I arising from the same, related or continuous **Conditions** is the "Each Incident" limit of coverage for that particular coverage stated in Item 3 of the Declarations.

(2) If an **Insured** first discovers **Conditions** during the **Policy Period** and reports them to the Company in accordance with Section II., all continuous or related **Conditions** first discovered by a **Named Insured** and reported to the Company under a renewal or replacement policy issued by the Company or its affiliate providing substantially the same coverage as this Policy with respect to Coverages so renewed shall be deemed to have been first discovered and reported during the **Policy Period**.

(3) If a **Claim** for **Bodily Injury**, **Property Damage**, or **Project Costs** is first made against an **Insured** and reported to the Company during the **Policy Period**, all subsequent **Claims** for **Bodily Injury**, **Property Damage** or **Project Costs**, arising from the same, continuous or related **Conditions** which are first made against an **Insured** and reported under a renewal or replacement policy issued by the Company or its affiliates, shall be deemed to have been first made and reported during this **Policy Period**. Coverage under this Policy for such subsequent **Claims** shall not apply, however, unless at the time such **Claims** are first made and reported, an **Insured** has maintained with the Company or its affiliates, coverage substantially the same as this coverage on a continuous, uninterrupted basis since the first such **Claim** was made against an **Insured** and reported to the Company.

### C. COVERAGE SECTION AGGREGATE LIMIT

Subject to Paragraph V.A. above, the Company's total liability for all **Project Costs** under Coverages A and B, for all **Loss** under each Coverage in Coverages A through I, for all **Delay Damages** under

Copyright, American International Group, Inc.

Coverage N, and all **Indemnification Costs** under Coverage O shall not exceed the "Coverage Section Aggregate".

Class Action of Liability WD that Document coverage stated in 08/25/2006 the Declaration 37 of 51

The maximum **Loss** payable by the Company for all **Property Damage Claims** under Coverages C and F, as applicable for diminution in value shall not exceed twenty percent (20%) of the Limit of Liability stated in Item 3 of the Declarations.

### D. MAXIMUM FOR SITE WORK COST CAP

Subject to Paragraph V.A. above, the maximum amount for which the Company is liable for all **Loss** and/or **Site Work Costs** under Coverages K and L, and **Loss-and-Expense** under Coverage M is the Limit of Liability stated in Item 3 of the Declarations.

### E. DEDUCTIBLE/SELF-INSURED RETENTION

Upon receipt of written notice from the Company, the **Insured** shall promptly reimburse the Company for advancing any element of **Project Costs** or **Loss** falling within the Deductible.

(1) Coverages A through I

Subject to Paragraphs V.A. through V.C. above, this Policy is to pay covered **Project Costs** or **Loss**, as the case may be, in excess of the Deductible amount stated in Item 3 of the Declarations for that particular coverage, up to but not exceeding the applicable "Each Incident" limit of coverage. The Deductible amount applies to all **Project Costs** or **Loss** arising from the same, related or continuous **Conditions**.

(2) Coverages A through L

If the same, related or continuous **Conditions** result in coverage under more than one coverage section in Coverages A through L, only the lowest Deductible amount (including no Deductible) stated in Item 3 of the Declarations among all the coverage sections applicable to the **Loss** and/or **Claim** will apply.

## VI. DEFINITIONS

A. **Bodily Injury** means: (x)physical injury, or sickness, disease, mental anguish or emotional harm or emotional distress, medical monitoring required pursuant to **Laws**, mental injury and shock; and (y) loss of support, loss of consortium, loss of companionship, loss of society and loss of other valuable services actually or alleged to be sustained (in each case when accompanied by either actual or alleged physical injury); in the case of both (x) and (y) by any person, including death resulting therefrom.

B. **Cargo** means goods, products, materials, wastes or **Pollutants** transported by a carrier of any kind licensed to transport such goods, products, materials, wastes or **Pollutants**.

C. **Claim** means a written communication received by an **Insured** seeking a remedy or alleging or imposing liability or responsibility for **Loss** on the part of an **Insured** A **Claim** includes, but is not limited to, a lawsuit, administrative action, a notification of liability letter or similar action by any third party and/or any federal, state, provincial or local government or agency seeking, alleging or imposing, or any obligation or duty of an **Insured** to pay, **Loss**. A **Claim** also includes, but is not limited to, any obligation, liability or responsibility that arises under any order or action, or any decree or settlement, or any relevant portion thereof, or an **Insured Contract**.

D. **Completion Dates** means the time frames for completion of the **Site Work** provided in Exhibit "E" of the **Contract**.

Copyright, American International Group, Inc.

Conditions means all Demolition and Decommissioning Conditions and Pollution Conditions. For the purposes of Coverage I., Conditions include those at sites other than the **Insured Properties** and are not limited to those located at, on, under or emanating to or from, or existing beyond the boundaries through migration or dispersal originating from, an **Insured Property**.

F.  **Continuity Date** means the date stated in Item 8 of the Declarations.

G.  **Contract** means the Exit Strategy® Contract that is attached to this Policy between the **Contractor** and Consolidated Edison Company of New York, Inc. and as amended pursuant to its terms.

H.  **Contractor** means TRC Companies, Inc., TRC Engineers Inc. and TRC Environmental Corporation, or any other contractor, or supplier that is hired by a **Named Insured** or retained by the Company pursuant to Sections III., Paragraph A.1, III., Paragraph B.2 or VII., Paragraph O herein to perform the **Site Work**.

I.  **Default** means those actions defined as Events of Default in Section 18(c) of the **Contract**.

J.  **Delay Damages** means all of the following, but excluding the costs of performance of the **Site Work**, sustained as a result of the failure of **Contractor** to achieve Phase I Completion (as that term is defined in the **Contract**) by the **Completion Dates**: claims, costs, damages, expenses, judgments, liabilities, losses (including lost interest), obligations, fees, charges, loss of and increased costs of financing, taxes, expenses, fines and penalties of any nature or kind whatsoever, whether direct or indirect, including but not limited to consequential damages and legal costs.

K.  **Demand** means a written request, claim, notice, or complaint received by **Contractor** from the **Named Insureds** during the **Policy Period** for **Contractor** to defend, indemnify and/or hold harmless the Insureds from any claim(s) pursuant to the **Indemnification**.

L.  **Demolition and Decommissioning** means the investigation, study, removal, disposal, treatment, decommissioning and demolition of (and the abatement of **Pollutants** on): (i) all above ground and subsurface items including but not limited to buildings, structures, enclosures, foundations, platforms, slabs, improvements, conduits, inactive utility lines and edifices of any kind whatsoever with respect to the **Insured Properties** at and above the **Development Depth**; (ii) the water tunnels at Waterside, the fuel tank at 616 First Avenue, and all building slabs (and all associated columns, piers and/or other structures to the bottom of the slabs); and (iii) the **Off-Site Items**.

M.  **Demolition and Decommissioning Conditions** means the presence of: (i)   all above ground and subsurface items, including but not limited to buildings, structures, enclosures, foundations, platforms, slabs, improvements, conduits, inactive utility lines, and edifices of any kind whatsoever with respect to the **Insured Properties** at and above the **Development Depth**; (ii) the water tunnels at Waterside, the fuel tank at 616 First Avenue, and all building slabs (and associated columns, piers and/or other structures to the bottom of the slabs); and (iii) the **Off-Site Items**.

N.  **Development Depth** means the Development Depth as defined in the **Contract**.

O.  **Extended Reporting Period** means either the automatic additional period of time or the optional additional period of time, whichever is applicable, in which to report **Claims** following termination of coverage, as described in Section VIII. of this Policy.

P.  **Inception Date** means the earlier date of the period set forth in Item 2 of the Declarations.

Q.  **Incur**, or in context **Incurred**, means to pay, perform or to become obligated to pay or perform.  For purposes of Coverages A and D an **Insured** shall be deemed to have **Incurred**, prior to the **Termination Date**, an obligation that becomes fixed during the **Policy Period** and is payable in installments if the obligation is fixed and not contingent and part of such obligation is payable after the **Termination Date**.

Copyright, American International Group, Inc.

R. **Indemnification** means any and all of the obligations and duties of **Contractor** and any and all rights and interests of the **Named Insureds** under the terms of, for, or relating to the **Indemnification Coverage.**

Case 1:06-cv-0541-PLM Document 28-3 Filed 08/25/2006 Page 39 of 51

S. **Indemnification Cost** means all costs arising out of the **Indemnification.**

T. **Insured** means all **Named Insureds,** including the **Contractor,** identified in the Declarations to this Policy, and any past, present or future director, officer, member, Board of Trustee member, partner, LLC manager or employee thereof, including a temporary or leased employee, while acting within the scope of his or her duties as such.

U. **Insured Contract** means: (1) a contract or agreement listed in the Insured Contract Endorsement attached hereto; and (2) all or that part of any contract or agreement pertaining to the performance of **Site Work.**

V. **Insured Property(ies)** means each of or all of the locations identified in Item 5 of the Declarations and the **Off-Site Items.**

W. **Laws** means all applicable federal, state, provincial and/or local statutes, rules, regulations, ordinances, or any binding judicial or administrative interpretation thereof, or any binding judicial or administrative order, decree, agreement, judgment, writ, injunction or ruling.

X. **Legal Expenses** means: (1) reasonable and customary fair market value amounts paid to attorneys and paralegals, experts and/or consultants; (2) court costs, cost of bonds and pre- and post-judgment interest; (3) any other customary, reasonable and necessary expenses associated with the provision of legal representation and (4) any and all court costs and/or expenses associated with the provision of legal representation awarded by a court .

Y. **Loss** means, as applicable to the particular Coverage: (1) monetary awards or settlements of compensatory or consequential damages for **Bodily Injury** or **Property Damage;** (2) costs, charges and expenses incurred in the defense (including litigation or other formal dispute resolution), investigation or adjustment of either **Claims** for such compensatory or consequential damages or for **Project Costs** or **Site Work Costs;** (3) **Site Work Costs;** (4) **Project Costs;** and (5) **Legal Expenses.**

Z. **Loss-and-Expense** means Loss-and-Expense as defined in the **Contract.**

AA. **Named Insured** means the persons or entities named in Item 1 of the Declarations. As to any **Insured Property** as to which the Sale Contract terminates, **Site Developer** shall not have or retain the status of **Named Insured** following termination, however it shall retain rights for Coverages associated with liabilities sustained before the date of such termination.

BB. **Natural Resource Damages** means: (1) physical injury to or destruction of, including, without limitation the resulting loss of value of, land, fish, wildlife, biota, air, water, groundwater, drinking water supplies; (2) physical injury to or destruction of other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the fishery conservation zone established by the Magnuson-Stevens Conservation and Management Act (16 U.S.C. §§ 1801 et seq.)), any state or local government, any foreign government, any Indian tribe, or, if such resources are subject to a trust restriction on alienation, any member of an Indian tribe; and (3) the cost, charges and expenses for assessment associated with any items identified in (1) and (2) herein.

CC. **Non-Owned Location** means a property or geographic location that is used for treatment, storage, disposal, recycling, re-use, reconditioning, and/or reclamation and which is identified in a **Non-Owned Locations Schedule** attached to and made a part of this Policy by Endorsement

DD. **Off-Site Items** means items described in Exhibit "D" to the **Contract.**

Copyright, American International Group, Inc.

EE.  **Optional Extended Reporting Period** means the optional extension of reporting for **Loss** and/or **Conditions** incurred pursuant to this **Policy**.

FF.  **Plan of Action** means a plan developed by the Company to ensure that the **Contractor** can meet the **Completion Dates**. The **Plan of Action** will be a detailed plan indicating what actions need to be taken and at what time to ensure the **Completion Dates** are met. The **Plan of Action** will contain a time line for measuring the **Contractor's** progress in its implementation.

GG.  **Policy Period** means the period set forth in Item 2 of the Declarations, or any shorter period arising as a result of:

  (1)  cancellation of this **Policy** in accordance with its terms;

  (2)  with respect to a particular **Insured Property** or **Non-Owned Location** the deletion of any **Insured Property** or **Non-Owned Location** from this **Policy** by the Company; and/or

  (3)  the **Termination Date**.

HH.  **Pollutants** means any solid, liquid, gaseous or thermal chemical, irritant, contaminant, substance, debris, material or waste, including smoke, vapors, soot, fumes, dusts, acids, alkalis, hazardous or toxic chemicals, substances, irritants, contaminants or waste and/or by-products or progeny thereof, including expressly but not limited to: oils, hydrocarbons and petroleum products and by-products; asbestos and asbestos-containing materials; urea formaldehyde foam insulation; metals; mercury; cyanide; lead and lead-based paint; and polychlorinated biphenyls ("PCBs"). **Pollutants** include materials that are disposed of, recycled, reused, re-conditioned or re-claimed.

II.  **Pollution Conditions** means the presence, introduction, movement, migration, disposal, discharge, dispersal, release or escape of any **Pollutants** at, on, under, or emanating to or from, or existing beyond the boundaries through migration or dispersal originating from, the **Insured Properties** (including the land, soil or sediment, or any above ground or subsurface structure or the atmosphere or any watercourse or body of water including groundwater) including  historic fill and/or any **Pollutants** therein or emanating therefrom, in all cases, provided that such conditions are : (1) not naturally present conditions; or (2) present in concentrations or amounts above the naturally occurring background levels for a constituent in the environment at the **Insured Properties**. **Pollution Conditions** include the continued movement, migration or dispersal of **Pollutants** that existed on the **Insured Property** as of the **Continuity Date**.

JJ.  **Project Costs** means:

  (1)  all reasonable and necessary costs, charges and expenses, including, without limitation, **Legal Expenses** incurred with the Company's consent which is not to be unreasonably withheld, conditioned, delayed or denied, for the investigation, feasibility study, preparation of a work plan, removal, clean-up, disposal, treatment (including *in-situ* and *ex-situ* treatment), monitoring, abatement  or neutralization of **Pollutants** and any operations and maintenance of any such treatment, monitoring or neutralization activities and equipment:

    (a)  to the extent required by **Laws** or pursuant to an **Insured Contract**; and/or

    (b)  which have been actually incurred by the government or any political subdivision of the United States of America or any state thereof or Canada or any province thereof, or by third parties and for which any such party is making a **Claim**; and/or

    (c)  to the extent incurred by an **Insured** pursuant to a validly executed voluntary clean up agreement, decree, order or plan negotiated with a governmental agency with jurisdiction or a voluntary clean up directed by an authorized representative of a governmental agency with jurisdiction; and/or

18
Copyright, American International Group, Inc.

conditioned, delayed or denied, for the investigation, feasibility study, preparation of a work plan, removal, clean up, disposal, treatment, **Decommissioning and/or Demolition**, including, without limitation, abatement of any **Pollutants**, closure or removal of above ground and subsurface buildings, structures, enclosures, foundations, platforms, building slabs, inactive utility lines, conduits, improvements and edifices of any kind whatsoever with respect to the **Insured Properties** above the **Development Depth**; the water tunnels at Waterside, the fuel tank at 616 First Avenue, and all building slabs (and associated columns, piers and/or other structures to the bottom of the slabs); and the **Off-Site Items**.

**KK. Property Damage** means:

(1) Physical injury to or destruction of tangible property of parties other than the **Insured**, including the resulting loss of use or value thereof;

(2) Loss of use, but not loss of value, of tangible property of parties other than the **Insured** which has not been physically injured or destroyed;

(3) **Natural Resources Damage**;

(4) Diminution in value of real property owned by third parties which is constructed on **Insured Properties**; and

(5) Nuisance, trespass, wrongful eviction or wrongful entry affecting tangible property and caused by **Conditions**.

**LL. Remediation** means the investigation, feasibility study, preparation of a work plan, clean-up, removal, disposal, treatment (including *in situ* and *ex situ* treatment) or neutralization of all **Pollutants** to, at a minimum, standards established for residential property usage and development including, but not limited to, any monitoring and operations and maintenance activities that may be required after the completion of such investigation, feasibility study, clean-up, removal, disposal, treatment or neutralization, as well as the performance of any and all obligations imposed by any duly authorized governmental agency, including obligations imposed pursuant to any **Insured Contract**, any consent order(s), decrees or agreements or to a validly executed voluntary clean-up agreement, plan or order negotiated with a governmental agency or voluntary clean-up directed by an authorized representative of a governmental agency.

**MM. Responsible Insured** means then-current employees of a **Named Insured** while acting in the capacity as Director of Insurance, Department Manager of Insurance or Director of Environmental, Health & Safety and/or the **Contractor's** project manager overseeing the performance of the **Site Work** or such person(s) as may from time to time be designated as such by **Site Developer** or Developer Owner (a purchaser of all or part of the **Insured Property**), including other persons whose names will be provided to Company.

**NN. Sale Contract** means that certain agreement dated as of the **Continuity Date** between Consolidated Edison Company of New York, Inc. and **Site Developer** relating to the sale of the **Insured Properties**.

**OO. Schedule Failure** means the **Contractor's** failure to achieve Phase I Completion by the **Completion Dates** unless such failure is the result of Owner Delay, as those terms are defined in the **Contract**.

**PP. Site Developer** means FSM East River Associates LLC or its permitted successors or assigns under the **Sale Contract**, as well as each designee of FSM East River Associates LLC which acquires title to an **Insured Property** pursuant to the terms of the **Sale Contract**.

**QQ. Site Work** means all activities performed and obligations sustained pursuant to and included in **Remediation** and **Demolition** and **Decommissioning** and any changes permitted and approved (if

19

Copyright, American International Group, Inc.

driving of piles to **Top of Bedrock** and/or, as provided for in Exhibit H of the **Contract**; the installation of caissons; all activities and obligations set forth in the **Site Work Action Plan**; and all **Remediation and Demolition and Decommissioning** activities set forth in any **Insured Contract**.

RR. **Site Work Action Plan** means the plan or plans describing the **Site Work** which shall be prepared by **Contractor** in accordance with the terms of the **Contract**.

SS. **Site Work Costs** means reasonable and necessary costs, charges and expenses, including, without limitation, **Legal Expenses** sustained with the Company's consent, such consent not to be unreasonably withheld, conditioned, delayed or denied, sustained for the **Site Work**; however, **Site Work Costs** does not include costs, charges or expenses incurred for litigation, arbitration or other form of dispute resolution in any way related to or in connection with **Site Work**, including fees of attorneys, consultants, investigators, adjusters and experts, unless otherwise expressly consented to in writing and in advance by the Company. **Site Work Costs** includes administrative costs and other related costs incurred by the **Contractor** in the acquisition of the **Contract**, as approved by the Company.

TT. **Supplemental Contractor** means a contractor or contractors engaged by the Company pursuant to Section III, Paragraph B, Subparagraph 2 to execute some or all of a **Plan of Action**;

UU. **Termination Date** means the earliest of the following:

1. For all Coverages, the date set forth in Item 2 of the Declarations;

2. For Coverages A, D, K, L and M only, the date on which the Limit of Liability shown in Item 3 of the Declarations for Coverages A, D, K, L and M is exhausted;

3. For Coverages C, F, G, H, and I only, the date on which the Limit of Liability shown in Item 3 of the Declarations for Coverages C, F, G, H, and I is exhausted;

4. For Coverage N only, the date on which the Limit of Liability shown in Item 3 of the Declarations for Coverage N is exhausted or upon Phase I Completion, as that term is defined in the **Contract**, for all **Insured Properties**; or

5. For Coverages K, L and M the date on which the **Policy** is commuted in accordance with the terms of the Policy Notional Commutation Account Endorsement attached to the Policy.

6. For Coverage O, the date on which the Limit of Liability shown in item 3 of the Declarations for Coverage O is exhausted.

VV. **Top of Bedrock** means the upper surface of "intermediate rock" as defined in § 27-675(a)(3) of the New York City Administrative Code, and indicated as 3-65 class of materials in Table 11-2 of § 27-678 of the New York City Administrative Code.

WW. **Transported Cargo** means the Cargo after it is moved from an **Insured Property** where it is accepted by the carrier for movement into or onto a vehicle, machine or vessel of conveyance until it is moved from the vehicle, machine or vessel of conveyance to the place where it is finally delivered, including, without limitation, **Cargo** during the loading and unloading into or from any vehicle, machine or vessel of conveyance.

## VII. CONDITIONS

A. **Assignment** – Assignment of interest under this Policy, whether to another individual or individuals, corporate entity or entities, or another party(s) shall not bind the Company until its consent is endorsed onto this Policy, such consent not to be unreasonably withheld, conditioned, delayed or

Copyright, American International Group, Inc.

denied. Contractor may not assign its rights under this Policy without the express written consent of the Named Insureds listed at items 1(a) and 1(b) of the Declarations. Permission from the Company to assignment of interest under this Policy is not required if the transfer is to a successor, by merger or consolidation, or a party to which all or substantially all of the assets of a **Named Insured** are sold, provided that no material detrimental change in use from residential or commercial uses occurs as a result thereof, but no such assignment shall be deemed to be effective until the Company is notified by the **Named Insured** of the same.

**B.  Subrogation**

1.  In the event of any payment under this Policy, the Company shall be subrogated to an Insured's rights of recovery therefor against any person or organization and an Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights including without limitation, assignment of an Insured's rights against any person or organization who caused **Conditions** on account of which the Company made any payment under this Policy. Except as permitted under this Policy, an Insured shall do nothing to prejudice the Company's rights under this paragraph. Notwithstanding any cancellation or commutation of this Policy or the termination of the Policy term, any recovery as a result of subrogation proceedings shall: accrue first to the **Named Insureds** to the extent of any payments within the Deductible made for such **Loss, Claim, or Project Costs** under Coverages A – I associated with said **Conditions** in excess of the Limit of Liability for the applicable coverage, noting that to the extent such recovery is less than the sum of the payments within the Deductible made by the **Named Insureds**, the recovery shall be divided among the **Named Insureds** in proportion to the payments made; then to the Company to the extent of its payment under the Policy to replenish the Limits of Liability for payment made for such **Project Costs** or Loss or Claim under Coverages A – I as applicable and appropriate, and to replenish the balance of the Policy Notional Commutation Account established pursuant to an endorsement attached hereto for Site Work Costs under Coverages K, L and **Loss and Expense** under Coverage M; then expenses to the Company; and then any balance to the **Named Insureds**, noting that such balance shall be divided equally among the **Named Insureds** listed at items 1(a) and 1(b) of the Policy.

2.  Notwithstanding the forgoing paragraph, the **Company** expressly waives any rights of subrogation it may have against Consolidated Edison Company of New York, Inc. and **Site Developer**, their respective lenders, partners, investors, parents, subsidiaries, affiliates, trustees, members, LLC managers and assigns and the directors, officers, employees and shareholders of the same in their individual capacity as such.

**C.  Cooperation** - Each Insured shall cooperate with the Company and offer reasonable assistance in the investigation and defense of **Claims** under the applicable Coverages purchased. The Company may require that an Insured, upon reasonable notice and when reasonably necessary to meet the Company's requirements, submit to examination under oath, and attend hearings, depositions and trials. In the course of investigation or defense, the Company may require written statements or an **Insured's** attendance at meetings with the Company. The Insured agrees to provide reasonable assistance to the Company in effecting settlement, securing and providing evidence and obtaining the attendance of witnesses. The failure of an Insured to cooperate with the Company, despite its good faith efforts to do so, shall not affect the Coverages provided herein, unless and only to the extent that the Company can demonstrate actual and substantial prejudice as a result of such failure.

**D.  Changes** - Notice to any agent or knowledge possessed by any agent of the Company or by any other person associated with the Company shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any rights under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy. Except as provided, in Section VII. Paragraph G below or as otherwise expressly provided in this Policy or any endorsements thereto, the **Named Insured** listed in Item 1(a) of the Declarations shall act on behalf of all other **Insureds**, if any, for the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, giving and receiving notice of cancellation or nonrenewal, and the exercise of the rights provided in the **Extended Reporting Period**

Copyright, American International Group, Inc.

clause; provided, however, that any actions taken by the Named Insured listed in Item 1(a) of the Declaration under this paragraph shall only be effective upon the written unanimous consent of all Named Insureds.

E.  **Voluntary Payments** – Except as provided in the **Contract** and the attachments thereto, no **Insured** shall voluntarily enter into any settlement, or make any payment or assume any obligation, for any **Loss** covered by this **Policy** and seek reimbursement for such costs under this **Policy** unless in response to an emergency or required pursuant to **Laws**.

F.  **Cancellation/Suspension** – Except as provided below and in the endorsement for the Policy National Commutation Account, this Policy may only be cancelled, in whole or in part, by the unanimous written consent of the then-existing **Named Insureds** by mailing to the Company written notice, executed by all Insureds, stating when thereafter the cancellation shall be effective.

Notice of cancellation by the Company must be made by mailing via certified mail with return receipt requested, to all Insureds, written notice stating when not less than sixty (60) days thereafter such cancellation shall be effective. The Company's written notice shall specifically state the reasons for cancellation and shall provide the **Insureds** with the actions the Company asserts are necessary to be taken by the **Insureds** in order for the Policy to remain in effect.  So long as the Insureds are diligently undertaking the actions set forth by the **Company** in its written notice, this Policy shall remain in full force and effect. To the extent an **Insured** fails to undertake such actions, cancellation shall only apply to that Coverage affected by that **Insured's** failure to comply and to those Insureds who failed to perform and other Coverages and Insureds not affected by the failure to comply shall not be cancelled.  Proof of mailing of such notice shall be sufficient proof of notice.

The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the Policy Period.  Delivery of such written notice either by the Named Insureds or by the Company shall be equivalent to mailing.  In the event of cancellation, the Policy Notional Commutation Account Endorsement attached hereto shall apply.  Premium adjustment may be either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

Subject to the limitations set forth herein, including but not limited to the Representations and Severability conditions, this Policy may be cancelled by the Company as to any **Named Insured** only for the following reasons:

If the Company demonstrates that such **Named Insured** engaged in actual fraud as to the Company based on: (i) material misrepresentation by a **Responsible Insured** of a material fact; (ii) made by such **Responsible Insured** with actual knowledge of the falsity of such fact; (iii) where such **Responsible Insured** had the specific intent to defraud; and (iv) and where the Company relied on such misrepresentation and suffered actual and substantial prejudice therefrom. No coverage shall incept for a Defined Addition, as defined by Endorsement, until such time as any premium with respect to such Defined Addition is paid.

G.  **Other Insurance** – This Policy shall be considered primary insurance and will not contribute with or be affected by other insurance available to the Insureds, unless and only to the extent that the **Insured** whose other insurance might apply elects to have this Policy considered excess of other available insurance. This Policy is excess to any policy of a **Named Insured** which policy term has expired, but the existence of such policies shall not delay or reduce payment of any **Loss, Loss-and-Expense, Delay Damages and Indemnification Costs**. The Company agrees not to pursue any other insurance potentially available to the **Insureds**.  The Company acknowledges that the **Insureds** may pursue policies issued prior to the date of this Policy and agrees that any amounts recovered under those prior policies shall not reduce the amounts otherwise payable under this Policy. Notwithstanding the foregoing:

1.  for Coverages C and F, where coverage may be available to the **Contractor** for Claims and/or **Loss** relating to the activities addressed in this Policy resulting from **Demolition and**

Copyright, American International Group, Inc.

Decommissioning Conditions, the coverage within this Policy shall be excess to such site-specific, valid and collectible insurance coverage;

2.   The existence of Payment and Performance Bonds provided by subcontractors of the Contractor shall not affect the rights of the **Named Insured** listed at 1(a) and 1(b) of the Declarations for payment for **Loss, Project Costs, Site Work Costs** or **Loss-and-Expense.**

3.   for Coverage I the coverage provided by this Policy is excess of any coverage provided by the licensed carriers who are hauling the **Transported Cargo**; and,

4.   for Coverage N this Policy shall be primary to any coverage that is specifically purchased to be excess to any valid and collectible insurance which responds to such **Delay Damages.**

H.   **Right of Access and Inspection** - Subject to the terms of this Contract and upon reasonable notice to an **Insured**, any of the Company's authorized representatives shall have the right and opportunity, but not the obligation, when necessary, to interview persons employed by an **Insured** regarding matters only with respect to investigating a **Claim** or **Condition** relating to this Policy, and to inspect, sample and monitor at any reasonable time, during the **Policy Period** or thereafter in the event of a pending **Claim**, the **Insured Property** and all improvements, structures, products, ways, works, machinery and appliances thereon; but neither the Company nor its representatives shall assume any responsibility or duty to an **Insured** or to any other party, person or entity, by reason of such right or inspection.   The Company agrees that such authorized representative shall comply, at all times during the inspection, with all applicable environmental, health and safety requirements established by an **Insured** and exercise due care as may be necessary and prudent to ensure the safety of the authorized representative and others and prevent disruption or interference with any activity or undertaking at the **Insured Property**.   Neither the Company's right to make inspections, sample and monitor, nor the actual undertaking thereof nor any report thereon shall constitute an undertaking on behalf of an **Insured** or others to determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practices or are in compliance with any law, rule or regulation. The **Named Insureds** and/or the **Contractor** shall be provided copies of all reports generated as a result of the efforts taken on behalf of the Company well as the opportunity to take split samples of any investigations.     The **Named Insureds** and/or the **Contractor** agree to provide appropriate personnel to assist the Company's representatives during any inspection.   All inspections, sampling and monitoring deemed necessary by the Company shall be performed at the Company's sole cost and risk.

I.   **Access to Information** – Upon written request, and with the exception of material or information subject to deliberative process, work product or attorney-client privileges, the **Named Insureds** and/or the **Contractor** agree to provide access to the Company with respect to   relevant and reasonable information developed or discovered by a **Named Insured** and/or the **Contractor** concerning **Site Work Costs** and **Project Costs** associated with **Conditions** covered under this Policy, and to provide the Company reasonable access to interview any **Insured** and review any relevant documents of an **Insured**.   The **Named Insureds** make no representation as to the accuracy or completeness of any information so provided.

J.   **Representations** – Subject to the Severability condition herein, by acceptance of this Policy, each of the   **Named Insured** and/or the **Contractor** agrees that the statements in the application process are its agreement and representations, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between the **Insured(s)** and the Company or any of their agents relating to this insurance.   The Company represents and warrants that it has not been refused any information or materials that it has requested from the **Named Insureds** and/or the **Contractor**.   The Company acknowledges that it has conducted an independent review of the **Insured Properties** and the matters to be insured pursuant to this Policy.   The Company further acknowledges that it did not require the **Insureds** to perform independent investigation in order to locate or disclose all information that the **Insureds**, or those acting on behalf of the **Insureds**, may have been able to locate through investigation, testing or an exhaustive search.   The Company

Copyright, American International Group, Inc.

otherwise impaired the attorney-client privilege or attorney work-product protection.

On or after the **Completion Date** for each **Insured Property**, the **Company** shall have no right to allege a claim of fraud or wrongful conduct in the procurement of this **Policy** as a basis for refusing to pay a **Claim** or denial of coverage or as a basis for seeking recision, voidance or cancellation of this **Policy** or other remedies. The **Company** further agrees that it shall not invoke any alleged deficiency in the application process as a basis for refusing to pay a **Claim** or denying coverage or as a basis for seeking recision, voidance or cancellation of the **Policy** or other remedies.

**K.  Action Against Company** - No third-party action shall lie against the **Company**, unless as a condition precedent thereto:

1.  there shall have been material compliance by an **Insured** with the terms of this **Policy**; and

2.  the amount of such **Insured's** obligation to pay a **Loss, Project Cost, Site Work Cost, Loss-and-Expense, Delay Damages** or **Indemnification Costs** shall have been finally determined by: (a) judgment after trial by any tribunal with jurisdiction over the dispute; or (b) written agreement of such **Insured**, the claimant and the **Company**.

Any person or organization or the legal representative thereof who has secured a judgment, as provided in Section VII., Paragraph L.2(a) above, or written agreement, as provided in Section VII. Paragraph L.2(b) and (c) above, shall thereafter be entitled to recover under this **Policy** to the extent of the insurance afforded by this **Policy**, including, without limitation, coverage for Legal Expense pursuant to Section I.2. herein. No person or organization shall have any right under this **Policy** to join the **Company** as a party to any action against an **Insured** to determine an **Insured's** liability, nor shall the **Company** be impleaded by an **Insured** or his legal representative. Bankruptcy or insolvency of an **Insured** or of an **Insured's** estate shall not relieve the **Company** of any of its obligations hereunder.

The language of this Section L above does not limit an **Insured's** right to bring an action against the **Company** to enforce the terms and conditions of, or resolve a dispute concerning, this **Policy**, notwithstanding allegations that the **Insureds** have not fully complied with all the terms of this **Policy**. At all times during this **Policy** term, the **Named Insureds** shall have the right to bring action against the **Company** in pursuit of the rights of the **Named Insureds** provided in Paragraph O, Default, below.

**L.  Choice of Law** - It is agreed that in the event of failure of the **Company** to pay any amount claimed to be due hereunder, the **Company**, at the request of an **Insured**, will submit to the jurisdiction of a court of competent jurisdiction in the State of New York and within the United States.

**M.  Sale or Transfer of Insured Property** – In the event an **Insured Property** is sold, or if ownership or operational control is transferred by the **Site Developer** prior to the completion of the **Site Work** to which this **Policy** applies, this **Policy** shall remain in full force and effect, subject to its terms and conditions.

**N.  Default** - Within the limits of liability of this **Policy**, the **Company's** additional obligation under this **Policy** to pay **Project Costs, Site Work Costs, Claims, Loss-and-Expense** and/or **Loss** or perform under the **Contract** shall arise if: (i) ever the **Named Insured** listed in Item 1(a) of the Declarations notifies the **Company** and the **Contractor**, in writing, that the **Contractor** is in **Default** of the terms of the **Contract** (ii) the **Company** has approved, in writing, a termination of the **Contractor** for convenience, pursuant to Paragraph 18 of the **Contract**,; or (iii) the **Company** has approved, in writing, termination of the **Contract** by the **Contractor** pursuant to Paragraph 18 of the **Contract**.

With respect to **Default**, the **Company** acknowledges that the **Named Insured** listed in Item 1(a) of the Declarations may, prior to issuing such notice of **Default**, provide the **Company** with copies of communications that outline deficiencies that may constitute grounds for **Default**. It shall be a right

24

Copyright, American International Group, Inc.

If the **Contractor** does not cure the **Default** as set forth in the terms of the **Contract**, as specified in the notice identified in (i) above, and/or the Company otherwise approves a termination of the **Contract** in writing, as set forth in (ii) or (iii) above, the Company must, at the Company's expense, take one of the below-listed actions pursuant to Coverage M herein. The Company's actions must be taken within ten (10) days of: receipt of notification from the **Named Insured** listed in Item 1(a) of the Declarations that **Contractor** has not cured such **Default** or written approval by the **Company** to a termination of the **Contract**. Thereafter, the Company must diligently pursue all necessary action, as set forth below, in order to ensure completion of the obligations and responsibilities of **Contractor** in full accordance with all the terms, conditions and provisions set forth in the **Contract**. Except as otherwise provided herein, the **Named Insured** listed in the Declarations at Item 1(a) shall not, except at the Company's request, terminate the **Contract** after a **Default** provided the Company acts within the time periods set forth in this paragraph.

The Company's obligations set forth in this paragraph, which shall be taken pursuant to Coverage M herein, shall in no way limit the Company's obligations otherwise set forth in this Policy, and regardless of which of the three (3) below-listed options are exercised by the Company, the Company shall accept full responsibility and liability for any and all of the obligations of the **Contractor** under the terms and conditions set forth in the **Contract** and shall use best efforts within the limits of the Policy to complete such obligations as expeditiously as possible. Moreover, to the extent that there is a partial or complete substitution of the **Contractor** pursuant to this Section VII.O under this **Policy**, the Company shall thereafter retain all of its obligations under Coverage M herein. The Company's inability or failure to timely perform or obtain substitute performance pursuant to this paragraph shall in no way affect or delay the Company's obligations for the payment of **Delay Damages** under Coverage N. In the event of **Default** or approval of termination of the **Contractor** and/or the **Contract** by the Company, the Company must do one of the following:

1.  Provide sufficient additional resources to the **Contractor** for correction of defective work and completion of all obligations and responsibilities and assume all liabilities under the **Contract** to the satisfaction of the **Named Insured** listed in Item 1(a) of the Declarations and the applicable governmental authority with jurisdiction, without delay in or failure to meet the **Completion Dates**;

2.  Undertake to perform and complete all obligations and responsibilities and assume all liabilities under the **Contract** itself, in accordance with **Laws** and to the satisfaction of the **Named Insured** listed in Item 1(a) of the Declarations, without delay in or failure to meet the **Completion Dates**, through its agents, or through independent contractors that are satisfactory to the **Named Insured** listed in Item 1(a) of the Declarations; or

3.  Obtain bids or negotiate proposals from contractors acceptable to the **Named Insured** listed in Item 1(a) of the Declarations for a contract for completion of all the **Site Work**, including all obligations, responsibilities and assumption of liabilities of **Contractor** under the **Contract**, in accordance with **Laws** and to the satisfaction of the **Named Insured** listed in Item 1(a) of the Declarations, within the **Completion Dates** as contemplated in the **Contract**, and to arrange for a contract acceptable to the **Named Insured** listed in Item 1(a) of the Declarations to be prepared for execution by the selected contractor and the **Named Insured** listed in Item 1(a) of the Declarations.

In the event of issuance of a notice of **Default**, TRC, as that term is defined in the **Contract**, shall thereafter have continuous rights under this **Policy**, however, only for the liabilities associated with the performance of **Site Work** prior to such notice, unless and until TRC cures such **Default** in accordance with the terms of the **Contract**. In the event of **Default** by **Contractor**, such **Contractor** shall forfeit the following rights as **Named Insured** under this **Policy**: (1) those rights provided in provisions addressing Cancellation, Sole Agent and Subrogation in Section VII, Conditions; and (2)

Copyright, American International Group, Inc.

...these rights provided in provisions addressing Modification of the Site Work Action Plan in Section IV., Paragraph 2.C.

Case 1:06-cv-05417-WHP    Document 25-3    Filed 08/25/2006    Page 48 of 51

O. **Governing Law** - This Policy shall be governed by and construed and enforced in accordance with the laws of the State of New York.

P. **Confidentiality** - Any information disclosed pursuant to this Policy and/or application by the Insureds to the Company or representatives of the Company shall be treated as Confidential Information and unless compelled by Laws to disclose such information, the Company may not disclose such Confidential Information to any entity or person except the Company's legal and/or technical representatives or accountants; provided however, the Company shall obtain from any such person or entity a written agreement substantially similar to this Confidentiality provision. In the event that the Company is compelled by Laws to disclose Confidential Information, the Company shall provide written notice thereof to the Named Insureds and allow the Named Insureds to make objections to the disclosure requirement. The Insureds may seek a protective order or otherwise resist such attempts to compel disclosure. If the Company is required to provide any Confidential Information to any person or entity, the Company shall make best efforts to limit and/or minimize the Confidential Information disclosed, taking into account the reason for the disclosure.

Q. **Severability** - The parties agree that the rights and obligations of the Named Insureds under this Policy, and in the application process, are and will be considered as severable, and that this Severability condition shall apply to all provisions of the Policy, including, without limitation, the application process; other than the Insured vs. Insured exclusion at Section IV.1.E. Accordingly, where the Company is entitled to deny, cancel or void coverage under this Policy as a result of one or more Insured's failure to meet or abide by the requirements, terms and conditions of the Policy, the Company will limit the effect of its denial, cancellation or voidance solely to those Insured(s) and then, only to the Project Cost, Site Work Cost, Delay Damages, Indemnification Costs, Loss-and-Expense, Claim or Loss that formed the basis of such denial, cancellation or voidance.

The Severability provisions apply throughout this Policy notwithstanding the failure to mention such provision in any specific clause herein.

R. **Construction** - The Company and the Named Insureds agree that this is not a contract of adhesion, rather it is the product of an arm's length negotiation among the parties. The purpose of this Policy is to provide coverage to the Insureds for the matters set forth herein. The parties expressly agree that the rule of contract construction that ambiguities are construed against the drafter shall not apply to any dispute arising under this Policy. Any ambiguity shall be construed to give effect to the mutual intent of the parties.

S. **Notice** - Unless otherwise agreed to or provided for herein, any notice, consent or service of process required or authorized under this Policy to be given by either party to the other must be in writing and may be given only by hand delivery, first-class mail postage prepaid or by overnight courier to the following addresses:

    For the Consolidated Edison Company of New York, Inc.

    Consolidated Edison Company of New York, Inc.
    4 Irving Place
    New York, New York 10003
    Attn: Mr. Robert P. Stelben
        Vice President and Treasurer

    with copies to:

    Consolidated Edison Company of New York, Inc.
    4 Irving Place
    New York, New York 10003

Copyright, American International Group, Inc.

or other address(es) as substituted by the Company in writing.

T.   **Notice of Breach and Cure Rights** - The Company agrees to provide the **Named Insureds** with written notification of any alleged breach of the terms and conditions of this Policy and to provide the **Named Insureds** with sixty (60) days to cure or remedy any such alleged breach prior to denial of coverage or cancellation of the Policy due to such breach.

U.   **Payment of Premium** – The Company acknowledges and agrees that payment by the **Named Insureds** of the Contract price, as that term is defined in the **Contract**, to the **Contractor** constitutes payment in full of the premium to the Company within such **Contract** price.

## VIII. EXTENDED REPORTING PERIOD FOR CLAIMS - COVERAGES A THROUGH I

The **Named Insureds** shall be entitled to an **Automatic Extended Reporting Period**, and (with certain exceptions as described in paragraph B. of this Section) be entitled to purchase an **Optional Extended Reporting Period** Endorsement collectively for Coverages A through I, upon termination of coverage as defined in Paragraph B.(3) of this Section. Neither the **Automatic** nor the **Optional Extended Reporting Period** shall reinstate or increase any of the limits of liability of this Policy.

A.   **Automatic Extended Reporting Period**

Provided that the **Named Insureds** have not purchased any other insurance from a member of the American Insurance Group of Companies to replace this insurance and which applies to a **Claim** otherwise covered hereunder, the **Named Insured** shall have the right to the following:  a period of twelve (12) months following the effective date of such termination of coverage in which to provide written notice to the Company of **Claims** first made and reported within the **Automatic Extended Reporting Period**.

A **Claim** first made and reported within the **Automatic Extended Reporting Period** will be deemed to have been made on the last day of the **Policy Period**, provided that the **Claim** arises from **Conditions** that commenced before the end of the **Policy Period** and is otherwise covered by this Policy.  No part of the **Automatic Extended Reporting Period** shall apply if the **Optional Extended Reporting Period** is purchased.

B.   **Optional Extended Reporting Period**

The **Named Insureds** shall be entitled to purchase an **Optional Extended Reporting Period** upon termination of coverage as defined herein (except in the event of nonpayment of premium), as follows:

(1)  A **Claim** first made and reported within the **Optional Extended Reporting Period**, if purchased in accordance with the provisions contained in Paragraph (2) below, will be deemed to have been made on the last day of the **Policy Period**, provided that the **Claim** arises from **Conditions** that commenced before the end of the **Policy Period** and is otherwise covered by this Policy.

(2)  The Company shall issue an endorsement providing an **Optional Extended Reporting Period** of forty (40) months from termination of coverage hereunder for all **Insured Properties** and **Non-Owned Locations**, if applicable, or any specific **Insured Property** or **Non-Owned Location**, provided that any of the **Named Insureds**:

a.   make a written request for such endorsement which the Company receives within thirty (30) days after termination of coverage as defined herein; and

Copyright, American International Group, Inc.

b. pays the additional premium when due. If that additional premium is paid when due, the Extended Reporting Period may not be canceled, provided that all other terms and conditions of the Policy are met.

(3) Termination of Coverage occurs at the time of cancellation or nonrenewal of this Policy by the **Named Insureds** or by the Company, or at the time of the Company's deletion of a location which previously was an **Insured Property** or **Non-Owned Location**.

**IN WITNESS WHEREOF,** the Company has caused this Policy to be signed by its president and secretary and signed on the Declarations page by a duly authorized representative or countersigned in states where applicable.

_Elizabeth M. Tuck_

Secretary

President

Copyright, American International Group, Inc.

**AIG** AMERICAN INTERNATIONAL COMPANIES®

February 20, 2003

TRC, Inc.  Con Ed
1200 Wall Street, 2nd Floor
Lynhurst, NJ  07071

RE:    TRC, Inc.  Con Ed
       WC 708-50-83 & WC 396-75-49 – WC 396-76-08, Effective: 03/12/2002 – 03/12/2003

### POLICYHOLDER DISCLOSURE STATEMENT
### UNDER
### TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act  for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $100 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy(ies) for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act. Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceeding the Act of Terrorism.

Coverage under your policy(ies) may be affected as follows:

☒ Coverage for acts of Terrorism is included in your Workers Compensation policy(ies) consistent with state statutes. The portion or percentage of your annual premium that is attributable to coverage for acts of Terrorism  is included in your final premium.

☐ Coverage for acts of Terrorism is included in your Excess Workers Compensation policy(ies). The portion or percentage of your annual premium that is attributable to coverage for acts of Terrorism is $ of your final premium.

☐ Coverage for acts of Terrorism is included in your Commercial Automobile policy(ies). The portion or percentage of your annual premium that is attributable to coverage for acts of Terrorism is $ of your final premium.

☒ Coverage for acts of Terrorism is included in your General Liability policy(ies). The portion or percentage of your annual premium that is attributable to coverage for acts of Terrorism is included your final premium.

Please contact your broker with any questions.

Josh Rogove

cc:    Broker

81254 (12-02)         Copyright © 2002 American International Group, Inc.