**Exhibit C**

**COMMERCE AND INDUSTRY INSURANCE COMPANY**
70 Pine Street
New York, N.Y. 10005
(hereinafter called the Company)

**DESIGNERS &CONSTRUCTORS PROJECT SPECIFIC - PROTECH
PROFESSIONAL LIABILITY AND POLLUTION LIABILITY POLICY FOR A SPECIFIED PROJECT**

Policy No.: 952 67 32                                    Renewal of: N/A

NOTICE: Coverage A of this policy provides CLAIMS – MADE AND REPORTED COVERAGE, has certain provisions and requirements unique to it, and may be different from other policies the Named Insured may have purchased. Coverage A requires that a claim be first made upon the Insured during the policy period or the extended reporting period, if any, and reported to the Company in writing as required by this policy. By acceptance of this Policy the Insured agrees that the statements in the Declarations, the Application and any attachments are the Insureds agreements and material representations. The insured also agrees that the Policy embodies all agreements existing between the Insured and the Company. Please read and review the Policy carefully and discuss the coverage with your insurance representative.

## I.    DECLARATIONS

| | | |
|---|---|---|
| ITEM 1. | First Named Insured:<br>Address: | TRC Companies, Inc.<br>134 West 29th Street, 10th Floor<br>New York, NY 10001 |

ITEM 2.    Named Insureds:    All Engineers, Contractors, Subcontractors, Subconsultants of every tier and all associated subsidiaries, and affiliated companies or corporations, or joint ventures, as now exist or may hereafter be constituted or acquired performing work on the designated project.

ITEM 3.    Project:
    a.    Project Name:    Con Edison/First Avenue Properties (Exit Strategy Contract)
    b.    Location:    See Exhibits A-1 through A-4 of the Exit Strategy Contract
    c.    Named of Owner:    Consolidated Edison Company of New York, Inc.
    d.    Type of Project:    Decommissioning and Demolition

ITEM 4.    Policy Period:
    From:    March 12, 2001    to:    March 12, 2005
    at 12:01 A.M. standard time at the address of the Named Insured stated above.

ITEM 5.    Limits of Liability:                $50,000,000        Each Claim
    (including claim expenses)        $50,000,000        Policy Term Aggregate

ITEM 6.    Deductible:    $100,000        Each Claim    See Endorsement #8

ITEM 7.    a. Retroactive Date:    March 12, 2001
    b. Prior Policy Period Coverage Effective Date:    March 12, 2001

    Full prior acts coverage is provided for all services and operations related to the **Covered Project.**

ITEM 8.    a. Discovery Period (Applicable to Coverage A):  10 years commencing on policy expiration
    b. Completed Operations Period (Applicable to Coverage B):  10 years commencing on policy expiration

ITEM 9.    Policy Term Premium: $715,000

1

ITEM 10.    Audit Rate:    N/A

ITEM 11.    Endorsements made a part of this Policy:  9

_____

AUTHORIZED REPRESENTATIVE

**COMMERCE AND INDUSTRY INSURANCE COMPANY**
70 Pine Street
New York, N.Y. 10005
(hereinafter called the Company)

**DESIGNERS & CONSTRUCTORS PROJECT SPECIFIC – PROTECH PLUS PROFESSIONAL LIABILITY AND POLLUTION LIABILITY INSURANCE FOR A SPECIFIED PROJECT**

In consideration of the payment of the premium and Deductible by the **First Named Insured** the **Company** agrees with the **Insured** subject to all of the terms, exclusions and conditions of this policy, as follows:

## I.    INSURING AGREEMENTS

A.    **COVERAGES:**

### COVERAGE A.  PROFESSIONAL LIABILITY

The **Company** will pay on behalf of the **Insured** all sums in excess of the Deductible stated in this policy that the **Insured** shall become legally obligated to pay as **Loss** because of **Claims** for an actual or alleged **Breach of Professional Duty** in the rendering or failure to render **Professional Services**:

(a) by the **Insured**; or
(b) by any entity for whom the **Insured** is legally liable.

For this coverage to apply, all of the following conditions must be satisfied:

a.    the **Breach of Professional Duty** forming the basis of any **Claim** must arise from **Professional Services** that take place subsequent to the **Retroactive Date** specified in Item 7. of the Declarations of this policy and prior to the expiration date of the **Policy Period** as stated in Item 4. of the Declarations of this policy.

b.    Any **Claim** arising out of a **Breach of Professional Duty** must first be made against the **Insured** during the **Policy Period** or **Discovery Period** of this Policy.

c.    The **Insured** must report any **Claim** to the Company, in writing, as required by this policy. Any **Claim** resulting from a **Breach of Professional Duty** will be deemed reported during the **Policy Period** if so reported no later than the expiration of the **Discovery Period**.

### COVERAGE B. CONTRACTORS POLLUTION LIABILITY

The Company will pay on behalf of the **Insured** all sums that the **Insured** shall become legally obligated to pay as **Loss** as a result of **Bodily Injury, Property Damage** or **Environmental Damage** caused by **Pollution Conditions** arising out of or resulting from **Covered Operations** by the **Insured** or for which the **Insured** is legally liable as a result of the performance of others.

For this coverage to apply, all of following condition must be satisfied:  any **Bodily Injury, Property Damage** or **Environmental Damage** caused by such **Pollution Condition(s)** must occur during the **Policy Period** or the **Completed Operations Period**.

B.    **TERRITORY:**

The insurance afforded by this policy applies to **Claims** arising out of a **Breach of Professional Duty** in the performance of **Professional Services** or **Pollution Conditions** arising from **Covered Operations** that take place in and result in a **Claim** brought within:

1)      the United States of America, its territories or possessions or Puerto Rico; and

2)      elsewhere in the world.

C.      **DEFENSE PROVISIONS:**

Any **Claim**, incident, circumstance or event that reasonably may give rise to a **Claim** and which is or may be covered must be reported by the **Named Insured** in accordance with this policy. The Company shall have the right to investigate, control the defense of, and settle any such incident, circumstance, event or **Claim**, subject to the following terms and conditions:

1)      Each **Named Insured** shall have the obligation to report promptly and in writing (a) all incidents, circumstances or events, which may reasonably give rise to a **Claim**, and/or (b) any alleged or actual **Claim**, including without limitation any demands, **Claim** letters, allegations of deficient services, service of process, subpoena, indemnification requests and/or demands, complaint, arbitration demand and/or notice of any investigation complaint or proceeding. In the event a **Named Insured** fails to make a report or give notice within the time period required, the Company may only reduce coverage to that **Named Insured** and only to the extent that the late reporting actually results in increasing the amount of **Loss** payable hereunder.

2)      The reporting obligations set forth in this policy apply regardless of whether the incident, circumstance, event, or **Claim** involves or may involve an amount within the Deductible.

3)      When a **Claim** to which this insurance applies is made against the **Insured**, the Company has the right to appoint counsel, which shall be mutually acceptable subject to Company's final approval, and the duty to defend any covered **Claim** against the **Insured** alleging liability for **Loss**, even if such **Claim** is groundless, false or fraudulent.

4)      Upon the **Insured's** satisfaction of any applicable deductible amounts, **Claim Expenses** shall be paid by the Company and such payments reduce the available limit of liability. The Company shall not be obligated to defend or continue to defend any **Claim** after the applicable limit of the Company's liability has been exhausted by payment of **Claim Expenses** or **Loss** or both.

5)      It is hereby agreed that, subject to all the terms and conditions of the Policy, the Company has the right and the obligation to defend any **Claim** covered by this Policy made against any **Insured**. All such **Claims** shall be defended on a joint defense basis, subject to applicable law, under which:

   a)   the Company shall appoint one counsel to defend all of the **Insureds** who are or may be involved with respect to any such **Claim**; and

   b)   all of the Insureds shall have the obligation to cooperate with respect to the investigation and joint defense of any such **Claim**.

D.      **SETTLEMENT PROVISIONS:**

Prior to the settlement and/or compromise of any claim, the **Company** will consult with all of the **Named Insureds** involved in the claim and will endeavor, within reason, to reach a consensus as to (a) whether the claim shall be settled or compromised and (b) the amount of any payment required or appropriate in connection with any such settlement or compromise. In the event that consensus is not achieved, the

**Company** shall have the right to make the final and binding decision regarding the settlement or compromise. The provisions of this paragraph shall apply whether the amount involved in any such settlement or compromise is within or in excess of the Deductible. Only the consent of the **First Named Insured** shall be required in connection with any such settlement or compromise; provided, however, that such consent shall not be unreasonably withheld. The **Company** will not settle or compromise any **claim** without the consent of the **First Named Insured**. If, however, any **Insured** refuses to consent to a settlement or compromise recommended by the **Company** and elects to contest such **claim** or continue legal proceedings in connection with such **claim**, then the **Company's** liability to that **Insured** for the **claim** shall not exceed the amount for which the **claim** could have been so settled with respect to that **Insured** plus **claim** expenses incurred up to the date of such refusal subject to the applicable limit of liability under this policy.

E.   **CLAIM EXPENSES:**

**Claim expenses** in excess of the Deductible shall be paid by the Company, and such payments reduce the available limit of liability. The **First Named Insured** must first pay any applicable retained amount as set forth in Item 5. of the Declarations as Deductible.

F.   **FIRST NAMED INSURED**

The **First Named Insured** as stated in Item 1. Of the Declarations of this Policy shall act for all **Insureds** for the following purposes:

1.   receipt of notice of cancellation by the Company;

2.   as sole payee of premium due the Company and as recipient of any unearned premium that is returned by the Company.

3.   to request changes made to the policy and as recipient to the Company's response to any such request;

4.   payment of all premiums and all Deductible amounts and for keeping records of information the Company needs for premium computation;

5.   consent to settlement or compromise of any claim in accordance with the Settlement Provisions set forth in I.D. above;

6.   reporting of changes in scope or nature of the project to the Company.

G.   **CLEANUP UNDER COVERAGE B.**

With respect to Coverage B., the Company shall have the right but not the duty to participate in decisions regarding **Cleanup Costs** and to participate with the **First Named Insured** in all aspects of the Cleanup and the adjustment of any **Claim** up to the Limit of Liability. In the case of the exercise of this right, the **Insured**, on demand of the Company, shall promptly reimburse the Company for any element of **Loss** falling with the **Insured's** Deductible.

## II.     EXCLUSIONS

This policy does not provide coverage and the Company will not pay **Claim Expenses** or **Loss** for any **Claim** based upon or arising out of:

A.  (1) solely with respect to Coverage A., any dishonest, fraudulent, criminal, or malicious **Breach of Professional Duty**, or those of a knowingly wrongful nature committed intentionally by or at the direction of any Insured; or

(2) with respect to Coverages A. and B., any **Insureds** intentional, knowing, willful, or deliberate non-compliance with any applicable statute, regulation ordinance, administrative complaint, notice of violation, notice letter, executive order or any instruction of any governmental agency or body;

This exclusion shall not apply to any **Insured,** who did not commit, participate in or have knowledge of such **Breach of Professional Duty** or noncompliance;

B.  any **Claim** made by any **Insured** against any other **Insured** other than Claims made by any additional insured as defined in Endorsements 6 and 7;

solely with respect to Coverage B, this exclusion shall not apply to any **Claim** made against an Insured that is performing **Covered Operations** or **Professional Services** when such **Claim** is made by any additional **Insured** (as defined in Section III. Definitions, Paragraph N, item 5) that is a client of the **Insured** and for whom the **Insured** is performing or has performed **Covered Operations** or **Professional Services;**

C.  solely with respect to Coverage A., discrimination by an **Insured** on the basis of handicap, unless such **Claim** arises out of the failure to make reasonable accommodations under the Americans With Disabilities Act as amended, in the course of performance of covered **Professional Services;**

D.  solely with respect to Coverage A., any **Insureds** involvement as a partner, officer, director, stockholder, employer or employee of any business enterprise not engaged in the **Covered Project;**

E.  any **Insureds** involvement in **Professional Services** or **Covered Operations** rendered to, or on behalf of any organization or subsidiary or affiliate thereof, not engaged in the **Covered Project,** which any **Insured** controls, manages, operates or holds more than a 25% ownership interest in or which controls, manages, operates or holds more than a 25% ownership interest in any **Insured;**

F.  solely with respect to Coverage A., the design or manufacture of any products developed by any **Insured** for mass distribution, including but not limited to computer programs or software;

G.  solely with respect to Coverage B., any **Claim** for (1) **Property Damage** to that particular part of your work performed by, or on behalf of the **Named Insured** or its parent, subsidiary or affiliate arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; or (2) **Property Damage** to that particular part the **Named Insured's** products or caused in whole or in part by the **Named Insureds Products;**

H.  solely with respect to Coverage A., any express warranty or guarantee; however, this exclusion shall not apply to **Loss** resulting from the failure to meet such warranty or guaranty if such **Loss** would have resulted in the absence of such express warranty or guaranty, nor shall this exclusion apply to liability for **Breach of Professional Duty** in rendering or failure to render **Professional Services** for others by the **Insured** or for which the **Insured** is legally liable;

I.  solely with respect to Coverage A., the Insureds advising or requiring of, or failure to advise or require or failure to maintain or procure any financing or monies for payment of any portion of the project, or of services or labor connected with the project;

J.  solely with respect to Coverage A., solely arising out of the cost to repair or replace any faulty workmanship, assembly, construction, erection, fabrication, installation or remediation if such work is performed in whole or in part by:

1.  the Insured; or

2.      any organization or subsidiary or affiliate thereof which any **Insured** operates or hold more than a 25% ownership interest in; or which operates or holds more than a 25% interest in any **Insured**;

This Exclusion does not apply to **Claims** resulting from design services incidental to construction means, methods, techniques or sequences or the design of temporary structures, including but not limited to, scaffolding, sheeting and shoring nor does it apply to faulty workmanship directly attributable to negligent supervision.

K.     liability of others assumed by any **Insured** under any contract or agreement; except this exclusion does not apply to the liability;

     1.     solely with respect to Coverage A., for a **Breach of Professional Duty** in the rendering or failure to render **Professional Services** to others by the **Insured** or for which the **Insured** is legally liable as the result of the performance of others;
     2.     to liability assumed in a contract or agreement that is an **Insured Contract**, provided that the **Bodily Injury, Property Damage** or **Environmental Damage** occurs subsequent to the execution of the contract or agreement;
     3.     that the **Insured** would have in the absence of the contract or agreement; or
     4.     solely with respect to Coverage B., arising from **Covered Operations** performed by contractors or subcontractors pursuant to a written contract and the **Bodily Injury, Property Damage,** or **Environmental Damage** occurs subsequent to the execution of the contract.

L.     **Bodily Injury** sustained by any employee of any **Insured** while engaged in employment by any **Insured**, or by any person whose right to assert a **Claim** against the **Insured** arises by reason of any employment, blood, marital or other relationship with the employee. This exclusion applies;

     1.     whether the **Insured** may be liable as an employer or in any other capacity; or
     2.     to any obligation to share **damages** with or repay someone else whom must pay **damages** because of **Bodily Injury;**

This exclusion does not apply to liability assumed by the **Insured** under an **Insured Contract.**

M.     any obligation for which an **Insured** or any other party must pay under any unemployment, workers compensation, disability benefits, or other similar laws;

N.     the ownership, entrustment, maintenance, operation or use, including loading and unloading by or on behalf of the **Insured** of any watercraft, aircraft, **Motor Vehicle** or rolling stock of any kind which is owned, operated or rented by or loaned to the **Insured**. As respects Coverage B. only, this exclusion does not apply to the **Loading or Unloading**, or spill or overturn, of any watercraft, aircraft, **Motor Vehicle**, or rolling stock of any kind, whether owned, operated or rented by or loaned to the **Insured** or not;

O.     any waste or any products or materials once such has been delivered via **Mobile Equipment, Motor Vehicle**, aircraft, watercraft or rolling stock to a location beyond the boundaries of the **Covered Project;**

P.     Any **Claim** or part thereof which may be alleged as covered under one Insuring Agreement of Section I., Insuring Agreements, of this Policy, if we have accepted coverage or coverage has been held to apply for such **Claim** or part thereof under the other Insuring Agreement of Section I., Insuring Agreements, of this Policy.

### III.    DEFINITIONS

A.     **Bodily Injury** means physical injury, or sickness, disease, mental anguish or emotional harm or emotional distress, medical monitoring required pursuant to Laws, mental injury, shock, loss of support, loss of

consortium, loss of companionship, loss of society and loss of other valuable services actually or alleged to be sustained (in each case when accompanied by either actual or alleged physical injury) by any person, including death resulting therefrom.

B.    **Breach of Professional Duty** means an error, omission or other act that causes liability in the performance or non-performance of **Professional Services** by the **Insured** or for which the **Insured** is legally liable as a result of the performance of others.

C.    **Claim** means any written demand or suit received by an **Insured** seeking remedy and alleging liability or responsibility for **Loss.**

D.    **Claim Expenses** means;

   1.    fees charged by any lawyer designated by the **Company;**

   2.    all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim,** if authorized by the Company. **Claim Expenses** shall not include the salaries of any employee of the **Company.**

E.    **Clean-up Costs** all reasonable and necessary costs, charges and expenses, including reasonable and necessary **Legal Expenses** incurred, with the Company's consent, which is not to be unreasonably withheld, conditioned, delayed or denied, for the investigation, feasibility study, preparation of a work plan, removal, clean-up, disposal, treatment (including in-situ and ex-situ treatment), monitoring or neutralization of **Pollutants** and any operations and maintenance of any such treatment, monitoring or neutralization activities and equipment:

   (a)    to the extent required by laws, or specifically mandated by any Consent order(s), decrees or agreement and/or by court order, the government or any political subdivision of the United States of America or any state thereof, or any international body duly acting under the authority of law(s); and/or

   (b)    which have been actually incurred by the government or any political subdivision of the United States of America or any state thereof or Canada or any province thereof, or by third parties and for which such third party is making a **Claim;** and/or

   (c)    to the extent incurred by an **Insured** pursuant to a validly executed voluntary clean up agreement, decree, order  or plan negotiated with a governmental agency with jurisdiction or a voluntary clean up directed by an authorized representative of a governmental agency with jurisdiction.

F.    **Completed Operations,** which applies solely with respect to Coverage B. means:

   1.    **Covered Operations** performed during the policy period; or
   2.    Materials, parts or equipment furnished in connection with such work or operations.

G.    **Completed Operations Period** . The Completed Operations Period shall commence immediately upon expiration of the Policy Period and shall end upon the actual expiration on any applicable statute of limitations period.

H.    **Covered Project** means the project defined in Item 3 of the Declarations of this policy.

I.    **Covered Operations** means: all operations and/or activities performed by or on behalf of an **Insured** in connection with the **Covered Project**.

J.  **Damages** means any amount which an **Insured** is legally obligated to pay for any **Claim** to which this insurance applies and shall include judgments and settlements, provided always that **Damages** shall not include the return or withdrawal of professional fees, sanctions, fines or penalties imposed by law or other matters that may be deemed uninsurable under the law pursuant to which this policy shall be construed. Notwithstanding the foregoing, **Damages** shall include punitive, exemplary or multiple damages unless providing coverage for such damages is expressly prohibited by law.

K.  **Discovery Period**, which applies solely with respect to Coverage A shall mean the period specified in Item 8.a. of the Declarations of this Policy. The **Discovery Period** shall commence immediately upon expiration of the **Policy Period**, provided that the **Breach of Professional Duty** forming the basis of any incident, circumstance, event or **Claim** reported or made during the **Discovery Period** first occurred during the **Policy Period** (and not prior to the Retroactive Date stated in the Declarations) and, further provided that the **Claim** arising out of such **Breach of Professional Duty** or the incident, circumstance or event arising out of such **Breach of Professional Duty** is made prior to the expiration of the **Discovery Period**.

L.  **Environmental Damage** means damage to soil, air surface water or groundwater, or plant or animal life, caused by **Pollution Conditions** and giving rise to **Clean-up Costs**. **Environmental Damage** does not include **Bodily Injury**.

M.  **First Named Insured** means the **First Named Insured** first shown in Item 1 of the Declarations.

N.  **Insured** means:

1.  the **First Named Insured**;

2.  the **Named Insured(s)** and all associated subsidiaries, and affiliated companies or corporations, or joint ventures, as now exist or may hereafter be constituted or acquired;

3.  any person who was or is or was a partner, officer, director, stockholder or employee of a **Named Insured** while acting within the scope of his/her duties as such;

4.  the heirs, executors, administrators, and legal representatives of each **Insured** as defined in 1. and 2. And 3. above, in the event of death, incapacity or bankruptcy but only as respects liability arising out of **Professional Services** or **Covered Operations** rendered on behalf of the **Named Insured** prior to such **Insured's** death, incapacity or bankruptcy;

5.  solely with respect to Coverage B., the client for whom the **Named Insured** performs or performed **Covered Operations**, provided that a written contract or agreement is in effect between the **Named Insured** and the client requiring the client to be an **Insured** under the **Named Insureds** contractors pollution liability policy. However, such clients are covered under this policy solely with respect to **Loss** from **Covered Operations** performed by the **Named Insured** and are not covered for any **Loss** arising from the clients own liability. Clients of the **Named Insured** are covered under this Policy only for the Limits of Liability up to and not exceeding the amount required by the written contract with the **Named Insured** and subject to the Limits of Liability of this Policy;

6.  a former partner, officer, director or employee of the **Named Insured** while rendering **Professional Services** on behalf of the **Named Insured**;

7.  contract or leased personnel rendering **Professional Services** or performing **Covered Operations** under the supervision and on behalf of the **Named Insured**;

8.  any predecessor in interest.

O.  **Insured Contract** means:

1.  an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

2.  that part of any other contract or agreement pertaining to the **Named Insureds** business (including an indemnification of a municipality in connection with work performed for a municipality) under which the **Named Insured** assumes the tort liability of another party to pay for **Bodily Injury, Property Damage or Environmental Damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement,

3.  any contract or agreement listed in the Endorsement hereto titled "Schedule of Insured Contracts;" or,

4.  any contract or agreement executed in connection with the **Covered Project**.

P.    **Loading or Unloading** means the handling of property at the **Covered Project** site where **Covered Operations** are being performed;

1.  after the property is moved from the place where it is accepted for movement into or onto a watercraft, aircraft, **Motor Vehicle** or rolling stock of any kind;

2.  while the property is in or on a watercraft, **Motor Vehicle**, or rolling stock of any kind; or

3.  while the property is being moved from a watercraft, aircraft, **Motor Vehicle**, or rolling stock of any kind to the place where it is finally delivered

Q.    **Loss** means:

1.  Monetary awards or compensatory **Damages** excluding exemplary or multiplied **Damages** because of (a) **Claims** arising out of a **Breach of Professional Duty** in the performance of **Professional Services** under Coverage A. or (b) **Bodily Injury** or **Property Damage** under Coverage B.

2.  **Clean-up Costs** arising from **Environmental Damage** under Coverage B; and

3.  **Claims Expenses.**

R.    **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1.    bulldozers, farm machinery, forklifts and other self propelled vehicles which are unlicensed for use on or off public roads;

2.    vehicles maintained for use solely on premises owned or rented by the **Named Insured**;

3.    vehicles that travel on crawler treads;

4.    vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(a)    power cranes, shovels, loaders or drills; or

(b)    road construction or resurfacing equipment such as graders, scrapers or rollers;

5.    vehicles not described in (1), (2), (3) or (4) above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(a)    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

(b)    cherry pickers and similar devices used to raise or lower workers;

6.    vehicles not described in (1), (2), (3), (4) or (5) above maintained primarily for purposes other than the transportation or persons or cargo.

S.    **Motor Vehicle** means an automobile, van, truck trailer or semi-trailer designed to travel on public roads, but does not include **Mobile Equipment**.

T.    **Named Insured** means the First Named Insured, its past, present or future contractors, subcontractors, of every tier, design professionals and construction management entities, consultants and subconsultants, of every tier, performing work in connection with the Covered Project.

U.    **Named Insured's Product** means goods, products or pieces of equipment, including component parts thereof and including other products in which goods, products or pieces of equipment are incorporated, which are manufactures, sold, furnished, or supplied by a **Named Insured**, any subsidiary of a **Named Insured** or any subsidiary of such entity, or any other person under license from the **Named Insured**;

V.    **Natural Resource Damage** means means: (1) physical injury to or destruction of, including the resulting loss of value of, land, fish, wildlife, biota, air, water, groundwater, drinking water supplies; (2) physical injury to or destruction of other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the fishery conservation zone established by the Magnuson-Stevens Conservation and Management Act (16 U.S.C. §§ 1801 et seq.)), any state or local government, any foreign government, any Indian tribe, or, if such resources are subject to a trust restriction on alienation, any member of an Indian tribe; and (3) the cost, charges and expenses for assessment associated with any items identified in (1) and (2) herein.

W.    **Personal Injury** means injury, other than **Bodily Injury**, arising out of one or more of the following offenses;

    1.    false arrest, detention or imprisonment;

    2.    malicious prosecution;

    3.    wrongful entry into, or eviction of a person from a room, dwelling, or premises that the person occupies;

    4.    oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    5.    oral or written publication of material that violates a person's right of privacy; or

    6.    humiliation.

X.    **Policy Period** means the period form the effective date of this Policy to the expiration date of this policy as specified in Item 4 of the Declarations, or the earlier termination date, if any.

Y.    **Pollutants** means any solid, liquid, gaseous or thermal chemical, irritant, contaminant, substance, debris, material or waste, including smoke, vapors, soot, fumes, dusts, acids, alkalis, hazardous or toxic chemicals, substances, irritants, contaminants or waste and/or by-products or progeny thereof including expressly but not limited to: hydrocarbons and petroleum products and by-products; asbestos and asbestos-containing materials; urea formaldehyde foam insulation; metals; mercury; cyanide; lead and lead-based paint; and polychlorinated biphenyls ("PCBs"). **Pollutants** include materials that are disposed of, recycled, reused, re-conditioned or re-claimed.

Z.    **Pollution Condition** means the presence, introduction, movement, migration, disposal, discharge, dispersal, release or escape of any **Pollutants** at, on, under, or emanating to or from, or existing beyond the boundaries through migration or dispersal originating from, the Project Site (including the land, soil or sediment, or any above ground or subsurface structure or the atmosphere or any watercourse or body of water including groundwater) and/or historis fill and/or **Pollution Conditions** therein or emanating therefrom, in all cases, provided that such conditions are not: (1) naturally present conditions; or (2) present above the background levels for a constituent naturally occurring in the environment.

**Pollution Conditions** includes the continued movement, migration or dispersal of **Pollutants** that existed on the **Project Site** as of the date of policy inception.

AA.   **Professional Services** means all professional, design and/or construction management services performed in connection with the **Covered Project**.

BB.   **Property Damage** means:
1.   Physical injury to or destruction of tangible property of parties other than the **Insured**, including the resulting loss of use or value thereof;

2.   Loss of use, but not loss of value, of tangible property of parties other than the **Insured** which has not been physically injured or destroyed;

3.   **Natural Resources Damage;**

4.   Diminution in value of real property owned by third parties which is constructed on **Insured Properties;** and

5.   Nuisance, trespass, wrongful eviction or wrongful entry affecting tangible property and caused by **Conditions.**

CC.   **Project Site** means the exhibit A-1 through A-4 of the Exit Strategy Contract signed and dated November 15, 2000.

## IV.    LIMITS OF LIABILITY AND SELF INSURED RETENTION

A.    **LIMIT OF LIABILITY-EACH CLAIM:**

The limit of liability shall apply in excess of the Deductible. The liability of the Company for each covered **Claim** shall not exceed the amount stated in the Declarations for **Each Claim**. This limit is the maximum amount of **Loss** that the Company will pay on each covered **Claim.**

B.    **LIMIT OF LIABILITY-AGGREGATE:**

Subject to Limit of Liability - **Each Claim**, the liability of the Company shall in no event exceed the amount stated in the Declarations as aggregate as a result of all covered **Claims**. This limit is the total amount of **Loss** that the Company will pay under this policy for all covered **claims** including those reported as provided for in the Discovery Period.

Once the limits of liability have been exhausted, the Company will not defend or pay Loss for any **Claim.**

C.    **MULTIPLE INSUREDS:**

The number of **Insureds** covered by this policy shall not operate to increase the Limits of Liability as specified above.

D.    **MULTIPLE CLAIMS:**

Coverage A

Two of more covered **Claims** arising out of a single **Breach of Professional Duty** or any series of related **Breaches of Professional Duty** will be considered a single **Claim**. This policy shall only apply if the first or earliest **Claim** arising from such **Breach of Professional Duty** is made during the **Policy Period**. These

provisions apply regardless of the number of **Insureds** involved in such a **Claim**, the number of **Claims** made, or the number of people or organizations that make the **Claims**.

The number of **Claims** made or the number of people or organizations that make **Claims** shall not operate to increase the Limits of Liability as specified above.

## Coverage B

Progressive, indivisible **Bodily Injury, Property Damage or Environmental Damage** over a period of days, weeks months or longer caused by the same, related or continuous **Pollution Conditions** shall be deemed to have occurred only on the date of first exposure to such **Pollution Conditions**. If the date of such first exposure is before the inception date of this policy and continues in fact to exist during the **Policy Period**, all such **Bodily Injury, Property Damage or Environmental Damage** shall be deemed to have occurred on the inception date of this Policy.

**E.     DEDUCTIBLE:**

The Company's obligation, under the coverage provided by this policy to pay **Loss** on behalf of the **Insured**, applies only to the payment of **Loss** in excess of the Deductible stated in Item 6 of the Declarations, and subject to the Limits of Liability stated in Item 5 of the Declarations. -The **First Named Insured** shall be responsible for the payment of the Deductible.

**V.     CONDITIONS**

**A.     INSUREDS REPORTING OBLIGATIONS**

1.   As a condition precedent to the right of coverage under this policy, each **Named Insured** shall have the obligation to report promptly and in writing any incident, circumstance or event that reasonably may give rise to a **Claim** and/or any **Claim**. The Written notice shall contain particulars sufficient to identify the **Insured** and claimant and provide full information with respect to the time, place and circumstances of the event complained of, and the names and addresses of the injured and all available witnesses to:

> Home Office Senior Supervisor, Pollution Legal Liability
> AIG Technical Services, Inc.
> Environmental Claims Department
> 80 Pine Street, Sixth Floor
> New York, New York 10005

> and

> Division Attorney-Pollution Legal Liability
> Commerce and Industry Insurance Company
> 175 Water Street
> New York, New York 10038

2.   Cooperate with the **Company** and upon the **Company's** request submit to examination and interrogation by a representative of the Company, under oath if required, and shall attend hearings, depositions and shall assist in effecting settlement, obtaining the attendance of witnesses in the conduct of suits, as well as the giving of a written statement or statements to the Company's representatives and meeting with such representatives for the purpose of investigation and/or defense, and all without charge to the Company.

13

3.   The **Insured** must do whatever is necessary to secure and effect any rights of indemnity, contribution or apportionment that the **Insured** may have.

4.   The **Insured** shall refrain from discussing the facts and circumstances of any **claim** with anyone other than legal counsel or representatives of the Company.

5.   This reporting obligation shall apply regardless of whether any amount involved or may be involved is less than or within the amount of the Deductible. This policy requires that all incidents, circumstances, events and/or **Claims** be reported, regardless of the actual or alleged amounts involved or which may be involved, is less than, within and/or in excess of the amount of the Deductible. All such reported incidents, circumstances, events and/or **Claims** shall be investigated managed, defended, settled, or otherwise resolved, in accordance with the joint defense provision of this policy.

**B.    TRANSFER OF RIGHTS OF RECOVERY:**

If there is a payment made by the Company, the Company shall be subrogated to all the **Insured's** rights of recovery against any person or organization. The **Insured** shall cooperate with the Company and do whatever is necessary to secure these rights. The **Insured** shall do nothing after a **claim** to waive or prejudice such rights. The Company agrees to waive this right of subrogation against the client of the **Insured** or any other party to the extent that the **Insured** had, prior to claim, a written agreement to waive such rights.

**OTHER CONDITIONS**

**C.    HOW OTHER INSURANCE APPLIES:**

It is hereby agreed that this Policy is primary coverage, and the Company will not seek a recovery or contribution, or take action or recourse against any **Insured** for **Loss** or **Claim** paid or expenses incurred under this Policy.

**D.    CHANGES MADE TO THIS POLICY:**

The terms and conditions of this policy cannot be waived or changed except by specific written agreement between the **First Named Insured** and the Company.

**E.    ASSIGNMENT OF THE INSURED'S INTEREST:**

The interest of the **Insured** under this policy is not assignable to any other person or organization without the prior written consent of the Company, which consent shall not be unreasonably withheld delayed or conditioned.

**F.    BANKRUPTCY:**

Bankruptcy or insolvency of the **Insured** or the **Insured's** estate shall not relieve the Company of any of its obligations under this policy.

**G.    APPLICATION:**

The statements in the Application are the **First Named Insured's** representations and are deemed material. This policy is issued based upon the truth and accuracy of such representations. Upon the binding of coverage, the Application shall be attached and become part of this policy.

Misrepresentation, or concealment by one **Insured** shall not prejudice the interest of coverage for any other **Insured** under this Policy.

**H.    ACTION AGAINST THE COMPANY:**

No action shall be maintained against the **Company** by a third party to recover for any loss under this policy unless, as a condition precedent thereto:

1.    the **Insured** has fully complied with material terms and conditions of this policy; and

2.    the amount of such loss has been fixed or rendered certain;

      a.    by final judgment against the **Insured** after trial of the issues; or

      b.    the time to appeal such judgment has expired without an appeal being taken; or

      c.    if appeal is taken, after the appeal has been determined; or

      d.    the **Claim** is settled in accordance with the terms and conditions of this policy.

**I.    FALSE OR FRAUDULENT CLAIMS:**

If any **Named Insured** reports any **Claim** knowing such **Claim** to be false or fraudulent, all insurance coverage hereunder as regards the false or fraudulent **claim** shall be forfeited with respect to that **Named Insured**.

**J.    CHOICE OF LAW AND FORUM**

In the event that the **Insured** and the Company dispute the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, the **Insured** and the Company agree that the law of the State of New York shall apply and that all litigation, arbitration or other form of dispute resolution shall take place in the State of New York.

**IN WITNESS WHEREOF**, the **Company** has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in the Declarations by one of its duly authorized representatives.

Elizabeth M. Tuck, Secretary

Joseph L. Boren, President

15

# ENDORSEMENT #1

This endorsement effective 12:01 A.M. March 12, 2001

forms a part of policy No:  952 67 32

issued to:  TRC Companies, Inc.

by:  Commerce and Industry Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SCHEDULE OF INSURED CONTRACTS ENDORSEMENT

The following are Insured Contracts under this policy:

Con Edison/First Avenue Properties (Exit Strategy Contract)

All other terms, conditions and exclusions remain the same.

_____

AUTHORIZED REPRESENTATIVE

16

## ENDORSEMENT #2

**This endorsement effective 12:01 A.M. March 12, 2001**

**forms a part of policy No: 952 67 32**

**issued to:  TRC Companies, Inc.**

**by:  Commerce and Industry Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ANTI-STACKING ENDORSEMENT

It is hereby agreed that the following provisions are added to the Limits of Liability section of this Policy:

A.  In the event that any claim under this policy is also covered by one or more other policies issued by the Company, or by any other member company of American International Group, Inc., to the Named Insured or to any person or entity who controls or is controlled by the Named Insured:

1.  The Company shall not be liable under this Policy for a greater proportion of the loss than the proportion that the applicable limit of liability of this Policy, less the deductible amount (if any), bears to the sum of the applicable limits of liability of all such policies, less the deductible amounts (if any), referred to in Paragraph A. above (including this Policy);

2.  The maximum amount payable under all such policies referred to in Paragraph A. above, combined, shall not exceed the highest applicable limit of liability of the policy among those policies referred to in Paragraph A. above.  In calculating this highest applicable limit of liability, any applicable deductible amounts shall be subtracted from the limits of liability of each policy, if such applicable deductible amount reduces the limit of liability under the terms and conditions of the respective policy; and

3.  The sole applicable deductible or self-insured retention, applicable to the claim under the policies referred to in Paragraph A. above shall be that which applies under the policy with the highest limit of liability as established in sub-paragraph A.2. above.

B.  Nothing contained in this endorsement shall be deemed or construed to increase the limits of liability of this Policy.

All other terms, conditions and exclusions remain the same.

_____

AUTHORIZED REPRESENTATIVE

17

## ENDORSEMENT #3

This endorsement effective 12:01 A.M. March 12, 2001

forms a part of policy No:  952 67 32

issued to:  TRC Companies, Inc.

by:  **Commerce and Industry Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CANCELLATION ENDORSEMENT

It is hereby agreed that the following Cancellation provision is added to this policy:

This Policy may not be cancelled by the "Named Insured". The Company may cancel this Policy, but only for one of the following reasons:

1.  Non-payment of premium, upon 10 working days written notice to Con Edison and the Developer;
2.  Mutual consent of the Company and the Insured, Con Edison and the Developer.

All other terms, conditions and exclusions remain the same.

_____
AUTHORIZED REPRESENTATIVE

## ENDORSEMENT #4

This endorsement effective 12:01 A.M. March 12, 2001

forms a part of policy No:  952 67 32

issued to:  TRC Companies, Inc.

by:  Commerce and Industry Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SEVERABILITY OF INTERESTS ENDORSEMENT

It is hereby agreed that the following paragraph is added to Section V, (Conditions):

"Except with respect to the Limit of Liability and any rights and duties specifically assigned to the **First Named Insured** this insurance applies:

1.   As if each Insured were the only Insured; and
2.   Separately to each Insured against whom a **Claim** is made.

Misrepresentation, concealment, breach of condition or violation of any duty under this Policy by one Insured shall not prejudice the interest of coverage for another Insured under this Policy.

All other terms, conditions and exclusions remain the same.

_____
AUTHORIZED REPRESENTATIVE

19

## ENDORSEMENT #5

This endorsement effective 12:01 A.M. March 12, 2001

forms a part of policy No:  952 67 32

issued to:  TRC Companies, Inc.

by:  Commerce and Industry Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### REINSTATEMENT OF LIMITS ENDORSEMENT

Upon payment of the Reinstatement Premium stated below, the First Named Insured shall be entitled to reinstatement of the Limits of Liability as follows:

If during the Policy Period, the Aggregate Limit stated in Item 5 of the Declarations is or may be impaired by reason of Breach of Professional Duty or Pollution Conditions, the First Named Insured shall be entitled to one reinstatement of all or more than one reinstatement of part of such Limits of Liability stated in Item 5 of the Declarations. Such reinstated limits, however shall be available only for Breach of Professional Duty or Pollution Conditions different from those that caused the actual or potential impairment of Limits of Liability preceding the reinstatement.

In no event shall the liability of the Company under this Policy exceed twice the Policy Aggregate Limit stated in Item 5 of the Declarations.

Reinstatement Premium: <u>150% of the policy term premium.</u>

All other terms, conditions and exclusions remain the same.

_____
AUTHORIZED REPRESENTATIVE

20

## ENDORSEMENT #6

This endorsement effective 12:01 A.M. March 12, 2001

forms a part of policy No:  952 67 32

issued to:  TRC Companies, Inc.

by:  Commerce and Industry Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ADDITIONAL INSURED ENDORSEMENT

It is hereby agreed that **Insured** is amended to include the entity scheduled below, but only with respect to **Claims** brought against this Additional Insured by Third Parties and arising out of the **Covered Operations** and **Professional Services** performed by or on behalf of the Additional Named Insured.  However, this Policy does not provide any coverage to the Scheduled Additional Insured for **Loss** as a result of any operations, act, error or omission of the Additional Insured of their employees or associated subsidiaries.

BLANKET WHERE REQUIRED BY CONTRACT

Additional Insured also includes:

"all associated subsidiaries, and affiliated companies or corporations, or joint ventures, as now exist or may hereafter be constituted or acquired"

All other terms, conditions and exclusions remain the same.

_____

AUTHORIZED REPRESENTATIVE

21

## ENDORSEMENT #7

This endorsement effective 12:01 A.M. March 12, 2001

forms a part of policy No:  952 67 32

issued to:  TRC Companies, Inc.

by:  Commerce and Industry Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ADDITIONAL INSURED ENDORSEMENT

It is hereby agreed that **Insured** is amended to include the entity scheduled below, but only with respect to **Claims** brought against this Additional Insured by Third Parties and arising out of the **Covered Operations** and **Professional Services** performed by or on behalf of the Additional Named Insured.  However, this Policy does not provide any coverage to the Scheduled Additional Insured for Loss as a result of any operations, act, error or omission of the Additional Insured or their employees.

Consolidated Edison Company of New York, Inc. and Associates Subsidiaries
Consolidated Edison, Inc.
Consolidated Edison Company of New York, Inc.
4 Irvine Place
New York, NY 10002

FSM East River Associates LLC and Associated Subsidiaries
c/o Fisher Brothers
299 Park Avenue
New York, NY 10171

Plaza Construction
260 Madison Avenue
New York, NY  10016

Additional Insured also includes:

"all associated subsidiaries, and affiliated companies or corporations, or joint ventures, as now exist or may hereafter be constituted or acquired"

All other terms, conditions and exclusions remain the same.

_____

AUTHORIZED REPRESENTATIVE

22

## ENDORSEMENT #8

**This endorsement effective 12:01 A.M. March 12, 2001**

**forms a part of policy No:  952 67 32**

**issued to:  TRC Companies, Inc.**

**by:  Commerce and Industry Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AGGREGATE DEDUCTIBLE WORDING

It is hereby agreed that Item 4. Deductible of the Declarations is deleted in its entirety and replaced by the following:

| | |
|---|---|
| $    100,000 | Each Claim |
| $1,000,000 | Aggregate |
| $     50,000 | Each/Every (Drop Down) |

Furthermore, the Company's obligation under the coverage provided by this policy to pay Loss or Claim Expense or both on behalf of the Insured, applies only to the payment of Loss or Claim Expense in excess of the applicable Deductible Amount shown in Item 4 of the Declarations, and subject to the Limits of Liability stated in Item 3 of the Declarations. The "Each Claim" deductible amount shown above is the deductible amount applicable to each Claim. Once the Named Insured pays deductible amounts which in the aggregate equal or exceed the amount shown above as the "Aggregate", the "Each/Every (Drop Down)" deductible shown above shall apply thereafter to each Claim. However, in no event shall the deductible amount applicable to any Claim covered by this policy be less than the "Each/Every (Drop Down): deductible amount shown above.

All other terms, conditions and exclusions remain the same.

_____

AUTHORIZED REPRESENTATIVE

23

## ENDORSEMENT #9

This endorsement effective 12:01 A.M. March 12, 2001

forms a part of policy No: 952 67 32

issued to: TRC Companies, Inc.

by: Commerce and Industry Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is hereby agreed coverage afforded by this policy will be extended by a period of up to 1 year from March 12, 2005 provided total gross revenue on the project does not exceed 25% of the original value when coverage was bound, losses do not exceed 100% of the policy premium, and there is no significant change in the scope of work as determined by the underwriter.

If all the conditions of this endorsement are met as indicated, no additional premium will be charged.

All other terms, conditions and exclusions remain the same.

_____
AUTHORIZED REPRESENTATIVE

24