**Exhibit I**

# LeBoeuf, Lamb, Greene & MacRae LLP

NEW YORK
WASHINGTON, D.C.
ALBANY
BOSTON
CHICAGO
HARTFORD
HOUSTON
JACKSONVILLE
LOS ANGELES
PITTSBURGH
SAN FRANCISCO

125 WEST 55TH STREET
NEW YORK, NY 10019-5389
(212) 424-8000
FACSIMILE: (212) 424-8500

E-MAIL ADDRESS: ALAN.BERMAN@LLGM.COM
WRITER'S DIRECT DIAL: (212) 424-8215
WRITER'S DIRECT FAX: (212) 649-9333

LONDON
A MULTINATIONAL
PARTNERSHIP
PARIS
BRUSSELS
JOHANNESBURG
(PTY) LTD
MOSCOW
RIYADH
AFFILIATED OFFICE
BISHKEK
ALMATY
BEIJING

September 8, 2005

**VIA FACSIMILE
AND OVERNIGHT COURIER**

Daniel Riesel, Esq.
Sive, Paget & Riesel, P.C.
460 Park Avenue
New York, NY 10022-1906

Re: First Avenue Properties

Dear Dan:

I am responding to your client's letter of August 30, 2005 which was copied to me and addressed to Mr. Stelben.

First, I confirm that Con Edison has advised TRC that TRC has the right in its sole discretion to participate, or not participate, in the Brownfield Cleanup Program ("BCP"), subject of course to the terms of the Exit Strategy Contract ("ESC") and the Cost Cap/PLL Policy.

Second, you have asked for clarification as to the meaning of the following portion of Robert Stelben's August 5, 2005 letter to Mike Salmon and Ed Malley of TRC:

> "Con Edison does not, and will not, object to TRC's participation in the BCP program, provided that all of the applicable requirements of the Exit Strategy® Contract have been met. These requirements include, without limitation, paragraph 5(aa) of the [ESC]."

Section 5(aa) of the ESC requires that, after transfer of title to the Properties, TRC may not enter into any agreement or amendment with the Developer with respect to any Property unless such agreement or amendment, at Con Edison's election, is (i) an "Insured Contract" under the Cost Cap/PLL Policy (and Con Edison is not responsible for payment of additional premiums in connection with same) or (ii) covered by a separate cost cap/pollution legal liability insurance policy obtained at the Developer's sole expense which is in form reasonably acceptable to Con

Daniel Riesel, Esq.
September 8, 2005
Page 2

Edison and which names Con Edison as an additional named insured. The BCAs are agreements with the Developer with respect to certain of the Properties; accordingly, insurance meeting the requirements of (i) or (ii) above (at Con Edison's election) is a condition to TRC's execution and delivery of the BCAs. Based on Mr. Solow's letter, it appears that you have initiated a dialogue with AIG with regard to the BCP and we await their reply to your letter, which should set forth the conditions under which they would be willing to meet the requirements in (i) and/or (ii) above.

As you know, the ESC requires that both TRC and Site Developer obtain Con Edison's consent before transitioning to the BCP. We refer you to Sections 12, 14(b), 14(c) and 20 of the ESC for the relevant consent requirements. As repeatedly stated in our prior communications to the Developer team, the ESC was negotiated in the context of the VCP and our understanding of what the DEC was likely to require, in its discretion, under the VCP (recall that the BCP was not in existence at the time of entering into the ESC). In contrast to the requirements of the VCP, the BCP allows for a different remedy, contains different time frames, and imposes additional tasks that could affect TRC's current obligations. In addition, entry into the BCP would undoubtedly require a change to the Remedial Action Plans and the Consent Order, which would require Con Edison's (and ERRC's) consent, which consent "may be granted or withheld in such parties' sole discretion" under Section 14(b) of the ESC. In addition, all of the parties (i.e., TRC, ERRC, and Con Edison) must also obtain AIG's approval to these changes in accordance with the terms of the Policy.

Con Edison reiterates that it has no objection to Site Developer and TRC entering the BCP if that is what each company chooses to do. However, in order to protect its customers, Con Edison will require TRC and Developer to release Con Edison from all liability for, and indemnify Con Edison against, any additional costs and risks that may be incurred as a result of entering into the BCP. For example, there may be increased cost overrun risks associated with BCP-related work which could use up the Cost Cap limits of liability or there may be increased risks of a bodily injury or property damage claim as a result of work performed under the BCP which could use up the PLL limits of liability (which would not have happened had the parties not entered the BCP). In view of TRC's March 19, 2004 letter to your client and Mr. Stelben regarding the transition from the VCP to the BCP, TRC's May 12, 2005 letter to Dick King and your client (in which TRC outlined substantial additional costs associated with entering into the BCP), and TRC's August 8, 2005 letter to you (in which TRC reiterated its request for additional compensation), we believe that obtaining these assurances from TRC is necessary and appropriate. We would note, also, that all documentation of the foregoing would also have to be "Insured Contracts."

In addition, I feel compelled to address some of the statements in your August 30th letter that grossly mischaracterize the BCP issues and status. First, I find it hard to believe that TRC is alleging that it is reluctant to sign the BCA because it has received "mixed signals" from Con Edison. I attended the meeting among with Messrs. Salmon, Malley and Stelben on August 3rd where Con Edison and TRC discussed the BCP issues, and we personally explained that Con Edison has no objection to Site Developer and TRC entering the BCP. Furthermore, I am in

Daniel Riesel, Esq.
September 8, 2005
Page 3

receipt of a letter dated August 8, 2005 from Mike Salmon to you wherein Mr. Salmon raised the issues that TRC had related to its entry into the BCP. These issues were monetary matters concerning the fact that TRC insisted on being made whole for any additional costs it incurred by virtue of its entry into the BCP. In addition, on September 2, 2000, TRC advised your client that there are no "mixed signals" as far as Con Edison's communications with TRC is concerned.

Finally, I must also disagree with the statement in your client's letter that "Con Edison and TRC have previously acknowledged that the site work under the BCA is the same as that under the ESC and the VCO and, thus, covered under AIG's Cost Cap Policy." To the contrary, we have advised you numerous times – including without limitation in LeBoeuf Lamb's letters of September 7, 2004, October 14, 2004 and June 17, 2005 – that we believe that the site work under the BCA could be quite different from, and greater than, that required under the VCO which is the operative agreement required to be executed with government authorities under the ESC. Moreover, I believe that you have been similarly advised by TRC. Mike Salmon states in his August 8, 2005 letter to you that "the BCAs will affect our regulatory and contractual obligations for cleanup of the property. We have previously advised that these additional obligations are over and above what would otherwise be required under our contract and the existing [VCO]."

I appreciate that you wish to conclude this matter quickly, and I regret that your client waited three weeks after your client's meeting with TRC to contact my client. I strongly suggest that if you wish to resolve the matter expeditiously, you should arrange a meeting among all of the parties, including AIG, so that the issues can be addressed and resolved. As previously indicated, Con Edison is anxious to move this matter forward as long as the interests of Con Edison and its customers are adequately protected.

In an abundance of caution, please be advised that this letter shall not be deemed to be a waiver of any of Con Edison's rights or remedies under the ESC, the Cost Cap/PLL Policy or the Agreement between Con Edison and ERRC, all of which are expressly reserved hereby. I look forward to hearing from you in the next few days so that we can resolve the BCP matter in a manner fully consistent with the ESC.

Very truly yours,

Alan M. Berman

cc: S. Solow
    R. Stelben
    C. McTiernan, Esq.
    G. Port, Esq.
    M. Salmon