# Exhibit J

Case 1:06-cv-05417-WHP    Document 25-11    Filed 08/25/2006    Page 1 of 5

**SIVE, PAGET & RIESEL, P.C.**

460 PARK AVENUE

NEW YORK, NEW YORK 10022-1906

TELEPHONE: (212) 421-2150
FACSIMILE: (212) 421-1891

STI    N BARSHOV
MI     H. S. BOGIN
PA     D. CASOWITZ*
MA     A. CHERTOK
PA     A. R. ESTERMAN*
DA     PAGET
DA     L RIESEL
STJ    N C. RUSSO
DA     SIVE
DA     S. YUDELSON

*A   ADMITTED IN NJ

DAN CHOROST*
JENNIFER L. COGHLAN
JAY F. EVERSMAN
SUZANNE JOYCE
CHRISTINE M. LEAS
ELIZABETH A. READ
KATE SINDING

ERIC BREGMAN
WILLIAM B. GINSBERG
ARTHUR J. JACOBSON

COUNSEL

61 MAIN STREET · SUITE 415
WHITE PLAINS, N.Y. 10601
TELEPHONE (914) 689-3944

WEB SITE: www.sprlaw.com
E-MAIL: sprlaw@sprlaw.com

August 22, 2005

**SENT VIA FACSIMILE (212) 458-6523 & MAIL**

Joseph E. Cellura
Vice President
AIG Environmental
175 Water Street
New York, NY 10038

          Re:    **First Avenue Properties Insurance Policy PLS/CCC 1950199 (the "Policy")**

Dear Joseph:

      East River Realty Company, LLC ("ERRC") (as successor to FSM East River Associates, LLC) hereby requests that AIG Environmental add certain Brownfield Cleanup Agreements ("BCA") to Endorsement 5 of the referenced Policy. This addition is appropriate to reflect the transition of the First Avenue Properties from the Department of Environmental Conservation ("DEC") Voluntary Cleanup Program ("VCP") to the State Brownfield Cleanup Program ("BCP"), Environmental Conservation Law ("ECL") §§ 27-1401-1431. Participation in the BCP will significantly enhance the liability protection for the insured parties and reduce AIG's risk without additional cost.

      TRC Companies, Inc. ("TRC") is obligated to perform "Site Work" under the Exit Strategy Contract ("ESC"), dated November 15, 2000. That work is covered by the Policy. Following execution of the ESC, ERRC, Con Edison, and TRC entered the VCP, which governs the "Site Work" at the Properties from the perspective of the DEC. Under the BCP, ERRC and TRC would enter into two BCAs with DEC. The Site Work to be performed pursuant to the BCAs will be the same as that being performed under the ESC and the VCP. Thus, all work performed under the BCA is covered under the Policy, and now should be added to Endorsement 5.

Joseph E. Cellura
August 22, 2005
Page 2

SIVE, PAGET & RIESEL, P.C.

As you know, TRC and ERRC have been participating in the VCP under a Voluntary Cleanup Order ("VCO") governing remediation of the First Avenue Properties (the "Properties"). In March 2004, ERRC, TRC and Consolidated Edison Company of New York, Inc. ("Con Ed") applied to transfer the Properties from the VCP to the BCP. DEC granted the request with respect to all the Properties except 685 First Avenue, and circulated two BCAs: one for 616 First Avenue and one for 700 and 708 First Avenue as a single Greater Waterside Site. 685 First Avenue will remain under DEC's VCP.

Con Edison recently decided not to participate in the BCP because it no longer owns the Properties. Accordingly, only ERRC and TRC will execute the BCAs. This transition will not effect TRC's obligations under the ESC.

The VCP, under which TRC and ERRC executed the VCO pursuant to the ESC, was operated by DEC without any specific statutory authority. Under the VCP, no regulations governed the means or criteria to be employed during a remediation, nor did it provide any criteria to determine when DEC was required to issue its Release and Covenant Not To Sue. Even the "VCP Guide" published by DEC never progressed beyond the "Draft" stage. (See http://www.dec.state.ny.us/website/der/vcp/VCPGuide.pdf.) As a result, the remediation performed under the VCP remains open to challenge or "re-opener" by third parties and by other entities within the State, including the Department of Health, the State Attorney General's Office and local agencies. Moreover, under the VCP, "[t]he Department's release binds only itself, and does not bind private parties harmed, does not bind the State's Attorney General, the State's Comptroller, and does not bind the USEPA."[1]

In contrast, the BCP is a statutory program authorized under Title 14 of ECL Article 27. Under the BCP, a Certificate of Completion is issued to Volunteers such as ERRC and TRC who complete the work required by the BCP Work Plans. The Certificate of Completion, in turn, triggers a statutory Liability Limitation which releases Volunteers from all liability to the State (as opposed to only DEC) for hazardous waste or petroleum at and/or emanating from the Site, and includes a full release for Natural Resource Damages. (ECL §27-1421.) In addition, the BCP Liability Limitation affords contribution protection for private cost recovery actions, including those brought under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. §9613. (See Id. §27-1421(6)). This Liability Limitation will provide a significant benefit to AIG by immunizing AIG and its insureds from certain challenges by third parties and other state agencies, by providing a complete release from all Natural Resource Damages, and by significantly reducing the risks of potential third party contribution claims.

Participation in the BCP is fully consistent with the Policy. As you know, the AIG Policy "Cost Cap" coverages are the advance-funded mechanism financing payment to TRC under the ESC. (See Policy, Coverages K (known site Conditions) and L (unknown site Conditions discovered during performance of Site Work Action Plan)). Both Coverages K and L obligate AIG to pay "Site Work Costs" incurred by an Insured (i.e. TRC, ERRC or Con Ed), which are defined as "reasonable and necessary costs, charges and expenses, ... sustained for Site Work."

---

[1] See http://www.dec.state.ny.us/website/der/vcp/index.html.

Joseph E. Cellura
August 22, 2005
Page 3

SIVE, PAGET & RIESEL, P.C.

(Insurance Policy, Section VI.RR.) "Site Work", in turn, is defined as, "all activities and obligations sustained pursuant to and included in Remediation." (Policy, Section VI.QQ.)

"Remediation" means obligations imposed pursuant to "any consent order(s), decrees or agreements or to a validly executed voluntary clean-up agreement, plan or order negotiated with a governmental agency or voluntary clean-up directed by an authorized representative of a governmental agency." (Policy, Section VI.LL.) The Policy does not define "voluntary cleanup agreement"; indeed, the Policy and Endorsement 5 predate the VCO. Accordingly, the Policy's payment obligation is not limited to work performed under a particular "voluntary cleanup agreement". To the contrary, the Policy's payment obligation is triggered by work performed under "any" voluntary "cleanup agreement, decree, order or plan" negotiated with DEC, which plainly encompasses the BCAs.

Here, the ESC requires TRC to perform Site Work to ready the Properties for "Unencumbered Development", *i.e.*, residential/commercial development without "any limitation, restriction, condition, requirement or institutional control of any type, on development at or above the Development Depth" (paragraph 1(vv) of the ESC), independent of the VCO or any other governmental "consent order". Nonetheless, the Site Work required to achieve Unencumbered Development is being performed under work plans approved by DEC under the VCO and is clearly covered under the Policy. That Site Work is identical to the remediation required under the BCA because: (1) DEC has assured TRC and ERRC it will accept all previously approved Work Plans under the VCO, and that the Properties will transition into the BCP at the same stage they are in under the VCP, and (2) DEC has confirmed that it "continue[s] to implement the approach used in the past under the VCP...[for] unrestricted uses". *See* BCP Guide § 4.1(3).) Thus, the Site Work required under the BCP is the same as the work that was required under the VCP.

In sum, the Policy insures the ESC—not the VCO. (*See* Insurance Policy Insured Contract Endorsement). The Policy will continue to cover the cleanup costs until TRC meets its ESC obligations to achieve Unencumbered Development. Thus, even if the BCP imposed additional obligations that were not in the VCO—which it does not—the Policy would cover that work so long as it is required to achieve "Unencumbered Development" pursuant to a negotiated "voluntary cleanup agreement, decree, order or plan."

As a consequence, ERRC requests that the BCAs for the 616 First Avenue and Greater Waterside Sites be added to Endorsement 5 to the Policy. Because ERRC anticipates signing the BCAs soon, please let me know if you have any questions.

Very truly yours,

Daniel Riesel

DR:jm

Joseph E. Cellura
August 22, 2005
Page 4

SIVE, PAGET & RIESEL, P.C.

Cc:   Sheldon Solow
      Edward Fitzpatrick, Esq.
      James Schmidt
      Marilyn Selig, Esq.
      Robert Stelben
      Gail Port, Esq.
      Michael Salmon

P:\1654\Brownfields Cleanup Program\DR Cellura 8-22-05