UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
......................................................
                                                        :
EAST RIVER REALTY COMPANY LLC,
                        Plaintiff,                      :

            - against -                        Docket No. 06 CV 5417 (WHP)(AJP)

TRC COMPANIES, INC.,                :
TRC ENGINEERS, INC., and
TRC ENVIRONMENTAL CORPORATION,        **STIPULATION OF PARTIAL
                                       SETTLEMENT AND ORDER**

                        Defendants,

                                                :

......................................................

　　　　WHEREAS, Plaintiff East River Realty Company LLC ("ERRC") alleges that

Defendants TRC Companies, Inc., TRC Engineers, Inc. and TRC Environmental Corporation

(collectively, the "TRC Defendants" or "TRC") have breached and are in breach of the Exit

Strategy Contract® ("ESC") relating to certain properties identified as 616 First Avenue, 700

First Avenue and 708 First Avenue and known, collectively, as the First Avenue Properties;

　　　　WHEREAS, the TRC Defendants deny any wrongdoing and liability to ERRC, deny the

allegations that they have breached or are in breach of the ESC, and deny the material allegations

of the Complaint in this action;

　　　　WHEREAS, Plaintiff ERRC and the TRC Defendants desire to resolve certain of their

differences by way of compromise without the added expense or uncertainty of litigation,

without admission by either party of any issues of law or fact, and without admission by either

party of any liability or infirmity of any defense or claim;

WHEREAS, Plaintiff ERRC and the TRC Defendants have agreed to the terms of this Stipulation of Partial Settlement and Order ("Stipulation") and consent to the entry of the foregoing stipulated terms.

**IT IS HEREBY ORDERED, as follows:**

1.      Plaintiff ERRC's claims against the TRC Defendants and all proceedings herein are stayed to a point of time nine months subsequent to the determination, formal or informal, by the New York State Department of Environmental Conservation ("NYSDEC") whether the First Avenue Properties are entitled to participate in the Brownfield Cleanup Program ("BCP") (the "NYSDEC Determination"). The case shall be placed on the Court's Suspense Docket until further contact from the parties or further Court order.

2.      The NYSDEC Determination shall be deemed to have occurred at the point in time the NYSDEC makes any determination with respect to any of the First Avenue Properties' entitlement to participate in the BCP.

3.      The TRC Defendants shall execute the Brownfield Cleanup Agreements ("BCA") for 616 First Avenue and Greater Waterside, as of January 19, 2006, in the form attached hereto as Exhibit A ("BCAs") provided, however, that such Agreements shall be placed in escrow and shall remain in escrow until such time as the conditions set forth below are met. The escrow agent for the purposes of this Stipulation shall be Sive, Paget, & Riesel, P.C., of New York City, New York.

4.      The parties agree to use all commercially reasonable good faith efforts to secure NYSDEC's determination that all of the First Avenue Properties should be accepted into the BCP. If requested by ERRC, the TRC Defendants will promptly indicate in writing or orally to

2

the NYSDEC that they are willing to execute BCAs with respect to the First Avenue Properties in a form similar to Exhibit A, and in accordance with the terms of this Stipulation.

5.     Based on the terms and conditions set forth herein, within five (5) business days of the date that all of the pre-conditions set forth in paragraph "6" are satisfied and ERRC provides the TRC Defendants with written notice of the same, the TRC Defendants will authorize the release from escrow of the BCAs annexed hereto as Exhibit A, and will execute any similar BCA required by the NYSDEC for any of the First Avenue Properties.

6.     The following are conditions to the release from escrow of the BCAs by TRC Companies, Inc. referenced in paragraphs "3" and "5", above:

(a)     ERRC shall have paid $200,000 into the Granite State Insurance Company ("Granite State") (Policy No. PLS/CCC 1950199) (the "AIG Policy") Notional Commutation Account (the "Commutation Account") to reimburse the commutation account and to compensate the TRC Defendants for the TRC Defendants' unreimbursed costs and expenses incurred up to the date of this Stipulation in connection with the entry of the First Avenue Properties into the BCP.

(b)     ERRC shall have paid $125,000 into the Commutation Account for the TRC Defendants' future incremental administrative costs of BCP-driven requirements.

(c)     ERRC shall have secured and delivered to the TRC Defendants the consents of Granite State and Commerce and Industry Insurance Company, affiliates of American International Group, Inc. (individually and collectively "AIG") to insure any obligations of any of the TRC Defendants under the BCP and to

3

schedule the BCAs as Insured Contracts on Endorsement No. 5 of the AIG Policy, in the consent form attached hereto as Exhibit B.

(d)    ERRC shall have secured and delivered to the TRC Defendants Consolidated Edison's consent to the entry of the TRC Defendants into the BCP, and to TRC Companies Inc.'s ("TRC Companies") execution of the BCAs, in the consent form attached hereto as Exhibit C.

7.    After TRC Companies have executed the BCAs, and NYSDEC has executed any BCA, the TRC Defendants may submit claims to AIG, up to the amount of $200,000, to secure compensation from the Commutation Account for the TRC Defendants' past unreimbursed costs and expenses incurred to the date of this Stipulation in connection with the process of certain of the First Avenue Properties sites entering the BCP and the transition from the Voluntary Cleanup Program ("VCP") administered by the NYSDEC to the BCP. In addition, TRC may submit claims to AIG for future incremental administrative costs of participation in the BCP.

8.    After TRC Companies' execution of the BCAs and within five (5) business days after written request to ERRC by any of the TRC Defendants, ERRC shall provide to the TRC Defendants the initial draft of the Community Participation Plans for each of those First Avenue Properties sites covered in the BCAs as required under the BCP.

9.    After TRC Companies' execution of the BCAs and within 5 business days after written request to ERRC by any of the TRC Defendants, ERRC shall prepare the first draft of the Environmental Easement. ERRC shall be solely responsible for the preparation of all applications and supporting documentation associated with ERRC's BCP tax benefits, at no cost or expense to the TRC Defendants.

4

10.    After the BCAs have been released from escrow as provided above, ERRC shall be liable to the TRC Defendants for and will pay the TRC Defendants promptly upon demand (a) that portion of the NYSDEC oversight costs that relate to certain of the First Avenue Properties going from the VCP into the BCP and (b) the incremental amount of NYSDEC oversight costs for any BCP requirements that are in addition to or different from those that would have been required under the VCP. ERRC shall make such payment to the TRC Defendants within 5 business days' of receiving written notice from the TRC Defendants that such NYSDEC oversight costs are due. The sums for which ERRC shall be liable and shall pay to the TRC Defendants under (b) above shall be determined by the TRC Defendants by establishing a baseline of NYSDEC oversight costs for the period of time NYSDEC oversight costs were paid by any of the TRC Defendants prior to TRC Companies' execution of the applications for the BCP and calculating the excess over that baseline of the NYSDEC oversight costs required to be paid to NYSDEC through Phase I Completion of the Greater Waterside Sites of the First Avenue Properties.

11.    All claims by the TRC Defendants arising under paragraphs 7 or 10 above shall be submitted to ERRC five (5) business days prior to submission to AIG, and if determined to be unreasonable or inconsistent with the ESC or this Stipulation, the TRC Defendants shall withhold submission thereof until United States Magistrate Judge Andrew Peck has reviewed those claims and has determined whether or not they are reasonable. In the event that ERRC designates any such claim or any part thereof as unreasonable or inconsistent with the ESC or this Stipulation, it shall so state in a letter to TRC within five (5) business days, TRC shall reply to ERRC's letter within five (5) business days of receipt thereof, and, in the event that the parties using good faith efforts are unable to resolve their differences within 10 business days therefrom,

then the TRC Defendants and ERRC jointly will request a conference with Magistrate Judge Peck to present their respective positions on the ERRC contested claim. The parties shall make simultaneous written submissions to Magistrate Judge Peck, not to exceed 10 pages each. There shall be no trial or evidentiary hearing. The decision of the Magistrate Judge on the contested claim shall be final and binding, pursuant to 28 U.S.C. § 636(c), and not subject to appeal.

12.    ERRC shall pay the premiums, if any, that AIG may require for its consents and/or for scheduling of the BCAs as "Insured Contracts" on the AIG Policy, as set forth in paragraph 6(c) above and Exhibit B, by the dates that such premiums are due. The parties will use commercially good faith efforts to convince AIG either to issue its consents and/or schedule the BCAs as "Insured Contracts" on the AIG Policy without any additional premiums or at commercially reasonable minimal additional premiums.

13.    Phase I Completion under the ESC for each of Greater Waterside Sites 700 and 708 First Avenue, respectively, shall be deemed by the parties and this Stipulation to have been achieved upon the NYSDEC's approval of the Final Reports submitted by any of the TRC Defendants for each of those sites; provided however that nothing herein is intended to diminish TRC's other obligations under the ESC.

14.    All terms used in this Stipulation and in Exhibits B and C that are defined in the ESC shall have the meanings ascribed to them in the ESC. Insofar as certain terms, conditions and provisions of the ESC relating to those certain First Avenue Properties sites that are in the BCP and covered by the BCAs were based upon the VCP and the lexicon and terminology of the VCP that can no longer be strictly applied in lieu of the provisions drawn from the VCP, upon TRC Companies' execution of the BCAs, the provisions of the BCP, rather than those of the VCP or Voluntary Cleanup Orders previously entered into by the TRC Defendants and ERRC's

6

predecessor, shall be deemed to apply under the ESC to those certain First Avenue Properties sites that are in the BCP and covered by the BCAs, including, without limitation, those relating to commitments made to NYSDEC by the TRC Defendants; the types and titles of reports and plans to be prepared by the TRC Defendants and submitted to NYSDEC; NYSDEC's site eligibility and approval processes, timetables, terms and limitations; remedial action objectives; documentation provided by NYSDEC to certify completion of items of Remediation; covenants-not-to sue and liability protections; reservations of rights by the State of New York; and restrictions on future changes of uses.

15.     Except as otherwise provided herein, upon the filing of the BCAs, ERRC shall indemnify and hold harmless each of the TRC Defendants and their officers, employees, representatives, successors and assigns for any and all uninsured incremental costs related to the BCP or arising under the BCAs that are actually incurred by TRC and that are in excess of: (i) the funds paid into the Commutation Account pursuant to paragraph 6, supra, and (ii) the coverage provided by the AIG Policy or any other insurance policy. "Uninsured incremental costs related to the BCP or arising under the BCAs" include, if not otherwise covered under the AIG Policy or any other insurance policy, the reasonable costs of defense against third-party claims (not including claims by any governmental agency) that challenge TRC's or Con Edison's compliance with the BCAs or Title 14 of Article 27 of the ECL.

16.     Notwithstanding anything to the contrary herein, uninsured incremental costs related to the BCP or arising under the BCAs shall not include any cost or portion thereof incurred or claimed in order to prepare, produce, implement, establish, maintain, monitor or complete any report, measure or task that:

        i.      is the result of fraud or criminal misconduct; or

7

ii.     would be required under the VCP in order to obtain a Release and Covenant Not to Sue; or

iii.    is required by the approved Remedial Action Plan(s) in order to obtain approval of the Final Report for such Remedial Action Plan(s); or

iv.    the ESC provides it is necessary to achieve Unencumbered Development at the First Avenue Properties; or

v.     relates to the type of soil vapor investigation or implementation of soil vapor mitigation measures that DEC or the New York State Department Of Health ("DOH") identified in correspondence prior to this agreement as required to mitigate the risk of sub-slab vapor intrusion at the First Avenue Properties; or

vi.    DEC or DOH deems to be necessary due to:

a.    off-Site migration of petroleum; or

b.    environmental conditions or information related to the First Avenue Properties which were unknown at the time a Certificate of Completion is issued which indicates that the Contemplated Use (as that term is used in the Voluntary Cleanup Order relating to the First Avenue Properties (the "VCO")) of any of the Properties (including 708 First Avenue) cannot be implemented with sufficient protection of human health and the environment; or

c.    TRC's failure to implement the work required by the VCO to the Department's satisfaction; or

d.    the negligent or willful misconduct of TRC.

8

17.    TRC shall notify ERRC in writing within fifteen (15) days after TRC receives written notice or otherwise has actual knowledge of an event giving rise to a claim for indemnification pursuant to paragraph 15 above, and shall provide to ERRC as soon as practicable thereafter all reasonably available information and documentation to support and verify the claim being asserted, and ERRC shall be given access to such of TRC's documents or correspondence with governmental authorities (subject to applicable privileges) and books and records in the possession or control of TRC which are reasonably related to such claim.

18.    Promptly after receipt by TRC of written notice of the commencement by any third party of any claim, litigation or other proceeding which might reasonably result in ERRC becoming obligated to indemnify or make any other payment under the indemnification provisions of this Stipulation, TRC shall, if a claim in respect thereof is being made thereunder, notify ERRC, Con Ed and AIG forthwith in writing of the commencement or occurrence thereof.

19.    Failure of TRC to give such notice under paragraphs "17" and "18" shall relieve ERRC from liability which it may have on account of this indemnification but only to the extent ERRC has been prejudiced by such failure to provide timely notice.

20.    ERRC shall have the right, within thirty (30) days after being notified in accordance with paragraph 18 above, to assume, in the name of TRC or its successors and assigns, the defense of, or otherwise contest, such third party claim, litigation, proceeding or other action with counsel reasonably satisfactory to TRC; provided, however, if the Defendants in any such action include both TRC and ERRC and TRC shall have concluded that there may be legal defenses or rights available to it which are different from, in actual or potential conflict with, or additional to those available to ERRC, TRC shall have the right to select one law firm to act as separate counsel on its behalf.  Upon the election by ERRC to assume the defense of, or

9

otherwise contest, such third-party claim, litigation, proceeding or other action, ERRC shall not be liable for any legal or other expenses subsequently incurred by TRC in connection with the defense thereof unless:

i.    TRC shall have employed such counsel in connection with the assumption of legal defenses or assertion of rights in accordance with the provision of the immediately preceding sentence; or

ii.    ERRC fails to take steps necessary to diligently defend such claim within twenty (20) days after receiving notice from TRC stating TRC believes ERRC has failed to take such steps, which notice shall not be sent until after a decision from the Magistrate Judge with respect to the reasonableness of the claim for indemnification or until the five days ERRC has to seek such a decision have passed, in which case TRC may assume its own defense and ERRC shall be liable for any expenses therefore.

21.    Anything in paragraph 20 to the contrary notwithstanding, ERRC shall not, without the prior written consent of TRC (which consent shall not be unreasonably withheld, conditioned or delayed), settle or compromise any claim or consent to the entry of any judgment in respect of such claim.

22.    TRC shall fully cooperate with ERRC in the investigation and defense of any claim or litigation, including, without limitation, providing required information and documents (other than those which are privileged) and access to all employees of TRC with knowledge of issues relevant to the claim or litigation. Any such activities required by TRC to discharge this obligation to cooperate shall be incurred at the sole expense of ERRC. TRC shall take no action with regard to any indemnified claim or litigation or any investigation, proceeding or action

10

relating thereto which is in derogation of ERRC's right under Paragraph 21 to control the defense of a claim.

23.    TRC's execution of the BCAs pursuant to paragraph 3 above is being done solely pursuant to the terms of this Stipulation, is not an admission of liability in the lawsuit, and is without waiver of TRC's position that it has no legal obligation under the ESC to execute the BCAs or otherwise take steps to enroll the sites in the BCP.  TRC retains all available defenses in the lawsuit and ERRC shall not use the fact of this Stipulation, the agreements hereunder, or any conduct or conditions required hereunder (including execution of the BCAs by TRC) in connection with any claims against any of the TRC Defendants in this lawsuit or in any other action or claim against any of the TRC Defendants.

24.    The entry into this Stipulation by ERRC is not intended to, and does not diminish or alter the claims for relief set forth in the Complaint, except to the extent that NYSDEC accepts any of the First Avenue Properties into the BCP.

25.    The Court shall retain jurisdiction over this matter for all purposes, including enforcement of this Stipulation.

Dated:  New York, NY

September ___, 2006

_____
East River Realty Company LLC

_____
TRC Companies, Inc.

_____
TRC Engineers, Inc.

11

_____
TRC Environmental Corporation

**SO ORDERED.**

September 6, 2006

_____
Andrew J. Peck
United States Magistrate Judge

HON. ANDREW J. PECK
United States Magistrate Judge
Southern District of New York

12

**EXHIBIT B**

## AIG Consent

AIG hereby grants its consent to the TRC Defendants to enter into the Stipulation of Partial

Settlement and Order and agrees that any or all of the TRC Defendants' obligations under the

Brownfield Cleanup Agreements ("BCAs") for, respectively, the 616 First Avenue site (the Kips

Bay Site) and the 700 and 708 First Avenue sites (the Greater Waterside Sites) are Insured

Contracts on the AIG Policy. The Voluntary Cleanup Program Order, to the extent it relates to

the 685 First Avenue Site (the Parking Lot Site) shall remain in full force and effect as an

Insured Contract. Promptly after the BCAs are executed by any or all of the TRC Defendants,

AIG will include the BCAs on the Schedule of "Insured Contracts" (Endorsement No. 5) on the

AIG Policy (*i.e.,* the Granite State Insurance Company  Policy No. PLS/CCC 1950199).  AIG

also agrees that Endorsement No. 1 Schedule of Insured Contracts Endorsement to Commerce

and Industry Insurance Policy No. 952 67 32 covering "Con Edison/First Avenue Properties

(Exit Strategy Contract)"shall be deemed to cover the ESC as modified by the Stipulation of

Partial Settlement and Order and any or all of the TRC Defendants' entry into the BCP for

certain of the First Avenue Properties sites.

0608/73875-008  Current/8772100v1

**EXHIBIT C**

## Con Edison Consent

Consolidated Edison hereby grants consent to any and all of the TRC Defendants to enter into the Stipulation of Partial Settlement and Order and consents to any and all of the TRC Defendants' and ERRC's execution of the BCAs and entry into the BCP for, respectively, the 616 First Avenue site (the Kips Bay Site) and the 700 and 708 First Avenue sites (the Greater Waterside Sites) and to the termination of the Voluntary Cleanup Order under the Voluntary Cleanup Program as to those Sites (i.e., the Kips Bay Site and the Greater Waterside Sites). The Voluntary Cleanup Program Order shall remain in full force and effect for the 685 First Avenue site (the Parking Lot).

EXHIBIT A

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

| | |
|---|---|
| In the Matter of a Remedial Program for the **Kips Bay Fuel Terminal Site**, 616 First Avenue, New York County, under Article 27, Title 14 of the Environmental Conservation Law by | **BROWNFIELD SITE CLEANUP AGREEMENT** |
| | Index No. A2-0515-0405 |
| **TRC Companies, Inc.,** and **East River Realty Company, LLC,** | Site # C231014 |
| Volunteers. | |

**WHEREAS,** the Brownfield Cleanup Program Act was enacted to encourage the voluntary remediation of brownfield sites for reuse and redevelopment so as to advance the policy of the State of New York to conserve, improve, and protect its natural resources and environment, and control water, land, and air pollution; and

**WHEREAS,** the Department of Environmental Conservation ("Department") is authorized to administer the Brownfield Cleanup Program ("BCP") contained in Article 27, Title 14 of the Environmental Conservation Law ("ECL"); and

**WHEREAS,** Volunteers TRC Companies, Inc., with offices located at 1200 Wall Street West, Lindhurst, New Jersey, ("TRC") and East River Realty Company, LLC, as successor to FSM East River Associates, LLC, with offices located at 9 West 57th Street, New York, New York have been participating in the Department's Voluntary Cleanup Program ("VCP") relative to the Kips Bay Fuel Terminal Site (Site No. V-00430-2) under Voluntary Cleanup Order ("VCO") Index No. D2-0001-01-03; and

**WHEREAS,** the Kips Bay Fuel Terminal site consists of real property encompassing approximately 1.6 acres located at latitude N 40° 44.628" and longitude W 73° 58.087', and known as 616 First Avenue (the "Kips Bay Fuel Terminal"), in the City and County of New York, New York, and designated as Block 967, Lot 1 of the New York City Tax Map, New York County (the "Site"). A survey of the Site and a metes and bounds description are annexed hereto as Exhibit "D"; and

**WHEREAS,** by joint application of TRC and East River Realty Company, LLC (TRC and East River Realty Company, LLC, collectively referred to herein as "Applicants") certified on May 28, 2004 and May 28, 2004 respectively, the Volunteers requested transition from the VCP to the

BCP for completion of the Department approved remedial program for the Site, with the express understanding that this Brownfield Site Cleanup Agreement will supersede and replace Voluntary Cleanup Order Index No. D2-0001-01-03, solely with respect to the Kips Bay Fuel Terminal Site, defined as the Site (Site # C231014) in this Agreement; and

**WHEREAS,** the Site is currently the location of a former fuel oil storage facility that has been demolished, and the intended use of the Site is commercial/residential; and

**WHEREAS,** an opportunity for public comment on Volunteers' request to participate in the Brownfield Cleanup Program was provided and the Department duly considered all comments received; and

**WHEREAS,** the Department has determined, based upon consideration of the factors enumerated in ECL 27-1407(8) and (9), the original application and agreement by the parties for the VCP, the certifications contained in the joint BCP application, as well as any public comment received, that TRC and East River Realty Company, LLC are eligible to participate in the BCP for the Site as Volunteers as defined in ECL 27-1405(1)(b).

**NOW, THEREFORE,** IN CONSIDERATION OF AND IN EXCHANGE FOR THE MUTUAL COVENANTS AND PROMISES, THE PARTIES AGREE TO THE FOLLOWING:

      I.      <u>Citizen Participation Plan</u>

Within twenty (20) Days after the effective date of this Agreement, Applicants shall submit a written citizen participation plan prepared in accordance with the requirements of ECL 27-1417 that, at a minimum (i) updates the names and addresses of the interested public and includes a brownfield site contact list; (ii) identifies major issues of public concern related to the Site; (iii) includes a description of citizen participation activities already performed; and (iv) includes a description and schedule of public participation activities that are either specifically required by law or are needed to address public concerns related to the Site. The Citizen Participation Plan shall be attached to and incorporated into this Agreement as Exhibit "A."

II.      <u>Development, Performance, and Reporting of Work Plans</u>

      A.      <u>Work Plan Requirements</u>

The work plans ("Work Plan" or "Work Plans") under this Agreement shall be prepared and implemented in accordance with the requirements of ECL Article 27, Title 14 and all applicable laws, rules, regulations, and guidance documents. The Work Plans shall be captioned as follows:

      1.      "Remedial Investigation Work Plan" if the Work Plan provides for the investigation of the nature and extent of contamination within the boundaries of the Site;

2

2.    "Remedial Work Plan" if the Work Plan provides for the development and implementation of a Remedial Program for contamination within the boundaries of the Site;

3.    "IRM Work Plan" if the Work Plan provides for an interim remedial measure; or

4.    "OM&M Work Plan" if the Work Plan provides for operation, maintenance, and/or monitoring.

B.    Submission/Implementation of Work Plans

1.    The Department acknowledges that the Site already has an approved Work Plan under the Voluntary Cleanup Program, and that the remedial program will proceed from the stage that it was in under the Voluntary Cleanup Program. Thereafter, Applicants can submit such other and additional work plans as they deem appropriate.

2.    A proposed Work Plan shall be submitted for the Department's review and approval and shall include, at a minimum, a chronological description of the anticipated activities, a schedule for performance of those activities, and sufficient detail to allow the Department to evaluate that Work Plan. The Department shall use best efforts to approve, modify, or reject a proposed Work Plan within forty-five (45) Days from its receipt or within fifteen (15) Days from the close of the comment period, if applicable, whichever is later.

i)  Upon the Department's written approval of a Work Plan, such Department-approved Work Plan shall be incorporated into and become an enforceable part of this Agreement as Exhibit "C" and shall be implemented in accordance with the schedule contained therein.

ii)  If the Department modifies a Work Plan, the reasons for such modification shall be provided in writing. Within twenty (20) Days after receiving written notice of such modification, Applicants shall elect in writing to (a) implement the Work Plan as modified; (b) implement any other Department-approved Work Plan(s); (c) invoke dispute resolution pursuant to Paragraph XIV; or (d) terminate this Agreement pursuant to Paragraph XIII.

iii)  If the Department disapproves a Work Plan, the reasons for such disapproval shall be provided in writing. In the event the Department disapproves a Work Plan, within twenty (20) Days after receiving written notice of such disapproval, Applicants shall elect in writing to (a) modify or expand it within thirty (30) Days of receipt of the written disapproval notice; (b) complete any other Department-approved Work Plan(s); (c) invoke dispute resolution pursuant to Paragraph XIV; or (d) terminate this Agreement pursuant to Subparagraph XIII.

3.    An OM&M Work Plan, if necessary, shall be submitted in accordance with the schedule set forth in the IRM Work Plan or Remedial Work Plan, as either such Work Plan may be amended or modified.

3

4.    During all field activities, Applicants shall have on-Site a representative who is qualified to supervise the activities undertaken. Such representative may be an employee, a contractor, a subcontractor, or a consultant retained by Applicants to perform such supervision.

C.    Revisions to Work Plans

If revisions to a Work Plan are required to satisfy the objectives of such Work Plan, the parties will negotiate revisions which shall be attached to and incorporated into the relevant Work Plan and which shall be enforceable under this Agreement. If the parties cannot agree upon revisions to the relevant Work Plan, then unless Applicants invoke dispute resolution pursuant to Paragraph XIV, either the Department or Applicants may terminate this Agreement pursuant to Paragraph XIII.

D.    Submission of Final Reports

1.    In accordance with the schedule contained in a Work Plan, Applicants shall submit a Final Report that shall include but not be limited to: all data generated relative to the Site and all other information obtained as part of the implementation of the subject Work Plan; all of the assessments and evaluations required by the subject Work Plan; a statement of any additional data that must be collected; and "as-built" drawings.

i) The Final Report for an Investigation Work Plan shall comply with the requirements set forth at ECL 27-1411(1) and shall contain a certification by the person with primary responsibility for the day to day performance of the activities under this Agreement that those activities were performed in full accordance with the Investigation Work Plan. If such Final Report concludes that no remediation is necessary, and the Site does not meet the requirements for Track 1, Applicants shall submit an Alternatives Analysis prepared in accordance with ECL 27-1413 that supports such determination.

ii) A Final Engineering Report certifying that remediation of the Site has been performed in accordance with this Agreement shall be prepared by a Professional Engineer with primary responsibility for the day to day performance of the activities under this Agreement. The Report shall be prepared in accordance with the requirements of ECL 27-1419(1) and (2) and shall contain a certification that all such activities were performed in accordance with the Department approved Work Plan. The Department shall review such Report, the submittals made pursuant to the Agreement, and any other relevant information regarding the Site and make a determination as to whether the goals of the remedial program have been or will be achieved in accordance with established timeframes; if so, a written Certificate of Completion will be issued in accordance with the requirements of ECL 27-1419. Such Certificate of Completion may be modified or revoked, after notice and an opportunity for hearing, upon a finding that (a) Applicants failed to comply with this Agreement; (b) Applicants made a misrepresentation of material fact in connection with their Application or their certification that cleanup levels required by this Agreement were reached; or (c) good cause exists for such modification or revocation.

iii) All other Work Plan Final Reports shall contain a certification by a

4

Professional Engineer (or other expert approved by the Department) with primary responsibility for the day to day performance of the activities under this Agreement that all such activities were performed in full accordance with the Department approved Work Plan.

        2.      Within sixty (60) Days of the Department's approval of a Final Report, Applicants shall submit such additional Work Plans as they propose to implement. Failure to submit any additional Work Plans within such period shall, unless other Work Plans are under review by the Department or being implemented by Applicants, result in the termination of this Agreement pursuant to Paragraph XIII.

     E.     Review of Submittals other than Work Plans

        1.      The Department shall timely notify Applicants in writing of its approval or disapproval of each submittal other than a Work Plan. All Department-approved submittals shall be incorporated into and become an enforceable part of this Agreement.

        2.      If the Department disapproves a submittal covered by this Subparagraph, it shall specify the reasons for its disapproval and may request Applicants to modify or expand the submittal. Within twenty (20) Days after receiving written notice that Applicants' submittal has been disapproved, Applicants shall elect in writing to either (i) modify or expand it within thirty (30) Days of receipt of the written notice of disapproval; (ii) complete any other Department-approved Work Plan(s); (iii) invoke dispute resolution pursuant to Paragraph XIV; or (iv) terminate this Agreement pursuant to Paragraph XIII. If Applicants submit a revised submittal and it is disapproved, the Department and Applicants may pursue whatever remedies may be available under this Agreement or under law.

     F .    Department's Determination of Need for Remediation

    The Department shall determine upon its approval of each Final Report dealing with the investigation of the Site whether remediation, or additional remediation as the case may be, is needed for protection of public health and the environment.

        1.      If the Department makes a preliminary determination that remediation, or additional remediation, is not needed for protection of public health and the environment, the Department shall notify the public of such determination and seek public comment in accordance with ECL 27-1417(3)(e). The Department shall provide timely notification to the Applicants of its final determination following the close of the public comment period.

        2.      If the Department determines that additional remediation is not needed and such determination is based upon use restrictions, Applicants shall cause to be filed an Environmental Easement in accordance with Paragraph X within sixty (60) Days of receipt of the Department's determination.

3.    If the Department determines that remediation, or additional remediation, is needed, Applicants may elect to submit for review and approval a proposed Remedial Work Plan (or a revision to an existing Work Plan for the Site) for a remedy selected upon due consideration of the factors set forth in ECL 27-1415(3).    A proposed Remedial Work Plan addressing the Site's remediation will be noticed for public comment in accordance with ECL 27-1417(3)(e) and the Citizen Participation Plan developed pursuant to Paragraph I of this Agreement.  If the Department determines following the close of the public comment period that revisions are needed, Applicants agree to negotiate revisions to the proposed Remedial Work Plan in accordance with Paragraph II.C.  If Applicants elects not to develop a Work Plan under this Subparagraph or if either the Department or Applicants conclude that a mutually acceptable Work Plan under this Subparagraph cannot be negotiated, then this Agreement shall terminate in accordance with Subparagraph XIII.

G.    Submission of Annual Reports, if required

In the event that the remedy for the Site, if any, or any Work Plan for the Site requires operation, maintenance, and monitoring (OM&M), including reliance upon institutional or engineering controls, Applicants shall file a report annually (unless a different frequency is specified in an approved Work Plan) on the 1st day of the month following the anniversary of the start of the OM&M and continuing until the Department notifies Applicants in writing that such report may be discontinued.  Such report shall be signed by a Professional Engineer or by an expert approved by the Department to perform that function and certified under penalty of perjury that the institutional and/or engineering controls are unchanged from the previous certification and that nothing has occurred that would impair the ability of such controls to protect public health and the environment or constitute a violation or failure to comply with the approved OM&M Plan.  Applicants shall notify the Department within twenty-four (24) hours of discovery of any upset, interruption, or termination of one or more controls without the prior approval of the Department.  Further, Applicants shall take all actions required by the Department to maintain conditions at the Site that achieve the objectives of the remedy and/or the Work Plan and are protective of public health and the environment.  An explanation of such upset, interruption, or termination of one or more controls and the steps taken in response shall be included in the foregoing notice and in the report required by this Subparagraph as well as in any progress reports required by Paragraph XI.  Applicants can petition the Department for a determination that the institutional and/or engineering controls may be terminated.  Such petition must be supported by a Professional Engineer or other expert approved by the Department stating that such controls are no longer necessary.  The Department shall not unreasonably withhold its approval of such petition.

III.    Enforcement

This Agreement shall be enforceable as a contractual agreement under the laws of the State of New York.  Applicants shall not suffer any penalty or be subject to any proceeding or action if it cannot comply with any requirement of this Agreement as a result of a Force Majeure Event provided Applicants notify the Department in writing within ten (10) Days of when they obtain knowledge of any such event.  Applicants shall include in such notice the measures taken and to be

6

taken to prevent or minimize any delays and shall request an appropriate extension or modification of this Agreement.  Applicants shall have the burden of proving by a preponderance of the evidence that an event qualifies as a Force Majeure Event pursuant to this Paragraph.

IV.    Entry upon Site

     A.    Applicants hereby agree to provide access to the Site and to all relevant information regarding activities at the Site in accordance with the provisions of ECL 27-1431.

     B.    The Department shall have the right to periodically inspect the Site to ensure that the use of the property complies with the terms and conditions of this Agreement.

V.    Payment of State Costs

     A.    Within forty-five (45) Days after receipt of an itemized invoice from the Department, Applicants shall pay to the Department a sum of money which shall represent reimbursement for State Costs for negotiating this Agreement, and all costs associated with this Agreement up to and including the date upon which the Certificate of Completion is issued, the Department approves the Final Report relative to OM&M, or this Agreement is terminated pursuant to Paragraph XIII, whichever is later.

     B.    Personal service costs shall be documented by reports of Direct Personal Service, which shall identify the employee name, title, biweekly salary, and time spent (in hours) on the project during the billing period, as identified by an assigned time and activity code. Approved agency fringe benefit and indirect cost rates shall be applied. Non-personal service costs shall be summarized by category of expense (*e.g.*, supplies, materials, travel, contractual) and shall be documented by expenditure reports. The Department shall not be required to provide any other documentation of costs, provided however, that the Department's records shall be available consistent with, and in accordance with, Article 6 of the Public Officers Law.

     C.    Such invoice shall be sent to Applicants at the following address:

          Michael A. Skirka
          TRC Companies, Inc.
          1200 Wall Street West
          Lyndhurst, New Jersey 07071

     D.    Each such payment shall be made payable to the Department of Environmental Conservation and shall be sent to:

          Bureau of Program Management
          Division of Environmental Remediation
          New York State Department of Environmental Conservation
          625 Broadway
          Albany, New York 12233-7012

E.    Each party shall provide written notification to the other within ninety (90) Days of any change in the foregoing addresses.

F.    Applicants may contest, in writing, invoiced costs under this Agreement if they believe (i) the cost documentation contains clerical, mathematical, or accounting errors; (ii) the costs are not related to the State's activities reimbursable under this Agreement; or (iii) the Department is not otherwise legally entitled to such costs. If Applicants object to an invoiced cost, Applicants shall pay all costs not objected to within the time frame set forth in Subparagraph V.A and shall, within thirty (30) Days of receipt of an invoice, identify in writing all costs objected to and identify the basis of the objection.  This objection shall be filed with the Director of the Bureau of Program Management ("BPM Director") who shall have the authority to relieve Applicants of the obligation to pay invalid costs. Within forty-five (45) Days of the Department's determination of the objection, Applicants shall pay to the Department the amount which the BPM Director or the BPM Director's designee determines Applicants are obligated to pay or commence an action or proceeding seeking appropriate judicial relief.

G.    In the event any instrument for the payment of any money due under this Agreement fails of collection, such failure of collection shall constitute a violation of this Agreement, provided (i) the Department gives Applicants written notice of such failure of collection, and (ii) the Department does not receive from Applicants a certified check or bank check within fourteen (14) Days after the date of the Department's written notification.

H.    In the event that an eligible party applies for a technical assistance grant in connection with the Site, Applicants may be required to provide such a grant, in accordance with ECL 27-1417(4), in an amount not to exceed $50,000, with the cost of such grant serving as an offset against State Costs payable pursuant to this Paragraph.

## VI.    Liability Limitation

Subsequent to the issuance of a Certificate of Completion pursuant to this Agreement, Applicants shall be entitled to the Liability Limitation set forth at ECL 27-1421, subject to the terms and conditions stated therein. A Notice of the Liability Limitation shall be filed with the recording officer of the county in which the Site is located within thirty (30) Days of (i) the effective date of the Certificate of Completion or (ii) the date Applicants acquire title to the Site, whichever is later.

## VII.    Reservation of Rights

A.    Except as provided in Subparagraph VII.B, Applicants reserve all rights and defenses under applicable law to contest, defend against, dispute, or disprove any action, proceeding, allegation, assertion, determination, or order of the Department, including any assertion of remedial liability by the Department against them, and further reserve all rights including the rights to notice, to be heard, to appeal, and to any other due process respecting any action or proceeding by the Department, including the enforcement of this Agreement.  The existence of this Agreement or

9

Applicants' compliance with it shall not be construed as an admission of any liability, fault, wrongdoing, or violation of law by Applicants, and shall not give rise to any presumption of law or finding of fact which shall inure to the benefit of any third party.

B.     Notwithstanding the foregoing, Applicants hereby waive any right they may have to make a claim pursuant to Article 12 of the Navigation Law with respect to the Site and releases the State and the New York Environmental Protection and Spill Compensation Fund from any and all legal or equitable claims, suits, causes of action, or demands whatsoever with respect to the Site that Applicants may have as a result of Applicants' entering into or fulfilling the terms of this Agreement.

VIII.   Indemnification

Applicants shall indemnify and hold the Department, the State of New York, and their representatives and employees harmless from any claim, suit, action, and cost of every name and description arising out of or resulting from the fulfillment or attempted fulfillment of this Agreement by Applicants prior to the Termination Date except for those claims, suits, actions, and costs arising from the State's gross negligence or willful or intentional misconduct by the Department, the State of New York, and/or their representatives and employees during the course of any activities conducted pursuant to this Agreement. The Department shall provide Applicants with written notice no less than thirty (30) Days prior to commencing a lawsuit seeking indemnification pursuant to this Paragraph.

IX.    Change of Use

Applicants shall notify the Department at least sixty (60) Days in advance of any change of use, as defined in ECL 27-1425, which is proposed for the Site. In the event the Department determines that the proposed change of use is prohibited, the Department shall notify Applicants of such determination within forty-five (45) Days of receipt of such notice.

X.     Environmental Easement

A.     Within thirty (30) Days after the Department's approval of a Remedial Work Plan which relies upon one or more institutional and/or engineering controls, or within thirty (30) Days after the Department's determination pursuant to Subparagraph II.F.2 that additional remediation is not needed based upon use restrictions, Applicants shall submit to the Department for approval an Environmental Easement to run with the land in favor of the State which complies with the requirements of ECL Article 71, Title 36. The submittal shall be substantially similar to Exhibit "B." Applicants shall cause such instrument to be recorded with the recording officer for the county in which the Site is located within thirty (30) Days after the Department's approval of such instrument. Applicants shall provide the Department with a copy of such instrument certified by the recording officer to be a true and faithful copy within thirty (30) Days of such recording (or such longer period of time as may be required to obtain a certified copy provided Applicants advise the Department of the status of their efforts to obtain same within such thirty (30) Day period).

10

B.      Applicants or the owner of the Site may petition the Department to modify or extinguish the Environmental Easement filed pursuant to this Agreement at such time as it can certify that the Site is protective of human health and the environment without reliance upon the restrictions set forth in such instrument. Such certification shall be made by a Professional Engineer or other expert approved by the Department. The Department will not unreasonably withhold its consent.

## XI.    Progress Reports

Applicants shall submit a written progress report of their actions under this Agreement to the parties identified in Subparagraph XII.A.1 by the 10th day of each month commencing with the month subsequent to the approval of the first Work Plan and ending with the Termination Date, unless a different frequency is set forth in a Work Plan. Such reports shall, at a minimum, include: all actions relative to the Site during the previous reporting period and those anticipated for the next reporting period; all approved activity modifications (changes of work scope and/or schedule); all results of sampling and tests and all other data received or generated by or on behalf of Applicants in connection with this Site, whether under this Agreement or otherwise, in the previous reporting period, including quality assurance/quality control information; information regarding percentage of completion; unresolved delays encountered or anticipated that may affect the future schedule and efforts made to mitigate such delays; and information regarding activities undertaken in support of the Citizen Participation Plan during the previous reporting period and those anticipated for the next reporting period.

## XII.    Communications

A.      All written communications required by this Agreement shall be transmitted by United States Postal Service, by private courier service, or hand delivered.

1.      Communication from Applicants shall be sent to:

Robert Cozzy, P.E.
Division of Environmental Remediation
New York State Department of Environmental Conservation
625 Broadway
Albany, New York 12233-7016
Note: three copies (one unbound) of work plans are required to be sent.

Gary Litwin
Bureau of Environmental Exposure Investigation
New York State Department of Health
Flanigan Square
547 River Street

11

Troy, New York 12180-2216
Note: two copies of work plans are required to be sent, and

Anthony B. Quartararo, Esq.
Division of Environmental Enforcement
New York State Department of Environmental Conservation
625 Broadway
Albany, New York 12233-5500
Correspondence only

2. Communication from the Department to Applicants shall be sent to:

East River Realty Company, LLC
Daniel Riesel, Esq.
Sive, Paget & Riesel, P.C.
460 Park Avenue
New York, New York 10022

TRC Companies, Inc.
Michael A. Skirka
1200 Wall Street West
Lyndhurst, New Jersey 07071

B.    The Department and Applicants reserve the right to designate additional or different addressees for communication on written notice to the other.

C.    Each party shall notify the other within ninety (90) Days after any change in the addresses listed in this Paragraph XII or in Paragraph V.

XIII.    Termination of Agreement

Applicants may terminate this Agreement at any time by providing written notification to the parties listed in Subparagraph XII.A.1. The Department may terminate this Agreement at any time pursuant to Subparagraph XV.A or in the event Applicants fail to substantially comply with the Agreement's terms and conditions. The Department shall provide written notification to Applicants setting forth the basis for termination of the Agreement. The termination shall be effective the 5th day after the non-terminating party's receipt of such written notification, except that such termination shall not affect the provisions contained in Paragraphs V, VII.B, and VIII.

XIV.    Dispute Resolution

A.    In the event disputes arise regarding any notice of disapproval of a submittal, proposed Work Plan or Final Report, or during the implementation of any Work Plan, Applicants

may, within thirty (30) Days of receipt of such notice, request in writing informal negotiations with the Department in an effort to resolve the dispute. The Department and Applicants shall consult together in good faith and exercise best efforts to resolve any differences or disputes without resort to the procedures described in Subparagraph XIV.B. The period for informal negotiations shall not exceed thirty (30) Days from Applicants' request for informal negotiations. If the parties cannot resolve a dispute by informal negotiations during this period, the Department's position shall be considered binding unless Applicants notify the Department in writing within thirty (30) Days after the conclusion of the thirty (30) Day period for informal negotiations that they invoke the dispute resolution provisions provided under Subparagraph XIV.B.

      B.    1.    Applicants shall file with the Office of Hearings and Mediation ("OH&M") a request for formal dispute resolution and a written statement of the issues in dispute, the relevant facts upon which the dispute is based, factual data, analysis, or opinion supporting its position, and all supporting documentation upon which Applicants rely (hereinafter called the "Statement of Position"). A copy of such request and written statement shall be provided contemporaneously to the Director of the Division of Environmental Remediation ("DER Director") and to the parties listed under Subparagraph XII.A.1.

      2.    The Department shall serve its Statement of Position no later than twenty (20) Days after receipt of Applicants' Statement of Position.

      3.    Applicants shall have the burden of proving by substantial evidence that the Department's position does not have a rational basis and should not prevail. The OH&M can conduct meetings, in person or via telephone conferences, and request additional information from either party if such activities will facilitate a resolution of the issues.

      4.    The OH&M shall prepare and submit a report and recommendation to the DER Director who shall issue a final decision resolving the dispute in a timely manner. The final decision shall constitute a final agency action and Applicants shall have the right to seek judicial review of the decision pursuant to Article 78 of the CPLR provided that Applicants notify the Department within thirty (30) Days after receipt of a copy of the final decision of their intent to commence an Article 78 proceeding and commence such proceeding within sixty (60) Days after receipt of a copy of the Director's final decision. Applicants shall be in violation of this Agreement if they fail to comply with the final decision resolving this dispute within sixty (60) Days after the date of such final decision, or such other time period as may be provided in the final decision, unless they seek judicial review of such decision within the sixty (60) Day period provided. In the event that Applicants seek judicial review, Applicants shall be in violation of this Agreement if they fail to comply with the final Court Order or settlement within thirty (30) Days after the effective date of such Order or settlement, unless otherwise directed by the Court. For purposes of this Subparagraph, a Court Order or settlement shall not be final until the time to perfect an appeal of same has expired.

      5.    The invocation of dispute resolution shall not extend, postpone, or modify Applicants' obligations under this Agreement with respect to any item not in dispute unless or until

the Department agrees or a Court determines otherwise. The invocation of the procedures set forth in this Paragraph XIV shall constitute a waiver of any and all other administrative remedies which may otherwise be available to Applicants regarding the issue in dispute.

      6.     The Department shall keep an administrative record of any proceedings under this Paragraph XIV which shall be available consistent with Article 6 of the Public Officers Law.

      7.     Nothing in this Paragraph XIV shall be construed as an agreement by the parties to resolve disputes through administrative proceedings pursuant to the State Administrative Procedure Act, the ECL, or 6 NYCRR Part 622 or Section 375-2.1.

XV.    Miscellaneous

     A.     If the information provided and any certifications made by Applicants are not materially accurate and complete, this Agreement, except with respect to Applicants' obligations pursuant to Paragraphs V, VII.B, and VIII, shall be null and void *ab initio* fifteen (15) Days after the Department's notification of such inaccuracy or incompleteness or fifteen (15) Days after issuance of a final decision resolving a dispute pursuant to Paragraph XIV, whichever is later, unless Applicants submit information within that fifteen (15) Day time period indicating that the information provided and the certifications made were materially accurate and complete. In the event this Agreement is rendered null and void, any Certificate of Completion and/or Liability Limitation that may have been issued or may have arisen under this Agreement shall also be null and void *ab initio*, and the Department shall reserve all rights that it may have under law.

     B.     Applicants shall allow the Department to attend, and shall notify the Department at least seven (7) Days in advance of, any field activities to be conducted pursuant to this Agreement, as well as any pre-bid meetings, job progress meetings, substantial completion meeting and inspection, and final inspection and meeting; nothing in this Agreement shall be construed to require Applicants to allow the Department to attend portions of meetings where privileged matters are discussed.

     C.     The Department may exempt Applicants from the requirement to obtain any state or local permit or other authorization for any activity conducted pursuant to this Agreement that (i) is conducted on the Site or on different premises that are under common control or contiguous to or physically connected with the Site and such activity manages exclusively hazardous waste and/or petroleum from such Site, and (ii) satisfies all substantive technical requirements applicable to like activity conducted pursuant to a permit, as determined by the Department.

     D.     Applicants shall use "best efforts" to obtain all Site access, permits, easements, rights-of-way, rights-of-entry, approvals, institutional controls, or authorizations necessary to perform Applicants' obligations under this Agreement. If, despite Applicants' best efforts, any access, permits, easements, rights-of-way, rights-of-entry, approvals, institutional controls, or authorizations required to perform this Agreement are not obtained, Applicants shall promptly notify the Department, and include a summary of the steps taken to obtain access. The Department may, as it deems appropriate and within its authority, assist Applicants in obtaining same. If an interest in

property is needed to implement an institutional control required by a Work Plan and such interest cannot be obtained, the Department may require Applicants to modify the Work Plan pursuant to Subparagraph II.C of this Agreement to reflect changes necessitated by the lack of access and/or approvals.

E.    All approved Work Plans, Final Reports, and other documents required under this Agreement shall be submitted to the Department in an electronic format acceptable to the Department within thirty (30) Days of approval. If any document cannot be converted into electronic format, Applicants shall so advise the Department and, if the Department concurs, submit such document in an alternative format acceptable to the Department.

F.    Applicants shall provide a copy of this Agreement to each contractor hired to perform work required by this Agreement and shall condition all contracts entered into for the obligations identified in this Agreement upon performance in conformity with the terms of this Agreement. Applicants or their contractor(s) shall provide written notice of this Agreement to all subcontractors hired to perform any portion of the work required by this Agreement. Applicants shall nonetheless be responsible for ensuring that Applicants' contractors and subcontractors perform the work in satisfaction of the requirements of this Agreement.

G.    The paragraph headings set forth in this Agreement are included for convenience of reference only and shall be disregarded in the construction and interpretation of any provisions of this Agreement.

H.    1.    The terms of this Agreement shall constitute the complete and entire agreement between the Department and Applicants concerning the implementation of the activities required by this Agreement. No term, condition, understanding, or agreement purporting to modify or vary any term of this Agreement shall be binding unless made in writing and subscribed by the party to be bound. No informal advice, guidance, suggestion, or comment by the Department shall be construed as relieving Applicants of Applicants' obligation to obtain such formal approvals as may be required by this Agreement. In the event of a conflict between the terms of this Agreement and any Work Plan submitted pursuant to this Agreement, the terms of this Agreement shall control over the terms of the Work Plan(s) attached as Exhibit "C." Applicants consent to and agrees not to contest the authority and jurisdiction of the Department to enter into or enforce this Agreement.

2.    i.    Except as set forth herein, if Applicants desire that any provision of this Agreement be changed, other than a provision of a Work Plan or a time frame, Applicants shall make timely written application to the Commissioner with copies to the parties listed in Subparagraph XII.A.1.

ii.    Changes to the Work Plan shall be accomplished as set forth in Subparagraph II.C of this Agreement.

iii.    Requests for a change to a time frame set forth in this Agreement shall be

made in writing to the Department's project attorney and project manager; such requests shall not be unreasonably denied and a written response to such requests shall be sent to Applicants promptly.

I.    1.    If there are multiple parties signing this Agreement, the term "Applicant" shall be read in the plural, the obligations of each such party under this Agreement are joint and several, and the insolvency of or failure by any Applicant to implement any obligations under this Agreement shall not affect the obligations of the remaining Applicant(s) under this Agreement.

2.    If any Applicant is a partnership, the obligations of all general partners (including limited partners who act as general partners) under this Agreement are joint and several and the insolvency or failure of any general partner to implement any obligations under this Agreement shall not affect the obligations of the remaining partner(s) under this Agreement.

3.    Notwithstanding the foregoing Subparagraphs XV.I.1 and 2, if multiple parties sign this Agreement as Applicants but not all of the signing parties elect to implement a Work Plan, all Applicants are jointly and severally liable for each and every obligation under this Agreement through the completion of activities in such Work Plan that all such parties consented to; thereafter, only those Applicants electing to perform additional work shall be jointly and severally liable under this Agreement for the obligations and activities under such additional Work Plan(s). The parties electing not to implement the additional Work Plan(s) shall have no obligations under this Agreement relative to the activities set forth in such Work Plan(s). Further, only those Applicants electing to implement such additional Work Plan(s) shall be eligible to receive the Liability Limitation referenced in Paragraph VI.

J.    Applicants shall be entitled to contribution protection to the extent authorized by ECL 27-1421(6).

K.    Applicants shall not be considered operators of the Site solely by virtue of having executed and/or implemented this Agreement.

L.    Applicants and Applicants' agents, grantees, lessees, sublessees, successors, and assigns shall be bound by this Agreement. Any change in ownership of Applicants including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Applicants' responsibilities under this Agreement.

M.    Unless otherwise expressly provided herein, terms used in this Agreement which are defined in ECL Article 27 or in regulations promulgated thereunder shall have the meaning assigned to them under said statute or regulations. Whenever terms listed in the Glossary attached hereto are used in this Agreement or its Exhibits, the definitions set forth in the Glossary shall apply. In the event of a conflict, the definition set forth in the Glossary shall control.

N.    Applicants' obligations under this Agreement represent payment for or reimbursement

16

of response costs, and shall not be deemed to constitute any type of fine or penalty.

O.    This Agreement may be executed for the convenience of the parties hereto, individually or in combination, in one or more counterparts, each of which shall be deemed to have the status of an executed original and all of which shall together constitute one and the same.

P.    This Agreement supersedes and replaces the Voluntary Cleanup Order ("VCO") Index No. D2-0001-01-03 solely with respect to the Kips Bay Fuel Terminal, VCO Site Number V-00430-2 and the Waterside Generating Station, VCO Site Number V-00432-2, defined in this Agreement as

Site # C231013. The Site remedial program under this Agreement will proceed from the stage that it was in under the VCO.

Q.    The effective date of this Agreement is the date it is signed by the Commissioner or the Commissioner's designee.

DATED:

DENISE M. SHEEHAN,
ACTING COMMISSIONER
NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION

By:    _____

Dale A. Desnoyers, Director
Division of Environmental Remediation

18

## CONSENT BY APPLICANT

Applicant hereby consents to the issuing and entering of this Agreement, waives Applicant's right to a hearing herein as provided by law, and agrees to be bound by this Agreement.

**East River Realty Company, LLC**

By:_____

Title:_____

Date:_____

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF New York   )

On the 6th day of September, in the year 2006, before me, the undersigned, personally appeared Sheldon Solow, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of individual
taking acknowledgment

Michael O. McDaniel
New York State Notary Public
Onon. Co. 01MC4992318
Commission Expires 2/24/10

19

## CONSENT BY APPLICANT

Applicant hereby consents to the issuing and entering of this Agreement, waives Applicant's right to a hearing herein as provided by law, and agrees to be bound by this Agreement.

**TRC Companies, Inc.**

By: _____

Title: _Senior Vice President_

Date: _

_January 19, 2006_

STATE OF NEW YORK     )
                                        ) ss:
COUNTY OF (New York )

On the _10th_ day of _September_, in the year 2005, before me, the undersigned, personally appeared _Martin H. Dodd_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of individual
taking acknowledgment

**Michael O. McDaniel**
**New York State Notary Public**
Onon. Co. 01MC4992318
Commission Expires 2/24/10

20

## Glossary of Terms

The following terms shall have the following meanings:

"Day": a calendar day.  In computing any period of time under this Agreement, if the last day would fall on a Saturday, Sunday, or State holiday, the period shall run until the close of business of the next working day.

"Force Majeure Event": an event which is brought on as a result of fire, lightning, earthquake, flood, adverse weather conditions, strike, shortages of labor and materials, war, riot, obstruction or interference by adjoining landowners, or any other fact or circumstance beyond Applicant's reasonable control.

"IRM": an interim remedial measure which is a discrete set of activities which can be undertaken without extensive investigation and evaluation to prevent, mitigate, or remedy environmental damage or the consequences of environmental damage attributable to a Site.

"OM&M": operation, maintenance, and monitoring.

"Professional engineer": an individual registered as a professional engineer or otherwise authorized in accordance with Article 145 of the New York State Education Law.  If such individual is a member of a firm, that firm must be authorized to offer professional engineering services in the State of New York in accordance with Article 145 of the New York State Education Law.

"State Costs": all the State's expenses including, but not limited to, direct labor, fringe benefits, indirect costs, travel, analytical costs, and contractor costs incurred by the State of New York for negotiating, implementing, and administering  this Agreement.  Approved agency fringe benefit and indirect cost rates will be applied.

"Termination Date": the date upon which (i) the Department issues the Certificate of Completion or approves the Final Report relative to the OM&M at the Site, whichever is later, or (ii) the Agreement terminates pursuant to Paragraph XIII or Subparagraph XV.A,.

"Work Plan": a Department-approved work plan, as may be modified, that Applicant shall implement and that is attached to this Agreement.

# EXHIBIT "A"

## Citizen Participation Plan

A.  This environmental easement is enforceable in law or equity in perpetuity by Grantor, Grantee, or any affected local government, as defined in ECL Section 71-3603, against the owner of the Property, any lessees, and any person using the land. Enforcement shall not be defeated because of any subsequent adverse possession, laches, estoppel, or waiver. It is not a defense in any action to enforce this environmental easement that: it is not appurtenant to an interest in real property; it is not of a character that has been recognized traditionally at common law; it imposes a negative burden; it imposes affirmative obligations upon the owner of any interest in the burdened property; the benefit does not touch or concern real property; there is no privity of estate or of contract; or it imposes an unreasonable restraint on alienation.

B.  If any person intentionally violates this environmental easement, the Grantee may revoke the Certificate of Completion provided under ECL Article 27, Title 14, or the Satisfactory Completion of Project provided under ECL Article 56, Title 5 with respect to the Controlled Property.

C.  Grantee shall notify Grantor of a breach or suspected breach of any of the terms of this Environmental Easement.  Such notice shall set forth how Grantor can cure such breach or suspected breach and give Grantor a reasonable amount of time from the date of receipt of notice in which to cure.  At the expiration of such period of time to cure, or any extensions granted by Grantee, the Grantee shall notify Grantor of any failure to adequately cure the breach or suspected breach.  Grantor shall then have a reasonable amount of time from receipt of such notice to cure.  At the expiration of said second period, Grantee may  commence any proceedings and take any other appropriate action reasonably necessary to remedy any breach of this Environmental Easement in accordance with applicable law to require compliance with the terms of this Environmental Easement.

D.  The failure of Grantee to enforce any of the terms contained herein shall not be deemed a waiver of any such term nor bar its enforcement rights in the event of a subsequent breach of or noncompliance with any of the terms of this Environmental easement.

6.    Notice.  Whenever notice to the State (other than the annual certification) or approval from the State is required, the Party providing such notice or seeking such approval shall identify the Controlled Property by referencing its County tax map number or   the Liber and Page or computerized system tracking/ identification number and address correspondence to:

> Division of Environmental Enforcement
> Office of General Counsel
> New York State Department of Environmental Conservation
> 625 Broadway
> Albany New York 12233-5500

Such correspondence shall be delivered by hand, or by registered mail or by Certified mail and return receipt requested.  The Parties may provide for other means of receiving and

communicating notices and responses to requests for approval.

7.    Recordation. Grantor shall record this instrument, within thirty (30) days of execution of this instrument by the Commissioner or her/his authorized representative in the office of the recording officer for the county or counties where the Property is situated in the manner prescribed by Article 9 of the Real Property Law.

8.    Amendment.    This environmental easement may be amended only by an amendment executed by the Commissioner of the New York State Department of Environmental Conservation and filed with the office of the recording officer for the county or counties where the Property is situated in the manner prescribed by Article 9 of the Real Property Law.

9.    Extinguishment.  This environmental easement may be extinguished only by a release by the Commissioner of the New York State Department of Environmental Conservation and filed with the office of the recording officer for the county or counties where the Property is situated in the manner prescribed by Article 9 of the Real Property Law.

10.    Joint Obligation. If there are two or more parties identified as Grantor herein, the obligations imposed by this instrument upon them shall be joint and several.

**IN WITNESS WHEREOF,** Grantor has caused this instrument to be signed in its name.

**Grantor's Name**

By:_____

Title:_____

Date:_____

THIS   ENVIRONMENTAL   EASEMENT   IS   HEREBY ACCEPTED BY THE PEOPLE OF THE STATE OF NEW YORK, Acting By and Through the Department of Environmental Conservation

By:    _____
      Denise M. Sheehan, Acting Commissioner

**EXHIBIT "B"**

### ENVIRONMENTAL EASEMENT

THIS INDENTURE made this ____day of _____, 200__, between _____ residing at (or having an office at ) _____ (the "Grantor"), and The People of the State of New York (the "Grantee."), acting through their Commissioner of the Department of Environmental Conservation (the "Commissioner" or "NYSDEC" or "Department" as the context requires) with its headquarters located at 625 Broadway, Albany, New York 12233,

**WHEREAS,** the Legislature of the State of New York has declared that it is in the public interest to encourage the remediation of abandoned and likely contaminated properties ("brownfield sites") that threaten the health and vitality of the communities they burden while at the same time ensuring the protection of public health and the environment; and

**WHEREAS,** the Legislature of the State of New York has declared that it is in the public interest to establish within the Department a statutory environmental remediation program that includes the use of environmental easements as an enforceable means of ensuring the performance of operation, maintenance, and/or monitoring requirements and of ensuring the potential restriction of future uses of the land, when an environmental remediation project leaves residual contamination at levels that have been determined to be safe for a specific use, but not all uses, or which includes engineered structures that must be maintained or protected against damage to perform properly and be effective, or which requires groundwater use or soil management restrictions; and

**WHEREAS,** the Legislature of the State of New York has declared that environmental easement shall mean an interest in real property, created under and subject to the provisions of Article 71, Title 36 of the New York State Environmental Conservation Law ("ECL") which contains a use restriction and/or a prohibition on the use of land in a manner inconsistent with engineering controls which are intended to ensure the long term effectiveness of a brownfield site remedial program or eliminate potential exposure pathways to hazardous waste or petroleum; and;

**WHEREAS,** Grantor, is the owner of real property located in the City/Town/Village of _____, _____County, New York known and designated on the tax map of the _____ of _____ as tax map parcel number_____, section ___block ___ lot_____ , being the same as that property conveyed to Grantor by deed on _____, and recorded in the Land Records of the _____ County Clerk at page _____, liber _____ of Deeds, comprised of approximately _____ acres, and hereinafter more fully described in Schedule A attached hereto and made a part hereof ( the " Controlled Property"); and;

***D*** *Attach an adequate legal description of the property subject to the easement, or reference a recorded map. If the easement is on only a part of a parcel of land which is not subdivided into encumbered and unencumbered portions, a legal description needs to be created by a survey bearing the seal and signature of a licensed land surveyor with reference to a metes and bounds description.*

**WHEREAS,** the Commissioner does hereby acknowledge that the Department accepts this Environmental Easement in order to ensure the protection of human health and the environment and to achieve the requirements for remediation established at this Controlled Property until such time as this Environmental Easement is extinguished pursuant to ECL Article 71, Title 36;and

**NOW THEREFORE,** in consideration of the covenants and mutual promises contained herein and the terms and conditions of **Brownfield Cleanup Agreement Number_____ /State Assistance Contract Number_____ /Order on Consent Number_____,** Grantor grants, conveys and releases to Grantee a permanent Environmental Easement pursuant to Article 71, Title 36 of the ECL in, on, over, under, and upon the Controlled Property as more fully described herein ("Environmental Easement").

1.    <u>Purposes</u>.    Grantor and Grantee acknowledge that the Purposes of this Environmental Easement are: to convey to Grantee real property rights and interests that will run with the land in perpetuity in order to provide an effective and enforceable means of encouraging the reuse and redevelopment of this Controlled Property at a level that has been determined to be safe for a specific use while ensuring the performance of operation, maintenance, and/or monitoring  requirements; and to ensure the potential restriction of future uses of the land that are inconsistent with the above-stated purpose.

2.    <u>Institutional and Engineering Controls</u>.    The following controls apply to the use of the Controlled Property, run with the land are binding on the Grantor and the Grantor's successors and assigns, and are enforceable in law or equity against any owner of the Controlled Property, any lessees, and any person using the Controlled Property:

    A.  The Controlled Property may be used for

**<u>residential</u>**
**<u>commercial</u>**
**<u>industrial</u>**
use as long as the following long-term engineering controls are employed:

    B.  The Controlled Property may not be used for a higher level of use such as **<u>unrestricted/ residential / commercial</u>**   use and the above-stated engineering controls may not be discontinued without an amendment or extinguishment of this Environmental

Easement.

C.  Grantor covenants and agrees that until such time as the Environmental Easement is extinguished in accordance with the requirements of Article 71, Title 36 of the ECL the property deed and all subsequent instruments of conveyance relating to the Controlled Property shall state in at least fifteen-point bold-faced type:

**This property is subject to an environmental easement held by the New York State Department of Environmental Conservation pursuant of Title 36 to Article 71 of the Environmental Conservation Law.**

D.  Grantor covenants and agrees that this Environmental Easement shall be incorporated in full or by reference in any leases, licenses, or other instruments granting a right to use the Controlled Property.

E.  Grantor covenants and agrees that it shall annually, or such time as NYSDEC may allow, submit to NYSDEC a written statement by an expert the NYSDEC may find acceptable certifying under penalty of perjury that the controls employed at the Controlled Property are unchanged from the previous certification or that any changes to the controls employed at the Controlled Property were approved by the NYSDEC, and that nothing has occurred that would impair the ability of such control to protect the public health and environment or constitute a violation or failure to comply with any Site Management Plan for such controls and giving access to such Controlled Property to evaluate continued maintenance of such controls.

3.    Right to Enter and Inspect.  Grantee, its agents, employees, or other representatives of the State may enter and inspect the Controlled Property in a reasonable manner and at reasonable times to assure compliance with the above-stated restrictions.

4.    Reserved Grantor's Rights. Grantor reserves for itself, its assigns, representatives, and successors in interest with respect to the Property, all rights as fee owner of the Controlled Property, including:

1. Use of the Controlled Property for all purposes not inconsistent with, or limited by the terms of this Environmental Easement;

2. The right to give, sell, assign, or otherwise transfer the underlying fee interest to the Controlled Property by operation of law, by deed, or by indenture, subject and subordinate to this Environmental Easement;

5.    Enforcement

**Grantor's Acknowledgment**

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF            )

On the _____ day of _____, in the year 200_, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public - State of New York

**Grantee's Acknowledgment**

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF            )

On the _____ day of _____, in the year 200_, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name is (are) subscribed to the within instrument and acknowledged to me that he/she/ executed the same in his/her/ capacity as Commissioner of the State of New York Department of Environmental Conservation, and that by his/her/ signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public - State of New York

D

R

A

F

T

EXHIBIT "C"

**Approved Work Plans**

**EXHIBIT "D"**

**Survey**

**Metes and Bounds Description**

EXHIBIT A (2d Part)

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

| | |
|---|---|
| In the Matter of a Remedial Program for the **Greater Waterside Site**, 700-708 First Avenue, New York County, under Article 27, Title 14 of the Environmental Conservation Law by | BROWNFIELD SITE CLEANUP AGREEMENT |
| | Index No. A2-0515-0405 |
| **TRC Companies, Inc.,** and **East River Realty Company, LLC,** | Site # C231013 |
| Volunteers. | |

**WHEREAS**, the Brownfield Cleanup Program Act was enacted to encourage the voluntary remediation of brownfield sites for reuse and redevelopment so as to advance the policy of the State of New York to conserve, improve, and protect its natural resources and environment, and control water, land, and air pollution; and

**WHEREAS**, the Department of Environmental Conservation ("Department") is authorized to administer the Brownfield Cleanup Program ("BCP") contained in Article 27, Title 14 of the Environmental Conservation Law ("ECL"); and

**WHEREAS**, Volunteers TRC Companies, Inc., with offices located at 1200 Wall Street West, Lindhurst, New Jersey, ("TRC") and East River Realty Company, LLC, as successor to FSM East River Associates, LLC, with offices located at 9 West 57th Street, New York, New York have been participating in the Department's Voluntary Cleanup Program ("VCP") relative to the Greater Waterside Site (Site No. V-00430-2) under Voluntary Cleanup Order ("VCO") Index No. D2-0001-01-03; and

**WHEREAS**, the Greater Waterside Site consists of real property encompassing approximately 6.4 acres located at latitude N 40° 44.847' and longitude W 73° 58.210', known as 708 First Avenue (the "708 Office Building"), and at latitude N 40° 44.837' and longitude W 73° 58.203', known as 700 First Avenue (the "Waterside Generating Station") in the City and County of New York, New York, designated as Block 970, Lot 1 of the New York City Tax Map, New York County (the "Site"). A survey of the Site and a metes and bounds description are annexed hereto as Exhibit "D"; and

**WHEREAS**, by joint application of TRC and East River Realty Company, LLC (TRC and East River Realty Company, LLC, collectively referred to herein as "Applicants") certified on May 28, 2004 and May 28, 2004 respectively, the Volunteers requested transition from the VCP to the BCP for completion of the Department approved remedial program for the Site, with the express understanding that this Brownfield Site Cleanup Agreement will supersede and replace Voluntary

Cleanup Order Index No. D2-0001-01-03, solely with respect to the 708 Office Building and the Waterside Generating Station, defined as the Site (Site # C231013) in this Agreement; and

**WHEREAS,** the Site is currently the location of a former office building that has been demolished and a steam and electric generating station that has been retired, and the intended use of the Site is commercial/residential; and

**WHEREAS,** an opportunity for public comment on Volunteers' request to participate in the Brownfield Cleanup Program was provided and the Department duly considered all comments received; and

**WHEREAS,** the Department has determined, based upon consideration of the factors enumerated in ECL 27-1407(8) and (9), the original application and agreement by the parties for the VCP, the certifications contained in the joint BCP application, as well as any public comment received, that TRC and East River Realty Company, LLC are eligible to participate in the BCP for the Site as Volunteers as defined in ECL 27-1405(1)(b).

**NOW, THEREFORE,** IN CONSIDERATION OF AND IN EXCHANGE FOR THE MUTUAL COVENANTS AND PROMISES, THE PARTIES AGREE TO THE FOLLOWING:

I.       <u>Citizen Participation Plan</u>

Within twenty (20) Days after the effective date of this Agreement, Applicants shall submit a written citizen participation plan prepared in accordance with the requirements of ECL 27-1417 that, at a minimum (i) updates the names and addresses of the interested public and includes a brownfield site contact list; (ii) identifies major issues of public concern related to the Site; (iii) includes a description of citizen participation activities already performed; and (iv) includes a description and schedule of public participation activities that are either specifically required by law or are needed to address public concerns related to the Site. The Citizen Participation Plan shall be attached to and incorporated into this Agreement as Exhibit "A."

II.      <u>Development, Performance, and Reporting of Work Plans</u>

a.               <u>Work Plan Requirements</u>

The work plans ("Work Plan" or "Work Plans") under this Agreement shall be prepared and implemented in accordance with the requirements of ECL Article 27, Title 14 and all applicable laws, rules, regulations, and guidance documents. The Work Plans shall be captioned as follows:

1.       "Remedial Investigation Work Plan" if the Work Plan provides for the investigation of the nature and extent of contamination within the boundaries of the Site;

2.       "Remedial Work Plan" if the Work Plan provides for the development and implementation of a Remedial Program for contamination within the boundaries of the Site;

2

3. "IRM Work Plan" if the Work Plan provides for an interim remedial measure; or

4. "OM&M Work Plan" if the Work Plan provides for operation, maintenance, and/or monitoring.

B.    Submission/Implementation of Work Plans

1.    The Department acknowledges that the Site already has an approved Work Plan under the Voluntary Cleanup Program, and that the remedial program will proceed from the stage that it was in under the Voluntary Cleanup Program. Thereafter, Applicants can submit such other and additional work plans as they deem appropriate.

2.    A proposed Work Plan shall be submitted for the Department's review and approval and shall include, at a minimum, a chronological description of the anticipated activities, a schedule for performance of those activities, and sufficient detail to allow the Department to evaluate that Work Plan. The Department shall use best efforts to approve, modify, or reject a proposed Work Plan within forty-five (45) Days from its receipt or within fifteen (15) Days from the close of the comment period, if applicable, whichever is later.

i) Upon the Department's written approval of a Work Plan, such Department-approved Work Plan shall be incorporated into and become an enforceable part of this Agreement as Exhibit "C" and shall be implemented in accordance with the schedule contained therein.

ii) If the Department modifies a Work Plan, the reasons for such modification shall be provided in writing. Within twenty (20) Days after receiving written notice of such modification, Applicants shall elect in writing to (a) implement the Work Plan as modified; (b) implement any other Department-approved Work Plan(s); (c) invoke dispute resolution pursuant to Paragraph XIV; or (d) terminate this Agreement pursuant to Paragraph XIII.

iii) If the Department disapproves a Work Plan, the reasons for such disapproval shall be provided in writing. In the event the Department disapproves a Work Plan, within twenty (20) Days after receiving written notice of such disapproval, Applicants shall elect in writing to (a) modify or expand it within thirty (30) Days of receipt of the written disapproval notice; (b) complete any other Department-approved Work Plan(s); (c) invoke dispute resolution pursuant to Paragraph XIV; or (d) terminate this Agreement pursuant to Subparagraph XIII.

3.    An OM&M Work Plan, if necessary, shall be submitted in accordance with the schedule set forth in the IRM Work Plan or Remedial Work Plan, as either such Work Plan may be amended or modified.

4.    During all field activities, Applicants shall have on-Site a representative who is qualified to supervise the activities undertaken. Such representative may be an employee, a contractor, a subcontractor, or a consultant retained by Applicants to perform such supervision.

3

C.    Revisions to Work Plans

If revisions to a Work Plan are required to satisfy the objectives of such Work Plan, the parties will negotiate revisions which shall be attached to and incorporated into the relevant Work Plan and which shall be enforceable under this Agreement. If the parties cannot agree upon revisions to the relevant Work Plan, then unless Applicants invoke dispute resolution pursuant to Paragraph XIV, either the Department or Applicants may terminate this Agreement pursuant to Paragraph XIII.

D.    Submission of Final Reports

1.    In accordance with the schedule contained in a Work Plan, Applicants shall submit a Final Report that shall include but not be limited to: all data generated relative to the Site and all other information obtained as part of the implementation of the subject Work Plan; all of the assessments and evaluations required by the subject Work Plan; a statement of any additional data that must be collected; and "as-built" drawings.

i) The Final Report for an Investigation Work Plan shall comply with the requirements set forth at ECL 27-1411(1) and shall contain a certification by the person with primary responsibility for the day to day performance of the activities under this Agreement that those activities were performed in full accordance with the Investigation Work Plan. If such Final Report concludes that no remediation is necessary, and the Site does not meet the requirements for Track 1, Applicants shall submit an Alternatives Analysis prepared in accordance with ECL 27-1413 that supports such determination.

ii) A Final Engineering Report certifying that remediation of the Site has been performed in accordance with this Agreement shall be prepared by a Professional Engineer with primary responsibility for the day to day performance of the activities under this Agreement. The Report shall be prepared in accordance with the requirements of ECL 27-1419(1) and (2) and shall contain a certification that all such activities were performed in accordance with the Department approved Work Plan. The Department shall review such Report, the submittals made pursuant to the Agreement, and any other relevant information regarding the Site and make a determination as to whether the goals of the remedial program have been or will be achieved in accordance with established timeframes; if so, a written Certificate of Completion will be issued in accordance with the requirements of ECL 27-1419. Such Certificate of Completion may be modified or revoked, after notice and an opportunity for hearing, upon a finding that (a) Applicants failed to comply with this Agreement; (b) Applicants made a misrepresentation of material fact in connection with their Application or their certification that cleanup levels required by this Agreement were reached; or (c) good cause exists for such modification or revocation.

iii) All other Work Plan Final Reports shall contain a certification by a Professional Engineer (or other expert approved by the Department) with primary responsibility for the day to day performance of the activities under this Agreement that all such activities were performed in full accordance with the Department approved Work Plan.

4

2. Within sixty (60) Days of the Department's approval of a Final Report, Applicants shall submit such additional Work Plans as they propose to implement. Failure to submit any additional Work Plans within such period shall, unless other Work Plans are under review by the Department or being implemented by Applicants, result in the termination of this Agreement pursuant to Paragraph XIII.

E.    Review of Submittals other than Work Plans

1. The Department shall timely notify Applicants in writing of its approval or disapproval of each submittal other than a Work Plan. All Department-approved submittals shall be incorporated into and become an enforceable part of this Agreement.

2. If the Department disapproves a submittal covered by this Subparagraph, it shall specify the reasons for its disapproval and may request Applicants to modify or expand the submittal. Within twenty (20) Days after receiving written notice that Applicants' submittal has been disapproved, Applicants shall elect in writing to either (i) modify or expand it within thirty (30) Days of receipt of the written notice of disapproval; (ii) complete any other Department-approved Work Plan(s); (iii) invoke dispute resolution pursuant to Paragraph XIV; or (iv) terminate this Agreement pursuant to Paragraph XIII. If Applicants submit a revised submittal and it is disapproved, the Department and Applicants may pursue whatever remedies may be available under this Agreement or under law.

F.    Department's Determination of Need for Remediation

The Department shall determine upon its approval of each Final Report dealing with the investigation of the Site whether remediation, or additional remediation as the case may be, is needed for protection of public health and the environment.

1. If the Department makes a preliminary determination that remediation, or additional remediation, is not needed for protection of public health and the environment, the Department shall notify the public of such determination and seek public comment in accordance with ECL 27-1417(3)(e). The Department shall provide timely notification to the Applicants of its final determination following the close of the public comment period.

2. If the Department determines that additional remediation is not needed and such determination is based upon use restrictions, Applicants shall cause to be filed an Environmental Easement in accordance with Paragraph X within sixty (60) Days of receipt of the Department's determination.

3. If the Department determines that remediation, or additional remediation, is needed, Applicants may elect to submit for review and approval a proposed Remedial Work Plan (or a revision to an existing Work Plan for the Site) for a remedy selected upon due consideration of the factors set forth in ECL 27-1415(3). A proposed Remedial Work Plan addressing the Site's remediation will be noticed for public comment in accordance with ECL 27-1417(3)(e) and the

5

Citizen Participation Plan developed pursuant to Paragraph I of this Agreement. If the Department determines following the close of the public comment period that revisions are needed, Applicants agree to negotiate revisions to the proposed Remedial Work Plan in accordance with Paragraph II.C. If Applicants elects not to develop a Work Plan under this Subparagraph or if either the Department or Applicants conclude that a mutually acceptable Work Plan under this Subparagraph cannot be negotiated, then this Agreement shall terminate in accordance with Subparagraph XIII.

G.    Submission of Annual Reports, if required

In the event that the remedy for the Site, if any, or any Work Plan for the Site requires operation, maintenance, and monitoring (OM&M), including reliance upon institutional or engineering controls, Applicants shall file a report annually (unless a different frequency is specified in an approved Work Plan) on the 1st day of the month following the anniversary of the start of the OM&M and continuing until the Department notifies Applicants in writing that such report may be discontinued. Such report shall be signed by a Professional Engineer or by an expert approved by the Department to perform that function and certified under penalty of perjury that the institutional and/or engineering controls are unchanged from the previous certification and that nothing has occurred that would impair the ability of such controls to protect public health and the environment or constitute a violation or failure to comply with the approved OM&M Plan. Applicants shall notify the Department within twenty-four (24) hours of discovery of any upset, interruption, or termination of one or more controls without the prior approval of the Department. Further, Applicants shall take all actions required by the Department to maintain conditions at the Site that achieve the objectives of the remedy and/or the Work Plan and are protective of public health and the environment. An explanation of such upset, interruption, or termination of one or more controls and the steps taken in response shall be included in the foregoing notice and in the report required by this Subparagraph as well as in any progress reports required by Paragraph XI. Applicants can petition the Department for a determination that the institutional and/or engineering controls may be terminated. Such petition must be supported by a Professional Engineer or other expert approved by the Department stating that such controls are no longer necessary. The Department shall not unreasonably withhold its approval of such petition.

III.    Enforcement

This Agreement shall be enforceable as a contractual agreement under the laws of the State of New York. Applicants shall not suffer any penalty or be subject to any proceeding or action if it cannot comply with any requirement of this Agreement as a result of a Force Majeure Event provided Applicants notify the Department in writing within ten (10) Days of when they obtain knowledge of any such event. Applicants shall include in such notice the measures taken and to be taken to prevent or minimize any delays and shall request an appropriate extension or modification of this Agreement. Applicants shall have the burden of proving by a preponderance of the evidence that an event qualifies as a Force Majeure Event pursuant to this Paragraph.

IV.    Entry upon Site

    A.    Applicants hereby agree to provide access to the Site and to all relevant information regarding activities at the Site in accordance with the provisions of ECL 27-1431.

    B.    The Department shall have the right to periodically inspect the Site to ensure that the use of the property complies with the terms and conditions of this Agreement.

V.    Payment of State Costs

    A.    Within forty-five (45) Days after receipt of an itemized invoice from the Department, Applicants shall pay to the Department a sum of money which shall represent reimbursement for State Costs for negotiating this Agreement, and all costs associated with this Agreement up to and including the date upon which the Certificate of Completion is issued, the Department approves the Final Report relative to OM&M, or this Agreement is terminated pursuant to Paragraph XIII, whichever is later.

    B.    Personal service costs shall be documented by reports of Direct Personal Service, which shall identify the employee name, title, biweekly salary, and time spent (in hours) on the project during the billing period, as identified by an assigned time and activity code. Approved agency fringe benefit and indirect cost rates shall be applied. Non-personal service costs shall be summarized by category of expense (*e.g.*, supplies, materials, travel, contractual) and shall be documented by expenditure reports. The Department shall not be required to provide any other documentation of costs, provided however, that the Department's records shall be available consistent with, and in accordance with, Article 6 of the Public Officers Law.

    C.    Such invoice shall be sent to Applicants at the following address:

        Michael A. Skirka
        TRC Companies, Inc.
        1200 Wall Street West
        Lyndhurst, New Jersey 07071

    D.    Each such payment shall be made payable to the Department of Environmental Conservation and shall be sent to:

        Bureau of Program Management
        Division of Environmental Remediation
        New York State Department of Environmental Conservation
        625 Broadway
        Albany, New York 12233-7012

    E.    Each party shall provide written notification to the other within ninety (90) Days of any change in the foregoing addresses.

F.     Applicants may contest, in writing, invoiced costs under this Agreement if they believe (i) the cost documentation contains clerical, mathematical, or accounting errors; (ii) the costs are not related to the State's activities reimbursable under this Agreement; or (iii) the Department is not otherwise legally entitled to such costs. If Applicants object to an invoiced cost, Applicants shall pay all costs not objected to within the time frame set forth in Subparagraph V.A and shall, within thirty (30) Days of receipt of an invoice, identify in writing all costs objected to and identify the basis of the objection. This objection shall be filed with the Director of the Bureau of Program Management ("BPM Director") who shall have the authority to relieve Applicants of the obligation to pay invalid costs. Within forty-five (45) Days of the Department's determination of the objection, Applicants shall pay to the Department the amount which the BPM Director or the BPM Director's designee determines Applicants are obligated to pay or commence an action or proceeding seeking appropriate judicial relief.

G.     In the event any instrument for the payment of any money due under this Agreement fails of collection, such failure of collection shall constitute a violation of this Agreement, provided (i) the Department gives Applicants written notice of such failure of collection, and (ii) the Department does not receive from Applicants a certified check or bank check within fourteen (14) Days after the date of the Department's written notification.

H.     In the event that an eligible party applies for a technical assistance grant in connection with the Site, Applicants may be required to provide such a grant, in accordance with ECL 27-1417(4), in an amount not to exceed $50,000, with the cost of such grant serving as an offset against State Costs payable pursuant to this Paragraph.

VI.     Liability Limitation

Subsequent to the issuance of a Certificate of Completion pursuant to this Agreement, Applicants shall be entitled to the Liability Limitation set forth at ECL 27-1421, subject to the terms and conditions stated therein. A Notice of the Liability Limitation shall be filed with the recording officer of the county in which the Site is located within thirty (30) Days of (i) the effective date of the Certificate of Completion or (ii) the date Applicants acquire title to the Site, whichever is later.

VII.     Reservation of Rights

A.     Except as provided in Subparagraph VII.B, Applicants reserve all rights and defenses under applicable law to contest, defend against, dispute, or disprove any action, proceeding, allegation, assertion, determination, or order of the Department, including any assertion of remedial liability by the Department against them, and further reserve all rights including the rights to notice, to be heard, to appeal, and to any other due process respecting any action or proceeding by the Department, including the enforcement of this Agreement. The existence of this Agreement or Applicants' compliance with it shall not be construed as an admission of any liability, fault, wrongdoing, or violation of law by Applicants, and shall not give rise to any presumption of law or finding of fact which shall inure to the benefit of any third party.

8

B.      Notwithstanding the foregoing, Applicants hereby waive any right they may have to make a claim pursuant to Article 12 of the Navigation Law with respect to the Site and releases the State and the New York Environmental Protection and Spill Compensation Fund from any and all legal or equitable claims, suits, causes of action, or demands whatsoever with respect to the Site that Applicants may have as a result of Applicants' entering into or fulfilling the terms of this Agreement.

VIII.   Indemnification

Applicants shall indemnify and hold the Department, the State of New York, and their representatives and employees harmless from any claim, suit, action, and cost of every name and description arising out of or resulting from the fulfillment or attempted fulfillment of this Agreement by Applicants prior to the Termination Date except for those claims, suits, actions, and costs arising from the State's gross negligence or willful or intentional misconduct by the Department, the State of New York, and/or their representatives and employees during the course of any activities conducted pursuant to this Agreement. The Department shall provide Applicants with written notice no less than thirty (30) Days prior to commencing a lawsuit seeking indemnification pursuant to this Paragraph.

IX.     Change of Use

Applicants shall notify the Department at least sixty (60) Days in advance of any change of use, as defined in ECL 27-1425, which is proposed for the Site.  In the event the Department determines that the proposed change of use is prohibited, the Department shall notify Applicants of such determination within forty-five (45) Days of receipt of such notice.

X.      Environmental Easement

A.      Within thirty (30) Days after the Department's approval of a Remedial Work Plan which relies upon one or more institutional and/or engineering controls, or within thirty (30) Days after the Department's determination pursuant to Subparagraph II.F.2 that additional remediation is not needed based upon use restrictions, Applicants shall submit to the Department for approval an Environmental Easement to run with the land in favor of the State which complies with the requirements of ECL Article 71, Title 36. The submittal shall be substantially similar to Exhibit "B." Applicants shall cause such instrument to be recorded with the recording officer for the county in which the Site is located within thirty (30) Days after the Department's approval of such instrument. Applicants shall provide the Department with a copy of such instrument certified by the recording officer to be a true and faithful copy within thirty (30) Days of such recording (or such longer period of time as may be required to obtain a certified copy provided Applicants advise the Department of the status of their efforts to obtain same within such thirty (30) Day period).

B.      Applicants or the owner of the Site may petition the Department to modify or extinguish the Environmental Easement filed pursuant to this Agreement at such time as it can certify that the Site is protective of human health and the environment without reliance upon the restrictions set forth in such instrument. Such certification shall be made by a Professional Engineer

or other expert approved by the Department. The Department will not unreasonably withhold its consent.

XI.    <u>Progress Reports</u>

Applicants shall submit a written progress report of their actions under this Agreement to the parties identified in Subparagraph XII.A.1 by the 10th day of each month commencing with the month subsequent to the approval of the first Work Plan and ending with the Termination Date, unless a different frequency is set forth in a Work Plan. Such reports shall, at a minimum, include: all actions relative to the Site during the previous reporting period and those anticipated for the next reporting period; all approved activity modifications (changes of work scope and/or schedule); all results of sampling and tests and all other data received or generated by or on behalf of Applicants in connection with this Site, whether under this Agreement or otherwise, in the previous reporting period, including quality assurance/quality control information; information regarding percentage of completion; unresolved delays encountered or anticipated that may affect the future schedule and efforts made to mitigate such delays; and information regarding activities undertaken in support of the Citizen Participation Plan during the previous reporting period and those anticipated for the next reporting period.

XII.    <u>Communications</u>

A.    All written communications required by this Agreement shall be transmitted by United States Postal Service, by private courier service, or hand delivered.

1.    Communication from Applicants shall be sent to:

Robert Cozzy, P.E.
Division of Environmental Remediation
New York State Department of Environmental Conservation
625 Broadway
Albany, New York 12233-7016
Note: three copies (one unbound) of work plans are required to be sent.

Gary Litwin
Bureau of Environmental Exposure Investigation
New York State Department of Health
Flanigan Square
547 River Street
Troy, New York 12180-2216
Note: two copies of work plans are required to be sent, and

Anthony B. Quartararo, Esq.
Division of Environmental Enforcement
New York State Department of Environmental Conservation

625 Broadway
Albany, New York 12233-5500
Correspondence only

2.  Communication from the Department to Applicants shall be sent to:

East River Realty Company, LLC
Daniel Riesel, Esq.
Sive, Paget & Riesel, P.C.
460 Park Avenue
New York, New York 10022

TRC Companies, Inc.
Michael A. Skirka
1200 Wall Street West
Lyndhurst, New Jersey 07071

B.    The Department and Applicants reserve the right to designate additional or different addressees for communication on written notice to the other.

C.    Each party shall notify the other within ninety (90) Days after any change in the addresses listed in this Paragraph XII or in Paragraph V.

XIII.    Termination of Agreement

Applicants may terminate this Agreement at any time by providing written notification to the parties listed in Subparagraph XII.A.1. The Department may terminate this Agreement at any time pursuant to Subparagraph XV.A or in the event Applicants fail to substantially comply with the Agreement's terms and conditions. The Department shall provide written notification to Applicants setting forth the basis for termination of the Agreement. The termination shall be effective the 5th day after the non-terminating party's receipt of such written notification, except that such termination shall not affect the provisions contained in Paragraphs V, VII.B, and VIII.

XIV.    Dispute Resolution

A.    In the event disputes arise regarding any notice of disapproval of a submittal, proposed Work Plan or Final Report, or during the implementation of any Work Plan, Applicants may, within thirty (30) Days of receipt of such notice, request in writing informal negotiations with the Department in an effort to resolve the dispute. The Department and Applicants shall consult together in good faith and exercise best efforts to resolve any differences or disputes without resort to the procedures described in Subparagraph XIV.B. The period for informal negotiations shall not exceed thirty (30) Days from Applicants' request for informal negotiations. If the parties cannot resolve a dispute by informal negotiations during this period, the Department's position shall be considered binding unless Applicants notify the Department in writing within thirty (30) Days after

11

the conclusion of the thirty (30) Day period for informal negotiations that they invoke the dispute resolution provisions provided under Subparagraph XIV.B.

B.    1.    Applicants shall file with the Office of Hearings and Mediation ("OH&M") a request for formal dispute resolution and a written statement of the issues in dispute, the relevant facts upon which the dispute is based, factual data, analysis, or opinion supporting its position, and all supporting documentation upon which Applicants rely (hereinafter called the "Statement of Position"). A copy of such request and written statement shall be provided contemporaneously to the Director of the Division of Environmental Remediation ("DER Director") and to the parties listed under Subparagraph XII.A.1.

2.    The Department shall serve its Statement of Position no later than twenty (20) Days after receipt of Applicants' Statement of Position.

3.    Applicants shall have the burden of proving by substantial evidence that the Department's position does not have a rational basis and should not prevail. The OH&M can conduct meetings, in person or via telephone conferences, and request additional information from either party if such activities will facilitate a resolution of the issues.

4.    The OH&M shall prepare and submit a report and recommendation to the DER Director who shall issue a final decision resolving the dispute in a timely manner. The final decision shall constitute a final agency action and Applicants shall have the right to seek judicial review of the decision pursuant to Article 78 of the CPLR provided that Applicants notify the Department within thirty (30) Days after receipt of a copy of the final decision of their intent to commence an Article 78 proceeding and commence such proceeding within sixty (60) Days after receipt of a copy of the Director's final decision. Applicants shall be in violation of this Agreement if they fail to comply with the final decision resolving this dispute within sixty (60) Days after the date of such final decision, or such other time period as may be provided in the final decision, unless they seek judicial review of such decision within the sixty (60) Day period provided. In the event that Applicants seek judicial review, Applicants shall be in violation of this Agreement if they fail to comply with the final Court Order or settlement within thirty (30) Days after the effective date of such Order or settlement, unless otherwise directed by the Court. For purposes of this Subparagraph, a Court Order or settlement shall not be final until the time to perfect an appeal of same has expired.

5.    The invocation of dispute resolution shall not extend, postpone, or modify Applicants' obligations under this Agreement with respect to any item not in dispute unless or until the Department agrees or a Court determines otherwise. The invocation of the procedures set forth in this Paragraph XIV shall constitute a waiver of any and all other administrative remedies which may otherwise be available to Applicants regarding the issue in dispute.

6.    The Department shall keep an administrative record of any proceedings under this Paragraph XIV which shall be available consistent with Article 6 of the Public Officers Law.

7.    Nothing in this Paragraph XIV shall be construed as an agreement by the

12

parties to resolve disputes through administrative proceedings pursuant to the State Administrative Procedure Act, the ECL, or 6 NYCRR Part 622 or Section 375-2.1.

XV.    Miscellaneous

A.    If the information provided and any certifications made by Applicants are not materially accurate and complete, this Agreement, except with respect to Applicants' obligations pursuant to Paragraphs V, VII.B, and VIII, shall be null and void *ab initio* fifteen (15) Days after the Department's notification of such inaccuracy or incompleteness or fifteen (15) Days after issuance of a final decision resolving a dispute pursuant to Paragraph XIV, whichever is later, unless Applicants submit information within that fifteen (15) Day time period indicating that the information provided and the certifications made were materially accurate and complete. In the event this Agreement is rendered null and void, any Certificate of Completion and/or Liability Limitation that may have been issued or may have arisen under this Agreement shall also be null and void *ab initio*, and the Department shall reserve all rights that it may have under law.

B.    Applicants shall allow the Department to attend, and shall notify the Department at least seven (7) Days in advance of, any field activities to be conducted pursuant to this Agreement, as well as any pre-bid meetings, job progress meetings, substantial completion meeting and inspection, and final inspection and meeting; nothing in this Agreement shall be construed to require Applicants to allow the Department to attend portions of meetings where privileged matters are discussed.

C.    The Department may exempt Applicants from the requirement to obtain any state or local permit or other authorization for any activity conducted pursuant to this Agreement that (i) is conducted on the Site or on different premises that are under common control or contiguous to or physically connected with the Site and such activity manages exclusively hazardous waste and/or petroleum from such Site, and (ii) satisfies all substantive technical requirements applicable to like activity conducted pursuant to a permit, as determined by the Department.

D.    Applicants shall use "best efforts" to obtain all Site access, permits, easements, rights-of-way, rights-of-entry, approvals, institutional controls, or authorizations necessary to perform Applicants' obligations under this Agreement. If, despite Applicants' best efforts, any access, permits, easements, rights-of-way, rights-of-entry, approvals, institutional controls, or authorizations required to perform this Agreement are not obtained, Applicants shall promptly notify the Department, and include a summary of the steps taken to obtain access. The Department may, as it deems appropriate and within its authority, assist Applicants in obtaining same. If an interest in property is needed to implement an institutional control required by a Work Plan and such interest cannot be obtained, the Department may require Applicants to modify the Work Plan pursuant to Subparagraph II.C of this Agreement to reflect changes necessitated by the lack of access and/or approvals.

E.    All approved Work Plans, Final Reports, and other documents required under this Agreement shall be submitted to the Department in an electronic format acceptable to the

Department within thirty (30) Days of approval. If any document cannot be converted into electronic format, Applicants shall so advise the Department and, if the Department concurs, submit such document in an alternative format acceptable to the Department.

F.     Applicants shall provide a copy of this Agreement to each contractor hired to perform work required by this Agreement and shall condition all contracts entered into for the obligations identified in this Agreement upon performance in conformity with the terms of this Agreement. Applicants or their contractor(s) shall provide written notice of this Agreement to all subcontractors hired to perform any portion of the work required by this Agreement. Applicants shall nonetheless be responsible for ensuring that Applicants' contractors and subcontractors perform the work in satisfaction of the requirements of this Agreement.

G.     The paragraph headings set forth in this Agreement are included for convenience of reference only and shall be disregarded in the construction and interpretation of any provisions of this Agreement.

H.     1.     The terms of this Agreement shall constitute the complete and entire agreement between the Department and Applicants concerning the implementation of the activities required by this Agreement. No term, condition, understanding, or agreement purporting to modify or vary any term of this Agreement shall be binding unless made in writing and subscribed by the party to be bound. No informal advice, guidance, suggestion, or comment by the Department shall be construed as relieving Applicants of Applicants' obligation to obtain such formal approvals as may be required by this Agreement. In the event of a conflict between the terms of this Agreement and any Work Plan submitted pursuant to this Agreement, the terms of this Agreement shall control over the terms of the Work Plan(s) attached as Exhibit "C." Applicants consent to and agrees not to contest the authority and jurisdiction of the Department to enter into or enforce this Agreement.

2.     i.     Except as set forth herein, if Applicants desire that any provision of this Agreement be changed, other than a provision of a Work Plan or a time frame, Applicants shall make timely written application to the Commissioner with copies to the parties listed in Subparagraph XII.A.1.

ii.     Changes to the Work Plan shall be accomplished as set forth in Subparagraph II.C of this Agreement.

iii.     Requests for a change to a time frame set forth in this Agreement shall be made in writing to the Department's project attorney and project manager; such requests shall not be unreasonably denied and a written response to such requests shall be sent to Applicants promptly.

I.     1.     If there are multiple parties signing this Agreement, the term "Applicant" shall be read in the plural, the obligations of each such party under this Agreement are joint and several, and the insolvency of or failure by any Applicant to implement any obligations under this Agreement shall not affect the obligations of the remaining Applicant(s) under this Agreement.

14

2.    If any Applicant is a partnership, the obligations of all general partners (including limited partners who act as general partners) under this Agreement are joint and several and the insolvency or failure of any general partner to implement any obligations under this Agreement shall not affect the obligations of the remaining partner(s) under this Agreement.

3.    Notwithstanding the foregoing Subparagraphs XV.I.1 and 2, if multiple parties sign this Agreement as Applicants but not all of the signing parties elect to implement a Work Plan, all Applicants are jointly and severally liable for each and every obligation under this Agreement through the completion of activities in such Work Plan that all such parties consented to; thereafter, only those Applicants electing to perform additional work shall be jointly and severally liable under this Agreement for the obligations and activities under such additional Work Plan(s). The parties electing not to implement the additional Work Plan(s) shall have no obligations under this Agreement relative to the activities set forth in such Work Plan(s). Further, only those Applicants electing to implement such additional Work Plan(s) shall be eligible to receive the Liability Limitation referenced in Paragraph VI.

J.    Applicants shall be entitled to contribution protection to the extent authorized by ECL 27-1421(6).

K.    Applicants shall not be considered operators of the Site solely by virtue of having executed and/or implemented this Agreement.

L.    Applicants and Applicants' agents, grantees, lessees, sublessees, successors, and assigns shall be bound by this Agreement. Any change in ownership of Applicants including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Applicants' responsibilities under this Agreement.

M.    Unless otherwise expressly provided herein, terms used in this Agreement which are defined in ECL Article 27 or in regulations promulgated thereunder shall have the meaning assigned to them under said statute or regulations. Whenever terms listed in the Glossary attached hereto are used in this Agreement or its Exhibits, the definitions set forth in the Glossary shall apply. In the event of a conflict, the definition set forth in the Glossary shall control.

N.    Applicants' obligations under this Agreement represent payment ·for or reimbursement of response costs, and shall not be deemed to constitute any type of fine or penalty.

O.    This Agreement may be executed for the convenience of the parties hereto, individually or in combination, in one or more counterparts, each of which shall be deemed to have the status of an executed original and all of which shall together constitute one and the same.

P.    This Agreement supersedes and replaces the Voluntary Cleanup Order ("VCO") Index No. D2-0001-01-03 solely with respect to the 708 Office Building, VCO Site Number V-00431-2 and the Waterside Generating Station, VCO Site Number V-00432-2, defined in this Agreement as

Site # C231013. The Site remedial program under this Agreement will proceed from the stage that it was in under the VCO.

Q.    The effective date of this Agreement is the date it is signed by the Commissioner or the Commissioner's designee.

DATED:                                      DENISE M. SHEEHAN,
                                            ACTING COMMISSIONER
                                            NEW YORK STATE DEPARTMENT OF
                                            ENVIRONMENTAL CONSERVATION


                        By:     _____
                                Dale A. Desnoyers, Director
                                Division of Environmental Remediation

16

## CONSENT BY APPLICANT

    Applicant hereby consents to the issuing and entering of this Agreement, waives Applicant's right to a hearing herein as provided by law, and agrees to be bound by this Agreement.

**East River Realty Company, LLC**

By: _____

Title: _____

Date: _____

STATE OF NEW YORK    )
                          ) ss:
COUNTY OF New York  )

    On the _____ day of _____, in the year 2006, before me, the undersigned, personally appeared Sheldon Solow personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Signature and Office of individual
taking acknowledgment

**Michael O. McDaniel**
**New York State Notary Public**
**Onon. Co. 01MC4992318**
**Commission Expires 2/24/10**

17

CONSENT BY APPLICANT

Applicant hereby consents to the issuing and entering of this Agreement, waives Applicant's right to a hearing herein as provided by law, and agrees to be bound by this Agreement.

**TRC Companies, Inc.**

By: _M H Dodd_

Title: _Senior Vice President_

Date: _January 19, 2006_

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF _New York_ )

On the _6th_ day of _September_, in the year 2006, before me, the undersigned, personally appeared _Martin H. Dodd_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_Michael O. McDaniel_
Signature and Office of individual
taking acknowledgment

**Michael O. McDaniel**
**New York State Notary Public**
Onon. Co. 01MC4992318
Commission Expires 2/24/10

18

## Glossary of Terms

The following terms shall have the following meanings:

"Day": a calendar day. In computing any period of time under this Agreement, if the last day would fall on a Saturday, Sunday, or State holiday, the period shall run until the close of business of the next working day.

"Force Majeure Event": an event which is brought on as a result of fire, lightning, earthquake, flood, adverse weather conditions, strike, shortages of labor and materials, war, riot, obstruction or interference by adjoining landowners, or any other fact or circumstance beyond Applicant's reasonable control.

"IRM": an interim remedial measure which is a discrete set of activities which can be undertaken without extensive investigation and evaluation to prevent, mitigate, or remedy environmental damage or the consequences of environmental damage attributable to a Site.

"OM&M": operation, maintenance, and monitoring.

"Professional engineer": an individual registered as a professional engineer or otherwise authorized in accordance with Article 145 of the New York State Education Law. If such individual is a member of a firm, that firm must be authorized to offer professional engineering services in the State of New York in accordance with Article 145 of the New York State Education Law.

"State Costs": all the State's expenses including, but not limited to, direct labor, fringe benefits, indirect costs, travel, analytical costs, and contractor costs incurred by the State of New York for negotiating, implementing, and administering this Agreement. Approved agency fringe benefit and indirect cost rates will be applied.

"Termination Date": the date upon which (i) the Department issues the Certificate of Completion or approves the Final Report relative to the OM&M at the Site, whichever is later, or (ii) the Agreement terminates pursuant to Paragraph XIII or Subparagraph XV.A,.

"Work Plan": a Department-approved work plan, as may be modified, that Applicant shall implement and that is attached to this Agreement.

**EXHIBIT "A"**

**Citizen Participation Plan**

## EXHIBIT "B"

## ENVIRONMENTAL EASEMENT

THIS INDENTURE made this ____day of _____, 200__, between _____
_____ residing at (or having an office at ) _____
(the "Grantor"), and The People of the State of New York (the "Grantee."), acting through their
Commissioner of the Department of Environmental Conservation (the "Commissioner", or
"NYSDEC" or "Department" as the context requires) with its headquarters located at 625 Broadway,
Albany, New York 12233,

**WHEREAS,** the Legislature of the State of New York has declared that it is in the public interest
to encourage the remediation of abandoned and likely contaminated properties ("brownfield sites")
that threaten the health and vitality of the communities they burden while at the same time ensuring
the protection of public health and the environment; and

**WHEREAS,** the Legislature of the State of New York has declared that it is in the public interest
to establish within the Department a statutory environmental remediation program that includes the
use of environmental easements as an enforceable means of ensuring the performance of operation,
maintenance, and/or monitoring requirements and of ensuring the potential restriction of future uses
of the land, when an environmental remediation project leaves residual contamination at levels that
have been determined to be safe for a specific use, but not all uses, or which includes engineered
structures that must be maintained or protected against damage to perform properly and be effective,
or which requires groundwater use or soil management restrictions; and

**WHEREAS,** the Legislature of the State of New York has declared that environmental easement
shall mean an interest in real property, created under and subject to the provisions of Article 71, Title
36 of the New York State Environmental Conservation Law ("ECL") which contains a use restriction
and/or a prohibition on the use of land in a manner inconsistent with engineering controls which are
intended to ensure the long term effectiveness of a brownfield site remedial program or eliminate
potential exposure pathways to hazardous waste or petroleum; and;

**WHEREAS,** Grantor, is the owner  of real property located in the City/Town/Village of
_____, _____County, New York known and designated on the tax map of the
_____ of _____ as tax map parcel number_____, section ___ block ___
lot____ , being the same as that property conveyed to Grantor by deed on _____, and
recorded in the Land Records of the _____ County Clerk at page ____, liber _____ of Deeds,
comprised of approximately ____ acres, and hereinafter more fully described in Schedule A attached
hereto and made a part hereof ( the " Controlled Property"); and;

*Attach an adequate legal description of the property subject to the easement, or reference*
*a recorded map. If the easement is on only a part of a parcel of land which is not*
*subdivided into encumbered and unencumbered portions, a legal description needs to be*
*created by a survey bearing the seal and signature of a licensed land surveyor with*
*reference to a metes and bounds description.*

**WHEREAS**, the Commissioner does hereby acknowledge that the Department accepts this Environmental Easement in order to ensure the protection of human health and the environment and to achieve the requirements for remediation established at this Controlled Property until such time as this Environmental Easement is extinguished pursuant to ECL Article 71, Title 36; and

**NOW THEREFORE**, in consideration of the covenants and mutual promises contained herein and the terms and conditions of **Brownfield Cleanup Agreement Number_____ /State Assistance Contract Number_____ /Order on Consent Number_____**, Grantor grants, conveys and releases to Grantee a permanent Environmental Easement pursuant to Article 71, Title 36 of the ECL in, on, over, under, and upon the Controlled Property as more fully described herein ("Environmental Easement").

1.    <u>Purposes</u>.  Grantor and Grantee acknowledge that the Purposes of this Environmental Easement are: to convey to Grantee real property rights and interests that will run with the land in perpetuity in order to provide an effective and enforceable means of encouraging the reuse and redevelopment of this Controlled Property at a level that has been determined to be safe for a specific use while ensuring the performance of operation, maintenance, and/or monitoring requirements; and to ensure the potential restriction of future uses of the land that are inconsistent with the above-stated purpose.

2.    <u>Institutional and Engineering Controls</u>.   The following controls apply to the use of the Controlled Property, run with the land are binding on the Grantor and the Grantor's successors and assigns, and are enforceable in law or equity against any owner of the Controlled Property, any lessees, and any person using the Controlled Property:

    A. The Controlled Property may be used for 

<u>residential</u>
<u>commercial</u>
<u>industrial</u>
use as long as the following long-term engineering controls are employed:

    B. The Controlled Property may not be used for a higher level of use such as **<u>unrestricted/ residential / commercial</u>**  use and the above-stated engineering controls may not be discontinued without an amendment or extinguishment of this Environmental Easement.

    C. Grantor covenants and agrees that until such time as the Environmental Easement is extinguished in accordance with the requirements of Article 71, Title 36 of the ECL, the property deed and all subsequent instruments of conveyance relating to the Controlled Property shall state in at least fifteen-point bold-faced type:

## This property is subject to an environmental easement held by the New York State Department of Environmental

## Conservation pursuant of Title 36 to Article 71 of the Environmental Conservation Law.

D. Grantor covenants and agrees that this Environmental Easement shall be incorporated in full or by reference in any leases, licenses, or other instruments granting a right to use the Controlled Property.

E. Grantor covenants and agrees that it shall annually, or such time as NYSDEC may allow, submit to NYSDEC a written statement by an expert the NYSDEC may find acceptable certifying under penalty of perjury that the controls employed at the Controlled Property are unchanged from the previous certification or that any changes to the controls employed at the Controlled Property were approved by the NYSDEC, and that nothing has occurred that would impair the ability of such control to protect the public health and environment or constitute a violation or failure to comply with any Site Management Plan for such controls and giving access to such Controlled Property to evaluate continued maintenance of such controls.

3. <u>Right to Enter and Inspect.</u> Grantee, its agents, employees, or other representatives of the State may enter and inspect the Controlled Property in a reasonable manner and at reasonable times to assure compliance with the above-stated restrictions.

4. <u>Reserved Grantor's Rights</u>. Grantor reserves for itself, its assigns, representatives, and successors in interest with respect to the Property, all rights as fee owner of the Controlled Property, including:

1. Use of the Controlled Property for all purposes not inconsistent with, or limited by the terms of this Environmental Easement;

2. The right to give, sell, assign, or otherwise transfer the underlying fee interest to the Controlled Property by operation of law, by deed, or by indenture, subject and subordinate to this Environmental Easement;

5. <u>Enforcement</u>

A. This environmental easement is enforceable in law or equity in perpetuity by Grantor, Grantee, or any affected local government, as defined in ECL Section 71-3603, against the owner of the Property, any lessees, and any person using the land. Enforcement shall not be defeated because of any subsequent adverse possession, laches, estoppel, or waiver. It is not a defense in any action to enforce this environmental easement that: it is not appurtenant to an interest in real property; it is not of a character that has been recognized traditionally at common law; it imposes a negative burden; it imposes affirmative obligations upon the owner of any interest in the burdened property; the benefit does not touch or concern real property; there is no privity of estate or of contract; or it imposes an unreasonable restraint on alienation.

B. If any person intentionally violates this environmental easement, the Grantee may revoke the Certificate of Completion provided under ECL Article 27, Title 14, or the Satisfactory

Completion of Project provided under ECL Article 56, Title 5 with respect to the Controlled Property.

C. Grantee shall notify Grantor of a breach or suspected breach of any of the terms of this Environmental Easement. Such notice shall set forth how Grantor can cure such breach or suspected breach and give Grantor a reasonable amount of time from the date of receipt of notice in which to cure. At the expiration of such period of time to cure, or any extensions granted by Grantee, the Grantee shall notify Grantor of any failure to adequately cure the breach or suspected breach. Grantor shall then have a reasonable amount of time from receipt of such notice to cure. At the expiration of said second period, Grantee may commence any proceedings and take any other appropriate action reasonably necessary to remedy any breach of this Environmental Easement in accordance with applicable law to require compliance with the terms of this Environmental Easement.

D. The failure of Grantee to enforce any of the terms contained herein shall not be deemed a waiver of any such term nor bar its enforcement rights in the event of a subsequent breach of or noncompliance with any of the terms of this Environmental easement.

6.    Notice. Whenever notice to the State (other than the annual certification) or approval from the State is required, the Party providing such notice or seeking such approval shall identify the Controlled Property by referencing its County tax map number or the Liber and Page or computerized system tracking/ identification number and address correspondence to:

> Division of Environmental Enforcement
> Office of General Counsel
> New York State Department of Environmental Conservation
> 625 Broadway
> Albany New York 12233-5500

Such correspondence shall be delivered by hand, or by registered mail or by Certified mail and return receipt requested. The Parties may provide for other means of receiving and communicating notices and responses to requests for approval.

7.    Recordation. Grantor shall record this instrument, within thirty (30) days of execution of this instrument by the Commissioner or her/his authorized representative in the office of the recording officer for the county or counties where the Property is situated in the manner prescribed by Article 9 of the Real Property Law.

8.    Amendment. This environmental easement may be amended only by an amendment executed by the Commissioner of the New York State Department of Environmental Conservation and filed with the office of the recording officer for the county or counties where the Property is situated in the manner prescribed by Article 9 of the Real Property Law.

9.    Extinguishment. This environmental easement may be extinguished only by a release by the Commissioner of the New York State Department of Environmental Conservation and filed with the office of the recording officer for the county or counties where the Property is situated in the manner

prescribed by Article 9 of the Real Property Law.

10.    _Joint Obligation_. If there are two or more parties identified as Grantor herein, the obligations imposed by this instrument upon them shall be joint and several.

**IN WITNESS WHEREOF,** Grantor has caused this instrument to be signed in its name.

**Grantor's Name**

By:_____

Title:_____

Date:_____

THIS ENVIRONMENTAL EASEMENT IS HEREBY ACCEPTED BY THE PEOPLE OF THE STATE OF NEW YORK, Acting By and Through the Department of Environmental Conservation

By:    _____

Denise M. Sheehan, Acting Commissioner

**Grantor's Acknowledgment**

STATE OF NEW YORK       )
                        ) ss:
COUNTY OF               )

On the _____ day of _____, in the year 200_, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public - State of New York

**Grantee's Acknowledgment**

STATE OF NEW YORK    )
                          ) ss:
COUNTY OF                )

On the _____ day of _____, in the year 200_, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be  individual(s) whose name is (are) subscribed to the within instrument and acknowledged to me that he/she/ executed the same in his/her/ capacity as Commissioner of the State of New York Department of Environmental Conservation, and that by his/her/ signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public - State of New York





EXHIBIT "C"

**Approved Work Plans**

EXHIBIT "D"

Survey

Metes and Bounds Description